UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
IN RE:

GENERAL MOTORS LLC IGNITION SWITCH
LITIGATION

-------------------------------------------------------------x

*This Document Relates to:*

14-md-2543 (JMF)

LAWRENCE JOSEPH BARTHELEMY
AND DIONNE MARIE SPAIN,

1:14-cv-05810

      Plaintiffs,

**GENERAL MOTORS LLC'S
ANSWER TO PLAINTIFFS'
SECOND AMENDED COMPLAINT
FOR DAMAGES AND JURY
TRIAL DEMANDED**

v.

GENERAL MOTORS LLC

      Defendant.

-------------------------------------------------------------x

      NOW COMES Defendant, General Motors LLC ("GM LLC"), by and through its counsel, and files the following Answer to Plaintiffs' Second Amended Complaint (the "Second Amended Complaint").

      1.      GM LLC incorporates by reference its admissions and averments in Paragraph 3 below. GM LLC admits that according to the State of Louisiana Uniform Motor Vehicle Traffic Crash Report and narrative supplement ("crash report"), Dionne M. Spain and Lawrence J. Barthelemy were involved in a motor vehicle accident on January 24, 2014 while Dionne M. Spain was driving a 2007 Saturn Sky (VIN 1G8MB35B67Y108894) ("subject vehicle") with Lawrence J. Barthelemy as a passenger (the "crash"). GM LLC admits that prior to July 10, 2009, General Motors Corporation ("Old GM") designed in part, manufactured in part, marketed and distributed motor vehicles to independent authorized dealers for ultimate sale to retail

consumers, which include the 2007 Saturn Sky at issue. GM LLC admits Plaintiffs purport to have sustained injuries as a result of the January 24, 2014 crash, but denies the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash. GM LLC denies the remaining allegations in Paragraph 1 of the Second Amended Complaint.

2.      GM LLC admits that according to the crash report, Plaintiff Dionne M. Spain was the owner of the subject 2007 Saturn Sky at the time of the accident. GM LLC further admits that according to the subject vehicle's title history, Dionne M. Spain purchased the subject vehicle as a used vehicle in Louisiana from Banner Chevrolet on April 18, 2013 with financing from Crescent Bank & Trust. GM LLC denies that Plaintiff Dionne M. Spain purchased the subject vehicle on April 1, 2013.

3.      GM LLC admits there is a safety defect in which there was a low-torque ignition switch installed in many Old GM vehicles, which, under certain circumstances, may inadvertently move out of the "Run" position ("defective switch"). If this movement occurs, the driver loses the assistance of power steering and power brakes. If a collision occurs while the switch is in the "Accessory" or "Off" position, the vehicle's safety airbags may fail to deploy— increasing the risk of death and serious injury in certain types of crashes in which the airbag was otherwise designed to deploy. The model year cars which may have been equipped with the defective switch are the 2005, 2006, and 2007 Chevrolet Cobalt; the 2007 Pontiac G5; the 2003, 2004, 2005, 2006, and 2007 Saturn Ion; the 2006 and 2007 Chevrolet HHR; the 2007 Saturn Sky; and the 2006 and 2007 Pontiac Solstice. This safety defect in these identified vehicles is the subject of GM Recall Nos. 13454 and 14063.

GM LLC admits that if the ignition switch moves out of the "run" position, the driver loses the assistance of power steering and power brakes.  GM LLC admits that if a vehicle loses

power steering and power assist braking, the vehicle would still have operational manual steering and base brakes.

GM LLC admits the following with respect to the vehicles subject to GM Recall Nos. 13454 and 14063: Before the defective switch went into production in 2002, certain Old GM engineers knew that it was prone to movement out of the Run position. Testing conducted by the Switch Supplier in 2001 and early 2002 revealed that an early version of the pre-production defective switch was not meeting Old GM's torque specification, and before the defective switch went into production in 2002, certain Old GM engineers knew that it was prone to movement out of the Run position.

The effects of the defective switch on airbag non-deployment began manifesting themselves early on, in crashes about which Old GM was made aware, beginning in 2004. In or about 2004 and 2005, as Old GM employees, media representatives, and Old GM customers began to experience sudden stalls and engine shutoffs caused by the defective switch, Old GM considered fixing the problem. However, having decided that the switch did not pose a safety concern, and citing cost and other factors, engineers responsible for decision-making on the issue opted to leave the defective switch as it was and simply promulgate an advisory to dealerships with tips on how to minimize the risk of unexpected movement out of the Run position.

Old GM issued to its dealers a service bulletin in December 2005 (the "2005 Service Bulletin"), which deliberately omitted the word "stall," alerting them to an "inadvertent turning off" problem and instructing them to provide any complaining customers with inserts for their key heads that would transform the slot into a hole and thus reduce the lever arm. In April 2006, the Switch Design Release Engineer authorized replacement of the defective switch in new cars with a different one that had a longer detent plunger and therefore significantly greater torque,

but the part number was not changed. As a result, no one looking at the switch would be able, without taking it apart, to tell the difference between the old, defective switch and the new, non-defective one.

A relevant change to the Cobalt was made in 2009. Having previously failed to implement the slot-to-hole alteration to the key head design, Old GM decided to implement the slot-to-hole change for the model year 2010.

From approximately the spring of 2012, certain GM LLC personnel knew that the defective switch presented a safety issue because it could cause airbag non-deployment associated with death and serious injury. From in or about the spring of 2012 through in or about February 2014, GM LLC failed to disclose a safety defect related to the defective switch to its U.S. regulator, the National Highway Traffic Safety Administration ("NHTSA"). It also falsely represented to consumers that vehicles containing the defect posed no safety concern. GM LLC denies that any misrepresentations were made directly to plaintiff or that plaintiff relied on any misrepresentations. For much of the period during which GM LLC failed to disclose this safety defect, it not only failed to correct a June 2005 Old GM public statement that the defective switch posed no safety concern but also actively touted the reliability and safety of Old GM cars equipped with the defective switch, with a view to promoting sales of used GM cars.

GM LLC admits that it submitted to the National Highway Traffic Safety Administration ("NHTSA") a letter dated February 7, 2014, pursuant to 49 C.F.R. § 573.6, pertaining to the recall of approximately 619,122 2005-2007 model year (MY) Chevrolet Cobalt and 2007 Pontiac G5 vehicles ("GM Recall No. 13454"). GM LLC admits its letter to NHTSA dated February 24, 2014 superseded the February 7, 2014 letter, and provided as follows:

> 573.6(c)(5): General Motors has decided that a defect which relates to motor vehicle safety exists in 2005-2007 model year Chevrolet

Cobalt and 2007 model year Pontiac G5 vehicles. The ignition switch torque performance may not meet General Motors' specification. If the torque performance is not to specification, the ignition switch may unintentionally move from the "run" position to the "accessory" or "off" position with a corresponding reduction or loss of power. This risk may be increased if the key ring is carrying added weight or the vehicle goes off road or experiences some other jarring event. The timing of the key movement out of the "run" position, relative to the activation of the sensing algorithm of the crash event, may result in the airbags not deploying, increasing the potential for occupant injury in certain kinds of crashes.

Until the recall repairs have been performed, it is <u>very</u> important that customers remove all items from their key rings, leaving only the vehicle key. The key fob (if applicable), should also be removed from the key ring.

GM LLC admits that it sent a letter to NHTSA dated February 25, 2014, pursuant to 49 C.F.R. § 573.6, which was superseded by its letter dated March 11, 2014, pertaining to the ignition switch recall of approximately 748,024 2006-2007 MY Chevrolet HHR and Pontiac Solstice, 2003-2007 MY Saturn Ion, and 2007 MY Saturn Sky vehicles ("GM Recall No. 14063"). The March 11, 2014 letter to NHTSA stated as follows:

573.6(c)(5): General Motors has decided that a defect which relates to motor vehicle safety exists in 2006-2007 MY Chevrolet HHR and Pontiac Solstice, 2003-2007 MY Saturn Ion, and 2007 MY Saturn Sky vehicles. The ignition switch torque performance may not meet General Motors' specification. If the torque performance is not to specification, the ignition switch may unintentionally move from the "run" position to the "accessory" or "off" position with a corresponding reduction or loss of power. This risk may be increased if the key ring is carrying added weight or the vehicle goes off road or experiences some other jarring event. The timing of the key movement out of the "run" position, relative to the activation of the sensing algorithm of the crash event, may result in the airbags not deploying, increasing the potential for occupant injury in certain kinds of crashes.

Until the recall repairs have been performed, it is <u>very</u> important that customers remove all items from their key rings, leaving only the vehicle key. The key fob (if applicable), should also be removed from the key ring.

GM LLC further admits that it submitted to NHTSA the following information in a letter dated March 27, 2014, pursuant to 49 C.F.R. § 573.6, and as subsequently amended in the letter on March 28, 2014, pertaining to the recall of approximately 823,788 vehicles with Ignition & Start Switches ("GM Recall No. 14092"):

> 573.6(c)(2)(iii),(5): General Motors has decided that a defect which relates to motor vehicle safety exists in GM Parts and ACDelco Ignition & Start Switch service part number 10392423, and the following Ignition & Start Switch Housing Kits that contain or may contain part number 10392423: GM Parts and AC Delco service part numbers 10392737, 15857948, 15854953, 15896640, and 25846762. GM records indicate these service parts may have been installed during repairs in some 2008-2010 MY Chevrolet Cobalt, 2008-2011 MY Chevrolet HHR, 2008-2010 MY Pontiac Solstice, 2008-2010 MY Pontiac G5, and 2008-2010 MY Saturn Sky vehicles.

The above, Recall No. 14v047, is collectively referred to as the "Ignition Switch Recall condition."

GM LLC objects to the remaining allegations in Paragraph 3 of the Second Amended Complaint as they call for a legal conclusion, and therefore, no response is required. To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 3 of the Second Amended Complaint.

4.      GM LLC admits that Old GM filed for bankruptcy protection on June 1, 2009 in the United States Bankruptcy Court for the Southern District of New York. GM LLC admits the United States Bankruptcy Court for the Southern District of New York issued the Sale Order and Injunction approving the sale of substantially all of Motors Liquidation Company f/k/a Old GM's assets to NGMCO, Inc., as successor in interest to Vehicle Acquisition Holdings LLC (defined in the Sale Order as the "Purchaser"). The sale was consummated on July 10, 2009. GM LLC admits it ultimately did acquire substantially all of Motors Liquidation Company f/k/a Old GM's assets, free and clear of all liens, claims, and encumbrances, except for certain limited

exceptions.

GM LLC further admits it assumed the following liability as provided in the First
Amendment to the Sale Agreement:

> (ix) all Liabilities to third parties for death, personal injury, or
> other injury to Persons or damage to property caused by motor
> vehicles designed for operation on public roadways or by the
> component parts of such motor vehicles and, in each case,
> manufactured, sold or delivered by Sellers (collectively, "Product
> Liabilities"), which arise directly out of death, personal injury or
> other injury to Persons or damage to property caused by accidents
> or other incidents first occurring on or after the Closing Date and
> arising from such motor vehicles' operation or performance (for
> avoidance of doubt, Purchaser shall not assume, or become liable
> to pay, perform or discharge, any Liability arising or contend to
> arise by reason of exposure to materials utilized in the assembly or
> fabrication of motor vehicles manufactured by Sellers and
> delivered prior to the Closing Date, including asbestos, silicates or
> fluids, regardless of when such alleged exposure occurs);

GM LLC denies the remaining allegations in Paragraph 4 of the Second Amended Complaint.

5.      GM LLC incorporates by reference its admissions and averments in Paragraphs 3
and 4 above. GM LLC admits many individuals who had been employed by Old GM became
employees of GM LLC following Old GM's bankruptcy, including certain employees that knew
the defective switch fell below Old GM's internal specifications. GM LLC admits "Purchased
Assets" as provided in Section 2.2(a)(xiv) of the Sale Agreement included the following:

> (xiv) all books, records, ledgers, files, documents,
> correspondence, lists, plats, specifications, surveys, drawings,
> advertising and promotional materials, reports and other
> materials (in whatever form or medium), including Tax books
> and records and Tax Returns used or held for use in connection
> with the ownership or operation of the Purchased Assets or
> Assumed Liabilities, including the Purchased Contracts,
> customer lists, customer information and account records,
> computer files, data processing records, employment and
> personnel records, advertising and marketing data and records,
> credit records, records relating to suppliers, legal records and
> information and other data;

GM LLC denies the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash, and denies it is liable to Plaintiffs under any theory of recovery. GM LLC objects to the remaining allegations in Paragraph 5 of the Second Amended Complaint as they call for a legal conclusion, and therefore, no response is required. To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 5 of the Second Amended Complaint.

6.      GM LLC incorporates by reference its averments and admissions as provided in Paragraph 3 above. GM LLC denies that Plaintiffs were aware of or relied upon any misrepresentations   . GM LLC objects to the remaining allegations in Paragraph 6 of the Second Amended Complaint as they call for a legal conclusion, and therefore, no response is required. To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 6 of the Second Amended Complaint.

7.      GM LLC admits Plaintiffs purport to assert claims for damages against GM LLC, but denies that the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition described above and denies it is liable to Plaintiffs under any theory of recovery. GM LLC denies the remaining allegations in Paragraph 7 of the Second Amended Complaint.

8.      GM LLC admits that based on information and discovery obtained to date, Plaintiffs Lawrence J. Barthelemy and Dionne M. Spain are adults who reside in the State of Louisiana. GM LLC is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 8 of the Second Amended Complaint, and therefore denies same.

9.      GM LLC admits that, according to their deposition testimony, at the time of their deposition testimony, Plaintiff Lawrence J. Barthelemy resided in Braithwaite, Louisiana in Plaquemines Parish, and Plaintiff Dionne M. Spain resided in Marrero, Louisiana in Jefferson Parish. GM LLC is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 9 of the Second Amended Complaint, and therefore denies same.

10.     GM LLC admits the allegations in Paragraph 10 of the Second Amended Complaint.

11.     GM LLC admits the allegations in Paragraph 11 of the Second Amended Complaint.

12.     GM LLC admits the allegations in Paragraph 12 of the Second Amended Complaint.

13.     GM LLC incorporates by reference its admissions and averments in Paragraph 4 above. GM LLC further admits Section 6.15(a) of the Sale Agreement provides:

> From and after the Closing, Purchaser shall comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and Documentation Act, the Clean Air Act, the California Health and Safety Code and similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle parts manufactured or distributed by Seller.

GM LLC denies the remaining allegations in Paragraph 10 of the Second Amended Complaint.

14.     GM LLC incorporates by reference its admissions and averments in Paragraph 1 above. GM LLC admits that the crash report states the subject vehicle was traveling on US Highway 90-B West.

15.     GM LLC incorporates by reference its admissions and averments in Paragraph 4 above. GM LLC denies the remaining allegations in Paragraph 15 of the Second Amended

Complaint.

16.    GM LLC incorporates by reference its admissions and averments in Paragraph 5 above. GM LLC admits "Purchased Assets" as provided in Section 2.2(a)(xv) of the Sale Agreement included the following:

> (xv) all goodwill and other intangible personal property arising in connection with the ownership, license, use or operation of the Purchased Assets or Assumed Liabilities;

17.    GM LLC incorporates by reference its admissions and averments in Paragraphs 5 and 16 above. GM LLC admits that Section 1.1 of the Sale Agreement defines "Liabilities" as follows:

> any and all liabilities and obligations of every kind and description whatsoever, whether such liabilities or obligations are known or unknown, disclosed or undisclosed, matured or unmatured, accrued, fixed, absolute, contingent, determined or undeterminable, on or off-balance sheet or otherwise, or due or to become due, including Indebtedness and those arising under any Law, Claim, Order, Contract or otherwise.

GM LLC denies that it assumed all "Liabilities" as that term is defined in Section 1.1 of the Sale Agreement, and denies the remaining allegations in Paragraph 17 of the Second Amended Complaint.

18.    GM LLC incorporates by reference its admissions and averments in Paragraph 4 above. GM LLC admits it assumed the following liability as provided in Section 2.3(a) of the Sale Agreement:

> (vii) (A) all Liabilities arising under express written warranties of Sellers that are specifically identified as warranties and delivered in connection with the sale of new, certified used or pre-owned vehicles or new or remanufactured motor vehicle parts and equipment (including service parts, accessories, engines and transmissions) manufactured or sold by Sellers or Purchaser prior to or after the Closing and (B) all obligations under Lemon Law;

***

(xi) all Liabilities arising out of, relating to, in respect of, or in connection with the use, ownership or sale of the Purchased Assets after the Closing;

GM LLC denies the remaining allegations in Paragraph 18 of the Second Amended Complaint.

19.     GM LLC incorporates by reference its admissions and averments in Paragraph 13 above. GM LLC further admits Section 6.15(b) of the Sale Agreement provides:

From and after the Closing, Purchaser shall be responsible for the administration, management and payment of all Liabilities arising under (i) express written warranties of Sellers that are specifically identified as warranties and delivered in connection with the sale of new, certified used or pre-owned vehicles or new or remanufactured motor vehicle parts and equipment (including service parts, accessories, engines and transmissions) manufactured or sold by Sellers or Purchaser prior to or after the Closing and (ii) Lemon Laws.

GM LLC denies the remaining allegations in Paragraph 19 of the Second Amended Complaint.

20.     GM LLC admits that the Decision on Debtors' Motion for Approval of (1) Sale of Assets to Vehicle Acquisition Holdings LLC; (2) Assumption and Assignment of Related Executory Contracts; and (3) Entry into UAW Retiree Settlement Agreement in *In re Motors Liquidation Co*., et al., No. 09-50026 (REG), ECF No. 2967, states as follows:

Old GM will retain all liabilities except those defined in the MPA as "**Assumed Liabilities**." The Assumed Liabilities include:

(i) product liability claims arising out of products delivered at or after the Sale transaction closes (the "**Closing**");
(ii) the warranty and recall obligations of both Old GM and New GM;

\*\*\*

GM LLC denies the remaining allegations in Paragraph 20 of the Second Amended Complaint.

21.     GM LLC incorporates by reference its admissions and averments in Paragraph 5 above. GM LLC denies the remaining allegations in Paragraph 21 of the Second Amended

Complaint.

22.     No response is required by GM LLC as such is a question of law for a court to decide. To the extent a response is required, GM LLC incorporates by reference its admissions and averments in Paragraphs 4 and 5 above. GM LLC denies the remaining allegations in Paragraph 22 of the Second Amended Complaint.

23.     GM LLC admits the allegations in Paragraph 23 of the Second Amended Complaint.

24.     GM LLC admits that Plaintiffs purport to submit to the Court's exercise of personal jurisdiction over them. GM LLC does not contest the Court's exercise of personal jurisdiction over it. GM LLC admits that it conducts business in the State of New York. GM LLC further admits it has a registered agent in the State of New York. GM LLC denies the remaining allegations in Paragraph 24 of the Second Amended Complaint.

25.     GM LLC does not contest that venue is proper in this District. GM LLC denies the remaining allegations in Paragraph 25 of the Second Amended Complaint.

26.     GM LLC incorporates by reference its admissions and averments in Paragraph 1 above. GM LLC denies the remaining allegations in Paragraph 26 of the Second Amended Complaint.

27.     GM LLC incorporates by reference its admissions and averments in Paragraph 1 above.

28.     GM LLC is without sufficient knowledge or information to admit or deny the allegations in Paragraph 28 of the Second Amended Complaint, and therefore denies same.

29.     Based upon deposition testimony to date and the crash report and narrative, GM LLC admits that multiple cars in the vicinity of plaintiff's car were sliding, and some were

colliding, as result of ice on the bridge.  Based on deposition testimony to date, GM LLC admits that Ms. Spain's vehicle began to slide on the ice when she pressed on her brakes.  Based on information and deposition testimony, GM LLC denies the remaining allegations in Paragraph 29 of the Second Amended Complaint.  GM LLC specifically denies the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash.

30.     GM LLC objects to the term "struck" as vague, ambiguous, and undefined. Based on information obtained to date, GM LLC admits the subject Saturn Sky was travelling in the far left lane of the bridge, and due to icy road conditions, began to rotate counter-clockwise.  As the vehicle was spinning, the left front bumper contacted the concrete bridge wall, scraping some of the paint off the front bumper.   The subject Saturn Sky came to rest facing oncoming traffic with its back tire against the wall.  Based on deposition testimony of Plaintiffs and other witnesses, GM LLC denies the subject vehicle contacted or struck another vehicle and denies the rear of the vehicle contacted the bridge.  GM LLC denies the remaining allegations in Paragraph 30 of the Second Amended Complaint.

31.     GM LLC admits the front airbags in the subject 2007 Saturn Sky did not deploy during the accident and affirmatively states the airbags should not have deployed in this accident because the frontal impact experienced by the vehicle was well below the threshold for airbag deployment.

32.     GM LLC admits that Plaintiff Dionne M. Spain claims to have sustained back and neck injuries in the January 24, 2014 crash for which she sought medical treatment. GM LLC denies the remaining allegations in Paragraph 32 of the Second Amended Complaint.

33.     GM LLC incorporates by reference its admissions and averments in Paragraph 1 above. GM LLC admits that, based on information, Plaintiff Lawrence J. Barthelemy was 39

years old at the time of the accident. GM LLC denies the remaining allegations in Paragraph 33 of the Second Amended Complaint.

34.     GM LLC admits that Plaintiff Lawrence J. Barthelemy claims to have sustained back and knee injuries in the January 24, 2014 crash for which he sought medical treatment and that he claims to have missed seven days of work as a result of the accident. GM LLC denies the remaining allegations in Paragraph 34 of the Second Amended Complaint.

35.     GM LLC incorporates by reference its admissions and averments in Paragraph 3 above. GM LLC specifically denies the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash. GM LLC otherwise denies the allegations in Paragraph 35 of the Second Amended Complaint.

36.     GM LLC incorporates by reference its admissions and averments in Paragraph 3 above. GM LLC otherwise denies the allegations in Paragraph 36 of the Second Amended Complaint.

37.     GM LLC admits Plaintiffs purport to have sustained injuries as a result of the January 24, 2014 crash.  GM LLC denies the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash. GM LLC otherwise denies the remaining allegations in Paragraph 37 of the Second Amended Complaint.

38.     GM LLC incorporates by reference its admissions and averments in Paragraph 4 above. GM LLC admits that since July 10, 2009, it has designed in part, manufactured in part, marketed, and distributed motor vehicles to independent authorized dealers, for ultimate sale to retail consumers. GM LLC admits it is one of the largest vehicle manufacturers in the United States.

39.     GM LLC interprets the allegations of "any potential problems" and "defects" to

refer to the defective switch as defined in Paragraph 3 above. Subject thereto, GM LLC admits Paragraph 39 of the Second Amended Complaint.

40.     GM LLC incorporates by reference its admissions and averments in Paragraphs 4 and 38 above. GM LLC denies the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash and denies it is liable to Plaintiffs under any theory of recovery.

41.     GM LLC incorporates by reference its admissions and averments in Paragraphs 3, 5, and 6 above. GM LLC admits that internal GM documents reflect that although the impact of an engine shutoff on the SDM was not on Old GM engineers' minds, certain employees within Old GM understood no later than 2001 the natural connection between a loss of electrical systems and non-deployment of airbags: if the ignition switch turned to "Off" or "Accessory," the SDM would "drop," and the airbags would therefore be disabled. If a crash then ensued, neither the driver nor any passengers could have the protection of an airbag. GM LLC denies the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash and denies the remaining allegations in Paragraph 41 of the Second Amended Complaint.

42.     GM LLC incorporates by reference its admissions and averments in Paragraphs 3, 5, and 6 above.

GM LLC denies that its actions have "impacted approximately 15 million vehicles worldwide." GM LLC objects to the remaining allegations in Paragraph 42 of the Second Amended Complaint as they call for a legal conclusion, and therefore, no response is required. To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 42 of the Second Amended Complaint.

43.     GM LLC denies the allegations in Paragraph 43 of the Second Amended

Complaint.

44.     GM LLC denies the allegations in Paragraph 44 of the Second Amended Complaint.

45.     No response is required by GM LLC as such is a question of law for the Court to decide. To the extent a response is required, GM LLC admits Old GM had a duty imposed under operation of law related to the design, manufacture, testing, and assembly of motor vehicles, including the subject 2007 Saturn Sky. GM LLC denies the remaining allegations in Paragraph 45 of the Second Amended Complaint.

46.     No response is required by GM LLC as such is a question of law for the Court to decide. To the extent a response is required, GM LLC incorporates by reference its admissions and averments in Paragraph 45 above. GM LLC admits that § 30118 of the TREAD Act, among other things, provides as follows:

> (b) Defect and Noncompliance Proceedings and Orders.—
>
>> (2) If the Secretary decides under paragraph (1) of this subsection that the vehicle or equipment contains the defect or does not comply, the Secretary shall order the manufacturer to—
>>
>>> (A) give notification under section 30119 of this title to the owners, purchasers, and dealers of the vehicle or equipment of the defect or noncompliance; and
>>> (B) remedy the defect or noncompliance under section 30120 of this title.
>
> * * *
>
> (c) Notification by Manufacturer.— A manufacturer of a motor vehicle or replacement equipment shall notify the Secretary by certified mail, and the owners, purchasers, and dealers of the vehicle or equipment as provided in section 30119(d) of this section, if the manufacturer—

> (1) learns the vehicle or equipment contains a defect and decides in good faith that the defect is related to motor vehicle safety; or
>
> (2) decides in good faith that the vehicle or equipment does not comply with an applicable motor vehicle safety standard prescribed under this chapter.

GM LLC denies the remaining allegations in Paragraph 46 of the Second Amended Complaint.

47.     GM LLC admits the allegations in Paragraph 47 of the Second Amended Complaint.

48.     GM LLC incorporates by reference its admissions and averments in Paragraphs 3, 45 and 46 above. GM LLC admits that on June 5, 2014, General Motors Company Chief Executive Officer Mary Barra spoke at a "Global Town Hall meeting." GM LLC admits that Paragraph 48 accurately quotes from a portion of Ms. Barra's statements, which speak for themselves. GM LLC denies the remaining allegations in Paragraph 48 of the Second Amended Complaint.

49.     GM LLC incorporates by reference its admissions and averments in Paragraph 3 above. GM LLC denies the remaining allegations in Paragraph 49 of the Second Amended Complaint.

50.     GM LLC admits it is an entity separate and apart from Old GM, and denies it is a successor entity to Old GM. GM LLC further admits Paragraph 50 accurately quotes from and depicts page 3 of the GM 2012 Annual Report. GM LLC denies the remaining allegations in Paragraph 50 of the Second Amended Complaint.

51.     GM LLC admits that sales of the Chevrolet, Buick, GMC, and Cadillac brands increased by 6 percent in July 2015, and that as of an August 3, 2015 news release, "[c]ompany-wide, retail deliveries climbed 14 percent year over year, and the company gained retail market

share for the fourth month in a row thanks to a 16 percent gain at Chevrolet, a 15 percent gain at GMC and a 12 percent increase at Buick." GM LLC further admits that its 2012 Annual Report stated that "Last year, I closed my letter to you by talking about how GM was changing its processes and culture in order to build the best vehicles in the world much more efficiently and profitably." GM LLC denies the remaining allegations in Paragraph 51 of the Second Amended Complaint.

52.     GM LLC incorporates by reference its admissions and averments in Paragraphs 3, 4, and 13 above. GM LLC admits that, as part of certain marketing campaigns, it advertises the safety of its vehicles. GM LLC objects to the remaining allegations in Paragraph 52 of the Second Amended Complaint as they call for a legal conclusion, and therefore, no response is required. To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 52 of the Second Amended Complaint.

53.     To the extent the allegations in Paragraph 53 concern all GM vehicles, GM LLC denies those allegations. To the extent a further response is required, GM LLC incorporates by reference its admissions and averments in Paragraph 3 above.  GM LLC admits that Old GM and GM LLC investigated the defective switch for many years, but only GM LLC initiated a recall for the defect in February 2014.  GM LLC admits that it has been the subject of criminal investigations. GM LLC objects to the remaining allegations in Paragraph 53 of the Second Amended Complaint as they call for a legal conclusion, and therefore, no response is required. To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 53 of the Second Amended Complaint.

54.     GM LLC admits that Paragraph 54 purports to characterize a statement from Ms. Barra taken from the October 6, 2014 issue of *Time Magazine*, the text of which speaks for itself. GM LLC denies the remaining allegations in Paragraph 54 of the Second Amended Complaint.

55.     GM LLC admits that on April 1, 2014, David Friedman, acting Administrator of NHTSA, testified before the House Subcommittee on Oversight and Investigations. GM LLC admits Paragraph 55 purports to characterize excerpts of his testimony in response to questions of Rep. Dianna DeGette, which testimony speaks for itself. GM LLC denies the remaining allegations in Paragraph 55 of the Second Amended Complaint, and specifically denies that it hid documents and/or "created firewalls to prevent people within GM from 'connecting the dots' with respect to safety issues and defects."

56.     GM LLC objects to the phrase "these defects" as vague, ambiguous, and undefined. GM LLC incorporates by reference its admissions and averments in Paragraph 3 above. GM LLC further admits that to date, it has acknowledged a total of 15 deaths, as well as a number of serious injuries, that occurred in crashes in which the defective switch may have caused or contributed to frontal airbag non-deployment.

GM LLC further admits Paragraph 56 purports to characterize page 32 of the Decision on Motion to Enforce Sale Order in *In re Motors Liquidation Co*., et al., No. 09-50026 (REG), ECF No. 13109, the text of which speaks for itself. GM LLC objects to the remaining allegations in Paragraph 56 of the Second Amended Complaint as they call for a legal conclusion, and therefore, no response is required. To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 56 of the Second Amended Complaint.

57.     GM LLC objects to the phrase "the defects" as vague, ambiguous, and undefined. GM LLC incorporates by reference its admissions and averments in Paragraphs 3, 5, and 6

above. GM LLC admits that it conducted a safety recall, Recall No. 10v073, in March 2010 of 1,340,447 vehicles related to the electric power steering of certain 2005-2010 MY Chevrolet Cobalt and 2007-2010 MY Pontiac G5 vehicles, in which it acknowledged that loss of power steering, standing alone, constituted a "defect ... relate[d] to motor vehicle safety" and thus warranted recall action. The defective switch caused more than just loss of power steering; it also caused loss of other electrical systems—power steering and power brakes. This was known by many within Old GM by no later than 2004—even if they did not appreciate precisely what electrical system components were affected (*e.g.,* the airbag SDM).

GM LLC admits that in October 2011, Mary Barra was Vice President of Global Product Development. GM LLC admits that in October 2011, Terry Woychowski forwarded an email to Ms. Barra that pasted the text of a publicly available *New York Times* article regarding the 2010 recall. Mr. Woychowski's email to Ms. Barra speaks for itself and GM LLC denies Plaintiffs' characterization of same in Paragraph 57 of the Second Amended Complaint.  GM LLC denies the remaining allegations in Paragraph 57 of the Second Amended Complaint.

58.     GM LLC incorporates by reference its admissions and averments in Paragraph 3 above. GM LLC admits that on December 31, 2009, in Rutherford County, Tennessee, a 2006 Chevrolet Cobalt was being driven at highway speed when it sideswiped another vehicle, traveled off the road, and struck a tree ("Tennessee Crash"). GM LLC admits that there was a frontal impact and that the frontal airbags did not deploy when they should have. GM LLC further admits that the data retrieved from the SDM recorded the vehicle's power mode status as being in the "Off" position at the time of the algorithm enable. GM LLC admits that it entered into a confidential settlement related to these claims. GM LLC objects to the remaining allegations in Paragraph 58 of the Second Amended Complaint as they call for a legal

conclusion, and therefore, no response is required. To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 58 of the Second Amended Complaint.

59.     GM LLC denies the allegations in Paragraph 59 of the Second Amended Complaint.

60.     GM LLC incorporates by reference its admissions and averments in Paragraph 6 above. GM LLC further admits that the incidents of deaths and serious injuries discussed later in this Answer, which were associated with airbag non-deployment, became the subject of legal claims—formal and informal—against Old and GM LLC. Certain GM LLC lawyers, aided by the Airbag FPA Engineer and others like him who assisted in evaluating causes of crashes, realized by no later than early 2011 that a number of these non-deployment cases involved some sort of "anomaly" in the ignition switch.

GM LLC admits that in connection with the Tennessee Crash, a GM LLC engineer explained to legal staff that when the ignition switch power mode status is in Off (as it was in that case), the SDM "powers down," and the airbags fail to deploy. The engineer further opined that "a crash sensing system 'anomaly'" resulting in a power mode status of Off had indeed caused nondeployment in the Tennessee Crash case.

GM LLC admits that Paragraph 60 accurately quotes portions of the evaluation for the Tennessee Crash. GM LLC admits it settled the Tennessee Crash case after receiving the evaluation. GM LLC objects to the remaining allegations in Paragraph 60 of the Second Amended Complaint as they call for a legal conclusion, and therefore, no response is required. To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 60 of the Second Amended Complaint.

61.     GM LLC incorporates by reference its admissions and averments in Paragraph 3 above. GM LLC admits it issued approximately 84 recalls in 2014. GM LLC denies the remaining allegations in Paragraph 61 of the Second Amended Complaint, and specifically denies the issues surrounding all the 2014 recalls "had long been known" to GM LLC.

62.     GM LLC incorporates by reference its admissions and averments in Paragraph 3 above. GM LLC admits that on May 16, 2014, General Motors Company entered into a Consent Order with NHTSA which stated that "GM shall pay the United States a maximum civil penalty for a related series of violations in the sum of thirty-five million dollars ($35,000,000) for its failure to provide notice to NHTSA of the safety-related defect that is the subject of Recall No. 14V-047 within five working days."

63.     GM LLC admits Mary Barra stated in a video message on March 17, 2014, that "something went wrong with our process in this instance, and terrible things happened." GM LLC is without sufficient knowledge or information to admit or deny the allegation in Paragraph 63 regarding Plaintiffs' response to Ms. Barra's video message, and therefore denies same. GM LLC denies the remaining allegations in Paragraph 63 of the Second Amended Complaint.

64.     GM LLC incorporates by reference its admissions and averments in Paragraph 3 above. GM LLC denies Plaintiffs purchased the subject 2007 Saturn Sky as a certified preowned vehicle. GM LLC denies that the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the subject crash, and denies Plaintiffs are entitled to any recovery from it. GM LLC objects to the remaining allegations in Paragraph 64 of the Second Amended Complaint as they call for a legal conclusion, and therefore, no response is required. To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 64 of the Second Amended Complaint.

65.     GM LLC incorporates by reference its admissions and averments in Paragraphs 50 and 51 above. GM LLC denies the remaining allegations in Paragraph 65 of the Second Amended Complaint.

66.     GM LLC admits the allegations in Paragraph 66 of the Second Amended Complaint.

67.     GM LLC incorporates by reference its admissions and averments in Paragraphs 4 and 50 above. GM LLC admits that Paragraph 67 accurately depicts the cover page of the GM 2010 Annual Report. GM LLC further admits that Paragraph 67 purports to characterize the GM 2010 Annual Report, the text of which speaks for itself. GM LLC denies the remaining allegations in Paragraph 67 of the Second Amended Complaint.

68.     GM LLC admits that Paragraph 68 accurately quotes from and highlights page 4 of the GM 2010 Annual Report.

69.     GM LLC admits that Paragraph 69 accurately quotes from page 5 of the GM 2010 Annual Report.

70.     GM LLC admits that Paragraph 70 accurately quotes from page 2 of the GM 2010 Annual Report.

71.     GM LLC admits that Paragraph 71 accurately quotes from page 3 of the GM 2010 Annual Report.

72.     GM LLC admits that Paragraph 72 accurately quotes from page 6 of the GM 2010 Annual Report.

73.     GM LLC admits that Paragraph 73 accurately quotes from and depicts page 12 of the GM 2010 Annual Report.

74.     GM LLC admits that Paragraph 74 accurately quotes from and depicts page 16 of the GM 2010 Annual Report.

75.     GM LLC admits that Paragraph 75 accurately quotes from and depicts page 1 of the GM 2011 Annual Report.

76.     GM LLC admits that Paragraph 76 accurately quotes from page 11 of the GM 2011 Annual Report.

77.     GM LLC admits that Paragraph 77 accurately quotes from pages 2 and 3 of the GM 2011 Annual Report.

78.     GM LLC admits that Paragraph 78 accurately quotes from page 3 of the GM 2012 Annual Report.

79.     GM LLC admits that Paragraph 79 accurately quotes from page 4 of the GM 2012 Annual Report.

80.     GM LLC admits that Paragraph 80 accurately quotes from page 10 of the GM 2012 Annual Report. GM LLC denies the remaining allegations in Paragraph 80 of the Second Amended Complaint.

81.     GM LLC incorporates by reference its admissions and averments in Paragraph 3 above. GM LLC admits that Paragraph 81 accurately quotes from page 10 of the GM 2012 Annual Report. GM LLC denies the remaining allegations in Paragraph 81 of the Second Amended Complaint.

82.     GM LLC admits that Paragraph 82 accurately quotes from the inside cover of the GM 2013 Annual Report.

83.     GM LLC incorporates by reference its admissions and averments in Paragraph 3 above. GM LLC admits that Paragraph 83 accurately quotes from page 4 of the GM 2013

Annual Report. GM LLC denies the remaining allegations in Paragraph 83 of the Second Amended Complaint, and specifically denies that it is liable to Plaintiffs for any alleged damages.

84.     GM LLC admits it was a sponsor of the North American Conference on Elderly Mobility in May 2014, and admits Gay Kent was a speaker at that conference. GM LLC admits that Paragraph 84 accurately quotes from Ms. Kent's statements at the conference. GM LLC denies the remaining allegations in Paragraph 84 of the Second Amended Complaint.

85.     GM LLC incorporates by reference its admissions and averments in Paragraph 3 above. GM LLC admits that its advertisements and company literature speak for themselves. GM LLC admits that dealer certifications for preowned General Motors vehicles may have caused consumers who relied on those certifications to buy vehicles with defective ignition switches that they may have incorrectly believed to be safe. GM LLC denies Plaintiffs purchased the subject 2007 Saturn Sky as a certified preowned vehicle, denies the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash, and denies it is liable to Plaintiffs. GM LLC objects to the remaining allegations in Paragraph 85 of the Second Amended Complaint as they call for a legal conclusion, and therefore, no response is required. To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 85 of the Second Amended Complaint.

86.     GM LLC incorporates by reference its admissions and averments in Paragraph 85 above. GM LLC admits that Paragraph 86 purports to characterize an advertisement that allegedly ran from July 2009 until April 2010, the text of which speaks for itself. GM LLC denies Plaintiffs purchased the subject 2007 Saturn Sky as a certified preowned vehicle.

87.     GM LLC admits that Ed Whitacre appeared in a video commercial in April 2010. GM LLC admits that in that video commercial, Mr. Whitacre said that "a lot of Americans didn't agree with giving GM a second chance." GM LLC further admits that Mr. Whitacre stated that GM LLC wanted to make itself a company that "all Americans can be proud of again" and to "exceed every expectation [Americans have] set for [GM LLC]." GM LLC admits that Mr. Whitacre also stated that GM LLC has "unmatched lifesaving technology of OnStar to help keep you safe" and invited viewers "to take a look at the new GM."

88.     GM LLC admits that Paragraph 88 purports to characterize a radio advertisement that allegedly ran until July 2010, the content of which speaks for itself.

89.     GM LLC admits that Paragraph 89 accurately quotes from and depicts a video published on November 10, 2010 and titled "Andy Danko: The White Glove Quality Check."

90.     GM LLC admits that Paragraph 90 accurately quotes from a 2010 television advertisement.

91.     GM LLC admits that Paragraph 91 purports to characterize a television advertisement that ran in 2010, the contents of which speak for itself.

92.     GM LLC admits that Paragraph 92 accurately quotes from page 4 of a brochure for the 2010 Chevrolet Cobalt.

93.     GM LLC admits that Paragraph 93 accurately quotes from page 4 of a brochure for the 2010 Chevrolet HHR.

94.     GM LLC admits that Paragraph 94 accurately quotes from and depicts portions of pages 3, 18, and 19 of a brochure for the 2011 Chevrolet Silverado.

95.     GM LLC admits that Paragraph 95 accurately quotes from and depicts portions of page 6 of a brochure for the 2011 Cadillac DTS and STS.

96.     GM LLC admits that Paragraph 96 purports to quote an advertisement on GM LLC's website, the content of which speaks for itself.

97.     GM LLC admits that Paragraph 97 accurately quotes from an excerpt of a statement by Gay Kent, GM LLC's Executive Director of Vehicle Safety, in a September 29, 2011 article titled "GM Introduces Industry's First Front Center Air Bag," which was posted on GM LLC's website.

98.     GM LLC admits that Paragraph 98 accurately quotes from a statement made by Gay Kent, GM LLC's Executive Director of Vehicle Safety, in a December 27, 2011 article titled "GM Safety Innovation Builds on History and Looks Ahead," which was posted on GM LLC's website.

99.     GM LLC admits that Paragraph 99 accurately quotes from and depicts portions of page 9 of a brochure for the 2012 Chevrolet Impala.

100.    GM LLC admits that Paragraph 100 accurately quotes pages 40-41 of a brochure for the 2012 Cadillac CTS.

101.    GM LLC admits that Paragraph 101 accurately quotes a statement by Gay Kent, GM LLC's Executive Director of Vehicle Safety, in a January 3, 2012 article titled "2012 Chevrolet Sonic Models Get Top Safety," which was posted on GM LLC's website.

102.    GM LLC admits that Paragraph 102 characterizes and purports to quote from an advertising campaign, the content of which speaks for itself.

103.    GM LLC admits that Paragraph 103 accurately quotes excerpts of a June 5, 2012 article titled "Chevrolet Malibu Eco Achieves Double Safety Honors," which was allegedly posted on GM LLC's website.

104.    GM LLC admits that Paragraph 104 accurately quotes excerpts of a July 10, 2012 article titled "Chevrolet Backs New Vehicle Lineup with Guarantee," which was posted on GM LLC's website.

105.    GM LLC admits that Paragraph 105 accurately quotes from and depicts a November 5, 2012 video advertisement titled "GM Safety Alert Seat."

106.    GM LLC admits that Paragraph 106 accurately quotes from page 13 of a brochure for the 2013 Chevrolet Traverse.

107.    GM LLC admits that Paragraph 107 purports to quote from a print advertisement from April 2013, the content of which speaks for itself.

108.    GM LLC admits that Paragraph 108 accurately quotes from and depicts an excerpt of a November 8, 2013 GM LLC press release titled "2014 Silverado and Sierra Get Lean and Mean."

109.    GM LLC admits that Paragraph 109 purports to quote from and depict a December 2013 advertisement, the content of which speaks for itself.

110.    GM LLC admits that Paragraph 110 purports to quote from and depict an excerpt from GM LLC's website in 2013, the content of which speaks for itself.

111.    GM LLC admits that Paragraph 111 accurately quotes from and depicts a statement on GM LLC's website from 2013.

112.    GM LLC admits that Paragraph 112 accurately quotes from and depicts a statement on GM LLC's website Chevrolet.com.

113.    GM LLC admits that Paragraph 113 accurately quotes from and depicts a statement on GM LLC's website Buick.com.

114.     GM LLC admits that Paragraph 114 accurately quotes a statement by Gay Kent in a March 31, 2014 article titled "2014 Chevrolet Malibu Awarded with IIHS Top Safety Pick Distinction."

115.     GM LLC admits that Paragraph 115 accurately quotes an excerpt on GM LLC's website from 2014.

116.     GM LLC admits that Paragraph 116 purports to quote from and depict a statement on GM LLC's website, the content of which speaks for itself. GM LLC denies the remaining allegations in Paragraph 116 of the Second Amended Complaint.

117.     GM LLC admits that Paragraph 117 accurately quotes an excerpt on GM LLC's website.

118.     GM LLC admits that Paragraph 118 accurately quotes a statement on page 50 of GM LLC's 2011 10-K SEC filing.

119.     GM LLC incorporates by reference its admissions and averments in Paragraph 3 above. GM LLC admits that Paragraph 119 accurately quotes an excerpt from page 31 of GM LLC's 2010 10-K SEC filing. GM LLC further admits that advertising and marketing are intended to increase sales of GM LLC's products. GM LLC denies Plaintiffs purchased the subject 2007 Saturn Sky as a certified preowned vehicle, and denies it is liable to Plaintiffs. GM LLC objects to the remaining allegations in Paragraph 119 of the Second Amended Complaint as they call for a legal conclusion, and therefore, no response is required. To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 119 of the Second Amended Complaint.

120.     GM LLC incorporates by reference its admissions and averments in Paragraph 3 above. GM LLC admits that it issued six ignition switch or key rotation recalls in 2014 which,

according to its letters to NHTSA pursuant to 49 C.F.R. § 573.6, covered approximately 13,128,320 vehicles manufactured and sold in the United States by GM LLC or by Old GM. GM LLC denies that all the vehicles subject to the six ignition switch or key rotation recalls share a common ignition switch design. GM LLC denies the remaining allegations in Paragraph 120 of the Second Amended Complaint.

121.   GM LLC incorporates by reference its admissions and averments in Paragraph 3 above. GM LLC denies that the Ignition Switch Recall condition manifests in every individual vehicle with a defective switch, and further denies that every individual vehicle with a defective switch will experience a stall condition.

122.   GM LLC incorporates by reference its admissions and averments in Paragraph 3 above. GM LLC denies the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash, and denies it is liable to Plaintiffs.

123.   GM LLC objects to the phrase "ignition switch systems at issue" as vague, ambiguous and undefined.  GM LLC incorporates by reference its admissions and averments in Paragraphs 3 and 120 above, and Paragraphs 183 and 201 below. GM LLC denies that all the vehicles subject to the six ignition switch or key rotation recalls share a common ignition switch design.  GM LLC denies the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash, and denies it is liable to Plaintiffs. GM LLC further denies that the Ignition Switch Recall condition manifests in every individual vehicle with a defective switch. GM LLC specifically denies that with respect to the subject 2007 Saturn Sky, GM LLC was "aware of safer alternative designs for airbag systems that would have prevented the non-deployment of airbags caused by the ignition defects, but chose not to employ them, in part to avoid disclosure of the defective ignition switch and its tragic consequences."

124.    GM LLC incorporates by reference its admissions and averments in Paragraph 3 above. GM LLC denies the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash, and denies it is liable to Plaintiffs.

125.    GM LLC incorporates by reference its admissions and averments in Paragraphs 3 and 56 above. GM LLC further admits it created the GM Ignition Compensation Claims Resolution Facility (the "Facility"), administered by Kenneth R. Feinberg. GM LLC admits that the Facility has deemed 124 claims involving a fatality to be eligible for settlement. GM LLC is without sufficient information to admit or deny the allegations in Paragraph 125 related to reports identified by the Center for Auto Safety, and therefore denies same. GM LLC denies the remaining allegations in Paragraph 125 of the Second Amended Complaint.

126.    GM LLC incorporates by reference its admissions and averments in Paragraphs 3 and 56 above. GM LLC objects to the remaining allegations in Paragraph 126 of the Second Amended Complaint as they call for a legal conclusion, and therefore, no response is required. To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 126 of the Second Amended Complaint.

127.    GM LLC incorporates by reference its admissions and averments in Paragraph 3 above. GM LLC admits that Old GM initiated a Problem Resolution Tracking System Inquiry ("PRTS") report N172404 in response to the complaint "vehicle can be keyed off with knee while driving." GM LLC admits that Old GM's PRTS report N172404 states:

> There are two main reasons that we believe can cause a lower effort in turning the key:
> 1. A low torque detent in the ignition switch.
> 2. A low position of the lock module in the column.

GM LLC denies the remaining allegations in Paragraph 127 of the Second Amended Complaint.

128.    GM LLC incorporates by reference its admissions and averments in Paragraphs 3 and 45 above. GM LLC denies that Recall No. 14v047 has been inadequate or incomplete. GM LLC objects to the remaining allegations in Paragraph 128 of the Second Amended Complaint as they call for a legal conclusion, and therefore, no response is required. To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 128 of the Second Amended Complaint.

129.    GM LLC incorporates by reference its admissions and averments in Paragraph 3 above.  GM LLC denies that the Ignition Switch Recall condition manifests in every individual vehicle with a defective switch. GM LLC further denies the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash.

130.    GM LLC incorporates by reference its admissions and averments in Paragraph 3 above. GM LLC admits that the Old GM switch Design Release Engineer ("Switch DRE"), Raymond DeGiorgio, directed the Switch Supplier to continue production of the defective switch and the defective switch was put into production and installed into the first model year of the Saturn Ion (MY 2003), which was first sold to the public in 2002. GM LLC admits that Raymond DeGiorgio became a GM LLC employee in 2009, following Old GM's bankruptcy, until 2014. GM LLC denies that Old GM manufactured a model year 2003 Saturn Sky.  GM LLC denies the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash.

131.    GM LLC admits the allegations in the first two sentences of Paragraph 131. GM LLC admits that Ray DeGiorgio and Gary Altman received certain documents or information reflecting particular complaints that the switch could turn off while driving, causing stalls, and that other Old GM employees reported stalls while driving early production versions of the Ion

and the Cobalt. GM LLC admits that Ray DeGiorgio and Gary Altman became GM LLC employees. GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 131 of the Second Amended Complaint as phrased.

132.    GM LLC admits that in June 2005, two executives in charge of safety at Old GM test drove a Cobalt and found that, as reported, the Cobalt could be easily keyed off by contact with the driver's knee. GM LLC further admits that those two executives were Gay Kent and Doug Wachtel, and that Kent and Wachtel had knowledge of the test drive in June 2005. GM LLC admits that Gay Kent and Doug Wachtel became GM LLC employees. GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 132 of the Second Amended Complaint as phrased.

133.    GM LLC incorporates by reference its admissions and averments in Paragraph 173 below. In a response to further media inquiry, Old GM stated that it did not believe this condition presented a safety concern. GM LLC admits that Alan Adler and William Kemp had knowledge of this statement. GM LLC admits that Alan Adler and William Kemp became GM LLC employees. GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 133 of the Second Amended Complaint as phrased.

134.    GM LLC admits the allegations in the first three sentences of Paragraph 134 of the Second Amended Complaint. GM LLC admits that Gary Altman and Al Manzor had knowledge of and were involved in the engineering inquiry opened in November 2004.  GM LLC admits that Gary Altman and Al Manzor became GM LLC employees. GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 134 of the Second Amended Complaint as phrased.

135.    GM LLC admits that after receiving another complaint, Old GM opened a second engineering inquiry to consider fixing the problem, but Old GM closed the inquiry without issuing a recall. GM LLC admits that Ray DeGiorgio and Steve Oakley received certain documents or information reflecting this complaint. GM LLC admits that Raymond DeGiorgio, Gary Altman, and Steve Oakley were GM LLC employees. GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 135 of the Second Amended Complaint as phrased.

136.    GM LLC admits that Old GM's Product Investigations group began to study the low torque issue in the summer 2005, and did not implement a design change or issue a recall at that time. GM LLC admits that Gay Kent, Al Manzor, and Doug Wachtel received certain documents or information reflecting the study into the low torque issue in the summer of 2005. GM LLC admits that Gay Kent, Gary Altman, Al Manzor and Doug Wachtel became GM LLC employees. GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 136 of the Second Amended Complaint as phrased.

137.    GM LLC incorporates by reference its admissions and averments in Paragraph 3 above. GM LLC admits that Steve Oakley had knowledge of the issuance of the service bulletin. GM LLC admits that Steve Oakley became a GM LLC employee. GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 137 of the Second Amended Complaint as phrased.

138.    GM LLC admits the allegations in the first three sentences of Paragraph 138 of the Second Amended Complaint. GM LLC admits that Ray DeGiorgio has knowledge that there was no part number change to correspond with the ignition switch part change. GM LLC admits that Ray DeGiorgio became a GM LLC employee. GM LLC is without sufficient information to

admit or deny the remaining allegations in Paragraph 138 of the Second Amended Complaint as phrased.

139.    GM LLC incorporates by reference its admissions and averments in Paragraph 3 above. GM LLC admits the allegations in the first two sentences of Paragraph 139 of the Second Amended Complaint. GM LLC admits the allegations in the third sentence of Paragraph 139 with respect to Jaclyn Palmer. GM LLC admits that Kathryn Anderson, John Sprague, and Jaclyn Palmer became GM LLC employees. GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 139 of the Second Amended Complaint as phrased.

140.    GM LLC incorporates by reference its admissions and averments in Paragraph 56 above.

    a.  GM LLC admits Paragraph 140(a) of the Second Amended Complaint.

    b.  GM LLC admits Paragraph 140(b) of the Second Amended Complaint.

    c.  GM LLC admits Paragraph 140(c) of the Second Amended Complaint.

    d.  GM LLC admits Paragraph 140(d) of the Second Amended Complaint.

    e.  GM LLC admits Paragraph 140(e) of the Second Amended Complaint.

    f.  GM LLC admits Paragraph 140(f) of the Second Amended Complaint.

    g.  GM LLC admits Paragraph 140(g) of the Second Amended Complaint.

GM LLC admits that John Sprague, Jaclyn Palmer, Kathryn Anderson, Manual Peace, and Doug Brown had received certain documents or information related to one or more of the incidents identified in Paragraph 140(a) through (g). GM LLC admits that John Sprague, Jaclyn Palmer, Kathryn Anderson, Manual Peace, Doug Brown, and Deb Nowak-Vanderhoef became GM LLC

employees. GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 140 of the Second Amended Complaint as phrased.

141.    GM LLC incorporates by reference its admissions and averments in Paragraphs 3, 4, and 5 above. GM LLC objects to the remaining allegations in Paragraph 141 of the Second Amended Complaint as they call for a legal conclusion, and therefore, no response is required. To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 141 of the Second Amended Complaint.

142.    No response to Paragraph 142 is required by GM LLC as such is a question of law for the Court to decide. To the extent a response is required, GM LLC incorporates by reference its admissions and averments in Paragraphs 3, 4, and 5 above. GM LLC denies the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash, denies it breached any duty to Plaintiffs, and denies it is liable to Plaintiffs. GM LLC further denies that all Old GM knowledge is directly attributable to GM LLC.

143.    GM LLC incorporates by reference its admissions and averments in Paragraphs 3 and 5 above. GM LLC admits certain individuals employed by Old GM with knowledge of ignition switch issues became employees of GM LLC following Old GM's bankruptcy, including Raymond DeGiorgio. GM LLC further admits Raymond DeGiorgio was the Design Release Engineer for the ignition switches subject to Recall No. 14v047. GM LLC admits Raymond DeGiorgio was placed on paid leave in April 2014, and ultimately was dismissed. GM LLC further admits that certain Old GM employees held managerial positions with respect to certain issues or had limited decision-making authority with respect to certain issues at Old GM, and admits that certain of these individuals, who had been employed by Old GM, accepted similar positions with GM LLC. GM LLC objects to the remaining allegations in Paragraph 143

of the Second Amended Complaint as they call for a legal conclusion, and therefore, no response is required. To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 143 of the Second Amended Complaint.

144.    GM LLC admits that the individuals identified in Paragraph 144 were employees of Old GM – only some of whom had some knowledge about the ignition switch issue – and became employees of GM LLC following Old GM's bankruptcy. GM LLC objects to the remaining allegations in Paragraph 144 of the Second Amended Complaint as they call for a legal conclusion, and therefore, no response is required. To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 144 of the Second Amended Complaint.

145.    GM LLC admits that Paragraph 145 identifies the names of individuals, some of whom were dismissed as a result of events relating to Recall No. 14v047, or who are currently no longer with the company. GM LLC objects to the remaining allegations in Paragraph 145 of the Second Amended Complaint as they call for a legal conclusion, and therefore, no response is required. To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 145 of the Second Amended Complaint.

146.    GM LLC admits Paragraph 146 purports to characterize and quote from pages 32 and 33 of the Decision on Motion to Enforce Sale Order in *In re Motors Liquidation Co*., et al., No. 09-50026 (REG), ECF No. 13109, the text of which speaks for itself. GM LLC objects to the remaining allegations in Paragraph 146 of the Second Amended Complaint as they call for a legal conclusion, and therefore, no response is required. To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 146 of the Second Amended Complaint.

147.    No response to Paragraph 147 is required by GM LLC as such is a question of law for the Court to decide. To the extent a response is required, GM LLC incorporates by reference

its admissions and averments in Paragraphs 5, 13, and 143 above. GM LLC denies that all Old GM knowledge is directly attributable or imputed to GM LLC.

148.    GM LLC incorporates by reference its admissions and averments in Paragraph 13 above. GM LLC admits that it has ongoing obligations under the Safety Act and admits that 49 U.S.C. § 30166(m) sets forth reporting requirements for motor vehicle manufacturers. GM LLC further admits that subsection (m)(3) requires the following reporting elements:

> (A) Warranty and claims data. As part of the final rule promulgated under paragraph (1), the Secretary shall require manufacturers of motor vehicles and motor vehicle equipment to report, periodically or upon request by the Secretary, information which is received by the manufacturer derived from foreign and domestic sources to the extent that such information may assist in the identification of defects related to motor vehicle safety in motor vehicles and motor vehicle equipment in the United States and which concerns –
>
> > (i)  data on claims submitted to the manufacturer for serious injuries (including death) and aggregate statistical data on property damage from alleged defects in a motor vehicle or in motor vehicle equipment; or
> >
> > (ii) Customer satisfaction campaigns, consumer advisories, recalls, or other activity involving the repair or replacement of motor vehicles or items of motor vehicle equipment.
>
> (B) Other data. As part of the final rule promulgated under paragraph (1), the Secretary may, to the extent that such information may assist in the identification of defects related to motor vehicle safety in motor vehicles and motor vehicle equipment in the United States, require manufacturers of motor vehicles or motor vehicle equipment to report, periodically or upon request of the Secretary, such information as the Secretary may request.
>
> (C) Reporting of possible defects. The manufacturer of a motor vehicle or motor vehicle equipment shall report to the Secretary, in such manner as the Secretary establishes by regulation, all incidents of which the manufacturer receives actual notice which involve fatalities or serious injuries which are alleged or proven to have been caused by a possible defect in such manufacturer's motor vehicle or motor vehicle equipment in the United States, or in a

38

> foreign country when the possible defect is in a motor vehicle or
> motor vehicle equipment that is identical or substantially similar to
> a motor vehicle or motor vehicle equipment offered for sale in the
> United States.

GM LLC further admits that 49 C.F.R. § 579.21(b) requires quarterly reporting of

> each incident involving on or more deaths or injuries occurring in
> the United States that is identified in a claim against and received
> by the manufacturer or in a notice received by the manufacturer
> which notice alleges or proves that the death or injury was caused
> by a possible defect in the manufacturer's vehicle[.]

GM LLC admits that 49 C.F.R. §§ 576.5 and 576.6 require motor vehicle manufacturers to retain "all the underlying records on which the information reported under part 579 of this chapter is based, for a period of five calendar years[.]" GM LLC denies the remaining allegations in Paragraph 148 of the Second Amended Complaint, and denies Section 6.15 of the Sale Agreement is an Assumed Liability as defined therein.

149.    GM LLC incorporates by reference its admissions and averments in Paragraph 148 above.

150.    No response to Paragraph 150 is required by GM LLC as such is a question of law for the Court to decide. To the extent a response is required, GM LLC incorporates by reference its admissions and averments in Paragraph 137 above.  GM LLC admits that in *United States v. General Motors Corp.,* F. Supp. 1047, 1050 (D.D.C. 1983), the court stated that "15 U.S.C. § 1411 does impose a duty on a manufacturer to notify of and remedy safety-related defects even in the absence of an agency order to do so[.]" GM LLC further admits that 49 U.S.C. § 30102(a)(8) defines "motor vehicle safety" to mean

> the performance of a motor vehicle or motor vehicle equipment in
> a way that protects the public against unreasonable risk of
> accidents occurring because of the design, construction, or
> performance of a motor vehicle, and against unreasonable risk of

death or injury in an accident, and includes nonoperational safety of a motor vehicle.

GM LLC admits that 49 U.S.C. §§ 30118(c) and 30119(c) require a motor vehicle manufacturer

to notify NHTSA within a reasonable time if it

learns the vehicle or equipment contains a defect and decides in good faith that the defect is related to motor vehicle safety; or (2) decides in good faith that the vehicle or equipment does not comply with an applicable motor vehicle safety standard prescribed under this chapter[.]

GM LLC admits that 49 C.F.R. § 573.6 provides:

Each manufacturer shall furnish a report to the NHTSA for each defect in his vehicles or in his items of original or replacement equipment that he or the Administrator determines to be related to motor vehicle safety, and for each noncompliance with a motor vehicle safety standard in such vehicles or items of equipment which either he or the Administrator determines to exist. Each report shall be submitted not more than 5 working days after a defect in a vehicle or item of equipment has been determined to be safety related, or a noncompliance with a motor vehicle safety standard has been determined to exist.

GM LLC admits that 49 C.F.R. § 577.5(a) states that:

[w]hen a manufacturer of motor vehicles or replacement equipment determines that any motor vehicle or item of replacement equipment produced by the manufacturer contains a defect that relates to motor vehicle safety, or fails to conform to an applicable Federal motor vehicle safety standard, or the manufacturer files a defect or noncompliance information report under 49 CFR part 573, the manufacturer shall provide notification in accordance with § 577.7(a)[.]

GM LLC admits that 49 C.F.R. § 577.7(a) requires a motor vehicle manufacturer to perform the

notification required by 49 C.F.R. § 577.5 "no later than 60 days from the date the manufacturer

files its defect or noncompliance information report under part 573." GM LLC further admits

that 49 U.S.C. § 30165(a)(1) sets forth the civil penalties applicable to violations of 49 U.S.C. §§

30118 and 30119. GM LLC denies the remaining allegations in Paragraph 150 of the Second Amended Complaint.

151.    GM LLC admits that PRTS is a database used by GM LLC to document and track engineering problems identified in testing, in manufacturing, or through warranty data and customer feedback. GM LLC further admits that there are five steps in the PRTS process: identification of the issue; identification of the root cause; identification of a solution; implementation of the solution; and feedback. GM LLC admits that the TREAD database contains data required to be reported quarterly to NHTSA. GM LLC admits that the TREAD database was used by Old GM and GM LLC to track incidents related to GM vehicles. GM LLC admits that the TREAD database utilizes information primarily from the following sources: service requests from the Customer Assistance Center, the Technical Assistance Center, internal and external surveys, field reports, the OnStar call center, and Team Connect, which is a database used to track structured data concerning complaints filed in court.

GM LLC further admits that Paragraph 151 purports to characterize and partially quote from Anton R. Valukas's Report to the Board of Directors of General Motors Company Regarding Ignition Switch Recalls (the "Valukas Report"), which speaks for itself. GM LLC denies the remaining allegations in Paragraph 151 of the Second Amended Complaint.

152.    GM LLC incorporates by reference its admissions and averments in Paragraphs 3, 5, 143, and 151 above. GM LLC admits that certain individuals who had been employed by Old GM continued to carry out TREAD obligations after they were hired by GM LLC. GM LLC objects to the remaining allegations in Paragraph 152 of the Second Amended Complaint as they call for a legal conclusion, and therefore, no response is required. To the extent a response is

required, GM LLC denies the remaining allegations in Paragraph 152 of the Second Amended Complaint.

153.    GM LLC incorporates by reference its admissions and averments in Paragraph 151 above. GM LLC admits that Paragraph 153 purports to characterize and partially quote from the Valukas Report, which speaks for itself. GM LLC denies the remaining allegations in Paragraph 153 of the Second Amended Complaint.

154.    GM LLC admits that Paragraph 154 purports to characterize and partially quote from the Valukas Report, which speaks for itself. GM LLC further admits Paragraph 154 purports to characterize the deposition testimony of the senior manager of the TREAD Team, Dwayne Davidson, the text of which speaks for itself. GM LLC denies the remaining allegations in Paragraph 154 of the Second Amended Complaint.

155.    GM LLC incorporates by reference its admissions and averments in Paragraphs 3, 5, 57, and 143 above. GM LLC denies the remaining allegations in Paragraph 155 of the Second Amended Complaint.

156.    GM LLC incorporates by reference its admissions and averments in Paragraph 3 above. GM LLC admits the allegations in the first sentence of Paragraph 156 of the Second Amended Complaint. No response is required by GM LLC as the remaining allegations in Paragraph 156 is a preface to the following paragraphs. To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 156 of the Second Amended Complaint.

157.    GM LLC incorporates by reference its admissions and averments in Paragraphs 3 and 130 above. GM LLC admits that, in 2001, Old GM employees investigated an issue of stalls while testing a prototype of the MY 2003 Ion and, during their investigation, discovered that the stalls were related to the detent in this prototype vehicle created with preproduction tools. GM

LLC further admits that the movement of the switch from the Run to the Accessory or Off position caused by preproduction tools resulted in an unexpected shutoff of the engine and a loss of electrical systems. GM LLC admits that William Skelton received certain documents or information regarding the testing of the prototype. GM LLC admits that William Skelton became a GM LLC employee. GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 157 of the Second Amended Complaint as phrased.

158.    GM LLC incorporates by reference its admissions and averments in Paragraph 3, 130, and 142 above. GM LLC admits that Delphi Packard Electrical/Electronic Architecture was the supplier of the ignition switch in Recall No. 14v047. GM LLC further admits that Raymond DeGiorgio approved production of the defective switch notwithstanding his understanding that its torque return between the Run and Accessory positions fell below Old GM's internal specifications. GM LLC admits that Ray DeGiorgio had knowledge of the approval of the ignition switch. GM LLC admits Ray DeGiorgio became a GM LLC employee. GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 158 of the Second Amended Complaint as phrased.

159.    GM LLC incorporates by reference its admissions and averments in Paragraphs 3 and 130 above.  GM LLC further admits that in 2002, after launch of the vehicles, certain Old GM customers began to report problems with cars equipped with the defective switch. Certain Old GM employees tasked with driving early production versions of the Ion and then the Cobalt were reporting stalls while driving, and some of them were able to attribute the problem to the easy rotation of the key within the defective switch. GM LLC admits that Old GM employee Raymond DeGiorgio received certain documents or information in 2004 related to complaints that the switch could turn off while driving causing stalls. GM LLC admits Ray DeGiorgio

became a GM LLC employee. GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 159 of the Second Amended Complaint as phrased.

160.    GM LLC incorporates by reference its admissions and averments in Paragraph 5 above. GM LLC admits that a 2004 General Motors Corporation Company Vehicle Evaluation Program report indicates that in January 2004, an Old GM employee reported that, in reference to the location of the ignition switch on the Saturn Ion, "[t]his is a basic design flaw and should be corrected if we want repeat sales."  GM LLC denies the remaining allegations in Paragraph 160 of the Second Amended Complaint.

161.    GM LLC admits that Douglas McConnell, a front algorithm engineer for Siemens VDO Automotive, authored a "Crash Test Special Report" on July 27, 2004 and subsequently revised that report on July 29, 2004. GM LLC admits that Mr. McConnell's report concerned crash testing of a Chevrolet Cobalt that was conducted June 24, 2004. GM LLC admits that Paragraph 161 purports to characterize the "Summary" section of the report, which speaks for itself. GM LLC admits that this report was distributed to five Old GM engineers, and that one of these individuals became an employee of GM LLC following Old GM's bankruptcy. GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 161 of the Second Amended Complaint as phrased.

162.    GM LLC incorporates by reference its admissions and averments in Paragraph 3 above. GM LLC admits the first two sentences of Paragraph 162 of the Second Amended Complaint.  GM LLC admits that Raymond DeGiorgio had knowledge of the decision to use the same ignition switch in the Cobalt as that in the Ion. GM LLC admits that Raymond DeGiorgio became a GM LLC employee. GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 162 of the Second Amended Complaint as phrased.

163.   GM LLC admits that members of the press covering the Cobalt's launch experienced the unexpected shutoff problem. Alerted by one of the press reports, two executives in charge of safety at Old GM determined to experience for themselves the complained-of phenomenon. GM LLC admits that in the summer or fall of 2004, around the time of Old GM's launch of the 2005 Cobalt, Gary Altman, Old GM's Program Engineering Manager for the Cobalt, inspected a Cobalt in response to a complaint by a journalist. GM LLC admits that while the vehicle was stationary, Altman was able to replicate the complaint by the journalist when Altman hit his knee against the key fob and turned off the vehicle, causing the engine to stall. GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 163 of the Second Amended Complaint as phrased.

164.   GM LLC incorporates by reference its admissions and averments in Paragraph 163 above. GM LLC admits that around the time of Old GM's launch of the 2005 Cobalt, Doug Parks assigned Gary Altman to attempt to replicate the journalist's experience as described in Paragraph 163 above. GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 164 of the Second Amended Complaint as phrased.

165.   GM LLC admits that in November 2004, Old GM opened the first of six engineering inquiries that would be initiated in the ensuing five years to consider ameliorative engineering changes for new cars being rolled off the production line. GM LLC admits that at that time PRTS issues were analyzed by an Old GM Current Production Improvement Team ("CPIT") committee. GM LLC further admits Gary Altman was a member of the CPIT committee that reviewed PRTS N172404. GM LLC admits that Lori Queen served as Old GM's Vehicle Line Executive for Small Cars from 2001 to 2009. GM LLC admits that Lori Queen was not a member of the CPIT, but did receive reports from the Vehicle Line Director, who chaired

the CPIT. GM LLC admits that Gary Altman and Lori Queen became GM LLC employees following Old GM's bankruptcy. GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 165 of the Second Amended Complaint as phrased.

166.     GM LLC admits that Doug Parks was Old GM's Vehicle Chief Engineer (VCE) for the Cobalt. GM LLC further admits Old GM engineers presented several possible solutions to the Current Production Improvement Team committee in February and March 2005. GM LLC admits that the Old GM Vehicle and Process Integration Review (VAPIR) committee held a meeting on March 1, 2005 that discussed all PRTSs that had been pending for a "root cause" or "solution" for 45 days or more. GM LLC admits that the Old GM's PRTS report N172404 referred to in Paragraphs 127 and 165 above was discussed. GM LLC admits that the notes regarding PRTS report N172404 from the March 1, 2005 meeting state "key redesign estimate req'd." GM LLC further admits that a VAPIR meeting was held on June 14, 2005 to discuss solutions to the inadvertent shut-off issue with the ignition switch. GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 166 of the Second Amended Complaint as phrased.

167.     GM LLC admits Paragraph 167 accurately quotes portions of an email exchange from May 4, 2005 between Doug Parks and others, the subject line of which was "Inadvertent Ign turn-off." GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 167 of the Second Amended Complaint as phrased.

168.     GM LLC admits that an Old GM engineer opened PRTS No. N172404 on November 19, 2004 to address the complaint that the "vehicle can be keyed off with knee while driving." GM LLC admits that according to PRTS No. N172404, the Program Engineering

Manager for the GMX001 vehicle directed to close the PRTS with no action. The PRTS states as follows:

1.       All possible solutions were presented in CPIT and VAPIR:

      a.       The lead-time for all the solutions is too long.
      b.       The tooling cost and piece price are too high.
      c.       None of the solutions seems to fully countermeasure the possibility of the key being turned (ignition turn off) during driving.

    Thus none of the solutions represents an acceptable business case.

GM LLC admits that Doug Parks became GM LLC's employee following Old GM's bankruptcy, where he is now Vice President of Global Product Development Purchasing and Supply Chain. GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 168 of the Second Amended Complaint as phrased.

169.    GM LLC incorporates by reference its admissions and averments in Paragraphs 3, 5, 130, 143, 159, and 163 above. GM LLC admits that Paragraph 169 purports to characterize portions of the deposition testimony of Gary Altman taken August 6, 2015, which speaks for itself. GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 169 of the Second Amended Complaint as phrased.

170.    GM LLC admits that on February 28, 2005, Old GM issued a Preliminary Information to its dealers regarding the potential for drivers of 2005 Cobalts and 2005 Pontiac Pursuits (the Canadian version of the Pontiac G5) "to inadvertently turn off the ignition." GM LLC admits that Steve Oakley received certain documents or information related to the Preliminary Information of February 28, 2005. GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 170 of the Second Amended Complaint as phrased.

171.    GM LLC admits that Old GM's February 28, 2005 Preliminary Information states, in part:

> There is potential for the driver to inadvertently turn off the ignition due to low key ignition cylinder torque/effort. The concern is more likely to occur if the driver is short and has a large heavy key chain.
>
> In the cases this condition was documented, the driver's knee would contact the key chain while the vehicle was turning. The steering column was adjusted all the way down. This is more likely to happen to a person that is short as they will have the seat positioned closer to the steering column.
>
> In cases that fit this profile, question the customer thoroughly to determine if this may be the cause. The customer should be advised of this potential and to take steps, such as removing unessential items from their key chains, to prevent it.
>
> Please follow this diagnosis process thoroughly and complete each step. If the condition exhibited is resolved without completing every step, the remaining steps do not need to be performed.

GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 171 of the Second Amended Complaint as phrased.

172.    GM LLC incorporates by reference its admissions and averments in Paragraph 163 above. GM LLC admits that Jeff Sabatini published an article in the *New York Times* on June 19, 2005, providing in part as follows:

> CHEVROLET dealers are telling Cobalt owners to lighten their key rings to prevent intermittent stalling and the loss of electrical power in their cars. General Motors issued a service bulletin to dealers suggesting this fix.
>
> ***
>
> During my time with the Cobalt, I encountered the problem once, or rather, my wife did. She was driving on a freeway when the car "just went dead," in her words. She recalled bumping her knee against the steering column just before the car shut off. She was able to coast to the shoulder of the road, where, once parked, the

car started and behaved normally.

> The only things on the ring, other than the key, were the fob for the remote locking system and a tag identifying the car as G.M.'s - just as the key ring was given to me. Though my wife was able to continue to her destination, I wanted a dealer service department to look at the car. Young Chevrolet Oldsmobile Cadillac, in Owosso, Mich., found nothing wrong, but did share the service bulletin.

GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 172 of the Second Amended Complaint as phrased.

173.    GM LLC incorporates by reference its admissions and averments in Paragraph 163 above. GM LLC admits that on June 13, 2005, in response to a *New York Times* inquiry, Old GM's manager for safety communications issued a statement entitled "GM Statement on Chevrolet Cobalt Inadvertent Shutoffs," which states:

> In rare cases when a combination of factors is present, a Chevrolet Cobalt driver can cut power to the engine by inadvertently bumping the ignition key to the accessory or off position while the car is running.

> When this happens, the Cobalt is still controllable. The engine can be restarted after shifting to neutral.

> GM has analyzed this condition and believes it may occur when a driver overloads a key ring, or when the driver's leg moves amid factors such as steering column position, seat height and placement. Depending on these factors, a driver can unintentionally turn the vehicle off.

> Service advisers are telling customers they can virtually eliminate this possibility by taking several steps, including removing non-essential material from their key rings.

The above is known as the "June 2005" statement. GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 173 of the Second Amended Complaint as phrased.

174.     GM LLC incorporates by reference its admissions and averments in Paragraphs 163 and 173 above. GM LLC admits Alan Adler is an employee of GM LLC. GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 174 of the Second Amended Complaint as phrased.

175.     GM LLC incorporates by reference its admissions and averments in Paragraph 165, 168, and 170 above.  GM LLC admits that in May 2005, an Old GM brand quality manager opened a second inquiry to consider fixing the problem for new cars. This manager cited a customer complaint that the "vehicle ignition will turn off while driving," and noted that Old GM was having to buy back Cobalts as a result of the defective switch. GM LLC admits that Doug Parks and Gary Altman received certain documents or information related to the May 2005 PRTS inquiry. GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 175 of the Second Amended Complaint as phrased.

176.     GM LLC incorporates by reference its admissions and averments in Paragraph 175 above. GM LLC admits that in March 2005, Steven Oakley, General Motors Corporation Brand Quality Manager, opened Field Performance Report ("FPR") 0793/2005/US to address a "[s]tall" condition with "no codes, no lights." GM LLC admits that a March 9, 2005 email from Old GM engineer Jack Weber with the subject line "Cobalt SS Ignition Turn Off" is included in the FPR. GM LLC further admits that Mr. Weber's email stated that the "first time [he] turned off the ignition switch was during a normal traffic brake application. . . ." GM LLC admits that Oakley, Old GM Quality Brand Manager, opened a PRTS in March 2005 after receiving certain documents or information that Jack Weber experienced a key-off incident while driving a manual transmission Cobalt. GM LLC admits Oakley is a GM LLC employee. GM LLC is

without sufficient information to admit or deny the remaining allegations in Paragraph 176 as phrased.

177.    GM LLC admits that the "Warranty Measure Information" for Old GM PRTS No. N182276 states that the "Incidents Per Thousand Vehicles" for the Cobalt was estimated to be 12.40 for vehicles in service for 36 months. GM LLC admits that William Chase, a warranty engineer for Old GM, supplied this information. GM LLC denies the remaining allegations in Paragraph 177 of the Second Amended Complaint.

178.    GM LLC admits that Old GM received notice of Amber Rose's incident in September 2005. GM LLC admits that on July 29, 2005, Amber Marie Rose was 16 years old when she drove a 2005 Cobalt off the road while not wearing a seatbelt and struck several small trees and a larger tree. GM LLC admits that Amber Rose died en route to the hospital. GM LLC further admits that data Old GM retrieved from the SDM from Amber Rose's Cobalt recorded the vehicle's power mode status as being in the "Accessory" position at the time of the algorithm enable. GM LLC further admits that Amber Rose's frontal airbag did not deploy during the crash. GM LLC admits that Old GM entered into a confidential settlement agreement with Amber Rose's mother, which speaks for itself. GM LLC admits that certain individuals employed by Old GM familiar with this incident may have become employees of GM LLC following Old GM's bankruptcy. GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 178 of the Second Amended Complaint as phrased.

179.    GM LLC incorporates by reference its admissions and averments in Paragraph 3 above. GM LLC admits Service Bulletin No. 05-02-35-007 issued by Old GM, which related to the 2005-06 Chevrolet Cobalt, 2006 Chevrolet HHR, 2005-06 Pontiac Pursuit (Canada Only), 2006 Pontiac Solstice, and 2003-06 Saturn Ion, provides as follows:

> There is potential for the driver to inadvertently turn off the ignition due to low ignition key cylinder torque/effort.
>
> This concern is more likely to occur if the driver is short and has a large and/or heavy key chain. In these cases, this condition was documented and the driver's knee would contact the key chain while the vehicle was turning and the steering column was adjusted all the way down. This is more likely to happen to a person who is short, as they will have the seat positioned closer to the steering column.
>
> In cases that fit this profile, question the customer thoroughly to determine if this may [sic] the cause. The customer should be advised of this potential and should take steps to prevent it - such as removing unessential items from their key chain.
>
> Engineering has come up with an insert for the key ring so that it goes from a "slot" design to a hole design. As a result, the key ring cannot move up and down in the slot any longer - it can only rotate on the hole. In addition, the previous key ring has been replaced with a smaller, 13 mm design. This will result in the keys not hanging as low as in the past.

GM LLC admits that certain individuals employed by Old GM familiar with Service Bulletin No. 05-02-35-007 may have become employees of GM LLC following Old GM's bankruptcy. GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 179 of the Second Amended Complaint as phrased.

180.     GM LLC incorporates by reference its admissions and averments in Paragraphs 56, 178, and 179 above. GM LLC admits that on November 17, 2005, there was an incident involving a 2005 Cobalt in Iberia Parish, Louisiana. GM LLC admits that, while attempting to pass two slower moving vehicles, the Cobalt struck one of the vehicles that was attempting to make a left turn. GM LLC admits that the Cobalt then went off the road and hit a tree. GM LLC admits that the frontal airbags did not deploy in this accident. GM LLC further admits that the data Old GM retrieved from the SDM from the Cobalt recorded the vehicle's power mode status as being in the "Run" position at the time of the algorithm enable. GM LLC admits that Old GM

received notice of this accident, opened a file, and that certain documents referred to it as the "Colbert" incident. GM LLC admits that certain individuals employed by Old GM familiar with this incident became employees of GM LLC following Old GM's bankruptcy. GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 180 of the Second Amended Complaint as phrased.

181.    GM LLC admits that on February 10, 2006, a 2005 Cobalt left the road and hit two light poles in Lanexa, Virginia. GM LLC admits that the frontal airbags did not deploy. GM LLC further admits that the data Old GM retrieved from the SDM recorded the vehicle's power mode status as being in the "Accessory" position at the time of the algorithm enable. GM LLC admits that Old GM received notice of this accident, opened a file, and that certain documents referred to it as the "Carroll" incident. GM LLC admits that certain individuals employed by Old GM familiar with this incident became employees of GM LLC following Old GM's bankruptcy. GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 181 of the Second Amended Complaint as phrased.

182.    GM LLC admits that on March 14, 2006, a 2005 Cobalt being driven at a high rate of speed struck multiple objects, including two telephone poles and a building in Frederick, Maryland. GM LLC admits that the frontal airbags did not deploy. GM LLC further admits that the data Old GM retrieved from the SDM recorded the vehicle's power mode status as being in the "Accessory" position at the time of the algorithm enable. GM LLC admits that Old GM received notice of this accident, opened a file, and that certain documents referred to it as the "Oakley" incident. GM LLC admits that certain individuals employed by Old GM familiar with this incident became employees of GM LLC following Old GM's bankruptcy. GM LLC is

without sufficient information to admit or deny the remaining allegations in Paragraph 182 of the Second Amended Complaint as phrased.

183.    GM LLC incorporates by reference its admissions and averments in Paragraph 3 above. GM LLC admits that the General Motors Commodity Validation Sign-Off document stated "[n]ew detent plunger (Catera spring/Plunger) was implemented to increase torque force in the switch." GM LLC admits Raymond DeGiorgio's signature is on the General Motors Commodity Validation Sign-Off.  GM LLC denies the remaining allegations in Paragraph 183 of the Second Amended Complaint.

184.    GM LLC incorporates by reference its admissions and averments in Paragraph 183 above. GM LLC admits that although it was effectuated without a part number change, the switch change that the Old GM Switch DRE approved was documented internally, and other Old GM engineers were aware of it at the time and afterward. GM LLC admits that a March 2007 note logged in connection with an engineering inquiry into another matter related to the Ion specifically observed that "[t]he detent plunger torque force was increased" by the Old GM Switch DRE in April 2006.

185.    GM LLC incorporates by reference its admissions and averments in Paragraph 3 above. GM LLC admits on April 1, 2014, General Motors Company Chief Executive Officer Mary Barra testified before the House Subcommittee on Oversight and Investigations. GM LLC further admits that Paragraph 185 purports to characterize Ms. Barra's testimony, which speaks for itself.

186.    GM LLC incorporates by reference its admissions and averments in Paragraph 3 above. GM LLC admits that Old GM updated Service Bulletin No. 05-02-35-007, and issued Service Bulletin No. 05-02-35-007A in October 2006 to include additional vehicles and model

years: specifically, the 2007 Chevrolet Cobalt, the 2007 Chevrolet HHR, the 2007 Pontiac G5, the 2007 Pontiac Solstice, the 2007 Saturn Ion, and the 2007 Saturn Sky. GM LLC admits that Service Bulletin No. 05-02-35-007A provided the same language as Service Bulletin No. 05-02-35-007. GM LLC admits that certain individuals employed by Old GM familiar with Service Bulletin No. 05-02-35-007A may have become employees of GM LLC following Old GM's bankruptcy. GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 186 of the Second Amended Complaint as phrased.

187.    GM LLC admits that on December 29, 2006, in Sellersville, Pennsylvania, a 2005 Cobalt being driven at an unsafe speed was involved in an accident in which the Cobalt impacted an embankment, traveled up the embankment, and subsequently hit a tree. GM LLC admits that the frontal airbag did not deploy. GM LLC further admits that the data Old GM retrieved from the SDM recorded the vehicle's power mode status as being in the "Run" position at the time of the algorithm enable. GM LLC admits that Old GM received notice of this incident, and opened a file and that certain documents referred to it as the "Frei" incident. GM LLC admits that certain individuals employed by Old GM familiar with this incident became employees of GM LLC following Old GM's bankruptcy. GM LLC denies the remaining allegations in Paragraph 187 of the Second Amended Complaint.

188.    GM LLC incorporates by reference its admissions and averments in Paragraph 3 above. GM LLC denies the remaining allegations in Paragraph 188 of the Second Amended Complaint.

189.    GM LLC admits that when asked in his May 15, 2015 deposition at page 87 whether he "would have taken an interest in this particular story and clicked on the link to see it," Dwayne Davidson, senior manager for TREAD reporting, testified "I couldn't answer that

because I get a lot of e-mails. I don't have really time to go into detail on all of them."  GM LLC denies the remaining allegations in Paragraph 189 of the Second Amended Complaint.

190.    GM LLC admits that on October 24, 2006, a 2005 Chevrolet Cobalt was involved in a crash, colliding with a telephone junction box and two trees. GM LLC admits that at the time of the algorithm enable, the subject 2005 Chevrolet Cobalt's SDM recorded the vehicle's power mode status as being in the "Accessory" position. GM LLC admits the front right occupant and the left rear occupant in the Cobalt sustained fatal injuries. GM LLC further admits that Dwayne Davidson testified in his May 15, 2015 deposition at page 99 that he "glanced through" the CD concerning the Wisconsin accident before it was forwarded to NHTSA to ensure that "the content [was] there and that it [would] open." GM LLC admits that certain individuals employed by Old GM familiar with this incident became employees of GM LLC following Old GM's bankruptcy. GM LLC denies the remaining allegations in Paragraph 190 of the Second Amended Complaint.

191.    GM LLC admits that on February 6, 2007, a 2005 Cobalt being driven at a high rate of speed struck multiple objects, including a utility pole and a parked truck in Shaler Township, Pennsylvania. GM LLC admits that there was a frontal impact and that the frontal airbags did not deploy. GM LLC further admits that the data Old GM retrieved from the SDM recorded the vehicle's power mode status as being in the "Accessory" position at the time of the algorithm enable. GM LLC admits that Old GM received notice of this accident, opened a file, and that certain documents referred to it as the "White" incident. GM LLC admits that certain individuals employed by Old GM familiar with this incident became employees of GM LLC following Old GM's bankruptcy. GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 191 of the Second Amended Complaint as phrased.

192.    GM LLC admits that on August 6, 2007, a 2006 Cobalt being driven on a wet road rear-ended a truck in Cross Lanes, West Virginia. GM LLC admits that the frontal airbags did not deploy. GM LLC further admits that the data Old GM retrieved from the SDM recorded the vehicle's power mode status as being in the "Run" position at the time of the algorithm enable. GM LLC admits that Old GM received notice of this accident, opened a file, and that certain documents referred to it as the "McCormick" incident. GM LLC admits that certain individuals employed by Old GM familiar with this incident became employees of GM LLC following Old GM's bankruptcy. GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 192 of the Second Amended Complaint as phrased.

193.    GM LLC admits that on September 26, 2007, a 2007 Cobalt struck a guard rail in New Orleans, Louisiana. GM LLC admits that there was a frontal impact and that the frontal airbags did not deploy. GM LLC further admits that the data Old GM retrieved from the SDM recorded the vehicle's power mode status as being in the "Run" position at the time of the algorithm enable. GM LLC admits that Old GM received notice of this accident, opened a file, and that certain documents referred to it as the "Gathe" incident. GM LLC admits that certain individuals employed by Old GM familiar with this incident became employees of GM LLC following Old GM's bankruptcy. GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 193 of the Second Amended Complaint as phrased.

194.    GM LLC admits that on October 16, 2007, in Lyndhurst, Ohio, a 2005 Cobalt traveled off road and struck a sign post, several garbage cans, a tree, and subsequently hit a guardrail. GM LLC admits that the frontal airbags did not deploy. GM LLC further admits that the data Old GM retrieved from the SDM recorded the vehicle's power mode status as being in the "Run" position at the time of the algorithm enable. GM LLC admits that Old GM received

notice of this accident, opened a file, and that certain documents referred to it as the "Breen" incident. GM LLC admits that certain individuals employed by Old GM familiar with this incident became employees of GM LLC following Old GM's bankruptcy. GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 194 of the Second Amended Complaint as phrased.

195.    GM LLC admits that on April 5, 2008, in Sommerville, Tennessee, a 2006 Cobalt travelling too fast while approaching a curve travelled off the road, into a ditch and then hit a tree. GM LLC admits that there was a frontal impact and that the frontal airbags did not deploy. GM LLC further admits that the data Old GM retrieved from the SDM recorded the vehicle's power mode status as being in the "Accessory" position at the time of the algorithm enable. GM LLC admits that Old GM received notice of this accident, opened a file, and that certain documents referred to it as the "Freeman" incident. GM LLC admits that certain individuals employed by Old GM familiar with this incident became employees of GM LLC following Old GM's bankruptcy. GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 195 of the Second Amended Complaint as phrased.

196.    GM LLC admits that on May 21, 2008, in Argyle, Wisconsin, a 2007 Pontiac G5 travelled off the road into a ditch and then drove through a fence and hit a tree. GM LLC admits that there was a frontal impact and that the frontal airbags did not deploy. GM LLC further admits that the data Old GM retrieved from the SDM recorded the vehicle's power mode status as being in the "Accessory" position at the time of the algorithm enable. GM LLC admits that Old GM received notice of this accident, opened a file, and that certain documents referred to it as the "Wild" incident. GM LLC admits that certain individuals employed by Old GM familiar with this incident became employees of GM LLC following Old GM's bankruptcy. GM LLC is

without sufficient information to admit or deny the remaining allegations in Paragraph 196 of the Second Amended Complaint as phrased.

197.    GM LLC admits that on May 29, 2008, in Lufkin, Texas, a 2007 Chevrolet Cobalt drifted into the center turn lane and struck the rear of another vehicle, then traveled off the roadway and struck a tree. GM LLC admits that there was a frontal impact and that the frontal airbags did not deploy. GM LLC further admits that the data Old GM retrieved from the SDM recorded the vehicle's power mode status as being in the "Run" position at the time of the algorithm enable. GM LLC admits that Old GM received notice of this accident, opened a file, and that certain documents referred to it as the "McDonald" incident. GM LLC admits that certain individuals employed by Old GM familiar with this incident became employees of GM LLC following Old GM's bankruptcy. GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 197 of the Second Amended Complaint as phrased.

198.    GM LLC admits that on September 13, 2008, in Lincoln Township, Michigan, there was a crash involving a 2006 Chevrolet Cobalt. GM LLC admits the Cobalt was involved in a frontal impact with a tree that killed two people. GM LLC further admits the airbags failed to deploy when they should have. GM LLC admits that Old GM received notice of this accident, opened a file, and that certain documents referred to it as the "Harding" incident. GM LLC admits that certain individuals employed by Old GM familiar with this incident became employees of GM LLC following Old GM's bankruptcy. GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 198 of the Second Amended Complaint as phrased.

199.    GM LLC admits that on November 29, 2008, in Rolling Hills Estates, California, a 2008 Chevrolet Cobalt traveled off the road, drove through a fence and hit a tree. GM LLC

admits that the airbags did not deploy. GM LLC further admits that the data Old GM retrieved from the SDM recorded the vehicle's power mode status as being in the "Run" position at the time of the algorithm enable. GM LLC admits that Old GM received notice of this accident, opened a file, and that certain documents referred to it as the "Dunn" incident. GM LLC admits that certain individuals employed by Old GM familiar with this incident became employees of GM LLC following Old GM's bankruptcy. GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 199 of the Second Amended Complaint as phrased.

200.    GM LLC admits that on December 6, 2008, in Lake Placid, Florida, a 2007 Chevrolet Cobalt traveled off the road and hit a mailbox, a fence, a tree, and a guy wire. GM LLC admits that there was a frontal impact and that the frontal airbags did not deploy. GM LLC further admits that the data Old GM retrieved from the SDM recorded that the vehicle's power mode status as being in the "Accessory" position at the time of the algorithm enable. GM LLC admits that Old GM received notice of this accident, opened a file, and that certain documents referred to it as the "Grondona" incident. GM LLC admits that certain individuals employed by Old GM familiar with this incident became employees of GM LLC following Old GM's bankruptcy. GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 200 of the Second Amended Complaint as phrased.

201.    GM LLC incorporates by reference its admissions and averments in   Paragraph 3 above. GM LLC admits that the redesigned key was not provided to owners or lessees of pre-MY 2010 vehicles, including 2005-2007 Cobalts.   GM LLC admits that certain individuals employed by Old GM familiar with this PRTS and key design change became employees of GM LLC following Old GM's bankruptcy.

202.    GM LLC admits that on February 24, 2014, it sent a letter to NHTSA pursuant to the requirements of 49 C.F.R. § 573.6 with an attached chronology related to Recall No. 14v047 that provides as follows:

> **2009**. . . . On or about May 15, 2009, several GM engineers met with representatives of Continental, the supplier of the SDMs used in the Cobalt. In the fourteen frontal-impact crashes for which SDM data was then available, the ignition was recorded in "run" for seven of the crashes and in the "accessory" position for the other seven. Prior to this meeting, GM had provided Continental with two SDMs from crashes involving a 2005 Cobalt and a 2006 Cobalt in which the airbags had not deployed and the SDM data indicated that the car's ignition switch was in the "run" position at the time of the crash. During this meeting, Continental representatives informed the GM engineers that, according to further stored data inaccessible to GM engineers but retrieved by Continental, the SDM's sensing algorithm had been disabled at the time of the crash, and discussed reasons why this may have happened. Although GM engineers had identified other crashes in which airbags had not deployed and the ignition switch was recorded in the "run" position at the time of the crash, GM engineers were not able to obtain the SDMs from the vehicles involved in these crashes for further interrogation by Continental.

GM LLC also admits that in September 2008, another crash, this one involving a 2006 Cobalt, killed two people. The airbags failed to deploy when they should have. Old GM sent the crashed car's SDM to the Company's SDM supplier for examination. In May 2009, the SDM supplier reported that the power mode status was at one point during the crash recorded as Off, and that this was one of two possible explanations for the failure of the airbags to deploy. This report was provided in writing, but also in person, at a meeting attended by several GM employees, including a member of the PI group, in-house counsel, and the Airbag FPA Engineer who had been tracking the Cobalt non-deploy incidents. GM LLC admits that certain individuals employed by Old GM familiar with this information became employees of GM LLC following

61

Old GM's bankruptcy. GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 202 of the Second Amended Complaint as phrased.

203.    GM LLC incorporates by reference its admissions and averments in Paragraph 3 above. GM LLC denies the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of accident, and denies it is liable to Plaintiffs. GM LLC objects to the remaining allegations in Paragraph 203 of the Second Amended Complaint as they call for a legal conclusion, and therefore, no response is required. To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 203 of the Second Amended Complaint.

204.    GM LLC incorporates by reference its admissions and averments in Paragraph 3 above. GM LLC admits that certain of its engineers and certain engineers of Old GM designed airbags to be disabled when the ignition switch is in the "Accessory" and "Off" positions.  GM LLC denies the remaining allegations in Paragraph 204 of the Second Amended Complaint.

205.    GM LLC incorporates by reference its admissions and averments in Paragraph 3 above. GM LLC admits that as of July 10, 2009, certain GM LLC employees were aware that the airbags would not deploy with the ignition switch in the Accessory position.

206.     GM LLC incorporates by reference its admissions and averments in Paragraphs 3 and 173 above. GM LLC admits that certain Old GM employees considered the ignition switch problem a customer convenience issue rather than a safety one.

207.    GM LLC incorporates by reference its admissions and averments in Paragraphs 3 and 206 above. GM LLC denies the remaining allegations in Paragraph 207 of the Second Amended Complaint.

208.   GM LLC incorporates by reference its admissions and averments in Paragraphs 3, 57, 157, and 206 above. GM LLC denies the remaining allegations in Paragraph 208 of the Second Amended Complaint.

209.   GM LLC incorporates by reference its admissions and averments in Paragraphs 3 and 143. GM LLC admits Paragraph 209 purports to characterize materials attached as an exhibit to the Consent Order, which speaks for itself. GM LLC objects to the remaining allegations in Paragraph 209 of the Second Amended Complaint as they call for a legal conclusion, and therefore, no response is required. To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 209 of the Second Amended Complaint.

210.   GM LLC incorporates by reference its admissions and averments in Paragraph 3 and 143. GM LLC admits that Paragraph 210 purports to characterize a June 5, 2014 statement from Senator Richard Blumenthal related to Recall No. 14v047, the content of which speaks for itself. GM LLC objects to the remaining allegations in Paragraph 210 of the Second Amended Complaint as they call for a legal conclusion, and therefore, no response is required. To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 210 of the Second Amended Complaint.

211.   GM LLC incorporates by reference its admissions and averments in Paragraphs 3 and 56 above.

212.   GM LLC incorporates by reference its admissions and averments in Paragraphs 3 and 56 above. GM LLC admits that on March 10, 2010, Brooke Melton was driving a 2005 Chevrolet Cobalt when she lost control of the vehicle and entered a crash event with another vehicle. GM LLC admits that Melton, who the accident report stated was driving too fast for the conditions, sustained fatal injuries. GM LLC admits that at the time of the algorithm enable, the

subject 2005 Chevrolet Cobalt's SDM recorded the vehicle's power mode status as being in the "Accessory" position. Although there was no allegation that the frontal airbag should have deployed, there was an allegation that loss of power steering caused the crash. GM LLC admits it received notice of this incident.

213.    GM LLC incorporates by reference its admissions and averments as provided in Paragraph 58 above. GM LLC admits that a 25-year-old nursing student died in Tennessee following a head-on collision in her 2006 Cobalt (hereinafter, the "Tennessee Crash"). The airbags failed to deploy when they should have, and the power mode status was recorded as Off at the time of the crash. GM LLC admits it received notice of this accident, opened a file, and that certain documents referred to it as the "Chanthusus" incident. GM LLC admits that in connection with the Tennessee Crash, an Old GM engineer explained to legal staff that when the ignition switch power mode status is in Off (as it was in that case), the SDM "powers down"" and the airbags fail to deploy. The engineer further opined that "a crash sensing system 'anomaly'" resulting in a power mode status of Off had indeed caused nondeployment in the Tennessee Crash case.  GM LLC objects to the remaining allegations in Paragraph 213 of the Second Amended Complaint as they call for a legal conclusion, and therefore, no response is required. To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 213 of the Second Amended Complaint.

214.    GM LLC admits that on December 31, 2010, in Harlingen, Texas, a 2006 Chevrolet Cobalt traveled off the road and hit a curb after failing to control speed and disregarding a stop sign. GM LLC admits that there was a frontal impact and that the frontal airbags did not deploy. GM LLC further admits that the data retrieved from the SDM recorded the vehicle's power mode status as being in the "Run" position at the time of the algorithm

enable. GM LLC admits that it received notice of this accident, opened a file, and that certain documents referred to it as the "Najera" incident. GM LLC denies the remaining allegations in Paragraph 214 of the Second Amended Complaint.

215. GM LLC admits that on March 22, 2011, Ryan Jahr, an investigator employed by ESIS, a third-party claims administrator, downloaded the SDM data from the Melton Cobalt. GM LLC admits that the data retrieved from the SDM recorded the vehicle's power mode status as being in the "Accessory" position at the time of algorithm enable. GM LLC admits that Brooke Melton's parents filed suit against GM LLC on June 24, 2011.

216. GM LLC admits that, in approximately August 2011, a Field Performance Assessment Engineer ("FPAE"), Brian Stouffer, was assigned to move forward with a Field Performance Evaluation ("FPE") investigation of a group of crashes in which airbags in 2005-2007 model year Chevrolet Cobalts and a 2007 Pontiac G5 had not deployed during frontal impacts.

217. GM LLC admits that on February 13, 2011, in Parksville, South Carolina, a 15-year-old girl in South Carolina crashed her mother's 2007 Cobalt and suffered significant injuries when the airbag did not deploy. GM LLC admits the power mode status was recorded as Accessory at the time of the crash. GM engineers evaluating the crash theorized that the non-deployment here may have been caused by a crash sensing "anomaly" related to the ignition switch. GM LLC further admits that the data retrieved from the SDM recorded the vehicle's power mode status as being in the "Accessory" position at the time of the algorithm enable. GM LLC admits that it received notice of this accident, opened a file, and that certain documents referred to it as the "Sullivan" incident.

218.    In May 2012, the GM Safety Attorney asked a GM Vice President to act as an "Executive Champion" in order to propel the issue related to the defective switch forward. During the first meeting chaired by this Executive Champion, on May 15, 2012, the GM Electrical Engineer presented his view that the defective switch was the cause of non-deployment in the affected Cobalt models. GM LLC denies the remaining allegations in Paragraph 218 of the Second Amended Complaint.

219.    GM LLC incorporates by reference its admissions and averments in Paragraph 3 above. GM LLC admits that on May 22, 2012, GM LLC engineers measured the torque and pull down force associated with rotating the key in a number of Cobalt, G5, HHR, and Ion vehicles in a junkyard. GM LLC admits that these measurements were graphed, recorded, and reported to the Field Performance Evaluation Team. GM LLC admits that the results confirmed that the majority of vehicles from model years 2003 through 2007 exhibited torque performance below the torque specification that Old GM had adopted in 2001. They also showed that starting somewhere in model year 2007 (that is, for vehicles produced at some point in 2006), the torque values were higher and within specification.

220.    GM LLC admits that in September 2012, Stouffer requested assistance from the Red X team to examine changes on the Cobalt between 2007 and 2008 model years. GM LLC admits that a Red X study was initiated on or about September 2012, and that the project was closed in May 2013. The PI Investigator, the PI Senior Manager, the GM Safety Attorney, the GM Safety Director, and others met at lengthy intervals through the summer and fall of 2012 and early 2013 to consider potential solutions and further explore why the defect condition appeared to be limited to earlier model years. As one of the several Executive Champions who would be tasked with overseeing these meetings from early 2012 through 2013 has explained, the purpose

of the meetings was not to identify the root cause of the problem, which had by approximately the spring of 2012 been traced to the defective switch, but rather to develop the optimal remedy for the defect condition and set with precision the scope of the anticipated recall. GM LLC denies the remaining allegations in Paragraph 220 of the Second Amended Complaint.

221.    GM LLC incorporates by reference its admissions and averments in Paragraph 220 above. GM LLC admits that a September 6, 2012 email from Brian Stouffer to GM LLC employee Bill Merrill requesting Red X assistance states that "[t]here are many reports of [vehicle stalling root caused by knee contact with the key/key fob that turned the ignition] for 2005-7 [Cobalts]" and that "with the ignition in [the "off"] position, the airbags will not deploy."

222.    GM LLC admits the allegations in Paragraph 222 of the Second Amended Complaint.

223.    GM LLC admits David Friedman held a press conference on May 16, 2014. GM LLC admits Paragraph 223 purports to characterize portions of Mr. Friedman's press conference, which speaks for itself.

224.    GM LLC incorporates by reference its admissions and averments in Paragraph 223 above. GM LLC admits Paragraph 224 purports to characterize portions of Mr. Friedman's press conference, which speaks for itself.

225.    GM LLC incorporates by reference its admissions and averments in Paragraphs 3, 58, 213, and 220 above. GM LLC admits confidential settlements were negotiated with claimants who were involved in accidents in vehicles subject to Recall 14v047, the terms of which speak for themselves. GM LLC further admits the crash sensing "anomaly" risked the prospect of punitive damages in the Tennessee crash and GM LLC settled the case three months later. GM LLC denies the remaining allegations in Paragraph 225 of the Second Amended Complaint. GM

LLC further denies that the subject 2007 Saturn Sky at issue in this suit experienced the Ignition Switch Recall condition, and denies that it is liable to Plaintiffs in any respect.

226.    GM LLC incorporates by reference its admissions and averments in Paragraphs 3 and 56 above. GM LLC admits Paragraph 226 purports to quote customer complaints, the text of which speaks for itself. GM LLC denies the remaining allegations in Paragraph 226 of the Second Amended Complaint.

227.    GM LLC objects to the allegations in Paragraph 227 of the Second Amended Complaint as vague, ambiguous, and undefined. Subject thereto, GM LLC incorporates by reference its admissions and averments in Paragraphs 3 and 201 above. GM LLC admits that the letter to NHTSA dated March 11, 2014 stated, pursuant to 49 C.F.R. § 573.6(c)(8), that dealers were to replace the ignition switch. GM LLC further admits that the owner notification letter, pursuant to 49 C.F.R. § 577, provides that dealers will also cut and, if necessary, re-learn two ignition/door keys for each vehicle. GM LLC denies the remaining allegations in Paragraph 227 of the Second Amended Complaint.

228.    GM LLC incorporates by reference its admissions and averments in Paragraph 127 above. GM LLC admits that in late 2012, GM LLC engineers identified several potential ideas to address the Cobalt's ignition switch issues, including adding a shroud to prevent a driver's knee from contacting the key, modifying the key and lock cylinder to orient the key in an upward facing orientation when in the "run" position, and adding a push button to the lock cylinder to prevent it from slipping out of the "run" position. GM LLC admits these ideas were rejected. GM LLC denies the remaining allegations in Paragraph 228 of the Second Amended Complaint.

229.    GM LLC admits that the photographs depicted in Paragraph 229 appear to show an Old GM engineer in the driver's seat of a Cobalt and that those photographs appear in Old GM's FPR 0793/2005/US in 2005. GM LLC denies the remaining allegations in Paragraph 229 of the Second Amended Complaint.

230.    GM LLC incorporates by reference its admissions and averments in Paragraphs 3, 201, and 229 above. GM LLC denies the remaining allegations in Paragraph 230 of the Second Amended Complaint.

231.    GM LLC incorporates by reference its admissions and averments in Paragraphs 3, 201, and 229 above. GM LLC objects to the remaining allegations in Paragraph 231 of the Second Amended Complaint as they call for a legal conclusion, and therefore, no response is required. To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 231 of the Second Amended Complaint.

232.    GM LLC admits on October 4, 2012, Jim Federico hosted a meeting, after which, Brian Stouffer wrote in an e-mail that stated as follows:

> At today's Jim Federico update on the 2005-7 Cobalt airbag investigation our primary discussion was on what it would take to keep the SDM active if the ignition key was turned to the accessory mode. In addition to that, we also discussed other potential options. One mentioned was revising the ignition switch to increase the effort to turn the key from Run to Accessory. The torque value desired is TBD.
>
> For our next Federico update (approximate 2 weeks), please develop a high level proposal on what it would take to create a new switch for service with higher efforts.

GM LLC denies the remaining allegations in Paragraph 232 of the Second Amended Complaint.

233.    GM LLC incorporates by reference its admissions and averments in Paragraph 232 above.

234.    GM LLC incorporates by reference its admissions and averments in Paragraph 232 above. GM LLC admits an October 5, 2012 email from Raymond DeGiorgio to Brian Stouffer states as follows:

> Brian,
> In order to provide you with a HIGH level proposal, I need to understand what my requirements are.
>
> - what is the TORQUE value that you desire?
>
> Without this information I cannot develop a proposal.

GM LLC denies the remaining allegations in Paragraph 234 of the Second Amended Complaint.

235.    GM LLC admits the allegations in Paragraph 235 of the Second Amended Complaint.

236.    GM LLC admits Paragraph 236 of the Second Amended Complaint accurately quotes an October 5, 2012 email from DeGiorgio to Stouffer.  GM LLC denies the remaining allegations in Paragraph 236 of the Second Amended Complaint.

237.    GM LLC admits that Paragraph 237 purports to characterize pages 69-70 of the deposition of Brian Stouffer taken May 1, 2013 in *Melton v. General Motors,* No. 2011-A-2652 ("*Melton I*").

238.    GM LLC incorporates by reference its admissions and averments in Paragraphs 3 and 130 above. GM LLC denies the remaining allegations in Paragraph 238 of the Second Amended Complaint.

239.    GM LLC denies the allegations in Paragraph 239 of the Second Amended Complaint.

240.    GM LLC admits that in December 2012, in Pensacola, Florida, Ebram Handy, a GM LLC engineer, attended an inspection of components from Brooke Melton's Cobalt,

including the ignition switch. GM LLC admits that Mark Hood, a mechanical engineer retained by the Meltons, conducted testing on the ignition switch from Ms. Melton's vehicle, as well as a replacement Cobalt ignition switch provided by Mr. Hood. GM LLC denies the remaining allegations in Paragraph 240 of the Second Amended Complaint.

241.    GM LLC admits that during the inspection in December 2012, Ebram Handy observed plaintiffs' expert Mark Hood take and record measurements of the torque required to move the key in the ignition switch from Brooke Melton's 2005 Cobalt from various positions. GM LLC further admits that at that same inspection, Mr. Handy observed Mr. Hood take and record measurements of the torque required to move the key in a Cobalt replacement ignition switch provided by Mr. Hood from various positions. GM LLC admits that the torque measurements for the Cobalt replacement ignition switch provided by Mr. Hood were higher than the torque measurements for the ignition switch from Brooke Melton's 2005 Cobalt. GM LLC denies the remaining allegations in Paragraph 241 of the Second Amended Complaint.

242.    GM LLC admits that on April 29, 2013, Raymond DeGiorgio, the Design Release Engineer for the ignition switch, was deposed in *Melton I*. GM LLC admits Paragraph 242 accurately quotes portions of DeGiorgio's deposition.

243.    GM LLC incorporates by reference its admissions and averments in Paragraphs 130 and 183 above. GM LLC admits that on April 29, 2013, the Georgia Crash plaintiffs' attorney took the deposition of the Switch DRE. During that deposition, the plaintiffs' attorney showed x-ray photographs of the ignition switch from the subject vehicle (the defective switch) and another switch from a later model year Cobalt (one installed after implementation of the Switch DRE's April 2006 part change directive). The photographs showed that the detent plunger in the Georgia Crash car was much shorter—and therefore would have had much lower

71

torque performance—than the one in the later model year Cobalt. The Switch DRE, confronted with these photographs, continued to deny knowledge of any change to the switch that would have accounted for this difference.

But, as the Switch DRE has acknowledged, he knew almost immediately following his deposition that there had been a design change to the switch following production of the model year 2005 Cobalt, and that he must have been the engineer responsible for that design change. He knew as much because, the day after the April 29, 2013 deposition, he personally collected and took apart switches from a 2005 Cobalt and a later model year Cobalt and observed the difference in lengths of their respective detent plungers. The Switch DRE has said that he recalls communicating these observations to his boss and to another supervisor and being advised to let the legal department handle the matter. GM LLC denies the remaining allegations in Paragraph 243 of the Second Amended Complaint.

244.    GM LLC incorporates by reference its admissions and averments in Paragraphs 3, 56, 57, and 159 above. GM LLC denies that the Ignition Switch Recall condition manifests in every individual vehicle with a defective switch, and further denies that every individual vehicle with a defective switch will experience a stall condition.

245.    GM LLC incorporates by reference its admissions and averments in Paragraphs 3 above. GM LLC denies the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash, and denies it is liable to Plaintiffs. GM LLC also denies that the Ignition Switch Recall condition manifests in every individual vehicle with a defective switch, and further denies that every individual vehicle with a defective switch will experience a stall condition. GM LLC objects to the remaining allegations in Paragraph 245 of the Second Amended Complaint as they call for a legal conclusion, and therefore, no response is required.

To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 245 of the Second Amended Complaint.

246.    GM LLC incorporates by reference its admissions and averments in Paragraphs 3 and 56 above. GM LLC denies the remaining allegations in Paragraph 246 of the Second Amended Complaint.

247.    GM LLC admits the allegations in Paragraph 247 of the Second Amended Complaint.

248.    GM LLC incorporates by reference its admissions and averments in Paragraphs 56 and 159 above. GM LLC admits it has received customer complaints related to vehicle stalls, but is without sufficient information to admit or deny the allegations concerning the number of complaints received concerning "stalling or misperforming vehicles due to ignition issues, including 'heavy key chains,'" and therefore denies same. GM LLC denies the remaining allegations in Paragraph 248 of the Second Amended Complaint.

249.    GM LLC admits Paragraph 249 purports to characterize customer complaints, the text of which speaks for itself. GM LLC denies the remaining allegations in Paragraph 249 of the Second Amended Complaint.

250.    GM LLC admits Paragraph 250 purports to characterize a customer complaint made in February 2014, the text of which speaks for itself. GM LLC denies the remaining allegations in Paragraph 250 of the Second Amended Complaint.

251.    GM LLC admits Paragraph 251 purports to characterize a customer complaint made in January 2011, the text of which speaks for itself. GM LLC denies the remaining allegations in Paragraph 251 of the Second Amended Complaint.

252.     GM LLC incorporates by reference its admissions and averments in Paragraph 3 above.

GM LLC admits that on January 31, 2014, the voting members agreed that a recall of the affected model year Cobalts, G5s, and Pursuits was warranted. On February 7, 2014, GM LLC announced the recall to the public and NHTSA. GM LLC denies the remaining allegations in Paragraph 252 of the Second Amended Complaint.

253.     GM LLC incorporates by reference its admissions and averments in Paragraph 3 above. GM LLC admits that the 2003-2006 and certain 2007 MY Saturn Sky vehicles had the same ignition switch as that in the 2005-2007 MY Chevrolet Cobalt and 2007 MY Pontiac G5 vehicles. GM LLC denies that the Saturn Sky has the same platform as the Cobalt.

254.     GM LLC incorporates by reference its admissions and averments in Paragraph 3 above. GM LLC admits the allegations in Paragraph 254 of the Second Amended Complaint.

255.     GM LLC admits that GM Chief Executive Officer Mary Barra issued a video message on March 17, 2014. GM LLC admits Paragraph 255 accurately quotes a portion of that video message. GM LLC denies the remaining allegations in Paragraph 255 of the Second Amended Complaint.

256.     GM LLC incorporates by reference its admissions and averments in Paragraph 3 above. GM LLC denies the remaining allegations in Paragraph 256 of the Second Amended Complaint.

257.     GM LLC incorporates by reference its admissions and averments in Paragraph 3 above. GM LLC admits that Mary Barra provided testimony to a U.S. House of Representatives committee and a U.S. Senate committee on April 1 and April 2, 2014, respectively. GM LLC further admits Ms. Barra and Executive Vice President Mike Millikin testified before the U.S.

Senate Committee on Commerce, Science, and Transportation's Subcommittee on Consumer Protection, Product Safety and Insurance on July 17, 2014. GM LLC admits that its Board of Directors hired Anton R. Valukas and Jenner & Block LLP to conduct an internal investigation into events related to the ignition switch recall, Recall No. 14v047. GM LLC objects to the remaining allegations in Paragraph 257 of the Second Amended Complaint as they call for a legal conclusion, and therefore, no response is required. To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 257 of the Second Amended Complaint.

258.　　GM LLC admits it created the Facility, which is administered by Kenneth R. Feinberg. GM LLC further admits that Paragraph 258 accurately quotes a portion of Mary Barra's April 1, 2014 congressional testimony. GM LLC denies the remaining allegations in Paragraph 258 of the Second Amended Complaint.

259.　　GM LLC incorporates by reference its admissions and averments in Paragraphs 3 and 4 above. GM LLC further admits that the Facility's website (section 1.3 of the Frequently Asked Questions) provides that to be eligible to file a claim with the Facility the claimant must meet certain criteria. GM LLC denies the remaining allegations in Paragraph 259 of the Second Amended Complaint.

260.　　GM LLC admits that in March 2014, it sent a notice letter to owners related to Recall No. 14v047, pursuant to 49 C.F.R. § 573.6(c)(8) that provided as follows:

> There is a risk, under certain conditions, that your ignition switch may move out of the "run" position, resulting in a partial loss of electrical power and turning off the engine. This risk increases if your key ring is carrying added weight (such as more keys or the key fob) or your vehicle experiences rough road conditions or other jarring or impact related events. If the ignition switch is not in the run position, the air bags may not deploy if the vehicle is involved in a crash, increasing the risk of injury or fatality.

> **Until the recall repairs have been performed, it is <u>very</u>**
> **important that you remove all items from your key ring,**
> **leaving only the vehicle key. The key fob (if applicable), should**
> **also be removed from your key ring.**

GM LLC denies the remaining allegations in Paragraph 260 of the Second Amended Complaint.

261.    GM LLC incorporates by reference its admissions and averments in Paragraphs 227 and 260 above. GM LLC admits that Paragraph 261 characterizes Mary Barra's April 1, 2014 congressional testimony, the text of which speaks for itself. GM LLC denies the remaining allegations in Paragraph 261 of the Second Amended Complaint.

262.    GM LLC admits that in its Consent Order with NHTSA, it agreed to complete its production of 2,258,980 service kits by October 4, 2014. GM LLC denies the remaining allegations in Paragraph 262 of the Second Amended Complaint.

263.    GM LLC admits it reported to NHTSA that as of October 20, 2014 GM LLC had remedied 865,477 of the total 2,190,934 recalled vehicles and that as of January 23, 2015 it had remedied 1,229,529 of the recalled vehicles. GM LLC denies the remaining allegations in Paragraph 263 of the Second Amended Complaint.

264.    GM LLC admits that Paragraph 264 purports to quote a September 8, 2014 statement by Mary Barra, the text of which speaks for itself. GM LLC denies the remaining allegations in Paragraph 264 of the Second Amended Complaint.

265.    GM LLC is without sufficient information to admit or deny the allegations in Paragraph 265 related to a dealer's "recall concierge," and therefore denies same. GM LLC denies the remaining allegations in Paragraph 265 of the Second Amended Complaint.

266.    GM LLC incorporates by reference its admissions and averments in Paragraph 263 above. GM LLC admits the owner notification letter related to Recall No. 14v047 did not provide information concerning loaner vehicles, but also admits that GM LLC's website related

to the Ignition Switch Recall, www.gmignitionupdate.com, did provide such information. GM LLC denies the remaining allegations in Paragraph 266 of the Second Amended Complaint.

267.    GM LLC denies the allegations in Paragraph 267 of the Second Amended Complaint.

268.    GM LLC admits its website, www.gmignitionupdate.com, provided information related to the eligibility of obtaining a loaner vehicle. GM LLC denies the remaining allegations in Paragraph 268 of the Second Amended Complaint.

269.    GM LLC admits that Paragraph 269 purports to characterize portions of its website, www.gmignitionupdate.com, the content of which speaks for itself. GM LLC denies the remaining allegations in Paragraph 269 of the Second Amended Complaint.

270.    GM LLC admits that the Frequently Asked Questions section of the website www.gmignitionupdate.com provides the following answer to the question "Who is eligible for a rental vehicle:"

> Any affected customer who is concerned about operating their vehicle may request courtesy transportation. Dealership service management is empowered to place the customer into a rental or loaner vehicle until parts are available to repair the customer's vehicle. In some states, there are age restrictions that limit the ability to obtain a rental vehicle. In such cases, a legal parent or guardian will be required to sign the vehicle rental contract and take full responsibility for the rental vehicle. Additionally, in some states, drivers under a certain age may be required to pay a premium rate to rent or insure a vehicle. To address these situations, GM will cover these additional expenses.

GM LLC denies the remaining allegations in Paragraph 270 of the Second Amended Complaint.

271.    GM LLC incorporates by reference its admissions and averments in Paragraph 270 above. GM LLC denies the remaining allegations in Paragraph 271 of the Second Amended Complaint.

272.     GM LLC is without sufficient knowledge or information to admit or deny the allegations in Paragraph 272 concerning the expectations of individual drivers and passengers, and therefore denies same. GM LLC denies the remaining allegations in Paragraph 272 of the Second Amended Complaint.

273.     GM LLC incorporates by reference its admissions and averments in Paragraph 272 above. GM LLC is without sufficient knowledge or information to admit or deny the allegations in Paragraph 273 related to the expectations of individual drivers and passengers, and therefore denies same. GM LLC denies the remaining allegations in Paragraph 273 of the Second Amended Complaint.

274.     GM LLC incorporates by reference its admissions and averments in Paragraphs 260 and 266 above. GM LLC admits that Paragraph 274 purports to characterize a September 25, 2014 article from the *New York Times* related to Lara Gass, the text of which speaks for itself. GM LLC is without sufficient knowledge or information to admit or deny the allegations in Paragraph 274 related to whether Ms. Gass's vehicle experienced the Ignition Switch Recall condition at the time of the accident in which she was allegedly involved, and therefore denies same. GM LLC denies the remaining allegations in Paragraph 274 of the Second Amended Complaint.

275.     GM LLC incorporates by reference its admissions and averments in Paragraphs 3 and 143 above. GM LLC is without sufficient knowledge or information necessary to form a belief as to the truth of the allegations related to the knowledge of any individual consumer, and therefore denies same.

276.     GM LLC denies the allegations in Paragraph 276 of the Second Amended Complaint.

277.    GM LLC incorporates by reference its admissions and averments in Paragraph 3 above. GM LLC denies the remaining allegations in Paragraph 277 of the Second Amended Complaint.

278.    GM LLC admits that Paragraph 278 purports to characterize and partially quote from the Valukas Report, which speaks for itself. GM LLC denies the remaining allegations in Paragraph 278 of the Second Amended Complaint.

279.    GM LLC admits that Paragraph 279 purports to characterize and partially quote from the Valukas Report, which speaks for itself. GM LLC denies the remaining allegations in Paragraph 279 of the Second Amended Complaint.

280.    GM LLC admits that Paragraph 280 purports to characterize and partially quote from the Valukas Report, which speaks for itself. GM LLC denies the remaining allegations in Paragraph 280 of the Second Amended Complaint.

281.    GM LLC admits that Paragraph 281 purports to characterize portions of the Valukas Report, which speaks for itself. GM LLC denies the remaining allegations in Paragraph 281 of the Second Amended Complaint.

282.    GM LLC admits that Paragraph 282 characterizes and accurately quotes from page 3 of a 2012 Global Product Description System document titled "GRC 3.1.1 Part Number Assignment." GM LLC further admits that the document states that "[t]he intended result of this process is to minimize needless part number changes and to allow no-part number changes when there is a benefit in doing so. The ultimate result will be cost savings to the corporation." GM LLC further admits that the document states that the purpose of the process was "to clearly define the requirements for changing or not changing part numbers and to define the process to

request a part number not be changed based on a legitimate business case." GM LLC denies the remaining allegations in Paragraph 282 of the Second Amended Complaint.

283.   GM LLC incorporates by reference its admissions and averments in Paragraphs 3 and 220 above. GM LLC denies the remaining allegations in Paragraph 283 of the Second Amended Complaint.

284.   GM LLC incorporates by reference its admissions and averments in Paragraph 3 above. GM LLC denies that the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash, denies the nondeployment of the airbags caused or contributed to causing Plaintiffs' alleged injuries, and denies it is liable to Plaintiffs.

285.   GM LLC incorporates by reference its admissions and averments in Paragraphs 3 and 227 above. GM LLC denies the remaining allegations in Paragraph 285 of the Second Amended Complaint.

286.   GM LLC admits that Paragraph 286 purports to characterize portions of the Valukas Report, which speaks for itself. GM LLC denies the remaining allegations in Paragraph 286 of the Second Amended Complaint.

287.   GM LLC admits that Paragraph 287 purports to characterize portions of the Valukas Report, which speaks for itself. GM LLC denies the remaining allegations in Paragraph 287 of the Second Amended Complaint.

288.   GM LLC admits that Paragraph 288 purports to characterize portions of the Valukas Report, which speaks for itself. GM LLC denies the remaining allegations in Paragraph 288 of the Second Amended Complaint.

289.   GM LLC incorporates by reference its admissions and averments in Paragraph 151 above. GM LLC admits that Paragraph 289 purports to characterize portions of the Valukas

Report, which speaks for itself. GM LLC denies the remaining allegations in Paragraph 289 of the Second Amended Complaint.

290.    GM LLC incorporates by reference its admissions and averments in Paragraph 151 above. GM LLC admits that Paragraph 290 purports to characterize portions of the Valukas Report, which speaks for itself. GM LLC denies the remaining allegations in Paragraph 290 of the Second Amended Complaint.

291.    GM LLC admits that Paragraph 291 purports to characterize portions of the Valukas Report, which speaks for itself. GM LLC denies the remaining allegations in Paragraph 291 of the Second Amended Complaint.

292.    GM LLC denies the allegations in Paragraph 292 of the Second Amended Complaint.

293.    GM LLC admits that Paragraph 293 purports to characterize and partially quote from portions of the Valukas Report, which speaks for itself. GM LLC denies the remaining allegations in Paragraph 293 of the Second Amended Complaint.

294.    GM LLC admits that Paragraph 294 purports to characterize page 292 of Dwayne Davidson's May 15, 2015 deposition testimony, the text of which speaks for itself. GM LLC denies the remaining allegations in Paragraph 294 of the Second Amended Complaint.

295.    GM LLC admits that Paragraph 295 purports to characterize and partially quote from portions of the Valukas Report, which speaks for itself. GM LLC denies the remaining allegations in Paragraph 295 of the Second Amended Complaint.

296.    GM LLC admits that Paragraph 296 purports to characterize and partially quote from portions of the Valukas Report, which speaks for itself. GM LLC denies the remaining allegations in Paragraph 296 of the Second Amended Complaint.

297.    GM LLC admits that Paragraph 297 purports to characterize and partially quote from portions of the Valukas Report, which speaks for itself. GM LLC denies the remaining allegations in Paragraph 297 of the Second Amended Complaint.

298.    GM LLC incorporates by reference its admissions and averments in Paragraphs 3 and 140 above. GM LLC admits that Paragraph 298 purports to characterize and partially quote from portions of the Valukas Report, which speaks for itself.  GM LLC denies that Old GM had concluded in 2005 that there was a safety defect in ignition switches that are the subject of Recall No. 14v047.

299.    GM LLC admits that Paragraph 299 purports to characterize and partially quote from portions of the Valukas Report, which speaks for itself.  GM LLC denies the remaining allegations in Paragraph 299 of the Second Amended Complaint.

300.    GM LLC admits that Paragraph 300 purports to characterize and partially quote from portions of the Valukas Report, which speaks for itself. GM LLC denies the remaining allegations in Paragraph 300 of the Second Amended Complaint.

301.    GM LLC incorporates by reference its admissions and averments in Paragraph 3 above. GM LLC admits Paragraph 301 purports to characterize and quote from materials attached as an exhibit to the Consent Order, which speaks for itself. GM LLC objects to the remaining allegations in Paragraph 301 of the Second Amended Complaint as they call for a legal conclusion, and therefore, no response is required. To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 301 of the Second Amended Complaint.

302.    GM LLC admits Paragraph 302 purports to characterize and quote from materials attached as an exhibit to the Consent Order, which speaks for itself. GM LLC denies the remaining allegations in Paragraph 302 of the Second Amended Complaint.

303.    GM LLC admits Paragraph 303 purports to characterize and quote from materials attached as an exhibit to the Consent Order, which speaks for itself. GM LLC denies the remaining allegations in Paragraph 303 of the Second Amended Complaint.

304.    GM LLC admits Paragraph 304 purports to characterize and quote from materials attached as an exhibit to the Consent Order, which speaks for itself. GM LLC denies the remaining allegations in Paragraph 304 of the Second Amended Complaint.

305.    GM LLC admits Paragraph 305 purports to characterize and quote from materials attached as an exhibit to the Consent Order, which speaks for itself. GM LLC denies the remaining allegations in Paragraph 305 of the Second Amended Complaint.

306.    GM LLC admits that Paragraph 306 purports to characterize and quote from NHTSA Acting Administrator David Friedman's comments at a May 16, 2014 press conference. GM LLC denies the remaining allegations in Paragraph 306 of the Second Amended Complaint.

307.    GM LLC incorporates by reference its admissions and averments in Paragraphs 3 above. GM LLC denies the remaining allegations in Paragraph 307 of the Second Amended Complaint.

308.    GM LLC admits that Paragraph 308 purports to characterize and partially quote from portions of the Valukas Report, which speaks for itself. GM LLC denies the remaining allegations in Paragraph 308 of the Second Amended Complaint.

309.    GM LLC denies the allegations in Paragraph 309 of the Second Amended Complaint.

310.    GM LLC admits that Paragraph 310 purports to characterize and partially quote from portions of the Valukas Report, which speaks for itself. GM LLC denies the remaining allegations in Paragraph 310 of the Second Amended Complaint.

311.    GM LLC incorporates by reference its admissions and averments in Paragraph 3 above.  GM LLC admits that the Valukas Report includes recommendations for improving GM LLC's organizational structure. GM LLC admits that Paragraph 311 purports to characterize and partially quote from portions of the Valukas Report, which speaks for itself. GM LLC objects to the remaining allegations in Paragraph 311 of the Second Amended Complaint as they call for a legal conclusion, and therefore, no response is required. To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 311 of the Second Amended Complaint.

312.    GM LLC incorporates by reference its admissions and averments in Paragraphs 3, 13, and 45 above. GM LLC denies the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash, and denies it is liable to Plaintiffs. GM LLC objects to the remaining allegations in Paragraph 312 of the Second Amended Complaint as they call for a legal conclusion, and therefore, no response is required. To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 312 of the Second Amended Complaint.

313.    GM LLC incorporates by reference its admissions and averments in Paragraph 3 above. GM LLC denies Plaintiffs purchased the subject 2007 Saturn Sky as a certified preowned vehicle, denies the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash, and denies it is liable to Plaintiffs. GM LLC objects to the remaining allegations in Paragraph 313 of the Second Amended Complaint as they call for a legal conclusion, and therefore, no response is required. To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 313 of the Second Amended Complaint.

314.    GM LLC incorporates by reference its admissions and averments in Paragraphs 3 and 225 above. GM LLC objects to the remaining allegations in Paragraph 314 of the Second Amended Complaint as they call for a legal conclusion, and therefore, no response is required.

To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 314 of the Second Amended Complaint.

315.    GM LLC admits certain of its employees received severance packages, but denies the remaining allegations in Paragraph 315 of the Second Amended Complaint.

316.    GM LLC admits that Paragraph 316 purports to characterize press releases and other statements made by GM LLC related to company changes that have been implemented since February 2014. GM LLC denies the allegations in Paragraph 316 of the Second Amended Complaint.

317.    GM LLC admits that Paragraph 317 accurately quotes a February 25, 2014 statement by GM North America President Alan Batey in a press release. GM LLC denies the remaining allegations in Paragraph 317 of the Second Amended Complaint.

318.    GM LLC admits that Paragraph 318 accurately quotes a statement by GM LLC Vice President, Global Vehicle Safety Jeff Boyer in a March 18, 2014 GM LLC press release titled "GM Announces New Vehicle Safety Chief." GM LLC denies the remaining allegations in Paragraph 318 of the Second Amended Complaint.

319.    GM LLC admits that Paragraph 319 accurately quotes a statement by Mary Barra in an April 10, 2014 GM LLC press release titled "GM Creates Speak Up For Safety Program For Employees." GM LLC denies the remaining allegations in Paragraph 319 of the Second Amended Complaint.

320.    GM LLC admits that in a May 13, 2014 video titled "Testing Shows GM Ignition Switch Recall Vehicles Safe to Drive," GM LLC's Vice President, Global Safety Jeff Boyer stated that GM LLC's Milford Proving Ground is "one of the largest and most comprehensive automotive testing facilities in the world." GM LLC further admits that Boyer stated that GM

LLC's testing showed that "these vehicles are safe to drive with just the single key." GM LLC denies the remaining allegations in Paragraph 320 of the Second Amended Complaint.

321.    GM LLC admits that Paragraph 321 accurately quotes from a July 31, 2014 video titled "90 Years of Safety Testing at GM's Milford Proving Ground." GM LLC denies the remaining allegations in Paragraph 321 of the Second Amended Complaint.

322.    GM LLC admits that Paragraph 322 accurately quotes a statement in a July 31, 2014 article titled "Celebrating 90 Years of GM's Milford Proving Ground." GM LLC denies the remaining allegations in Paragraph 322 of the Second Amended Complaint.

323.    GM LLC incorporates by reference its admissions and averments in Paragraphs 3 above. GM LLC denies the remaining allegations in Paragraph 323 of the Second Amended Complaint.

324.    GM LLC incorporates by reference its admissions and averments in Paragraphs 3 above. GM LLC admits that Paragraph 324 accurately quotes a statement in GM LLC's 2010 10-K filing. GM LLC denies the remaining allegations in Paragraph 324 of the Second Amended Complaint.

325.    GM LLC admits that Paragraph 325 accurately quotes a statement in GM LLC's 2010 10-K filing. GM LLC denies the remaining allegations in Paragraph 325 of the Second Amended Complaint.

326.    GM LLC admits that Paragraph 326 accurately quotes from a September 25, 2013 article on GM LLC's website titled "Chevrolet Models Hold More NHTSA 5-Star Safety Ratings Than Competitors." GM LLC denies the remaining allegations in Paragraph 326 of the Second Amended Complaint.

327.   GM LLC denies the allegations in Paragraph 327 of the Second Amended Complaint.

328.   GM LLC incorporates by reference its admissions and averments in Paragraph 3 above. GM LLC objects to the remaining allegations in Paragraph 328 of the Second Amended Complaint as they call for a legal conclusion, and therefore, no response is required. To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 328 of the Second Amended Complaint.

329.   GM LLC incorporates by reference its admissions and averments in Paragraphs 3 and 85 above. GM LLC admits that Paragraph 329 purports to characterize a February 27, 2014 CBS news report, which speaks for itself. GM LLC denies the remaining allegations in Paragraph 329 of the Second Amended Complaint.

330.   GM LLC incorporates by reference its admissions and averments in Paragraphs 3 and 56 above. GM LLC admits that Paragraph 330 purports to show a hyperlink to the CBS news report identified in Paragraph 329 above, which speaks for itself.

331.   GM LLC admits that Paragraph 331 depicts a headline of a March 13, 2014 CNN report, the content of which speaks for itself.

332.   GM LLC admits that Paragraph 332 quotes from a March 16, 2014 Reuters article, the content of which speaks for itself.

333.   GM LLC admits that on March 24, 2014, the *New York Times* published an article titled "General Motors Misled Grieving Families on a Lethal Flaw."

334.   GM LLC incorporates by reference its admissions and averments in Paragraphs 3, 56, 57, 60, 157, 159, 202, and 225 above.  GM LLC admits that Paragraph 334 quotes from the *New York Times* article referenced in Paragraph 333 above, the content of which speaks for

itself. GM LLC denies the remaining allegations in Paragraph 334 of the Second Amended Complaint.

335.    GM LLC admits that on March 31, 2014, NPR published an article titled "Timeline: A History of GM's Ignition Switch Defect."

336.    GM LLC incorporates by reference its admissions and averments in Paragraphs 3 and 62 above. GM LLC admits that Paragraph 336 accurately quotes from the NPR news story referenced in Paragraph 335 above.

337.    GM LLC admits that Paragraph 337 accurately quotes from a May 11, 2014 article by the *Chicago Tribune* titled "GM ranked worst automaker by U.S. suppliers: survey." GM LLC denies the remaining allegations in Paragraph 337 of the Second Amended Complaint.

338.    GM LLC admits that Paragraph 338 accurately quotes from a May 25, 2014 article titled "When Will GM's Recall Mess End?"

339.    GM LLC incorporates by reference its admissions and averments in Paragraph 56 above. GM LLC admits that on May 26, 2014, the *New York Times* published an article titled "13 Deaths, Untold Heartache, From G.M. Defect."

340.    GM LLC admits that Paragraph 340 accurately quotes from the article referenced in Paragraph 339 above. GM LLC denies the remaining allegations in Paragraph 340 of the Second Amended Complaint.

341.    GM LLC denies the allegations in Paragraph 341 of the Second Amended Complaint.

342.    GM LLC admits that media outlets reported on the congressional hearings involving GM LLC executives. GM LLC denies the remaining allegations in Paragraph 342 of the Second Amended Complaint.

343.    GM LLC denies the allegations in Paragraph 343 of the Second Amended Complaint.

344.    GM LLC denies that any of its conduct has caused injuries or damages to Plaintiffs.

## ALLEGATIONS OF VIOLATION OF LOUISIANA PRODUCTS LIABILITY ACT

345.    GM LLC adopts and incorporates by reference each and every denial and/or averment in the preceding paragraphs.

346.    No response is required by GM LLC as such is a question of law for the Court to decide. To the extent a response is required, GM LLC admits Paragraph 346 identifies the basis for a manufacturer's liability under the Louisiana Products Liability Act. GM LLC denies that it is liable to Plaintiffs to under any theory of recovery.

347.    GM LLC incorporates by reference its admissions and averments in Paragraphs 3 and 4 above. GM LLC denies the remaining allegations in Paragraph 347 of the Second Amended Complaint.

348.    GM LLC incorporates by reference its admissions and averments in Paragraph 4 above. GM LLC denies the remaining allegations in Paragraph 348 of the Second Amended Complaint.

349.    GM LLC incorporates by reference its admissions and averments in Paragraph 4 above. GM LLC denies the remaining allegations in Paragraph 349 of the Second Amended Complaint.

350.    GM LLC incorporates by reference its admissions and averments in Paragraphs 3, 4, 5, and 143 above. GM LLC denies the remaining allegations in Paragraph 350 of the Second Amended Complaint.

351.     GM LLC incorporates by reference its admissions and averments in Paragraphs 3, 4, and 5 above. GM LLC denies Plaintiffs purchased the subject 2007 Saturn Sky as a certified preowned vehicle, denies the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash, and denies it is liable to Plaintiffs. GM LLC denies the remaining allegations in Paragraph 351 of the Second Amended Complaint.

352.     GM LLC incorporates by reference its admissions and averments in Paragraph 4 above. GM LLC denies the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash, and denies it is liable to Plaintiffs. GM LLC denies the remaining allegations in Paragraph 352 of the Second Amended Complaint.

353.     GM LLC incorporates by reference its admissions and averments in Paragraphs 3 and 4 above. GM LLC objects to the remaining allegations in Paragraph 353 of the Second Amended Complaint as they call for a legal conclusion, and therefore, no response is required. To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 353 of the Second Amended Complaint.

354.     GM LLC incorporates by reference its admissions and averments in Paragraphs 1 and 4 above. GM LLC denies Plaintiffs purchased the subject 2007 Saturn Sky as a certified preowned vehicle, denies the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash, and denies it is liable to Plaintiffs. GM LLC denies the remaining allegations in Paragraph 354 of the Second Amended Complaint.

355.     GM LLC incorporates by reference its admissions and averments in Paragraphs 3 and 4 above. GM LLC denies Plaintiffs purchased the subject 2007 Saturn Sky as a certified preowned vehicle, denies the subject 2007 Saturn Sky experienced the Ignition Switch Recall

condition at the time of the crash, and denies it is liable to Plaintiffs. GM LLC denies the remaining allegations in Paragraph 355 of the Second Amended Complaint.

356.    GM LLC incorporates by reference its admissions and averments in Paragraphs 1, 3 and 4 above. GM LLC is without sufficient information to admit or deny the remaining allegations in Paragraph 356 of the Second Amended Complaint, and therefore denies same.

357.    GM LLC incorporates by reference its admissions and averments in Paragraphs 3 and 4 above. GM LLC admits Plaintiffs were intended and foreseeable users of the subject 2007 Saturn Sky.  GM LLC denies the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash, and denies it is liable to Plaintiffs. GM LLC denies the remaining allegations in Paragraph 357 of the Second Amended Complaint.

358.    GM LLC incorporates by reference its admissions and averments in Paragraphs 3 and 158 above. GM LLC objects to the remaining allegations in Paragraph 358 of the Second Amended Complaint as they call for a legal conclusion, and therefore, no response is required. To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 358 of the Second Amended Complaint, and specifically denies the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash.

359.    GM LLC incorporates by reference its admissions and averments in Paragraph 3 above. GM LLC denies the remaining allegations in Paragraph 359 of the Second Amended Complaint, and specifically denies the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash.

360.    GM LLC incorporates by reference its admissions and averments in Paragraph 3 above. GM LLC denies the remaining allegations in Paragraph 360 of the Second Amended Complaint.

361.    GM LLC incorporates by reference its admissions and averments in Paragraphs 3 and 4 above. GM LLC denies the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash, and denies it is liable to Plaintiffs. GM LLC denies the remaining allegations in Paragraph 361 of the Second Amended Complaint.

362.    GM LLC incorporates by reference its admissions and averments in Paragraphs 3 and 4 above. GM LLC objects to the remaining allegations in Paragraph 358 of the Second Amended Complaint as they call for a legal conclusion, and therefore, no response is required. To the extent a response is required, GM LLC denies the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash, and denies it is liable to Plaintiffs. GM LLC denies the remaining allegations in Paragraph 362 of the Second Amended Complaint.

363.    GM LLC incorporates by reference its admissions and averments in Paragraph 3 above. GM LLC denies the remaining allegations in Paragraph 363 of the Second Amended Complaint.

364.    GM LLC incorporates by reference its admissions and averments in Paragraphs 3, 183, 201, and 227 above. GM LLC denies that the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash. GM LLC admits that prior to the crash, certain GM vehicles had ignition switches where the actual torque necessary to move the ignition switch from the "run" position to the "accessory" or "off" positions was greater. GM LLC denies the remaining allegations in Paragraph 364 of the Second Amended Complaint.

365.    GM LLC denies the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash, and denies it is liable to Plaintiffs.

366.    GM LLC incorporates by reference its admissions and averments in Paragraph 3 above. GM LLC denies the subject 2007 Saturn Sky experienced the Ignition Switch Recall

condition at the time of the crash, and denies the remaining allegations in Paragraph 366 of the Second Amended Complaint.

367.     GM LLC incorporates by reference its admissions and averments in Paragraphs 1, 3, and 4 above. GM LLC denies the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash. GM LLC objects to the phrase "such characteristics" as vague, ambiguous, and undefined. GM LLC also objects to the remaining allegations in Paragraph 367 of the Second Amended Complaint as they call for a legal conclusion, and therefore, no response is required. To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 367 of the Second Amended Complaint.

368.     GM LLC incorporates by reference its admissions and averments in Paragraphs 1, 3, and 45. GM LLC denies Plaintiffs purchased the subject 2007 Saturn Sky as a certified preowned vehicle, denies the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash, and denies it is liable to Plaintiffs. GM LLC denies any alleged breach of duty caused or contributed to the subject crash and/or Plaintiffs' alleged damages, if any.

369.     GM LLC incorporates by reference its admissions and averments in Paragraph 3 and 4 above.  GM LLC denies the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash, and denies the remaining allegations in Paragraph 369 of the Second Amended Complaint.

370.     No response is required as such is a question of law for the Court to decide. To the extent a response is required, GM LLC incorporates by reference its admissions and averments in Paragraphs 3 and 45 above. GM LLC denies any alleged breach of duty caused or

contributed to the subject crash and/or Plaintiffs' alleged damages, if any, and denies the remaining allegations in Paragraph 370 of the Second Amended Complaint.

371.    No response is required by GM LLC as such is a question of law for the Court to decide. To the extent a response is required, GM LLC incorporates by reference its admissions and averments in Paragraphs 3 and 45 above. GM LLC denies any alleged breach of duty caused or contributed to the subject crash and/or Plaintiffs' alleged damages, if any, and denies the remaining allegations in Paragraph 371 of the Second Amended Complaint.

372.    GM LLC incorporates by reference its admissions and averments in Paragraph 3 above. GM LLC denies the remaining allegations in Paragraph 372 of the Second Amended Complaint. GM LLC denies the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash, and denies it is liable to Plaintiffs.

373.    GM LLC incorporates by reference its admissions and averments in Paragraphs 3 and 4 above. GM LLC denies the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash, and denies it is liable to Plaintiffs. GM LLC denies the remaining allegations in Paragraph 373 of the Second Amended Complaint.

374.    GM LLC incorporates by reference its admissions and averments in Paragraphs 3, 13, 45, and 46 above. GM LLC denies any alleged breach of duty caused or contributed to the subject crash and/or Plaintiffs' alleged damages, if any. GM LLC denies the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash, and denies it is liable to Plaintiffs. GM LLC objects to the remaining allegations in Paragraph 374 of the Second Amended Complaint as they call for a legal conclusion, and therefore, no response is required.

375.    GM LLC incorporates by reference its admissions and averments in Paragraph 3 above. GM LLC objects to the remaining allegations in Paragraph 375 of the Second Amended

Complaint as they call for a legal conclusion, and therefore, no response is required. To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 375 of the Second Amended Complaint.

376.    GM LLC incorporates by reference its admissions and averments in Paragraphs 1, 3, and 85 above.  GM LLC denies Plaintiffs purchased the subject 2007 Saturn Sky as a certified preowned vehicle, denies the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash, and denies it is liable to Plaintiffs.

377.    GM LLC incorporates by reference its admissions and averments in Paragraphs 1, 3, and 85 above.  GM LLC denies Plaintiffs purchased the subject 2007 Saturn Sky as a certified preowned vehicle, denies the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash, and denies it is liable to Plaintiffs.

378.    GM LLC incorporates by reference its admissions and averments in Paragraphs 3, 5, and 85 above. GM LLC denies Plaintiffs purchased the subject 2007 Saturn Sky as a certified preowned vehicle, denies the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash, and denies it is liable to Plaintiffs. GM LLC objects to the remaining allegations in Paragraph 378 of the Second Amended Complaint as they call for a legal conclusion, and therefore, no response is required. To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 378 of the Second Amended Complaint.

379.    GM LLC denies the allegations in Paragraph 379 of the Second Amended Complaint.

380.    GM LLC is without sufficient knowledge or information to admit or deny the allegations concerning an individual consumer's knowledge or expectations, and therefore denies same. GM LLC denies that the subject 2007 Saturn Sky experienced the Ignition Switch Recall

condition at the time of the crash. GM LLC denies the remaining allegations in Paragraph 380 of the Second Amended Complaint.

381.    GM LLC denies the allegations in Paragraph 381 of the Second Amended Complaint.

382.    GM LLC denies the allegations in Paragraph 382 of the Second Amended Complaint.

## ALLEGATIONS OF FRAUDULENT MISREPRESENTATION

383.    GM LLC adopts and incorporates by reference each and every denial and/or averment in the preceding paragraphs. No response is required by GM LLC to the remaining allegations in Paragraph 383 as such is a question of law for the Court to decide. To the extent a response is required, GM LLC denies that Plaintiffs have asserted an Independent Claim (as defined in the Judgment dated June 1, 2015, entered in *In re Motors Liquidation Co*., et al., No. 09-50026 (REG), (Bankr. S.D.N.Y.) ECF No. 13177) against GM LLC that supports an award of punitive damages.

384.    GM LLC incorporates by reference its admissions and averments in Paragraph 3 above. GM LLC objects to the remaining allegations in Paragraph 384 of the Second Amended Complaint as they call for a legal conclusion, and therefore, no response is required. To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 384 of the Second Amended Complaint.

385.    GM LLC denies the allegations in Paragraph 385 of the Second Amended Complaint.

386.    GM LLC denies the allegations in Paragraph 386 of the Second Amended Complaint.

387.    GM LLC incorporates by reference its admissions and averments in Paragraphs 3 and 85 above. GM LLC objects to the remaining allegations in Paragraph 385 of the Second Amended Complaint as they call for a legal conclusion, and therefore, no response is required. To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 387 of the Second Amended Complaint.

388.    No response is required by GM LLC as such is a question of law for the Court to decide. To the extent a response is required, GM LLC incorporates by reference its admissions and averments in Paragraphs 3, 45, and 85 above. GM LLC denies any alleged breach of duty caused or contributed to the subject crash and/or Plaintiffs' alleged damages. GM LLC objects to the phrase "these safety, quality, dependability, and reliability issues" as vague, ambiguous and undefined. GM LLC objects to the remaining allegations in Paragraph 388 of the Second Amended Complaint as they call for a legal conclusion, and therefore, no response is required. To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 388 of the Second Amended Complaint.

389.    GM LLC denies the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash, and denies it is liable to Plaintiffs. GM LLC denies the remaining allegations in Paragraph 389 of the Second Amended Complaint.

390.    GM LLC incorporates by reference its admissions and averments in Paragraphs 3 and 85 above. GM LLC denies Plaintiffs purchased the subject 2007 Saturn Sky as a certified preowned vehicle, denies the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash, and denies it is liable to Plaintiffs. GM LLC objects to the remaining allegations in Paragraph 390 of the Second Amended Complaint as they call for a

legal conclusion, and therefore, no response is required. To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 390 of the Second Amended Complaint.

391.    GM LLC incorporates by reference its admissions and averments in Paragraphs 3, 5, and 143 above. GM LLC is without sufficient knowledge or information to admit or deny the allegations concerning an individual consumer's knowledge, and therefore denies same. GM LLC denies Plaintiffs purchased the subject 2007 Saturn Sky as a certified preowned vehicle, denies the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash, and denies it is liable to Plaintiffs. GM LLC objects to the remaining allegations in Paragraph 391 of the Second Amended Complaint as they call for a legal conclusion, and therefore, no response is required. To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 391 of the Second Amended Complaint.

392.    GM LLC objects to the phrase "these omitted facts" as vague, ambiguous, and undefined. GM LLC incorporates by reference its admissions and averments in Paragraphs 3 and 157 above. GM LLC admits that based upon information obtained to date, GM LLC denies Plaintiffs purchased the subject 2007 Saturn Sky as a certified preowned vehicle, denies the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash, and denies it is liable to Plaintiffs. GM LLC objects to the remaining allegations in Paragraph 392 of the Second Amended Complaint as they call for a legal conclusion, and therefore, no response is required. To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 392 of the Second Amended Complaint.

393.    GM LLC denies the allegations in Paragraph 393 of the Second Amended Complaint.

**ALLEGATIONS OF NEGLIGENCE AND GROSS NEGLIGENCE**

394.   GM LLC adopts and incorporates by reference each and every denial and/or averment in the preceding paragraphs.

395.   GM LLC incorporates by reference its admissions and averments in Paragraphs 1, 3, and 4 above. GM LLC denies the remaining allegations in Paragraph 395 of the Second Amended Complaint.

396.   GM LLC incorporates by reference its admissions and averments in Paragraphs 1, 3, and 45 above. GM LLC objects to the remaining allegations in Paragraph 396 of the Second Amended Complaint as they call for a legal conclusion, and therefore, no response is required. To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 396 of the Second Amended Complaint.

397.   GM LLC incorporates by reference its admissions and averments in Paragraphs 1, 3, 45, and 158 above. GM LLC denies Plaintiffs purchased the subject 2007 Saturn Sky as a certified preowned vehicle, denies the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash, and denies it is liable to Plaintiffs. GM LLC denies any alleged breach of duty caused or contributed to the subject crash and/or Plaintiffs' alleged damages, if any. GM LLC objects to the remaining allegations in Paragraph 397 of the Second Amended Complaint as they call for a legal conclusion, and therefore, no response is required. To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 397 of the Second Amended Complaint.

398.   GM LLC incorporates by reference its admissions and averments in Paragraphs 1, 3, 4, 5, 56, 57, and 130 above. GM LLC denies the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash. GM LLC objects to the remaining

allegations in Paragraph 398 of the Second Amended Complaint as they call for a legal conclusion, and therefore, no response is required. To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 398 of the Second Amended Complaint.

399.    GM LLC incorporates by reference its admissions and averments in Paragraphs 1, 3, 4, 5, 45, 56, 57, and 130 above. GM LLC denies the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash. GM LLC objects to the remaining allegations in Paragraph 399 of the Second Amended Complaint as they call for a legal conclusion, and therefore, no response is required. To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 399 of the Second Amended Complaint.

400.    GM LLC incorporates by reference its admissions and averments in Paragraphs 1, 3, 4, 5, 45, 56, 57, and 130 above. GM LLC denies the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash. GM LLC objects to the remaining allegations in Paragraph 400 of the Second Amended Complaint as they call for a legal conclusion, and therefore, no response is required. To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 400 of the Second Amended Complaint.

401.    GM LLC incorporates by reference its admissions and averments in Paragraphs 1, 3, 4, 5, and 45 above. GM LLC denies any alleged breach of duty caused or contributed to the subject crash and/or Plaintiffs' alleged damages, if any. GM LLC denies the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash. GM LLC objects to the remaining allegations in Paragraph 401 of the Second Amended Complaint as they call for a legal conclusion, and therefore, no response is required. To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 401 of the Second Amended Complaint.

402.     GM LLC incorporates by reference its admissions and averments in Paragraphs 1, 3, 4, 5, and 45 above. GM LLC denies any alleged breach of duty caused or contributed to the subject crash and/or Plaintiffs' alleged damages, if any. GM LLC denies the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash. GM LLC objects to the remaining allegations in Paragraph 402 of the Second Amended Complaint as they call for a legal conclusion, and therefore, no response is required. To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 402 of the Second Amended Complaint.

403.     GM LLC denies the allegations in Paragraph 403 of the Second Amended Complaint.

404.     GM LLC denies Plaintiffs are entitled to the relief requested, or any other relief, and demands strict proof thereof.

## ALLEGATIONS OF VIOLATION OF SELLER'S OBLIGATIONS OF DELIVERY AND WARRANTY

405.     GM LLC adopts and incorporates by reference each and every denial and/or averment in the preceding paragraphs.

406.     No response is required by GM LLC as such is a question of law for the Court to decide. To the extent a response is required, GM LLC incorporates by reference its admissions and averments in Paragraphs 1 and 38 above. GM LLC denies it was the "seller" of the subject 2007 Saturn Sky, and denies the remaining allegations in Paragraph 406 of the Second Amended Complaint.

407.     No response is required by GM LLC as such is a question of law for the Court to decide. To the extent a response is required, GM LLC incorporates by reference its admissions and averments in Paragraph 18 and 19 above. GM LLC denies the remaining allegations in Paragraph 407 of the Second Amended Complaint.

408.    GM LLC incorporates by reference its admissions and averments in Paragraphs 1, 3 and 45 above. GM LLC denies any alleged breach of duty caused or contributed to the subject crash and/or Plaintiffs' alleged damages, if any. GM LLC denies that the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash. GM LLC objects to the remaining allegations in Paragraph 408 of the Second Amended Complaint as they call for a legal conclusion, and therefore, no response is required. To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 408 of the Second Amended Complaint.

409.    GM LLC denies it knew or had reason to know that Plaintiff Barthelemy intended to use the subject 2007 Saturn Sky for its ordinary use as a vehicle and denies that Plaintiff Barthelemy purchased the subject 2007 Saturn Sky.  GM LLC denies it knew or had reason to know of any particular purpose for which Plaintiff Dionne M. Spain purchased the subject 2007 Saturn Sky. GM LLC denies that it knew or had reason to know that Plaintiff Spain intended to use the subject 2007 Saturn Sky for its ordinary use as a vehicle or that it knew or had reason to know that Plaintiff Spain bought the vehicle for the particular purpose of using it for its ordinary uses as a vehicle.  GM LLC denies the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash, and denies it is liable to Plaintiffs. GM LLC denies the remaining allegations in Paragraph 409 of the Second Amended Complaint.

410.    No response is required by GM LLC as such is a question of law for a court to decide. To the extent a response is required, GM LLC incorporates by reference its admissions and averments in Paragraphs 3 and 5 above. GM LLC denies the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash, and denies it is liable to Plaintiffs.

411.    GM LLC denies that the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash, and denies the allegations in Paragraph 411 of the Second Amended Complaint.

412.    GM LLC denies Plaintiffs are entitled to the relief requested, or any other relief, and demands strict proof thereof.

## ALLEGATIONS OF VIOLATION OF
## THE LOUISIANA UNFAIR TRADE PRACTICES ACT AND CONSUMER PROTECTION LAW

413.    GM LLC adopts and incorporates by reference each and every denial and/or averment in the preceding paragraphs. GM LLC denies the remaining allegations in Paragraph 413 of the Second Amended Complaint.

414.    GM LLC incorporates by reference its admissions and averments in Paragraphs 1, 3, 85, and 143 above. GM LLC denies Plaintiffs purchased the subject 2007 Saturn Sky as a certified preowned vehicle, denies the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash, and denies it is liable to Plaintiffs. GM LLC objects to the remaining allegations in Paragraph 414 of the Second Amended Complaint as they call for a legal conclusion, and therefore, no response is required. To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 414 of the Second Amended Complaint.

415.    GM LLC incorporates by reference its admissions and averments in Paragraphs 1, 3, 85, and 143 above. GM LLC denies Plaintiffs purchased the subject 2007 Saturn Sky as a certified preowned vehicle, denies the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash, and denies it is liable to Plaintiffs. GM LLC objects to the remaining allegations in Paragraph 415 of the Second Amended Complaint as they call for a

legal conclusion, and therefore, no response is required. To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 415 of the Second Amended Complaint.

416. GM LLC incorporates by reference its admissions and averments in Paragraphs 1, 3, and 85 above. GM LLC admits that certain of its actions have occurred in the conduct of trade or commerce. GM LLC denies Plaintiffs purchased the subject 2007 Saturn Sky as a certified preowned vehicle, denies the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash, and denies it is liable to Plaintiffs. GM LLC objects to the remaining allegations in Paragraph 416 of the Second Amended Complaint as they call for a legal conclusion, and therefore, no response is required. To the extent a response is required, GM LLC denies the remaining allegations in Paragraph 416 of the Second Amended Complaint.

417. GM LLC denies the allegations in Paragraph 417 of the Second Amended Complaint.

418. GM LLC denies Plaintiffs are entitled to the relief requested, or any other relief, and demands strict proof thereof.

## ALLEGATIONS OF DAMAGES

419. GM LLC adopts and incorporates by reference each and every denial and/or averment in the preceding paragraphs.

420. GM LLC denies that the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash, and denies that it is liable to Plaintiffs. GM LLC denies the allegations in Paragraph 420 of the Second Amended Complaint.

421. GM LLC denies that the subject 2007 Saturn Sky experienced the Ignition Switch Recall condition at the time of the crash, and denies that it is liable to Plaintiffs. GM LLC denies the allegations in Paragraph 421 of the Second Amended Complaint.

422.    GM LLC denies Plaintiffs are entitled to the relief requested, or any other relief, and demands strict proof thereof.

## ALLEGATIONS OF PUNITIVE DAMAGES

423.    GM LLC adopts and incorporates by reference each and every denial and/or averment in the preceding paragraphs. No response is required by GM LLC to the remaining allegations in Paragraph 423 as such is a question of law for the Court to decide. To the extent a response is required, GM LLC denies that Plaintiffs have asserted an Independent Claim against GM LLC that supports an award of punitive damages.

424.    GM LLC incorporates by reference its admissions and averments in Paragraphs 3 and 85 above. GM LLC denies the remaining allegations in Paragraph 424 of the Second Amended Complaint. GM LLC denies Plaintiffs are entitled to any damages from it, including but not limited to punitive damages.

425.    GM LLC incorporates by reference its admissions and averments in Paragraphs 3 and 85 above. GM LLC denies the remaining allegations in Paragraph 425 of the Second Amended Complaint.

426.    GM LLC denies the allegations in Paragraph 426 of the Second Amended Complaint.

427.    GM LLC denies the allegations in Paragraph 427 of the Second Amended Complaint.

428.    GM LLC denies the allegations in Paragraph 428 of the Second Amended Complaint.

429.    GM LLC denies the allegations in Paragraph 429 of the Second Amended Complaint. GM LLC denies Plaintiffs are entitled to any damages from it, including but not limited to punitive damages.

430.    GM LLC denies Plaintiffs are entitled to the relief requested, or any other relief, and demands strict proof thereof.

## PRAYER FOR RELIEF

GM LLC denies the allegations in Plaintiffs' Prayer for Relief, including in subparagraphs (A) through (I), denies Plaintiffs are entitled to the relief requested, or any other relief, and demands strict proof thereof.

## JURY DEMAND

GM LLC also demands a trial by jury of all issues triable as a matter of right.

## AFFIRMATIVE DEFENSES

1.    GM LLC denies each and every allegation contained in Plaintiffs' Second Amended Complaint except those specifically admitted above.

2.    Plaintiffs' Second Amended Complaint fails to state a claim upon which relief may be granted.

3.    GM LLC alleges that the vehicle had been out of the possession and control of Old GM for some time before the subject incident, and if there was any condition in the mechanism of the vehicle at the time of the alleged incident that caused or contributed thereto, such conditions developed and may have existed as a result of misuse, alteration, changes, modifications, or improper repairs made to the vehicle.

4.    GM LLC avers that the crash and any resulting injuries and damages alleged in the Second Amended Complaint may have been caused by the negligence, comparative

negligence, fault, or comparative fault of others for whom GM LLC is in no way responsible or liable, including Plaintiffs, thus barring or reducing any recovery of Plaintiffs against GM LLC.

5.     The injuries of Plaintiffs may have been caused by an intervening, superseding action for which GM LLC is in no way liable.

6.     The proximate cause of the alleged injuries suffered by Plaintiffs may have been the misuse, abuse, and/or modification of the product in question for which GM LLC is in no way responsible. Plaintiffs are therefore not entitled to recover from GM LLC in this action.

7.     All of Plaintiffs' claims against GM LLC are preempted and precluded by the statutes, standards, regulations, and rules propagated by the federal government and/or Department of Transportation.

8.     GM LLC states that any claim for the recovery of medical expenses is limited to such expenses actually paid.

9.     GM LLC alleges that Plaintiffs' claimed injuries and damages are solely the result of the acts and omissions of third parties over whom GM LLC had no control.

10.     GM LLC denies that it is liable for any of the damages alleged by Plaintiffs in this case.

11.     The subject vehicle's supplemental restraint, power steering, and braking systems met all applicable Federal Motor Vehicle Safety Standards at the time it was manufactured by Old GM.

12.     The subject vehicle was accompanied by adequate warnings and instructions regarding its supplemental restraint, power steering, and braking systems at the time it was sold by Old GM to an independent dealer.

13.     Plaintiffs' claims for redhibition and alleged violations of Louisiana's consumer protection statute are barred by the applicable statutes of limitations and repose.

14.     Plaintiffs may have failed to mitigate their damages by failing to take all reasonable care to minimize injuries and the consequences therefrom.

15.     The only applicable warranties, expressed or implied, are those that were incorporated into the printed warranty. Plaintiffs' remedies are limited to those stated in the printed warranty. Any implied warranty of merchantability or fitness for a particular purpose was and is disclaimed or limited by the printed warranty.

16.     To the extent that Plaintiffs failed to maintain or preserve the subject vehicle referred to in Plaintiffs' Second Amended Complaint in its immediate post-incident condition, Plaintiffs are guilty of spoliation of evidence and may not maintain any action against GM LLC.

17.     GM LLC states that some of Plaintiffs' claims may be barred, preempted and/or precluded by applicable federal law including but not limited to Orders, Judgments and/or Decisions of the United States Bankruptcy Court for the Southern District of New York ("New York Bankruptcy Court") entered in the bankruptcy case captioned *In re Motors Liquidation Company, et al.*, Case No. 09-50026, which is pending before the New York Bankruptcy Court.

18.     GM LLC is entitled to a set-off or credit in the amount of any settlement or compromise reached by Plaintiffs with any other party or person for any of Plaintiffs' alleged damages.

19.     Plaintiffs' claim of or request for punitive damages is contrary to both Louisiana law and Michigan law, to the extent either state's law provides the applicable rule of decision, and should be disallowed.

20.     GM LLC would show the Court that an award of punitive damages violates the

Fifth, Sixth, and Fourteenth Amendments of the United States Constitution, and the Louisiana Constitution, in that:

 a. The judiciary's ability to correct a punitive damage award only upon a finding of passion, prejudice, or caprice is inconsistent with due process guarantees;

 b. Any award of punitive damages based upon the wealth of the defendant violates due process guarantees;

 c. The jury's unfettered power to award punitive damages in any amount it chooses is wholly devoid of meaningful standards and is inconsistent with due process guarantees;

 d. Even if it could be argued that a standard governing the imposition of punitive damages exists, the standard is void for vagueness; and

 e. Plaintiffs' claim for punitive damages violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and the Louisiana Constitution in that the amount of the punitive damages is based upon the wealth of the defendant.

 f. Plaintiffs' claim for punitive damages also cannot be sustained because Louisiana law regarding the standards for determining liability for, and the amount of, punitive damages fails to give GM LLC prior notice of the conduct for which punitive damages may be imposed and is void for vagueness in violation of GM LLC's due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 1, of the Constitution of the State of Louisiana.

21. Plaintiffs' claim for punitive damages also cannot be sustained because under

Louisiana law, a jury award of punitive damages is not subject to post-trial and appellate court review under constitutionally adequate objective standards to ensure that the award is rationally related to the state's legitimate goals of deterrence and retribution, which violates GM LLC's due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 1, of the Constitution of the State of Louisiana.

22.    Plaintiffs' claim for punitive damages also cannot be sustained because under Louisiana law, a jury award of punitive damages is not subject to post-trial review through an evidentiary hearing that requires the trial court to weigh the excessiveness of the award, in violation of GM LLC's due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 1, of the Constitution of the State of Louisiana.

23.    Plaintiffs' claim for punitive damages also violates the federal doctrine of separation of powers and the Louisiana Constitution because punitive damages are a creation of the judicial branch of government that invades the province of the legislative branch of government.

24.    Plaintiffs' claim for punitive damages also violates the rights guaranteed by the Constitution of the United States of America and the Constitution of the State of Louisiana in that punitive damages are penal in nature and yet, Plaintiffs' burden of proof is less than the "beyond a reasonable doubt" burden required in criminal cases.

25.    An award of punitive damages in this case would violate the United States and Louisiana Constitutions to the extent it may award damages to Plaintiffs for actions allegedly performed outside of the State of Louisiana..

January 19, 2016                                Respectfully submitted,


                                                 */s/ Richard C. Godfrey, P.C.*
                                                Richard C. Godfrey, P.C.
                                                Andrew B. Bloomer, P.C.
                                                KIRKLAND & ELLIS LLP
                                                300 North LaSalle St
                                                Chicago, IL 60654
                                                Tel: (312) 862-2000
                                                Fax: (312) 862-2200
                                                Email: rgodfrey@kirkland.com
                                                          abloomer@kirkland.com

                                                Attorneys for General Motors LLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 19, 2016, I electronically filed the foregoing Brief using the CM/ECF system which will serve notification of such filing to the email of all counsel of record in this action.


/s/ Andrew B. Bloomer             

Andrew B. Bloomer, P.C.