**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x

IN RE:

GENERAL MOTORS LLC IGNITION SWITCH
LITIGATION

-----------------------------------------------------------------x

*This Document Relates to:*

LAWRENCE JOSEPH BARTHELEMY AND
DIONNE MARIE SPAIN,

        **Plaintiffs,**

    **v.**

GENERAL MOTORS, LLC,

        **Defendant.**

-----------------------------------------------------------------x

14-MD-2543 (JMF)

14-CV-5810 (JMF)


**PLAINTIFFS' MEMORANDUM OF LAW**
**REGARDING OTHER SIMILAR INCIDENTS**

## TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................................. 1

ARGUMENT ....................................................................................................................... 4

    I.    The OSI Identified by Plaintiffs Is Admissible under Governing Authority .......... 4

    II.    The OSI listed by Plaintiffs ............................................................................... 7

    III.    DPA, Valukas Report and NHTSA OSI. ......................................................... 12

    IV.    Plaintiffs' Experts May Testify Regarding OSI .................................................. 13

CONCLUSION ................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page**

<u>**Cases**</u>

*Bellinger v. Deere & Co.*,
   881 F. Supp. 813 (N.D.N.Y. 1995)..................................................................... 6

*Benedi v. McNeil-P.P.C., Inc.*,
   66 F.3d 1378 (4th Cir. 1995) ......................................................................... 12

*Dewick v. Maytag Corp.*,
   324 F. Supp.2d 894 (N.D. Ill. 2004) ............................................................... 7

*Fine v. Facet Aerospace Products Co.*,
   F.R.D. 439 (S.D.N.Y. 1990) .......................................................................... 7

*Green v. Schutt Sports Mfg. Co.*,
   369 F. App'x 630 (5th Cir. 2010) .................................................................. 6

*Hershberger v. Ethicon Endo-Surgery, Inc.*,
   2012 WL 1113955 (S.D. W.Va. Mar. 30, 2012) ............................................ 5

*In re Motors Liquidation Co.*,
   2015 WL 6876114 (Bankr. S.D.N.Y. Nov. 9, 2015) ..................................... 13

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices,*
   *& Products Liab. Litig.*,
   978 F. Supp.2d 1053 (C.D. Cal. 2013) ......................................................... 12

*Jackson v. Firestone Tire & Rubber Co.*,
   788 F.2d 1070 (5th Cir. 1986) ................................................................... 6, 8

*Moulton v. Rival Co.*,
   116 F. 3d 22 (1st Cir. 1997)......................................................................... 7

*Ponder v. Warren Tool Corp.*,
   834 F.2d 1553 (10th Cir. 1987) .................................................................. 12

*Ramos v. Liberty Mut. Ins. Co.*,
   615. F.2d 334 (5th Cir.), *modified on other grounds*, 620 F. 2d 464 (5th Cir. 1980)................. 6

*Santos v. Chrysler Corp.*,
   430 Mass. 198, 715 N.E.2d 47 (1999) ......................................................... 7

*Sawyer v. Dreis & Krump Mfg.Co.*,
   67 N.Y.2d 328;502 N.Y.S.2d 696 (1986) ..................................................... 6

*Shields v. Sturm, Ruger & Co.*,
  864 F.2d 379 (5th Cir. 1989) ................................................................... 6

*Smith v. Ingersoll-Rand Co.*,
  214 F. 3d 1235 (10th Cir. 2000) ........................................................... 7

*Stokes v. National Presto Industries, Inc.*,
  168 S.W. 3d 481 (W.D. Mo. App. 2005) .................................................. 7

*White v. Ford Motor Co.*,
  312 F. 3d 998 (9th Cir. 2002) ............................................................... 7

**Statutes and Other Authorities**

McCormick on Evid.§200 (7th ed.) ......................................................... 12

**INTRODUCTION**

The Court correctly held that the fifteen incidents identified by Plaintiffs in *Scheuer* were "sufficiently 'substantially similar' to be admitted, certainly to prove notice, but also to prove causation." (Dec. 28, 2015 Memorandum Opinion and Order, Dkt. No. 1968, at 3.) ("*Scheuer* OSI Order"). The Court's reasoning applies with equal force here. Plaintiffs should therefore be permitted to introduce the more limited evidence of other similar incidents ("OSI") identified in their disclosure served on January 25, 2016.[1]  New GM, however, has already previewed that it will again object to the introduction of OSI, arguing (again) that the surrounding circumstances in the various accidents are factually dissimilar.[2]  Any differences in the weather or road conditions or the velocity of any impact go only to the weight of the evidence, however, not to the admissibility.  When analyzing substantial similarity the focus remains on the defect itself, not the events that unfolded after the defect was implicated.

In many respects, this case is more straightforward than *Scheuer*.  Plaintiffs Lawrence Joseph Barthelemy and Dionne Marie Spain (together, "Plaintiffs") were injured when Ms. Spain's 2007 Saturn Sky stalled, causing her to lose control and hit a retaining wall on Highway 90-B, the Crescent City Connection Bridge, in New Orleans, Louisiana.  (*See Lawrence Joseph Barthelemy and Dionne Marie Spain, Second Amended Complaint*, Case No. 14-cv-05810, Dkt. No. 183, (hereinafter "SAC") ¶¶ 26-30. There was only minimal damage to Ms. Spain's car and, although Plaintiffs both suffer from residual back and neck pain,, neither was severely incapacitated or killed.  *Id.* at ¶¶ 32-34, 37.  Plaintiffs do not dispute that the frontal impact of the vehicle was not of sufficient velocity to otherwise cause the airbags in Ms. Spain's vehicle to

---

[1] *See* Declaration of Randall W. Jackson ("Jackson Decl."), Ex. 1, Plaintiffs' OSI Disclosure.

[2] *See* New GM's Show Cause Letter Brief of New GM dated January 19, 2016,Dkt. No. 2148.

deploy.  Thus, at issue here is only whether the ignition switch defect caused Ms. Spain's vehicle to stall, resulting in the loss of power steering, the use of her power brakes, and, ultimately, caused Plaintiffs' injuries.

In accordance with this Court's OSI disclosure requirements, Plaintiffs identified seven specific examples of other incidents they may seek to introduce at trial,[3] along with information of other incidents in the Valukas Report and the Statement of Facts ("SOF") attendant to the Deferred Prosecution Agreement ("DPA").  Dkt. No. 1732-1, DPA, Exhibit C.  Plaintiffs advised New GM that they expected to utilize their experts to introduce this evidence.[4]   After receiving Plaintiffs' OSI Disclosures, New GM objected, stating that Plaintiffs failed to "provide GM LLC with an adequate basis to evaluate whether or not *any* of the purported OSIs are substantially similar to the Barthelemy accident and fails to identify *any* evidence plaintiffs plan to use regarding these purported OSIs."[5]  New GM's emphasis on evidence of accidents "similar to the Barthelemy accident" misses the mark.[6]

The OSI identified by Plaintiffs each involved the *very same defect* that caused the accident here, *to wit*:  the ignition switch defect that resulted in New GM's recall of millions of vehicles in February and March of 2014.  New GM has admitted the existence of the ignition switch defect, and that this defect caused various makes and models of GM branded cars to inadvertently move from the "Run" to the "Accessory" or "Off" position during normal driving

---

[3] *See,* Jackson Decl., Ex. 1. *Plaintiffs* OSI Disclosure identified  "(1) Brooke Melton, (2) Amber Rose, (3) Hasaya Chansuthus,  (4) Bridgett Sullivan, (5) Morgan Hildwen, (6) Linnet Caban, and (7) Miranda Gill, as well as any other similar instances contained in the Valukas Report, the DPA, the NHTSA Report, or the Statement of Facts," as well as their experts.

[4] Plaintiffs have listed Robert J. Caldwell, P.E., Glen Stevick, Ph.D., P.E., Mark B. Hood, P.E. and Steve Loudon as experts in this case and indicated that they would be testifying regarding the OSI identified.

[5] *See,* Jackson Decl., Ex. 2, Jan. 28, 2016 Email from A. Pixton.

[6] *Id.*

conditions (the "Defective Switch").  SAC, ¶¶ 48, 59, 62-63, 129-140. The Defective Switch standing alone, constant across each of the OSI Plaintiffs may seek to admit, makes each of these events substantially similar for purposes of analyzing their admissibility.  The fact that any one event may have involved a different make or model of vehicle, a different model year or involved an impact with another motorist or an inanimate object after the vehicle stalled is tangential to the critical issue:  whether the Defective Switch caused the accident and resulting injuries.  It is the existence of the Defective Switch in each OSI disclosed that must be substantially similar, not the specific facts involved in any given accident.  Here, Plaintiffs have the burden of establishing that it was the Defective Switch that caused the accident at issue, and this evidence is certainly relevant on that point. It is also relevant to New GM's notice of the defective and dangerous condition.

New GM also advised that it was the defendant's position that Plaintiffs cannot use their experts to introduce any OSI evidence. New GM's purported rationale is that such testimony would be "outside the scope of their disclosed testimony" and the "purported OSIs are not discussed in any of [their] reports."[7]  Plaintiffs disagree.  At least three of Plaintiffs' four experts specifically identify OSI materials that they reviewed and relied upon in reaching their conclusions.  Regardless, the Court addressed this "substantially similar" argument when raised by New GM in *Scheuer*; New GM provides no basis to change direction now.   There is no prejudice to New GM, as these incidents have been widely discussed, written about and were the subject of significant discovery throughout the course of this MDL proceeding as well as the state court cases.  There is nothing new here, and there have been no surprises when it comes to

---

[7] *Id.*

the OSI identified by Plaintiffs.  The Court should permit the Plaintiffs to use the OSI evidence

at issue.

## ARGUMENT

I.     **The OSI identified by Plaintiffs is admissible under governing authority.**[8]

In a product liability case such as this, evidence of other similar incidents may be

admitted to prove "negligence, a design defect, notice of a defect, or causation." *Hershberger v.*

*Ethicon Endo-Surgery, Inc.*, No. 10-CV-0837, 2012 WL 1113955, at *2 (S.D. W.Va. Mar. 30,

2012); *Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 381 (5th Cir. 1989); *Ramos v. Liberty Mut.*

*Ins. Co.,* 615. F.2d 334, 338 (5th Cir.), *modified on other grounds*, 620 F. 2d 464 (5th Cir. 1980);

*see also Sawyer v. Dreis & Krump Mfg.Co.*, 67 N.Y.2d 328, 336;502 N.Y.S.2d 696, 701 (1986).[9]

---

[8] Plaintiffs submit that this Court's ruling on OSI in *Scheuer* eliminated New GM's current objections. New GM disagrees.  New GM, in response to Plaintiffs' OSI Disclosure advised that Plaintiffs failed to provide "an adequate basis to evaluate whether or not *any* of the purported OSIs are substantially similar to the Barthelemy accident and fails to identify *any* evidence plaintiffs plan to use regarding these purported OSIs." Ex. 2 to Jackson Decl. Four of the OSIs were briefed in connection with "*Plaintiff's Memorandum of Law Regarding Other Similar Incidents*" in *Scheuer,* others were detailed in the Valukas Report, the DPA SOF, the NHSTA Complaint database and, in any event, New GM has had equal access to the evidence related to each of the potential OSIs as part of this proceeding.  It is surprising then that New GM would assert that it cannot evaluate the OSI listed by Plaintiffs, particularly in light of this Court's ruling on essentially the same issues in *Scheuer*.  (Dec. 28, 2015 Memorandum Opinion and Order,Dkt. No. 1968.)   New GM, however, in their letter brief submitted on January 19, 2016 (Dkt. No. 2148), has taken the position that this Court's ruling on OSI should not apply in Barthelemy because there are factual differences between the subject accident and the incidents in the OSI examples.  As detailed in this memorandum, however, those factual differences are irrelevant when considering whether the events are "substantially similar" on the Defective Switch at issue.

[9] Plaintiffs did not read the OSI Disclosure requirement to mean that they were required to provide a detailed proffer on the OSI disclosure date, but, rather, that they should advise New GM of the OSI upon which Plaintiffs intend to rely  and the individuals through whom the evidence would be introduced (Plaintiffs identified their four experts).  It is Plaintiffs understanding that, as was the case in *Scheuer*, if this Court agrees that such evidence is admissible, a more detailed proffer may later be required.  (Dec. 28, 2015 Memorandum Opinion and Order, Dkt. No. 1968, at 21-23.)

[9] For purposes of proof at trial, the seminal issue is whether the Defective Switch caused the accident and injuries at issue here, not whether the ignition defect existed.  This is particularly true given New GM's

Substantial similarity does not require an exact match, as it would impose an overly "narrow and unrealistic" view of relevance. *Green v. Schutt Sports Mfg. Co.*, 369 F. App'x 630, 638 (5th Cir. 2010); J*ackson v. Firestone Tire & Rubber Co.*, 788 F.2d 1070, 1083 (5th Cir. 1986).

To be relevant, the other accidents must be "substantially similar" to the one at issue. *Jackson*, 788 F.2d at 1082–83. In determining substantial similarity, the focus is not on the surrounding circumstances, but on the defect itself. At issue in *Bellinger v. Deere & Co.*, 881 F. Supp. 813, 818 (N.D.N.Y. 1995), citing *Jackson v. Firestone Tire & Rubber Co.,* 788 F. 2d 1070, 1083 (5th Cir. 1986), was a defective cornpicker manufactured by Deere & Co. In finding that the testimony relating to the other seven incidents proffered was admissible, the court held that:

> In product liability actions, it is appropriate to define the similarity of the accidents based upon the product or defect at issue. Differences in the surrounding circumstances go to the weight to be given the evidence, rather than the admissibility.
>
> The evidence proffered relates to other accidents with the same model cornpicker, and injury due to contact with the same part of the cornpicker, as that at issue in this case. The other accidents therefore occurred in sufficiently similar circumstances such that the evidence is relevant here. Any differences in circumstances, such as whether the extremity was placed into the husking box accidentally or purposely to clear a jam go to the weight given to the evidence by the fact-finder."

*Id.* (internal citations omitted); *Smith v. Ingersoll-Rand Co.*, 214 F. 3d 1235, 1248 (10th Cir. 2000) ("The substantial similarity rule does not require identical products: nor does it require [the Court] to compare the products in their entireties. The rule requires substantial similarity among the variables relevant to the plaintiff's theory of defect."); *see also White v. Ford Motor Co.,* 312 F. 3d 998, 1006 (9th Cir. 2002) (other accidents may be substantially similar even if

---

admissions in that regard. In light of the media attention that has surrounded New GM since the recall and its avoidance of criminal prosecution by entering into the DPA, it is unlikely that New GM can establish any unfair prejudice or confusion or distraction impacting any jurors to be seated in this case based on the OSI disclosed by Plaintiffs.

they involve different circumstances or product models, as long as they share characteristics

pertinent to the litigation); *Moulton v. Rival Co.,* 116 F. 3d 22 (1st Cir. 1997) (same); *Jackson v.*

*Firestone Tire & Rubber Co.,* 788. F. 2d 1070, 1083 (5th Cir. 1983) (same); *Dewick v. Maytag*

*Corp.*, 324 F. Supp.2d 894, 904 (N.D. Ill. 2004) (same).

Courts have held that other accident evidence is admissible even where the product

model is different.  In *Fine v. Facet Aerospace Products Co.,* 133 F.R.D. 439, 441 (S.D.N.Y.

1990), the court observed that, "[g]enerally, different models of a product will be relevant if they

share with the accident-causing model those characteristics pertinent to the legal issues raised in

the litigation." *See also Stokes v. National Presto Industries, Inc.,* 168 S.W. 3d 481 (W.D. Mo.

App. 2005).  In *Santos v. Chrysler Corp.*, 430 Mass. 198, 715 N.E.2d 47 (1999), the plaintiff was

driving a Plymouth Voyager minivan and got into an accident.  The plaintiff alleged that when

he applied the brakes, the vehicle experienced premature wheel lockup, which caused the

minivan to slid and swerve into oncoming traffic.  At trial, the court allowed six other minivan

owners to testify that they experienced the same thing, even though five of the witnesses owned

minivans with different makes and model years as the plaintiff, none of the accidents occurred on

snow or ice and four of the witnesses had a shielded height sensing proposition valve while the

plaintiff's was unshielded.  *Id.* at 202-3.  As *Bellinger* and the other cited cases instruct, the focus

is on the defect for purposes of determining substantial similarity, not the surrounding

circumstances.  It is therefore irrelevant whether Ms. Spain hit another vehicle or object, as was

the case in certain of the OSI listed.  What matters is whether Ms. Spain's vehicle possessed the

Defective Switch, as did the vehicles involved in the OSI.  In this case, there can be little dispute

that Ms. Spain's vehicle contained the same Defective Switch. It will be up to that the jury to

determine whether the defective switch was the cause of the accident in this case.  Any other

questions, like whether another car or a tree was implicated in the accident or the speed of the vehicle, go only to the weight of the evidence, not whether the OSI should be admitted.

## II.     The OSI listed by Plaintiffs.

Here, Plaintiffs identified the following specific OSI: (1) Brooke Melton, (2) Amber Rose, (3) Hasaya Chansuthus, (4) Bridgett Sullivan, (5) Morgan Hildwen, (6) Linnet Caban, and (7) Miranda Gill.  They also disclosed that they would seek to introduce OSI from the Valukas Report, the DPA SOF and New GM's Responses to NHTSA's Special Order.  Because much has been written about most of these incidents, only a brief recitation of the facts is included.  The common thread in each of the OSI identified by Plaintiffs is the existence of the Defective Switch.  Because the Defective Switch is the root cause of these OSI—as Plaintiffs allege was the case in their accident—these incidents are "substantially similar" and evidence of the same should be admitted at trial.

*Brooke Melton – March 10, 2010*[10]

On her 29th birthday, March 10, 2010, Brooke Melton lost control of her 2005 Cobalt

while traveling on a rain-slicked highway.  Brooke's car spun out, hydroplaned, hit an oncoming

vehicle and rolled off the road, dropping 15 feet into a creek. Her vehicle's power steering shut

off and braking power and function was greatly reduced.  This incident was specifically

identified in the SOF (although her name was omitted, it is referred to in the SOF as the Georgia

Crash).  In Ms. Melton's case, there was no allegation that the frontal airbag should have been

deployed, but, as here, there was an allegation that "the loss of power steering caused the crash."

Dkt. No. 1732-1, DPA, Ex. C  at ¶ 55.  New GM agreed in the SOF that "[t]he [Sensing and

Diagnostic Module ("SDM")] from the vehicle showed that the power mode status was recorded

as Accessory at the time of the crash," thus, confirming that the accident resulted from the

Defective Switch.  *Id.* The SOF also notes that just nine days before Ms. Melton unnecessarily

lost her life, New GM  issued a safety recall of the Cobalt, which "acknowledged that loss of

---

[10] With respect to Ms. Melton, Ms. Rose, Ms. Chansuthus and Ms. Sullivan, each of those events were the subject of prior litigation involving New GM, and each of these individuals and each of these incidents was heavily investigated in connection with their individual lawsuit and also in connection with the Valukas Report and with New GM's agreement to the DPA.  Given that these OSI were the subject of detailed and comprehensive investigations by New GM and individuals retained by New GM and that New GM has acknowledged as part of the DPA that the Defective Switch caused the accidents and injuries relating to these events, there should be no question as to the reliability of the information relating to these events, or to the authenticity of any information relating to those events

Plaintiff in *Scheuer* provided a detailed proffer of specific evidence relating to these four cases on January 5, 2016. (Plaintiff's Proffer of Other Similar Evidence, Dkt. No. 1998 and Ex. 3 to Dkt. No. 1998..  To the extent that this Court deems it appropriate, Plaintiffs can at the appropriate time submit a similar proffer, although it appears to be ineffecient and  unnecessary given that the surrounding circumstances and detailed evidence was previously disclosed to New GM in connection with *Scheuer*.  It would seem that this would in some ways defeat the streamlined efficiencies of the MDL proceeding as New GM clearly is on notice of the specifics surrounding these OSI events.  Unlike in *Scheuer*, Plaintiffs here do not intend to introduce evidence through family members or friends about the accidents or loss, but only to have their experts discuss generally their opinions and conclusions regarding the Defective Switch, including their opinions regarding New GM's notice of the defect and that impact that the defect had on the vehicle and anyone driving a vehicle that stalled.

power steering, standing alone, constitutes a 'defect…relate[d] to motor vehicle safety" and thus warranted recall action.  The Defective Switch, of course, caused more than just loss of power steering; it also caused loss of other electrical systems.  This was known by many within GM no later than 2004…".  *Id.* at  ¶ 56.

**Amber Rose – July 29, 2005**

On July 29, 2005, 16-year-old Amber Rose was killed in a car accident while driving a 2005 Chevy Cobalt. Rose lost control of her car on a residential street, went off road, and struck several small trees and a larger tree head-on. The car's data recorder showed the power mode status as "accessory" at the time of the accident. *Id.* at ¶ 48; Dkt. No. 438-1-4,Valukas Report at 110.

**Hasaya Chansuthus – December 31, 2009**

On December 31, 2009, Hasaya Chansuthus, a 25-year-old nursing student, died of blunt brain trauma after her 2006 Cobalt sideswiped a Volkswagen and then it a tree head on.  Dkt. No. 438-1-4, Valukas Report at 140; Dkt. No. 1732-1, DPA, Ex. C at ¶ 54 (referred to as the Tennessee Crash in the SOF).[11]  According to the SDM data, the vehicle's power mode status was in the Off position at the time of the accident.  *Id.*  In the SOF, New GM agreed that:  "…in connection with the Tennessee Crash…a GM engineer explained to legal staff that when the ignition switch power mode status is in the Off (as it was in this case), the SDM "powers down," and the airbags fail to deploy.  The engineer further opined that the "a [sic] crash sensing system 'anomaly' ' resulting in a power mode status of Off had indeed caused non-deployment in the Tennessee Crash case.  Dkt. No. 1732-1, DPA, Ex. C at ¶ 57.

---

[11] *See also*, Jackson Decl., Ex. 3, GM MDL 2543-300008131 (Early Technical Assessment System Data Sheet for Chansuthus).

***Bridgett Sullivan – February 13, 2011***

On February 13, 2011, Bridgett Sullivan lost control of her mother's 2007 Cobalt. After the steering "started to act crazy," Bridget lost control, ran off the road, and crashed into a tree head-on. Dkt. No. 1732-1, DPA, Ex. C. at The SDM data showed that at the time of the accident the vehicle's power mode status was in Accessory and her airbags failed to deploy. *Id.* New GM acknowledged through the SOF that "GM engineers evaluating the crash theorized that, as in the case of the Tennessee Crash, the non-deployment here may have been caused by a crash sensing 'anomaly' related to the ignition switch." *Id.*

***Morgan Hildwen – March 1, 2010***

On March 1, 2010, Morgan Hildwen lost control of her 2005 Cobalt while attempting to change lanes at 35-40mph. Morgan's steering locked up, and she was unable to steer from right to left to avoid the vehicle's going over two curbs and the median.

***Linnet Caban – February 11, 2011***

On February 11, 2011, Linnet Caban, driving a 2007 HHR, was making a U-turn, when her  steering wheel got loose and started spinning, causing her to lose control of the vehicle.[12] This caused her to cross the center median and ultimately run off the road and strike a pole.  The airbags did not deploy. *Id.*

***Miranda Gill – August 9, 2013***

On August 9, 2013, Miranda Gill lost control of her 2007 Pontiac Pursuit when she attempted to press her vehicle's breaks and maneuver to avoid a car that had suddenly stopped

---

[12] *See* Jackson Decl, Ex. 4, GM-MDL2543-002807202-203.

ahead of her. Miranda's vehicle was unable to break or avoid the car ahead. The result was a multi-car collision; her air bags did not deploy.[13]

In *Barthelemy*, Plaintiffs similarly allege that the Defective Switch caused the 2007 Saturn Sky to switch to the "Accessory" or "Off" position from the "Run" position, the very same defect at issue in each of the incidents noted above. At bottom, it is the Defective Switch that is at the heart of the OSI cases listed by Plaintiffs and, as Plaintiffs allege, their own accident that occurred on January 24, 2014. Although the passage of time and continued use of the vehicle prevented the parties to this litigation from accessing the data in the Sensing and Diagnostic Module ("SDM"), Ms. Spain testified under oath that the vehicle stalled—as it had on one other occasion—and that she could not properly control the vehicle as a result. *See,* Jackson Decl. Ex. 6, Excerpt from the Deposition of Robert Caldwell (Sept. 15, 2015), at 96:3-20; *Id.*, Ex. 7, Excerpt from the Deposition of Dionne Marie Spain (June 9, 2015) at 48:15-49:22, 126:1-132:25, 148:7-12. Given the common defect, the fact that the surrounding circumstances in the OSI *after* the Defective Switch was implicated is of no moment. Those are outcomes that resulted after the Defective Switch created the dangerous safety hazard and are not determinative of whether the incident is "substantially similar" under governing authority.[14]

---

[13] See Jackson Decl., Ex. 5, GM-MDL2543-000703918

[14] When OSI evidence is introduced to show that a defendant had notice of a particular condition or defect, the standards for admissibility are relaxed. McCormick on Evid.§200 (7th ed.); *Jackson,* 88 F. 2d at 1083; *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig.*, 978 F. Supp.2d 1053, 1086 (C.D. Cal. 2013) (OSI evidence involving different model years featuring "mostly the same code involved" substantially similar for purposes of notice); *see also Benedi v. McNeil-P.P.C., Inc.*, 66 F.3d 1378, 1386 (4th Cir. 1995); *Ponder v. warren tool Corp.,* 834 F.2d 1553, 1560 (10th Cir. 1987). Plaintiffs submit that any incident involving the Defective Switch is probative of GM's notice and knowledge of the Defective Switch. Ignoring the existence of other bases for objection, given that the Bankruptcy Court held that knowledge and notice of Old GM employees who became New GM employees is imputed to New GM, Plaintiffs are hard-pressed to understand the basis of New GM's complaint as to these specific incidents, each of which pre-dated Plaintiffs accident and each of which

### III.    DPA, Valukas Report and NHTSA OSI.

In their OSI Disclosure, Plaintiffs indicated that they would seek to introduce evidence of OSI identified in the Valukas Report, the DPA and that contained in NHTSA compiled reports, which would include the NHTSA Complaints reports appended to Steve Loudon's Report as part of Appendix B.  This Court has previously determined in *Scheuer* that these documents are separately admissible[15] and that ruling should apply in this case as well.  These documents detail "substantially similar" incidents involving the same Defective Switch present in Ms. Spain's vehicle and that she alleges caused her accident.  In the case of the DPA, New GM has admitted fault associated with the Defective Switch and specifically agreed not to deviate from the SOF attached thereto as Exhibit C (which references several of the OSI events relied upon by Plaintiffs).  Although the DPA was not in existence when Plaintiffs' experts issued their reports, New GM has acknowledged fault related to the Defective Switch and admitted to the specific facts in the SOF, from which it cannot deviate without significant criminal penalties being imposed. DPA, Exhibit C at ¶13.[16]   New GM has itself reminded of its adherence to the SOF in virtually every filing and has consistently re-affirmed its intention to not deviate from that

---

involved the Defective Switch.  *In re Motors Liquidation Co.,* No. 09-50026 (REG). 2015 WL 6876114 (Bankr. S.D.N.Y. Nov. 9, 2015), at *33.

[15] *See* Dkt. No. 1894, Court Order admitting the Valukas Report in part; Dkt. No. 1770 Court Order admitting the NHTSA Consent Order.

[16] It is arguable that New GM's efforts to preclude the introduction of the information in the DPA SOF is, itself, a violation of paragraph 13 of the SOF.  New GM agreed that it will not "make any statement, in litigation or otherwise, contradicting the Statement of Facts."  DPA, Exhibit C at ¶13.  The provision allows New GM to "raise defenses and/or assert affirmative claims and defenses in any proceedings brought…", *Id*., but there is nothing in the SOF that allows New GM to essentially disavow the facts that it has admitted by sweeping them under the rug.  Seeking to preclude the introduction of the DPA or SOF is not the assertion of an affirmative claim or defense, and, given that the intention of New GM's agreement with the federal government to avoid prosecution was to accept culpability for its wrongful conduct, Plaintiffs submit that New GM's efforts to keep Plaintiffs' experts from discussing the DPA's contents is the effective equivalent of disavowing it.

stipulation entered into in September of 2015.  Thus, while it was not specifically identified in

any of the reports, New GM cannot claim prejudice or unfairness given that New GM "admits

and stipulates to the facts in the Statement of Facts" and admits that it "failed to disclose to its

U.S. regulator and the public a potentially lethal safety defect that caused airbag non-deployment

in certain GM model cars, and that GM further affirmatively mislead consumers about the safety

of GM cars afflicted by the defect."  Dkt. No. 1732-1, DPA, Exhibit C at ¶2.

The Valukas Report was adopted and relied upon by New GM, and New GM publicly

acknowledged the results of that investigation including the similar incidents identified in therein

involving the same Defective Switch.  It is Plaintiffs intention to introduce these documents

through their experts in order to show that New GM was on notice of the defective ignition

switch as well as the potential severity of the accidents and injuries sustained due to the

Defective Switch and resulting airbag non-deployment.  The Valukas Report was listed as part of

Steve Loudon's reliance materials as was the lengthy chart identifying the countless NHTSA

complaints relating to the Defective Switch.  Given that Mr. Loudon relied on this document and

appended it to his report, New GM's argument that he should not be permitted to testify

regarding its contents should be rejected.

**IV.   Plaintiffs' experts may testify regarding OSI.**

New GM likewise takes issue with Plaintiffs' intention to introduce evidence of OSI

through the four experts Plaintiffs identified in their January 25, 2016 OSI Disclosure.

Specifically, New GM takes the position that the OSI is "outside the scope of their disclosed

testimony" and that the "purported OSIs are not discussed in any of [their] reports."[17]   New GM

---

[17] It is axiomatic that a plaintiff may use expert testimony to assist in the burden to show prior incidents
are similar, just as a defendant may use an expert to show that they are not. *Ramos*, 615 F. 2d 339-40.

is wrong.  Steve Loudon, who was an engineer at GM from 1988 to 2003, has extensive

knowledge regarding the design, development, testing and analysis of hardware and software

used in automobile control systems.[18]  In addition to concluding that the Defective Switch was a

serious safety issue and that a vehicle is seriously impaired if it losses power steering and brake

assist, Mr. Loudon opines that GM should have designed the SDMs to remain active so that the

airbags and other systems remained active.  Loudon Report at 4.  In connection with this analysis

and opinion, Loudon reviewed the Valukas Report (Loudon Report, Appendix B at 2), the

NHTSA Complaint Database ("NHTSA Complaint") and the NHTSA Path Forward.[19]  Mr.

Loudon, concluded, "based on [his] analysis] and the totality of the data that [he] relied on, that

GM turned a blind eye to safety…[That GM] knew the consequences of the ignition switch

defect and knew that people had been killed or injured because of the problem…".  Jackson

Decl, Ex. 8, Loudon Report at 44.  His review of the OSI evidence and his opinion testimony

falls squarely within that which should be admissible to demonstrate that New GM was on notice

of the Defective Switch.  The same is true of Plaintiffs' other experts.

    With regard to Mark Hood, on page 1 of his report he makes clear under the heading

"*Investigation and Involvement*" that he "was retained on behalf of the Plaintiffs in *Melton v.*

*General Motors., et. al.* litigation" and that as part of that engagement he "performed a materials

engineering investigation of the ignition switch" at issue in the *Melton* case and that New GM

representatives were present in December of 2012 (and again in March of 2013) when he

---

[18] *See* Jackson Decl., Ex. 8, Expert Report of Steve Loudon (July 29, 2015)  Appendix B; Loudon Report at 44, respectively.

[19] Given that Mr. Loudon's report was tendered on July 29, 2015, he could not have specifically referenced the DPA, which occurred two months thereafter.  The same is true of the other experts engaged by Plaintiffs.

performed torque evaluations on the Melton ignition assembly. Jackson Decl., Ex. 9, Expert Report of Mark B. Hood (July 29, 2015) at 1-2. Thus, contrary to the statement of New GM, Mr. Hood disclosed his work on and familiarity with the facts and circumstances surrounding Brooke Melton's accident and his intention to provide expert opinions predicated on his expertise and experience in that case. Indeed, Mr. Hood's report is predicated on his investigative work in *Melton* as well as other subsequent work that he performed as part of his retention in the MDL cases. Brooke Melton's accident is one of the incidents listed by Plaintiffs.

Glen Stevick, a mechanical engineer, expressly identified the Valukas Report and the NHTSA Complaint database as materials that he reviewed and relied upon in deriving his opinions. Jackson Decl., Ex. 10, Expert Report of Glen Stevick (July 29, 2015). Mr. Stevick, in fact, cites to the Valukas Report throughout his report. *Id.* at 6, N.3; 24, n.25; 36, n.46 and 48; and 38-39 n.53-55 and 57-61. As noted above, the Valukas Report and the NHTSA Complaint database identify similar incidents that Mr. Stevick will be prepared to testify about at trial for purposes of establishing that New GM was on notice of the highly dangerous Defective Switch (a fact to which New GM admitted in connection with the DPA) and that the Defective Switch may have caused the accident and injuries here.[20]

Plaintiffs do not intend to call any non-expert witnesses for purposes of introducing OSI and have not identified any, but they should be permitted to demonstrate through the use of their experts that, at a minimum, New GM was on notice of the Defective Switch, and to establish

---

[20] Since these experts disclosed their use of and reliance upon the Valukas Report, the NHTSA Complaint database and other documents related to these incidents, Plaintiffs are confused by New GM's generic objection to using these experts to introduce such evidence at trial subject to any additional objections that may arise at the time.

causation as well.    There is no prejudice to New GM.    Indeed, when these issues were previously litigated, the Court itself noted that "[a]fter all, New GM has long been aware of the other incidents and of Plaintiff's intention to offer OSI evidence at trial."    (Dec. 28, 2015 Memorandum Opinion and Order, Dkt. No. 1968, at 7.)

In sum, the Court should follow the approach established in *Scheuer* and decline to globally exclude Plaintiffs' OSI evidence.    Plaintiffs have met their *prima facie* burden of demonstrating that the OSI evidence identified is admissible.    As the trial nears as well as during this trial, New GM can raise any specific objections to OSI evidence introduced by Plaintiffs and the Court can make contemporaneous rulings at time.

## CONCLUSION

For all of the reasons described herein, the Court should permit Plaintiffs to use the OSI evidence at issue.

Dated:  February 1, 2016                        Respectfully Submitted,


                                        _____/s/_____
                                        Randall W. Jackson
                                        Boies, Schiller & Flexner LLP
                                        575 Lexington Avenue
                                        New York, New York 10022
                                        T. 212-446-2300

16

**CERTIFICATE OF SERVICE**

I do hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on February 1, 2016 which will send notification of such filing to the e-mail addresses registered.

_____/s/_____
Randall W. Jackson
Boies, Schiller & Flexner LLP
*Counsel for Plaintiffs*

17