UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------x
IN RE:

GENERAL MOTORS LLC IGNITION SWITCH LITIGATION

*This Document Relates to All Actions*

------------------------------------------------------------------------------x

14-MD-2543 (JMF)

Hon. Jesse M. Furman

**MEMORANDUM OF LAW IN SUPPORT OF GM LLC'S MOTION *IN LIMINE* NO. 20
TO EXCLUDE EVIDENCE RELATED TO AIRBAG NON-DEPLOYMENT**

Richard C. Godfrey, P.C.
Andrew B. Bloomer, P.C.
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL  60654-3406
Phone:  312-862-2000
Fax:  312-862-2200
richard.godfrey@kirkland.com
andrew.bloomer@kirkland.com

*Attorneys for Defendant General Motors LLC*

# **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................... 1

BACKGROUND ...................................................................................................................... 2

    A.    Plaintiffs' Airbag Non-Deployment Allegations And Selection As A Bellwether Trial Candidate. ..................................................................................... 2

    B.    Plaintiffs And Their Expert Now Admit That This Was Not An Airbag Deployment Level Accident. ..................................................................................... 4

    C.    Contrary To Their Admissions, Plaintiffs Continue To Make Allegations Concerning And Seek To Introduce Evidence Related To Airbag Non-Deployment Issues. .................................................................................................. 5

ARGUMENT AND AUTHORITIES ....................................................................................... 7

I.    Airbag Non-Deployment Evidence Should Be Excluded Because, by plaintiffs' own admission, It Is Irrelevant .................................................................................... 7

    A.    Airbag Non-Deployment Evidence Is Irrelevant To Plaintiffs' Claims That An Ignition Switch Defect Caused This Accident. ................................................. 8

    B.    Airbag Non-Deployment Evidence Is Irrelevant To Notice Issues. ..................... 10

    C.    Airbag Non-Deployment Evidence Is Irrelevant To Other Issues. ....................... 12

II.    Airbag Non-Deployment Evidence Should Be Excluded Because It Risks Unfair Prejudice, Jury Confusion, And Waste Of Time. ............................................. 12

CONCLUSION ....................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahrens v. Ford Motor Co.*,
   340 F.3d 1142 (10th Cir. 2003) ............................................................................................... 9

*Beastie Boys v. Monster Energy Co.*,
   983 F. Supp. 2d 354 (S.D.N.Y. 2014) ..................................................................................... 13

*Busse v. Bayerische Motoren Werke, A.G.*,
   1997 WL 106719 (E.D. La. March 11, 1997) ......................................................................... 11

*Coursen v. A.H. Robins Co., Inc.*,
   764 F.2d 1329 (9th Cir. 1985) ............................................................................................ 9, 13

*Coursen v. A.H. Robins Co., Inc.*,
   773 F.2d 1049 (9th Cir. 1985) ................................................................................................. 9

*Gerber v. Computer Assoc., Int'l, Inc.*,
   303 F.3d 126 (2d Cir. 2002) .................................................................................................. 13

*Haskins Trucking Inc. v. Goodyear Tire & Rubber Co.*,
   2008 WL 1775272 (W.D. La. Apr. 17, 2008) ........................................................................ 12

*Hicks v. Six Flags over Mid-Am.*,
   821 F.2d 1311 (8th Cir. 1987) ............................................................................................... 12

*In re Norplant Contraceptive Prods. Liab. Litig.*,
   1997 WL 81094 (E.D. Tex. Feb. 21, 1997) ...................................................................... 10, 14

*Jackson v. Firestone Tire & Rubber Co.*,
   788 F.2d 1070 (5th Cir. 2986) ........................................................................................... 10, 11

*Jacobs v. Daimler Chrysler Corp.*,
   Nos. 2:05 CV 172, 2:05 CV 1281, 2008 WL 4155345 (W.D. La. Sept. 5, 2008) .................... 12

*Johnson v. Ford Motor Co.*,
   988 F.2d 573 (5th Cir. 1993) ........................................................................................... 10, 11

*Lawrence v. Gen. Motors Corp.*,
   73 F.3d 587 (5th Cir. 1996) ..................................................................................................... 8

*Luce v. United States*,
   469 U.S. 38 (1984) .................................................................................................................. 7

**TABLE OF AUTHORITIES (CONT'D)**

Page(s)

*Old Chief v. United States*,
 519 U.S. 172 (1997) .................................................................................................................. 13

*Ordonez v. A&S Broadway Produce, Inc.*,
 2015 WL 5729415 (S.D.N.Y. Sept. 29, 2015) ............................................................................ 7

*Schmelzer v. Hilton Hotels Corp.*,
 2007 WL 2826628 (S.D.N.Y. Sept. 24, 2007) .......................................................................... 11

*Seither v. Winnebago Indus., Inc.*,
 853 So. 2d 37 (La. Ct. App. 2003) .............................................................................................. 8

*Sys. Eng'g & Sec., Inc. v. Science & Eng'g Ass'n, Inc.*,
 962 So. 2d 1089 (La. Ct. App. 2007) ........................................................................................ 10

*United States v. Dwyer*,
 539 F.2d 924 (2d Cir. 1976) ...................................................................................................... 12

*United States v. Valencia*,
 826 F.2d 169 (2d Cir. 1987) ........................................................................................................ 7

*Weir v. Crown Equip. Corp.*,
 217 F.3d 453 (7th Cir. 2000) ..................................................................................................... 13

**Rules**

Fed. R. Evid. 401 ............................................................................................................................ 7

Fed. R. Evid. 402 ..................................................................................................................... 7, 10

Fed. R. Evid. 403 .......................................................................................................................... 12

**INTRODUCTION**

Plaintiffs Dionne Spain and Lawrence Barthelemy sue General Motors LLC ("New GM" or "GM LLC") for claimed injuries sustained when an ignition switch defect allegedly caused Ms. Spain to lose control of her vehicle during a January 24, 2014 accident on an icy bridge in New Orleans.  When this case was selected as a bellwether trial candidate, plaintiffs' sworn Fact Sheets and plaintiffs' pleadings alleged claims based on airbag non-deployment.  Plaintiffs now, however, "do not dispute that the frontal impact of the vehicle was not of sufficient velocity to otherwise cause the airbags in Ms. Spain's vehicle to deploy."  (Plaintiffs' 2/1/2016 OSI Mem. Docket No. 2201 at 1-2)  And plaintiffs' own expert (Robert Caldwell) admits that the airbags in Ms. Spain's car should not have deployed in this accident, that the forces of this accident were insufficient to trigger airbag deployment, and that "the ignition switch played no role in bag deployment."  Plaintiffs thus concede (as they must) that the matter "at issue here is *only* whether the ignition switch defect caused Ms. Spain's vehicle to stall, resulting in the loss of power steering, the use of her power brakes, and, ultimately, caused Plaintiffs' injuries." (Docket No. 2201 at 2 (emphasis added).)

Because plaintiffs have dropped their airbag non-deployment claims, New GM here moves *in limine* to exclude from trial all evidence and argument related to whether ignition switch rotation can cause or contribute to airbag non-deployment,[1] including: (i) airbag non-deployment accidents and investigations described in the Valukas Report and the Statement of Facts accompanying New GM's Deferred Prosecution Agreement, (ii) any alleged "Other

---

[1] This motion does not seek to exclude and is not intended to exclude introduction of the narrow and uncontested fact that the severity of this crash was de minimis at best and thus below the threshold for airbag deployment. Such evidence is relevant to injury causation and severity.  It can be properly communicated to the jury by a stipulation. (*See, e.g.,* Docket No. 2201 at 1-2 ("There was only minimal damage to Ms. Spain's car and . . . [p]laintiffs do not dispute that the frontal impact of the vehicle was not of sufficient velocity to otherwise cause the airbags in Ms. Spain's vehicle to deploy."); Ex. 1, 11/20/15 Caldwell Dep. at 10 (agreeing "that the severity was below that which you'd expect airbag deployment").)

Similar Incidents" related to airbag non-deployment, and (iii) expert opinions relating to alleged insufficiencies in airbag design or function.  Such evidence and argument should be excluded for the following reasons:

*First*, airbag non-deployment evidence is inadmissible under Federal Rules of Evidence 401 and 402 because, as plaintiffs effectively admit, this evidence is irrelevant to their claims.

*Second*, airbag non-deployment evidence should be excluded pursuant to Federal Rule of Evidence 403 because the probative value of this evidence is substantially outweighed by the danger that the evidence will confuse the issues, mislead the jury, unfairly prejudice New GM, and cause undue delay.

## BACKGROUND

**A.    Plaintiffs' Airbag Non-Deployment Allegations And Selection As A Bellwether Trial Candidate.**

This personal injury case arises out of a January 24, 2014 motor vehicle accident (the "subject incident") involving plaintiffs Dionne Spain and Lawrence Barthelemy.[2]  Ms. Spain drove the 2007 Saturn Sky (the "Vehicle") and Mr. Barthelemy sat in the front passenger seat; both passengers wore seatbelts.[3]  The subject incident occurred as plaintiffs traveled westbound across the ice-covered Crescent City Bridge, in New Orleans, Louisiana, on a cold and rainy night.[4]  Plaintiffs allege that, as Ms. Spain drove across the bridge, she applied the brakes in order to avoid a multi-car pileup, but the brakes did not respond.[5]  They also claim the Vehicle experienced a loss of power steering and, as a result, Ms. Spain lost control and the front driver's

---

[2]  Second Amended Complaint, *Barthelemy, et al. v. Gen. Motors LLC*, 1:14-cv-05810 (S.D.N.Y. Dec. 16, 2015) (Docket No. 183) ("2d Am. Compl.") ¶¶ 26-32.

[3]  *Id*. ¶¶ 27-28.

[4]  *Id*. ¶¶ 26, 30.

[5]  *Id*. ¶ 29.

2

side of the Vehicle scraped the concrete median of the Crescent City Bridge.[6] Plaintiffs further allege that the airbag did not deploy in the accident, and that "[a]s a result of the accident and airbag non-deployment," plaintiffs suffered physical injuries.[7]

On November 19, 2014, this Court entered Order No. 25, which set forth the process by which individual claims were considered for inclusion in the Initial Discovery Pool, including, among other things, plaintiffs' submission under oath of a substantially complete Plaintiff Fact Sheet. (Docket No. 422 at 4.) On February 6, 2015, this Court entered Order No. 34, which limited the pool of eligible Bellwether cases to claims involving one of three categories of injuries "with airbag non-deployment." (Docket No. 573 at 2.)[8]

Ms. Spain submitted her signed Declaration accompanying her initial Plaintiff Fact Sheet on January 14, 2015, and Mr. Barthelemy submitted his signed Declaration on February 20, 2015.[9] In their fact sheets, both plaintiffs swore under penalty of perjury that "the Subject Vehicle's airbag systems failed to deploy during the Subject Incident because the Ignition Switch moved out of the 'run' position."[10] In March 2015, both plaintiffs submitted supplemental Plaintiff Fact Sheets, in which they continued to assert that the airbags failed to deploy during the subject incident as a result of ignition switch rotation.[11] By the time the six bellwether trial

---

[6] *Id*. ¶ 30.

[7] *Id.* ¶¶ 31-34.

[8] New GM had originally proposed that the Initial Bellwether Pool also include "[p]ersonal injury claims involving allegations of loss of vehicular control before accident and no allegation that the airbag failed to deploy during the accident." (2/2/15 Ltr. from A. Bloomer to Court, Docket No. 567.) In this case, it is still correct that the airbag did not deploy in the accident (as required under Order No. 34), but plaintiffs' recent concessions and their expert's admissions confirm that the non-deployment had nothing to do with any ignition switch defect.

[9] Ex. 2, 1/14/15 Spain signed Declaration; Ex. 3, 2/2/15 Barthelemy signed Declaration.

[10] *Id.* ¶ 47.

[11] Ex. 4, 3/23/15 Spain First Supplemental Fact Sheet at ¶ 47; Ex. 5, 3/23/15, Barthelemy First Supplemental Fact Sheet at ¶ 47; Ex. 6, 3/29/15 Barthelemy Second Supplemental Fact Sheet ¶ 47.

3

candidates were selected on July 1, 2015, New GM understood that plaintiffs continued to claim that this was an airbag non-deployment case. (Docket No. 422.)

### B. Plaintiffs And Their Expert Now Admit That This Was Not An Airbag Deployment Level Accident.

Despite the allegations contained in the complaint and the responses to their Plaintiff Fact Sheets, plaintiffs now admit that "the frontal impact of the vehicle was not of sufficient velocity to otherwise cause the airbags in Ms. Spain's vehicle to deploy," and that the only issues in this case are "whether the ignition switch defect caused Ms. Spain's vehicle to stall, resulting in the loss of power steering, the use of power brakes, and, ultimately, caused Plaintiffs' injuries." (Docket No. 2201 at 1-2.) Additionally, plaintiffs' only case-specific expert, Robert Caldwell, conceded in his report, and admitted during two subsequent depositions, that the airbags in the Vehicle should not have deployed as a result of the subject incident.[12] (Ex. 7, Caldwell Rpt. at 10 ("[T]here is no CDR or other physical evidence to support that this crash was a deployment level event."); Ex. 8, 9/15/15 Caldwell Dep. at 84:12-85:23 ("the ignition switch played no role in bag deployment in the Barthelemy/Spain case"); Ex. 1, 11/20/15 Caldwell Dep. at 10:20-22 ("the [accident] severity was below that which you'd expect airbag deployment").) Similarly, New GM's reconstruction expert, Jennifer Yaek, concluded that the subject incident was below the Delta-V threshold to warrant airbag deployment. (Ex. 9, Yaek Rpt. at 13, 16 ("Since the Delta V experienced by the subject Saturn was determined to be no more than 5 miles per hour during the accident event, it was not sufficient to meet thresholds for an airbag deployment").)

---

[12] None of plaintiffs' other experts have opined on whether the airbags should have deployed as a result of the subject incident or whether airbag non-deployment was the cause of plaintiffs' injuries.

4

Thus, plaintiffs and New GM agree that the airbags should not have deployed as a result of the subject incident.[13]

### C. Contrary To Their Admissions, Plaintiffs Continue To Make Allegations Concerning And Seek To Introduce Evidence Related To Airbag Non-Deployment Issues.

Notwithstanding the clear and dispositive admissions of plaintiffs and their own expert, and plaintiffs' stated intention to exclude expert evidence related to airbag non-deployment in the subject incident, plaintiffs' second amended complaint, filed December 16, 2015, continues to allege that Ms. Spain suffered "injuries to her back and neck" and that Mr. Barthelemy "suffered significant personal physical injuries requiring multiple medical office visits for treatment" as a result of "airbag non-deployment."[14]

In addition, the complaint is rife with allegations related to New GM's investigation into the causes of airbag non-deployment and the subsequent NHTSA Recall No. 14V-047, which itself was specifically addressed to the following "defect which relates to motor vehicle safety:"

> The ignition switch torque performance may not meet General Motors' specification. If the torque performance is not to specification, the ignition switch may unintentionally move from the "run" position to the "accessory" or "off" position with a corresponding reduction or loss of power. This risk may be increased if the key ring is carrying added weight or the vehicle goes off road or experiences some other jarring event. The timing of the key movement out of the 'run' position, relative to the activation of the sensing algorithm of the crash event, may result in the airbags not deploying, increasing the potential for occupant injury in certain kinds of crashes.

(*See* Ex. 10, February 25, 2014 letter to NHTSA regarding NHTSA Recall No. 14V-047.) While New GM agrees that moving stalls or loss-of-power are safety issues (and treats them as such),

---

[13] Moreover, plaintiffs have indicated they intend to file a motion *in limine* seeking to exclude all evidence related to airbag non-deployment in the subject incident.

[14] 2d Am. Compl. ¶¶ 32, 34.

5

the ignition-switch-related airbag non-deployment investigation and recall are distinct from that issue and are no longer relevant to this case. These irrelevant allegations include:

- the effect of ignition switch rotation on airbag deployment (2d Am. Compl. ¶¶ 122-23);

- knowledge that ignition switch rotation rendered the airbags inoperable (*Id.* ¶¶ 58, 60, 127, 161, 202, 204-205, 224-26);

- outside counsel's knowledge that ignition switch rotation rendered the airbags inoperable (*Id.* ¶¶ 58, 60);

- knowingly equipping the 2007 Saturn Sky "with a defective ignition switch that may move out of the "run" position, disabling . . . frontal airbags" (*Id.* ¶ 128)

- knowledge of motor vehicle accidents involving airbag non-deployment (*Id.* ¶¶ 140, 181-82, 187, 190-200, 212-15, 217, 249);

- failure to disclose motor vehicle accidents involving airbag non-deployment (*Id.* ¶ 180);

- failure to disclose information regarding airbag non-deployment to NHTSA, "despite its knowledge that NHTSA was interested in airbag non-deployment incidents" (*Id.* ¶¶ 202, 222-24);

- internal investigation of instances of airbag non-deployment (*Id.* ¶¶ 216, 218-21, 228-39)

Plaintiffs have also indicated they will attempt to introduce evidence related to these allegations at trial. For example, plaintiffs apparently intend to introduce:

- the testimony of Steve Loudon, who opines in his reports that "GM should have designed the SDMs to remain active and allow the airbags to deploy where the ignition switch moved from RUN to ACC" (Ex. 11, Loudon Rpt. at 4, 12-25);

- the testimony of Glen Stevick, who also offers an airbag prolongation opinion, and whose reports contain opinions regarding the history of airbags, airbag design and risk assessment, the effect of ignition switch rotation on airbag deployment, airbag regulations, the design and functionality of sensing and diagnostic modules ("SDM") and event data retrievers ("EDR"), New GM's internal investigation of SDM power moding timing, and the possibility of non-deployment with the EDR in RUN (*E.g.*, Ex. 12, 9/28/15 Stevick Dep. at 134:19-135:1; Ex. 13 Stevick Rpt. at 4-7, 22-23, 73-89, 92-93);

- excerpts of the Valukas Report regarding the impact of ignition switch rotation on airbag deployment (1/19/2016 Joint Proposed Order Regarding The Applicability of *Scheuer* Orders to the *Barthelemy* case Docket No. 2146 at 11)

6

- discussion in the Valukas Report and admissions in the Statement of Facts regarding motor vehicle accidents involving airbag non-deployment and New GM's investigation of same (1/19/2016 Joint Proposed Order Regarding The Applicability of *Scheuer* Orders to the *Barthelemy* case Docket No. 2146 at 3);

- other purportedly similar incidents involving airbag non-deployment (Docket No. 2201).[15]

This and other evidence related to other accidents involving airbag non-deployment, New GM's investigation of instances of airbag non-deployment, and NHTSA Recall No. 14V-047 is irrelevant to plaintiffs' claims in this case and should be categorically excluded.[16]

## ARGUMENT AND AUTHORITIES

The district judge "ha[s] discretion in deciding whether a pretrial ruling on evidence may be made in advance of trial." *United States v. Valencia*, 826 F.2d 169, 172 (2d Cir. 1987). This includes prohibiting inadmissible and prejudicial evidence before it is actually introduced at trial. *Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984); *see also Ordonez v. A&S Broadway Produce, Inc.*, 2015 WL 5729415, at *1 (S.D.N.Y. Sept. 29, 2015). Here, airbag non-deployment evidence should be excluded because it is irrelevant and any potential relevance is substantially outweighed by dangers of unfair prejudice, jury confusion, and other Rule 403 factors.

### I. AIRBAG NON-DEPLOYMENT EVIDENCE SHOULD BE EXCLUDED BECAUSE, BY PLAINTIFFS' OWN ADMISSION, IT IS IRRELEVANT.

Evidence or argument regarding airbag non-deployment should be excluded because it does not have "any tendency to make a fact" that is "of consequence in determining the action" "more or less probable than it would be without the evidence." *See* Fed. R. Evid. 401, 402.

---

[15] In accordance with Order No. 94 (Docket No. 2183), New GM will specifically address the issues raised in plaintiff's OSI brief (including the sufficiency of any OSI disclosures) on February 19, 2016.

[16] The examples listed above are a non-exhaustive list of the types of evidence that should be excluded. It does not include, for example, former or current employee depositions, trial exhibits, or other evidence that may also be implicated by this motion. If the Court grants this Motion, New GM will meet and confer with plaintiffs to attempt to reach an agreement on the evidence to be excluded from trial.

### A.   Airbag Non-Deployment Evidence Is Irrelevant To Plaintiffs' Claims That An Ignition Switch Defect Caused This Accident.

Plaintiffs' admissions confirm that the sole defect at issue here is one in which the ignition switch caused a loss of control. The crux of plaintiffs' claim is that an ignition switch rotation resulted in a loss of control or otherwise impaired Ms. Spain's ability to drive and maneuver the Vehicle—and not that an ignition switch defect impacted or disabled the airbags. (*See, e.g.*, Docket 2201 No. at 1-2; 2d Am. Compl. ¶¶ 345-382) As such, airbag non-deployment evidence is entirely irrelevant to plaintiffs' claims.

Under the Louisiana Products Liability Act (LPLA), a product is "unreasonably dangerous in design" if, at the time the product left its manufacturer's control, there existed "an alternative design for the product that was capable of preventing the *claimant's damage*" and the "likelihood that the product's design would cause the *claimant's damage* and the gravity of *that damage* outweighed the burden" of adopting the alternative design. La. Rev. Stat. Ann. § 2800.56 (emphasis added). *See, e.g.*, *Seither v. Winnebago Indus., Inc.*, 853 So. 2d 37, 41 (La. Ct. App. 2003) (noting that a plaintiff must establish that a feasible alternative would have prevented the plaintiff's injury and that the risk avoided by the alternative design outweighed the burden of its adoption); *Lawrence v. Gen. Motors Corp.*, 73 F.3d 587, 590 (5th Cir. 1996) (noting that Louisiana plaintiffs suing under theory of design defect in products liability action must demonstrate the risk avoided by using alternative design, or magnitude of damage discounted by likelihood of its occurrence).

The only "damage" or danger that remains at issue in this case is the risk that an ignition switch defect could cause loss-of-control or otherwise impair driving ability. Accordingly, airbag non-deployment (or any other non-loss-of-control dangers or damages that may relate to an ignition switch rotation) is irrelevant and should be excluded. In this respect, the Tenth

8

Circuit's opinion in *Ahrens v. Ford Motor Co.*, 340 F.3d 1142 (10th Cir. 2003), is instructive. The *Ahrens* plaintiff alleged that the "tractor that Mr. Ahrens was operating at the time of his death was defective and unreasonably dangerous due to the absence of" a roll over protection system (ROPS). The ROPS "includes both a rollover bar and a seat belt." The plaintiff in that case argued that the lack of an ROPS system made the tractor "unsafe" and increased the risks of operating the tractor, including risks related to rollovers. *Id.* at 1144. The appellate court affirmed the district court's grant of summary judgment in Ford's favor finding that "evidence of rollovers was irrelevant to the determination of whether the tractor was unreasonably dangerous and was therefore inadmissible" because the deceased "was not killed because the tractor rolled over, but rather because he was thrown from the tractor." *Id.* at 1145. Specifically, the appellate court concluded that plaintiff's attempt to "bootstrap" evidence of rollovers by relying on the ROPS were unavailing because "the risks of rollover tells us nothing about consumers' contemplation of risks associated with operating a tractor without a seatbelt," which the parties agreed was "the primary issue in th[e] case." *Id.* at 1145-1146. Just as evidence of the risks of rollovers associated with the absence of the ROPS system was properly excluded where there was no evidence that plaintiff's death was actually caused by the rollover, so too should this Court exclude evidence that ignition switch rotation can cause or contribute to airbag non–deployment where plaintiffs themselves concede that the airbags should not have deployed in this accident in the first place.

Other courts have similarly excluded evidence of risks potentially associated with design defects where such risks were not actually claimed to have manifested in the case at issue. *See, e.g., Coursen v. A.H. Robins Co., Inc.*, 764 F.2d 1329, 1331 (9th Cir. 1985)[17] (affirming district

---

[17] Opinion corrected for typographical reasons, *Coursen v. A.H. Robins Co., Inc.*, 773 F.2d 1049 (9th Cir. 1985).

court ruling excluding evidence of "injuries associated with [other] pregnancies" because any testimony regarding "other possible injuries to, or other side effects suffered by, user of the Dalkon Shield would be inadmissible as irrelevant, prejudicial, collateral, and potentially confusing"); *In re Norplant Contraceptive Prods. Liab. Litig.*, 1997 WL 81094, at *1 (E.D. Tex. Feb. 21, 1997) (finding that references to the adequacy of warnings for side effects not claimed by the Bellwether plaintiffs were irrelevant and, even if relevant, "any probative value [was] substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury").

In addition, evidence of airbag non-deployment is irrelevant to plaintiffs' fraudulent misrepresentation claims because it is immaterial. To show fraudulent misrepresentation, plaintiffs must allege (1) a misrepresentation of material fact, (2) made with the intent to deceive, and (3) causing justifiable reliance with resulting injury. *Sys. Eng'g & Sec., Inc. v. Science & Eng'g Ass'n, Inc.*, 962 So. 2d 1089, 1091 (La. Ct. App. 2007). The only material misrepresentation related to plaintiffs' claims here would be limited to those relating to loss of control or moving stall issues, not airbag performance.

Accordingly, the Court should exclude airbag non-deployment evidence because it does not have any tendency to make any fact of consequence in determining plaintiffs' claims more or less probable than it would be without the evidence. Fed. R. Evid. 402.

### B.     Airbag Non-Deployment Evidence Is Irrelevant To Notice Issues.

Airbag non-deployment evidence is also irrelevant to notice issues. The evidence proffered to show notice must relate to the precise mechanical defect or component part. *See, e.g., Jackson v. Firestone Tire & Rubber Co.*, 788 F.2d 1070, 1083 (5th Cir. 2986) (finding that reasonably similar evidence must show how the specific component at issue relates to plaintiff's claim); *Johnson v. Ford Motor Co.*, 988 F.2d 573, 579-80 (5th Cir. 1993); *Busse v. Bayerische*

10

*Motoren Werke, A.G.,* 1997 WL 106716, at *5 (E.D. La. March 11, 1997) (noting that the differences between side impact and rear impact accidents can make the prior accidents substantially dissimilar); *Schmelzer v. Hilton Hotels Corp.*, 2007 WL 2826628, at *3 (S.D.N.Y. Sept. 24, 2007) (noting that where negligence is alleged, proof of prior accidents may be admitted to show that the defendant had notice of a dangerous condition).

Prior airbag non-deployment accidents do not provide notice of plaintiffs' claims regarding loss of power steering and power brakes. Airbag non-deployment is controlled by a component called the sensing diagnostic module ("SDM"). (Yaek Rpt. at 13-15.) An investigation of airbag non-deployment generally focuses on whether the SDM should have deployed the airbag, which may involve investigating the data stored by the event data recorder ("EDR"), the change in speed ("Delta-V") experienced during the impact, the duration of the impact, and a variety of other factors. (*See id.*) Because the defect at issue here relates to *how* an accident may have occurred, and not whether the airbags should have deployed, knowledge of airbag non-deployment is not probative of notice of the loss-of-control defect at issue in this case. *See, e.g., Jackson*, 788 F.2d 1082-83. Accordingly, the Court should exclude evidence related to prior airbag non-deployment accidents because these accidents involve crash circumstances (*e.g.*, speed and location of impact) and vehicle components that are ***not*** substantially (or reasonably) similar to the evidence necessary to establish plaintiffs' allegations regarding the loss of power steering and power breaks. *See Johnson*, 988 F.2d at 579-80 (finding that the evidence of other incidents is not relevant to notice because they do not involve "precise mechanical defect alleged" such that there was contamination in inboard C.V. joint causing the steering mechanism to "freeze up").[18]

---

[18] Even if one assumes that airbag non-deployment could have some minimal relevance to notice, the admissibility of such evidence must be weighed against the dangers of unfairness, confusion, and undue expenditure of time

11

### C. Airbag Non-Deployment Evidence Is Irrelevant To Other Issues.

Finally, because plaintiffs and their own expert concede that the airbag should not have deployed in the first place, plaintiffs cannot recover for injuries allegedly caused by such non-deployment. *See Jacobs v. Daimler Chrysler Corp.*, 2008 WL 4155345, at *2-3 (W.D. La. Sept. 5, 2008) (granting summary judgment on crashworthiness claim because whether plaintiff "sustained more severe injuries than he would have received if the airbag had deployed . . . requires expert testimony" and plaintiff's only expert "concluded that he was not able to reach an 'opinion on whether the airbags should have deployed in plaintiff's truck during the [] collision.'"); *Haskins Trucking Inc. v. Goodyear Tire & Rubber Co.*, 2008 WL 1775272, at *6 (W.D. La. Apr. 17, 2008) (plaintiffs must "come forward with sufficient evidence from which a reasonable juror could conclude that more probably than not the damages in this case were caused by a [vehicle defect]").

### II. AIRBAG NON-DEPLOYMENT EVIDENCE SHOULD BE EXCLUDED BECAUSE IT RISKS UNFAIR PREJUDICE, JURY CONFUSION, AND WASTE OF TIME.

Evidence related to airbag non-deployment should also be excluded because the minimal probative value, if any, is overwhelmingly outweighed by risks of unfair prejudice, jury confusion, and wasting of time. Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing of issues, [or] misleading the jury . . . ."); *United States v. Dwyer*, 539 F.2d 924, 927 (2d Cir. 1976) ("In the balancing of probative value against unfair prejudice required by Rule 403, the trial judge has wide discretion.").

---

in the trial of collateral issues under Fed. R. Evid. 403. *See Hicks v. Six Flags over Mid-Am.*, 821 F.2d 1311, 1316 (8th Cir. 1987) (noting that, even when a substantial similarity of circumstances is established, the district court has broad discretion to exclude evidence under Rule 403).

The presentation of airbag non-deployment evidence would be a waste of time because such evidence does not relate to plaintiffs' claims in this case and will likely include testimony about factors irrelevant to plaintiffs' claims, such as when the SDM loses power after the ignition switch is out of the run position, what Delta-V would be sufficient to trigger airbag deployment in a given accident, and when Old GM or New GM should have made (or did make) the connection between the ignition switch and airbag non-deployment issues. *Gerber v. Computer Assoc., Int'l, Inc.*, 303 F.3d 126, 136-37 (2d Cir. 2002) (affirming exclusion of evidence of insufficiently similar transactions because "it would lead to a waste of time"). Indeed, allowing the airbag non-deployment story to play out in this trial would create needless and time-consuming trials-within-trials as to the knowledge regarding, the investigation of, and potential consequences of airbag non-deployment. *See Beastie Boys v. Monster Energy Co.*, 983 F. Supp. 2d 354, 358 (S.D.N.Y. 2014) (collecting cases as to the "trial within a trial" that Rule 403 seeks to avoid).

Finally, the introduction of airbag non-deployment evidence is unfairly prejudicial because it could have the "tendency to suggest [a jury reach a verdict] on an improper basis." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). Here, New GM would be unfairly prejudiced as the jury's verdict could be swayed based on the introduction of OSI and other airbag non-deployment evidence, when the non-deployment of the Vehicle's airbags is clearly not at issue in this case. *See Weir v. Crown Equip. Corp.*, 217 F.3d 453, 461 (7th Cir. 2000) ("The district court's exclusion ruling could serve to keep the jury from being confused and misled, and possibly from reaching an unjustified sympathy verdict for plaintiff. Any alleged design defect which had nothing to do with plaintiff's injury is irrelevant."); *Coursen,* 764 F.2d at 1331 (excluding evidence of other types of injuries allegedly associated with medical device

because, among other things, evidence was "prejudicial, collateral, and potentially confusing."); *In re Norplant Contraceptive Prod. Liab. Litig.*, 1997 WL 81094, at *1 (excluding evidence of side effects not claimed by plaintiffs because even if such effects were relevant, "any probative value [was] substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury.").

In sum, because the potential for confusion and likelihood of prejudice substantially outweighs any minimal probative value associated with airbag non-deployment evidence, New GM respectfully requests that the Court exclude all evidence from trial related to airbag non-deployment.

## CONCLUSION

For all the foregoing reasons, New GM respectfully requests that the Court exclude evidence and argument relating to airbag non-deployment from this trial.

Dated: February 2, 2016

*/s/ Richard C. Godfrey, P.C.*
Richard C. Godfrey, P.C.
Andrew B. Bloomer, P.C.
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL  60654
Phone: 312-862-2000
Fax: 312-862-2200
richard.godfrey@kirkland.com
andrew.bloomer@kirkland.com

*Attorneys for Defendant General Motors LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 2, 2016, I electronically filed the foregoing pleading using the CM/ECF system which will serve notification of such filing to the email of all counsel of record in this action.

By: /s/ *Andrew B. Bloomer P.C.*
      Andrew B. Bloomer, P.C.