**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: | |
| | **14-MD-2543 (JMF)** |
| **GENERAL MOTORS LLC IGNITION SWITCH LITIGATION** | |
| --------------------------------------------------x | |
| *This Document Relates to:* | |
| **LAWRENCE JOSEPH BARTHELEMY and DIONNE MARIE SPAIN,** | **[PROPOSED] JOINT PRETRIAL ORDER** |
| **Plaintiffs,** | |
| **v.** | |
| **GENERAL MOTORS LLC,** | |
| **Defendant.** | |
| --------------------------------------------------x | |

## JOINT PRETRIAL ORDER

Plaintiffs Lawrence Joseph Barthelemy and Dionne Marie Spain ("plaintiffs") and Defendant General Motors LLC ("New GM" or "GM LLC") respectfully submit this Proposed Joint Pretrial Order pursuant to Rule 5.A of the Court's Individual Rules and Practices in Civil Cases.

## I.      FULL CAPTION OF THE ACTION

The full caption of the action is set forth above.

## II.    TRIAL COUNSEL INFORMATION

Randall W. Jackson
Aryeh L. Kaplan
Joanna Wright
Boies, Schiller & Flexner LLP
575 Lexington Avenue
New York, New York 10022
Phone: +1 212-446-2300
Fax:    +1 212-446-2350
Email: rjackson@bsfllp.com

*Attorneys for Plaintiffs Lawrence Joseph
Barthelemy and Dionne Marie Spain*

Robert C. Brock
Kimberly O. Branscome
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Phone: +1 202-879-5991
Fax: +1 202-879-5200
Email: mike.brock@kirkland.com
          kimberly.branscome@kirkland.com

Richard C. Godfrey, P.C.
Brian D. Sieve, P.C.
Andrew B. Bloomer, P.C.
Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654
Phone: +1 312-862-2081
Fax: +1 312-862-2200
Email: richard.godfrey@kirkland.com
          bsieve@kirkland.com
          andrew.bloomer@kirkland.com

*Attorneys for Defendant General Motors LLC*

## III.    SUBJECT MATTER JURISDICTION

This Court has diversity jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000 (excluding interest and costs), and the plaintiffs and defendant are citizens of different states.  This Court possesses supplemental jurisdiction over plaintiffs' state law claims under 28 U.S.C. § 1367.

## IV.    CLAIMS AND DEFENSES REMAINING TO BE TRIED/NOT TO BE TRIED

The parties state the current claims and defenses to be tried below.  Depending on the Court's ruling on New GM's Motion for Summary Judgment (Docket 2186), these statements may change.

### A.      Plaintiffs' Statement

Plaintiffs assert the following causes of action to be tried against New GM under Louisiana law: (1) Violation of the Louisiana Products Liability Act (Count I); (2) Fraudulent Misrepresentation (Count II); (3) Negligence and Gross Negligence (Count III); (4) Violation of Seller's Obligations of Delivery and Warranty (Count IV); and (5) Violation of Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTP") (Count V).

#### 1.   Violation of the Louisiana Products Liability Act ("LPLA")

Ms. Spain and Mr. Barthelemy allege New GM is liable under the LSA-RS § 9:2800.52, *et seq.*, and will prove at trial that: (1) New GM is a manufacturer of the product, in this case Ms. Spain's 2007 Saturn Sky; (2) Ms. Spain and Mr. Barthelemy's damage was proximately caused by the defective ignition switch, which is a characteristic of the product; (3) the defective ignition switch  made the product "unreasonably dangerous"; and (4) Ms. Spain and Mr. Barthelemy's damage arose from a reasonably anticipated use of the product.[1]

New GM is a manufacturer of the Vehicle under the LPLA.[2] The broad definition of "manufacturer" in the LPLA readily encompasses New GM.[3] Plaintiffs will show that Ms. Spain purchased her GM vehicle in 2013 from an authorized New GM dealer, Banner Chevrolet. New GM and its dealership provided a warranty on the vehicle.  Thus, when Ms. Spain bought her

---

[1] La. R.S. 9:2800.54(A).

[2] New GM expressly agreed to stand in the role of "manufacturer" with respect to cars made by Old GM—including the Vehicle at issue in this case. *See* Sale Agreement, § 6.15; *See also id.* at § 2.3 (New GM agrees to assume liability for Products Liability claims, an obligation that normally falls on the products' manufacturer).

[3] The LPLA, LSA-R.S. 9:2800.53(1)(a),(b), defines manufacturer as follows (emphasis added):

> (1) Manufacturer means a person or entity who is in the business of manufacturing a product for placement into trade or commerce. ─Manufacturing a product means producing, making, fabricating, constructing, designing, remanufacturing, *reconditioning or refurbishing* a product. ─Manufacturer also means: (a) A person or entity who *labels a product as his own* or who otherwise *holds himself out to be the manufacturer* of the product.

car, New GM labeled the product as its own and held itself out to be the manufacturer of the vehicle it sold through its dealership. Indeed, to issue a new warranty, New GM and its dealership would have exercised control over the quality of the product and most likely would have reconditioned or refurbished the vehicle before selling it. Any of these activities alone establish New GM as the manufacturer of the Vehicle under the LPLA.  At a minimum, New GM was the apparent manufacturer of Ms. Spain's vehicle, a doctrine long recognized in Louisiana as giving rise to liability under the LPLA.

The Vehicle's power steering and braking system failed because the Vehicle was equipped with a defective ignition switch ("Defective Switch").  New GM has admitted that: (1) Old GM manufactured 2007 Saturn Skys, like the Vehicle, with the Defective Switch that moves out of the "run" position too easily under certain conditions; and (2) if the ignition switch moves out of the "run" position to the "accessory" or "off" position, the driver loses the assistance of power steering, power brakes and other critical safety systems.  Ms. Spain and Mr. Barthelemy's injuries were directly caused by the admitted Defective Switch while driving the Vehicle on January 24, 2014.

### 2.  Fraudulent Misrepresentation

In September of 2015, New GM admitted that it intentionally concealed the Defective Switch for at least 20 months, dating back to 2012, and made false representations to consumers about the safety of its defective vehicles.  Plaintiffs allege New GM knew as early as 2001 that its cars – including the Vehicle – were dangerous because of the Defective Switch, which could result in a loss of power steering, power brakes, and other important safety systems. Despite this knowledge, GM failed to disclose this safety defect to NHTSA and falsely represented to consumers that its vehicles were safe.

New GM "consistently misrepresented, failed to disclose and actively" hid information related to the safety of vehicles with Defective Switch, "through misrepresentation, deception and omission," and Plaintiffs were injured as a result.  Second Am. Compl., Docket No. 183 ¶¶ 385-86.  Under Louisiana law, "fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction."  La. Civ. Code art. 1953. [4]  Ms. Spain and Mr. Barthelemy will prove at trial that they relied on the materially false representations made by New GM regarding the safety of the Vehicle.

Furthermore, New GM is liable under Louisiana law for fraudulent misrepresentation because it volunteered to speak and to convey information that may influence the conduct of the other party, but failed to disclose the whole truth.  *See Andretti Sports Mktg. Louisiana, LLC v. Nola Motorsports Host Comm., Inc.*, No. CV 15-2167, 2015 WL 7459697, at *26 (E.D. La. Nov. 24, 2015).  Plaintiffs will establish the record of omissions by New GM, and that had New GM not concealed the known safety defect, Ms. Spain would not have been driving her defective vehicle, and Plaintiffs would not have been involved in a crash that resulted in property damage and personal injuries both caused by the defect.

### 3.   Negligence and Gross Negligence

New GM assumed liability for Old GM's negligence that caused personal injury and damage to property caused by Old GM vehicles. Accordingly, New GM is liable for Old GM's negligence in designing a vehicle containing a deadly defect and failing to take any action to warn or otherwise protect the public. New GM is also liable for its own and independent conduct.  New GM owed duties of care to Plaintiffs and other foreseeable users of vehicles with

---

[4] New GM has admitted that it "failed to disclose to . . . the public a potentially lethal safety defect . . . and that GM further affirmatively misled consumers about the safety of GM cars afflicted by the defect."  DPA ¶ 2.

defective ignition switches; New GM breached those duties by, among other things, negligently failing to warn Plaintiffs of the Vehicle's hidden safety defect, and failing to adequately and timely recall the defect; and Plaintiffs were injured as a proximate result of New GM's breaches. Moreover, New GM's admitted violation of the Safety Act constitutes negligence *per se*.

New GM is negligent and grossly negligent under La. Civ. Code arts. 2315-17.  New GM had constructive knowledge that the Vehicle presented an unreasonable risk of harm, or was defective, and the Vehicle's condition was a cause-in-fact of Plaintiffs' injuries. *Jolly v. Otis Elevator Co.*, 620 So.2d 497 (La. App. 4th Cir. 1993).  Indeed, under Louisiana law: (1) New GM owed duties of care to Plaintiffs and other foreseeable users of vehicles with defective ignition switches; (2) New GM breached those duties by, among other things, negligently failing to warn Plaintiffs of this safety defect; and (3) Plaintiffs were injured as a proximate result of New GM's breaches.

### 4.  Violation of Seller's Obligations of Delivery and Warranty

New GM violated its obligations of delivery and warranty, and thus, is liable under Redhibition. La. Civ. Code art. 2520.  Specifically, Plaintiffs will prove at trial that, despite New GM's warranty that the Vehicle was free from redhibitory defects, the Defective Switch "existed at the time the thing was delivered by the manufacturer to the seller," La. Civ. Code art. 2531, and the Defective Switch existed at the time of the accident.  *Young v. Ford Motor Co., Inc.*, 595 So.2d 1123, 1126 (La. 1992); *Bonnette v. Ford Motor Co.*, 2011-1274 (La. App. 3 Cir. 3/7/12), 88 So. 3d 1164, 1168.  New GM breached its obligations of delivery and warranty in that the Vehicle was so defective as to render it useless or render its use so inconvenient that Plaintiffs would not have bought the Vehicle had they known of the defect.

### 5.  Violation of Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTP")

By concealing a known safety defect and making false representations regarding the risk and magnitude of the harm in driving such defective vehicles, New GM's engaged in "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" under Louisiana law. LSA-R.S. 51:1409. These practices caused Plaintiff's injuries and the allegations and evidence will establish a violation of the Louisiana Unfair Trade Practices and Consumer Protection Law.

### B.    Defendant's Statement[5]

New GM contends the following defenses are relevant to this action:[6]

#### 1.    On All Causes of Action

New GM denies plaintiffs' claims that it is liable under any of plaintiffs' causes of action. To prevail on each of their causes of action, plaintiffs must prove causation, which they cannot do.  First, while New GM does not dispute that 2007 Saturn Sky vehicles were subject to a recall, plaintiffs' expert concedes that there is no evidence that the specific ignition switch in plaintiff Dionne Spain's vehicle was, in fact, defective—i.e., had a torque resistance below 15 N•cm. (*See* 9/15/15 Caldwell Dep. at 94:17–23.)  Second, there is no evidence that the ignition switch in Spain's vehicle rotated inadvertently before or during the accident—either by inertial forces or knee-to-key contact, thereby causing her to lose control of the vehicle on an icy bridge.  (*See id.* at 84:16–23.)  Third, even if the ignition switch in Spain's vehicle was defective and the ignition switch inadvertently rotated, there is no evidence that such rotation caused the accident.  (*See id.*

---

[5]    New GM fully stands by the Deferred Prosecution Agreement ("DPA") it entered into with the United States Attorney for the Southern District of New York, dated September 16, 2015, and the Statement of Facts associated with that Agreement.  Nothing in this filing is intended to contradict the Statement of Facts or New GM's representations in the DPA.

[6]    While New GM acknowledges the Court's motion *in limine* rulings in *Scheuer* that apply to this case and any motion *in limine* rulings in this case, it nonetheless stands upon its motions *in limine*, and reserves the right to renew or revisit any of its motions the Court did not grant in the context in which particular evidence is introduced at trial.

at 91:24–98:1; 84:24–85:3.)  On the contrary, all evidence supports that the icy road conditions and the speed at which Spain was driving caused the accident.  Fourth, even if inadvertent rotation of the ignition switch did somehow lead to a loss of control, plaintiffs can offer no evidence or expert testimony that plaintiffs' purported injuries were caused by the accident.  The restraint systems in Spain's vehicle worked as designed and protected plaintiffs from meaningful injury forces, and the parties agree that the air bags should not have deployed in the accident. (Dkt. 2201 at 1–2.)  Fifth, even if inadvertent rotation of the ignition switch did somehow lead to a loss of control and caused some purported injury to plaintiffs, plaintiffs can offer no evidence or expert testimony that such injuries caused the damages they are alleging.

### 2.      Louisiana Products Liability Act

For any Assumed Liability claim under the Louisiana Products Liability Act ("LPLA"), as defined by the December 4, 2015 Bankruptcy Court judgment, and as to any Independent Claim brought under the same Act, New GM asserts the same causation deficiencies detailed above in section IV.B.1.[7]  In addition, any Independent Claim against New GM under the LPLA is barred, under Louisiana law, because New GM is not the manufacturer of Spain's 2007 Saturn Sky. (Dkt. 2187 at 6.)

### 3.      Fraudulent Misrepresentation

This claim is precluded by the exclusivity provision of the LPLA, codified at LSA-R.S. 9:2800.52.[8]  (*Id.* at 6–8.)  In addition, plaintiffs cannot establish that they relied to their detriment on misstatements or omissions by New GM.  Finally, to the extent plaintiffs contend

---

[7]    Pursuant to the Bankruptcy Court rulings, an "'Independent Claim' shall mean a claim or cause of action asserted against New GM that is based solely on New GM's own independent post-Closing acts or conduct." *In re Motors Liquidation Co., et al.*, Docket No. 13563, Case No. 09-50026-REG, at 2 n.3 (Bankr. S.D.N.Y. Dec. 4, 2015).

[8]    Per the Bankruptcy Court's rulings and Judgment, fraudulent concealment can only be alleged as an Independent Claim based solely on New GM conduct.  Judgment at 2 n.3.

New GM has kept "silent" regarding information that should have been disclosed, under Louisiana law, they cannot establish "a fiduciary or other special relationship giving rise to a duty to disclose." (Dkt. 2298 at 11–12.)

4.      Negligence and Gross Negligence

With respect to plaintiffs' claim for negligence and gross negligence, New GM asserts the same causation deficiencies detailed above in section IV.B.1. In addition, this claim is precluded by the exclusivity provision of the LPLA. (*Id.* at 6–8.) Further, Louisiana law does not recognize an independent post-sale duty to warn against a manufacturer that did not manufacture the product at issue, thereby defeating plaintiffs' theory that New GM breached its duty to warn Spain of the defect or to timely recall the vehicle. (*Id.* at 10–12.) Even if such a duty existed under certain circumstances, plaintiffs cannot show it existed here. To the extent, plaintiffs are asserting a claim based on a separate duty to recall, Louisiana does not recognize such an independent duty to recall for entities that, like New GM, did not produce the allegedly defective product, and in any event, such a claim would be preempted by federal law. In addition, Louisiana does not recognize a claim for negligence per se.

Thus, New GM specifically denies that it was negligent or at fault with respect to plaintiffs' injuries or damages, and alleges that plaintiffs' claimed injuries and damages are the result of the acts and omissions of plaintiffs and/or third parties, over whom New GM had no control, or to circumstances outside the control of any person or persons. If it is determined that New GM was in some way at fault or negligent, however, then the fault or negligence of persons over whom New GM had no control, including plaintiffs, shall reduce any recovery of plaintiffs against New GM.

5.      Redhibition

9

Plaintiffs' redhibition claim, except with respect to economic losses, is precluded by the exclusivity provision of the LPLA.  (*Id*. at 6–8.)  In addition to the same causation deficiencies detailed above in section IV.B.1, any redhibition claim against New GM fails because there is no buyer-seller relationship between New GM and either plaintiff as required by the redhibition statute, La. C.C. art. 2520.  (*Id.* at 12.)  New GM did not manufacture the subject vehicle; New GM did not sell that vehicle to Spain or any prior owner; and Barthelemy is not a buyer of the vehicle in any respect.

6.      Louisiana Unfair Trade Practices and Consumer Protection Law

Plaintiffs did not respond to New GM's summary judgment motion on this claim and therefore have conceded this claim should be dismissed.  Plaintiffs' LUTPA count, brought as an Independent Claim against New GM, suffers from the same causation deficiencies set forth above in section IV.B.1, and also fails for four additional reasons.  First, the claim is precluded by the exclusivity provision of the LPLA.  (*Id.* at 6–8.)  Second, the LUTPA claim is barred by the one-year peremptory statute of limitations—which runs from the date of the act or transaction that gave rise to the cause of action—regardless of whether that limitations period began running on the date of the accident or the date of the recall.  (*Id.* at 13–14.)  Third, plaintiffs cannot show an ascertainable loss of money or movable property.  Fourth, plaintiffs are unable to prove that their injuries were caused by another person's unfair or deceptive method, act, or practice—which has been defined as egregious conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious.

7.      Damages

Plaintiffs cannot establish by a preponderance of the evidence the existence of any injuries or damages that are causally related to the ignition switch defect or even the accident. To the extent such injuries or damages can be established, New GM denies that it is liable for

such damages under any of the causes of action asserted against New GM.  Further, New GM asserts that plaintiffs have waived any claim for lost earning capacity damages or other types of damages, which plaintiffs disclaimed and for which they did not provide the required evidentiary support or information during discovery.

8.      Punitive Damages

Plaintiffs did not respond to New GM's motion for summary judgment on punitive damages and therefore have conceded that their claim for punitive damages must be dismissed. Plaintiffs' claim for punitive damages fails as a matter of Louisiana law, which does not allow for the recovery of punitive damages unless expressly provided for by statute; no such statute applies here.  (Dkt. 2187 at 14–15.)  Additionally, under the Bankruptcy Court's December 4, 2015 Judgment, punitive damages are only recoverable in connection with viable Independent Claims.  Judgment at 6–7.[9]  As set forth above, plaintiffs are not entitled to punitive damages because they fail to state any viable Independent Claims.

9.      Preempted Claims

New GM states that some of plaintiffs' claims are barred, preempted and/or precluded by applicable federal law including but not limited to Orders, Judgments and/or Decisions of the United States Bankruptcy Court for the Southern District of New York ("New York Bankruptcy Court"), entered in the bankruptcy case captioned *In re General Motors Liquidation Company, et al.*, Case No. 09-50026.

---

[9]   *In re General Motors Liquidation Company, et al.*, Case No. 09-50026, Dec. 4, 2015 [Judgment] at 6–7 ("[P]unitive damages may not be premised on Old GM knowledge or conduct, or anything else that took place at Old GM.  A claim for punitive damages with respect to a post-sale accident involving vehicles manufactured by Old GM with the Ignition Switch Defect may be asserted against New GM to the extent—but only to the extent—it relates to an otherwise viable Independent Claim and is based solely on New GM conduct or knowledge . . . .").

## V.      NUMBER OF TRIAL DAYS NEEDED, AND DEMAND FOR JURY TRIAL

Both parties have requested a trial by jury.  Plaintiffs require 6 days to present their case, including all evidence at trial.  New GM requires 6 days to present its case, including all evidence at trial.  Plaintiffs and Defendant have conferred and, if the trial is conducted from 9:00 a.m. to 2:30 p.m., with one short break from approximately 11:30 a.m. to noon, as the Court's Individual Rules and Practices for Trials provide, then plaintiffs and Defendant estimate requiring 12 business days for trial.

## VI.      JOINT STATEMENT SUMMARIZING THE NATURE OF THE CASE FOR JURY SELECTION

The parties to this case are: (1) plaintiff Lawrence Barthelemy and plaintiff Dionne Spain, and (2) defendant General Motors LLC ("GM LLC" or "New GM").

On the night of January 24, 2014, Mr. Barthelemy and Ms. Spain were involved in a motor vehicle accident.  Ms. Spain was the driver, and Mr. Barthelemy was the front-seat passenger, in a 2007 Saturn Sky that was traveling on U.S. 90 West over the Crescent City Connection Bridge in New Orleans, Louisiana when it hit a barrier wall on the side of the bridge. Plaintiffs allege that, while driving in bad weather, Ms. Spain's car stalled, and when she attempted to apply the brakes and control the car, both the brakes and the power steering functions of her car failed. As a result, plaintiffs assert she slid and her vehicle hit the barrier wall on the driver's side and then spun around and stopped facing on going traffic.  Plaintiffs allege that the ignition switch in the vehicle was defective, and that it therefore rotated while the car was moving from the "run" to the "accessory" or "off" position, leading to the failure of the power steering and power brakes.  Plaintiffs also allege that GM was long aware of the defective condition in the model of car that was involved in the accident, but concealed this knowledge from Plaintiffs and failed to adequately warn Plaintiffs about the risk of harm.  Plaintiffs allege

12

that the car experienced minor damage and that they suffered bodily injuries and lost income as a result of this accident.

Plaintiffs filed a complaint against GM LLC asserting five causes of action—(i) violation of the Louisiana Products Liability Act, (ii) fraudulent misrepresentation, (iii) negligence and gross negligence, (iv) redhibition, and (v) violation of the Louisiana Unfair Trade Practices Act.

GM LLC denies plaintiffs' claims.  GM LLC asserts that the accident was not caused by any defect in the subject vehicle.  Instead, GM LLC states that due to the unusually cold and rainy conditions that night, ice had formed on the bridge and Spain was driving too fast for the icy road conditions at the time of the accident.  GM LLC asserts those icy road conditions caused plaintiffs' accident along with dozens of other accidents on the bridge that night.  GM LLC asserts that Ms. Spain's car slid on the ice and entered a counterclockwise spin, during which the driver side front bumper scraped the barrier wall on the side of the bridge, but no structural damage was done to the car. GM LLC also asserts that the injuries about which Barthelemy and Spain complain, if any, were caused by other incidents or circumstances and not by the accident.  GM LLC thus denies any liability to Barthelemy or Spain, and denies that it caused any of plaintiffs' alleged damages.


## VII.   LIST OF PEOPLE, PLACES, AND INSTITUTIONS

The following is a list of people, places, and institutions that are likely to be mentioned during the trial.

### A.    Plaintiffs

1.    Lawrence Joseph Barthelemy

2.    Dionne Marie Spain

B.    **General Motors LLC ("New GM" or "GM LLC") and/or General Motors Corporation ("Old GM") Former and Current Employees**

1.    Alan Adler

2.    Gary Altman

3.    Kathy Anderson

4.    Laura Andres

5.    Antonio Antonucci

6.    Randy Arickx

7.    Mary Barra

8.    Mark Beauregard

9.    Carmen Benavides

10.   Selim Bingol

11.   Valerie Boatman

12.   Alicia Boler-Davis

13.   Jeffery Boyer

14.   Andrew Brenz

15.   Doug Brown

16.   Eric Buddrius

17.   Lawrence Buonomo

18.   John Calabrese

19.   Dave Caples

20.   John Capp

21.   David Carey

22.   John Carriere

23.   Tony Cervone

24.   William Chase

25.    James Churchwell

26.    Terrance Connolly

27.    Dwayne Davidson

28.    Dan Davis

29.    Ray DeGiorgio

30.    John Dolan

31.    Lucy Clark Dougherty

32.    Brian Everest

33.    James Federico

34.    Dan Fernandez

35.    Maureen Foley-Gardner

36.    Fred Fromm

37.    Dale Furney

38.    Lee R. Godown

39.    Thomas Gottschalk

40.    Michael Gruskin

41.    Victor Hakim

42.    Greg Hall

43.    Ebram Handy

44.    Gerald Johnson

45.    Mark Johnson

46.    Peter Judis

47.    Courtland Kelley

48.    William Kemp

49.    Gay Kent

50.   Elizabeth Kiihr

51.   Steve Kirkman

52.   Ed Koerner

53.   Joseph Manson

54.   Alberto Manzor

55.   Greg Martin

56.   Onassis Matthews

57.   Nancy McLean

58.   Bill Merill

59.   Michelle Michelini

60.   Michael Millikin

61.   Keith Mikkelson

62.   Vipul Modi

63.   John Murawa

64.   Deborah Nowak-Vanderhoef

65.   Steven Oakley

66.   Jaclyn Palmer

67.   Jack Pantaleo

68.   Nabeel Paracha

69.   Doug Parks

70.   Ronald Porter

71.   Jim Queen

72.   Lori Queen

73.   Naveen Ramachandrapa Nagapoloa

74.   Mark Reuss

75. Terrence Rhadigan

76. Michael Robinson

77. Ray Romeo

78. Matt Schroeder

79. Keith Schultz

80. Jeff Setting

81. Jennifer Sevigny

82. James Sewell

83. Robert Shrosbree

84. Kristen Siemen

85. Neil Skaar

86. Chris Skaggs

87. John Sprague

88. Lisa Stacey

89. Alan Storck

90. Brian Stouffer

91. Blendi Sullaj

92. Joseph Taylor

93. Brian Thompson

94. David Trush

95. Thomas Van Wirt

96. Doug Wachtel

97. Rick Wagoner

98. Lisa Weber

99. Michael Wendzinski

100.   Terry Woychowski

**C.   Other Persons and Entities**

1.   Automatic Transmission

2.   Banner Chevrolet

3.   Best Chevrolet

4.   Clearview Auto, Inc.

5.   Delphi Automotive PLC ("Delphi")

    a.   Alturo Alcala

    b.   John Coniff

    c.   Glen DeVos

    d.   Mary Fitch

    e.   George Lin

    f.   Erik Mattson

    g.   Eduardo Rodriguez

    h.   Thomas Svoboda

6.   Dennis Automotive and Automatic Transmission

7.   Doyles Collision Center

    a.   Melissa Doyle

8.   Express Employment Professionals

    a.   B.B. Lee

9.   GM customer service representative (Symone Watson)

10.   Go Auto Insurance Co.

    a.   Oswald ("Ozzie") Hampton

    b.   Kirsten Holden

11.   Jefferson Community Healthcare Center

    a.     Dr. Genelle Price

    b.     Dr. Jaya Warrier

12.    Jefferson Orthopedic Clinic

    a.     Dr. Wesley Clark

13.    Officer David Kramer

14.    Paulette L. Manuel

15.    John Neal

16.    William O'Keefe

17.    Ochsner Medical Center

    a.     Terri S. Adams, N.P.

    b.     Susan Anderson, L.P.N.

    c.     Dr. Trent Desselle

    d.     Dr. Nona Epstein

    e.     Dr. Steven J. Granier

    f.     Dr. Armando Hevia

    g.     Dr. Dean Hickman

    h.     Dr. Ellen Kroop-Martin (deceased)

    i.     Carol Land

    j.     Dr. Manon Mashburn

    k.     Dr. Leyton Orillion

    l.     Gina Quincy, L.P.N.

    m.     Lauren Vazquez

    n.     Dr. Stacey Vial (former)

18.    Ochsner Medical Center Westbank

    a.     Dr. Scott Zainey

19. Pelican State Outpatient Center

    a. Beth Sullivan, A.P.R.N.

20. Glenda Philson

21. Renee Rankins

22. Tulane University Hospital & Clinic

    a. Dr. Maria Frank

23. Turn Services

    a. Darlene Valdez

    b. Allen Synigal

24. Walgreens Pharmacies

25. West Bank Urgent Care

    a. Dr. Douglas Mehaffie

26. West Jefferson Medical Center

    a. Dr. Michael Alline

    b. Michael Benoit P.A.-C.

    c. Julia Dauenhauer

    d. Dr. Andrew Mayer

    e. Stacey Richard, R.N.

    f. Dr. Harry Vorhaben

27. West Jefferson Surgery Center

28. WDSU 6 News

    a. Scott Walker

    b. WDSU 6 News custodian of records

**D.** **Other Places**

1. New Orleans, Louisiana

      2.      Crescent City Connection Bridge

      3.      Detroit, Michigan

      4.      Davison Junkyard

      5.      Milford Proving Grounds

**E.**      **Other Names & References**

      1.      Anton Valukas

      2.      Craig St. Pierre: Ortech Supplier Engineer

      3.      Jeff Eller: Crisis Manager

      4.      Jenner & Block LLP

      5.      Kenneth Feinberg

      6.      Subbaiah V. Malladi: Principal Engineer, Exponent

**F.**      **Experts**

      1.      Plaintiffs

            a.      Robert J. Caldwell, P.E.: Accident Reconstruction

            b.      Mark B. Hood, P.E.: Torque Testing on Delta Ignition Switches

            c.      Steve Loudon, M.S.E.: Ignition Switch

            d.      Glen Stevick, Ph.D., P.E.: Design/Failure Mode Analysis

      2.      New GM

            a.      Eddie Cooper: Restraint Systems

            b.      Mitchell Garber, M.D., M.P.H., M.S.M.E.: Restraint Systems

            c.      Michael E. Klima, P.E.: Restraint Systems

            d.      Thomas Livernois, Ph.D., P.E.: Ignition Switch/Airbag Systems

            e.      Elizabeth H. Raphael, M.D.: Occupant Kinematics and Biomechanics

            f.      Michael Stevenson, Ph.D., P.E.: Ignition Switch

g.      Donald Tandy, P.E.: Steering and Braking Testing

h.      Jennifer L. Yaek, P.E.: Accident Reconstruction

## VIII.   MAGISTRATE

The parties have not consented to a trial by a magistrate judge.

## IX.    STIPULATED OR AGREED STATEMENTS OF FACT OR LAW

The parties hereby incorporate by reference Plaintiffs' Local Rule 56.1 Response in Opposition to Defendant GM LLC's Statement of Undisputed Material Facts and Statement of Additional Material Disputed Facts, and state that any facts to which plaintiffs offered a response of "Undisputed" are stipulated and agreed by both parties.  *In re General Motors Ignition Switch Litigation*, Case No. 1:14-cv-05810, Docket No. 236, at 1–11 (S.D.N.Y. Feb. 11, 2016).

## X.     A LIST OF ALL TRIAL WITNESSES

### A.     Plaintiffs

1.    Will Call Witnesses (Live)

a.    **Dionne Marie Spain (Plaintiff):**  Will testify about the subject crash; Plaintiff's reliance on New GM's false representations and omissions; the nature and extent of her injuries and pain and suffering stemming from the subject crash; her medical treatment for her injuries, including the cost of treatment, how the crash has affected her including her livelihood and well-being and has otherwise impacted her.

b.    **Lawrence Joseph Barthelemy (Plaintiff):** Will testify about the subject crash; the nature and extent of his injuries and pain and suffering stemming from the subject crash; his medical treatment for his injuries, including the cost of treatment, how the crash has affected him including his livelihood and well-being and has otherwise impacted him.

c.    **Mark Hood (Expert):**  Will testify about the data and knowledge he acquired while performing torque testing on a range of Delta

ignition switches; his scientific methodology related thereto; and opinions and conclusions he drew as result.

d.   **Steve Loudon (Expert):**  Will testify about the defective nature of the ignition switch and the effect it has on vehicle safety systems; his opinions and conclusions as to the soundness of the switch's development and New GM's handling of the information it received over the years; and other similar incidents that Mr. Loudon has examined and identified as well as those identified by New GM as potentially being caused by the ignition switch defect.

e.   **Robert Caldwell (Expert):**   Will testify regarding accident reconstruction as well as his analysis of other incidents which are substantially similar to Plaintiffs' crash event.[10]

f.   **Glen Stevick (Expert):**   Will  testify about GM's defective design/failure mode analysis of the ignition switch defect and its impact on vehicle safety systems, as well as the history thereof; will also testify about inadvertent rotation causing the various systems of the vehicle not to function properly in Ms. Spain's car as well as other similar incidents.

2.   May Call Witnesses (Live)[11]

a.   Mary Barra - GM Current / Former Employee

b.   Laura Andres - GM Current / Former Employee

c.   Michael Gruskin - GM Current / Former Employee

---

[10]   For purposes of preservation, New GM objects to the disclosed scope of Robert Caldwell's expert testimony. Based on Mr. Caldwell's expert report and deposition testimony, New GM asserts that Caldwell should not be allowed to offer any opinion as to whether the ignition switch rotated out of the Run position during or before plaintiffs' accident, nor opine that plaintiffs lost control as a result of an inadvertent ignition switch rotation or a loss of primary power, power steering assist or power braking assist.  In addition, to the extent plaintiffs intend to elicit testimony from Caldwell regarding his steering and braking testing, New GM asserts Caldwell should not be permitted to offer any opinion that such testing was intended to replicate the circumstances of the subject incident or establishes causation with respect to the subject incident.  In addition, New GM objects to any testimony by Caldwell regarding OSI evidence for reasons that will be set forth in New GM's brief regarding OSI evidence, to be filed on February 19, 2016.  New GM will also set forth its objections to the scope of OSI testimony by plaintiffs' experts Stevick, Loudon and Hood in its OSI response.  To the extent the parties cannot reach agreement on the proper scope of Caldwell's and other experts' testimony, New GM will raise it with the Court promptly.

[11]   Plaintiffs requested that New GM produce these individuals live at trial, and New GM respectfully declined.  To the extent that plaintiffs are unable to procure their live testimony, plaintiffs may designate and use the deposition testimony of certain of these witnesses.

d.      David Carey - GM Current / Former Employee

e.      Brian Thompson - GM Current / Former Employee

f.      Steven Oakley - GM Current / Former Employee

g.      John Sprague - GM Current / Former Employee

h.      Brian Everest - GM Current / Former Employee

i.      Andrew Cahill (Paralegal): Summary Witness to review and read admitted documents not otherwise discussed.

**B.      Defendant New GM[12]**

1.      Will Call Witnesses (Live)

a.      **Lawrence Barthelemy (Plaintiff):**   Will be subject to cross examination regarding his claims, injuries and damages in this case.

b.      **Dionne Spain (Plaintiff);** Will be subject to cross examination regarding her claims, injuries and damages in this case.

c.      **Elizabeth H. Raphael, M.D. (Expert)**: Will provide opinions on the occupant kinematics and biomechanics, including medical causation, associated with plaintiffs' accident and injury causation, including that: 1) plaintiffs suffered only minor injuries during their accident; 2) the acceleration forces experienced by plaintiffs during the accident were less than and indistinguishable from those associated with activities of daily living; 3) the seat belts afforded appropriate restraint  to plaintiffs in this minor impact to mitigate possible injury forces; 4)  plaintiffs' accident did not cause them any permanent injuries; and, if necessary, 5) airbag deployment during the accident would not have reduced plaintiffs' injuries and in fact would likely have caused more serious injuries.

d.      **Michael Stevenson, Ph.D., P.E. (Expert)**: If called, will provide opinions related to the design and functionality of the ignition switch, the fundamental scientific and physics principles related to the conditions that may cause an inadvertent key rotation, and the circumstances and conditions under which inadvertent key rotation due to inertial forces with an ignition switch may or may not occur.

---

[12]    No witnesses on New GM's "will call" or "may call" lists will require an interpreter.

e.  **Jennifer L. Yaek, P.E. (Expert)**: Will provide opinions regarding the reconstruction and cause of plaintiffs' accident, including that: 1) plaintiffs' accident involved a Delta-V of no more than 5 miles per hour, which is below the vehicle's airbag deployment thresholds; 2) plaintiffs' vehicle had mismatched and worn tires that were not specified for the 2007 Saturn Sky and that could contribute to loss of vehicle control; 3) plaintiffs' accident was more likely than not caused by Spain's operation of the vehicle in bad weather and icy road conditions, and there is no evidence to the contrary; 4) the alleged "jerking" in the vehicle alleged by plaintiffs was likely due to actuation of the vehicle's antilock brake system; and 5) there is no physical evidence that the ignition switch turned at any point during plaintiffs' accident.

2.  May Call Witnesses (Live)

  a.  Fact Witnesses

    i.  **Allan Synigal (Fact)**: If called, will testify about Barthelemy's job performance, absences from work, pay rate, promotions, the contents of Barthelemy's employment records at Turn Services, and any information conveyed to him by Barthelemy.

    ii.  **Stacey Vial, M.D. (Hybrid Fact/Expert)**: If called, will provide testimony about Spain's medical records, conditions, diagnoses, treatments, and about any information conveyed to her by Spain.

  b.  Expert Witnesses

    i.  **Eddie Cooper (Expert)**: If called, will provide opinions on the design, purpose and function of the primary restraint system in Spain's vehicle.

    ii.  **Mitchell Garber, M.D., M.P.H., M.S.M.E. (Expert)**: If called, will provide opinions on the history, design, and effectiveness of supplemental restraint (*e.g.*, pretensioners and load limiters) and airbag systems, government regulations or other tests associated with those systems, the circumstances leading to deployment of those systems, and potential consequences associated with the deployment of those systems.

    iii.  **Michael E. Klima, P.E. (Expert)**: If called, will provide opinions on the design and effectiveness of the primary and supplemental restraint systems of a 2007 Saturn Sky, government regulations or other tests associated with those

systems in relation to a 2007 Saturn Sky, the circumstances leading to deployment of those systems in a 2007 Saturn Sky, the effectiveness of the primary restraint system in this minor impact accident and the absence of circumstances in the subject accident for deployment of supplemental restraint systems.

iv. **Thomas Livernois, Ph.D., P.E. (Expert)**: If called, will provide opinions on the operation and functionality of the supplemental restraint system air bag controllers (sensing and diagnostic modules) in the Saturn Sky and other GM LLC and competitor vehicles, including the electrical architecture, powering methods, energy reserve levels, and deployment logic. Will provide criticisms of Dr. Stevick's opinions, including those related to engineering risk assessment and FMEAs conducted by GM and Delphi and speed sensor availability/design.

v. **Donald Tandy, P.E. (Expert)**: If called, will provide opinions about the Saturn Sky's braking and steering system design. He will also offer opinions on the ability of a driver to steer and brake a vehicle after a loss of primary power—opinions which are premised on his years of experience, industry standards, and testing he performed with Robert Rucoba. He will also offer opinions on the reliability and applicability of the testing performed by plaintiffs' expert Robert Caldwell.

c. If called, the following witnesses will testify as to the foundation for the admissibility of certain records, and as to the contents of those records:

i. **Michael Alline, M.D. (Hybrid Fact/Expert)**: West Jefferson Medical Center

ii. **Susan Anderson, L.P.N. (Hybrid Fact/Expert)**: Ochsner Medical Center

iii. **Automatic Transmission custodian of records (Fact)**

iv. **Clearview Auto custodian of records (Fact)**

v. **Trent Desselle, M.D. (Hybrid Fact/Expert)**: Ochsner Medical Center

vi. **Melissa Doyle (Fact)**: Doyles Collision Center

vii.    **Nona Epstein, M.D. (Hybrid Fact/Expert)**: Ochsner Medical Center

viii.    **General Motors customer service representatives (Fact)**

ix.    **Steven J. Granier, M.D. (Hybrid Fact/Expert)**: Ochsner Medical Center

x.    **Oswald ("Ozzie") Hampton (Fact)**: Go Auto Insurance Co.

xi.    **Armando Hevia, M.D. (Hybrid Fact/Expert)**: Ochsner Medical Center

xii.    **Dean Hickman, M.D. (Hybrid Fact/Expert)**: Ochsner Medical Center

xiii.    **Kirsten Holden (Fact)**: Go Auto Insurance Co.

xiv.    **B.B. Lee (Fact)**: Express Employment Professionals

xv.    **Manon Mashburn, M.D. (Hybrid Fact/Expert)**: Ochsner Medical Center

xvi.    **Andrew Mayer, M.D. (Hybrid Fact/Expert)**: West Jefferson Medical Center

xvii.    **Douglas Mehaffie, M.D. (Hybrid Fact/Expert)**: West Bank Urgent Care

xviii.    **John Neal (Fact)**: Louisiana Department of Public Safety

xix.    **William O'Keefe (Fact)**: GM Vehicle Inspection

xx.    **Leyton Orillion, L.C.S.W. (Hybrid Fact/Expert)**: Ochsner Medical Center

xxi.    **Genelle Price, M.D. (Hybrid Fact/Expert)**: Jefferson Community Healthcare Center

xxii.    **Gina Quincy, L.P.N. (Hybrid Fact/Expert)**: Ochsner Medical Center

xxiii.    **Stacey Richard, R.N. (Hybrid Fact/Expert)**: West Jefferson Medical Center

xxiv.    **Beth Sullivan, A.P.R.N. (Hybrid Fact/Expert)**: Pelican State Outpatient Center

xxv.    **Darlene Valdez (Fact)**: Turn Services

xxvi.   **Lauren D. Vazquez, Ph.D. (Hybrid Fact/Expert)**: Ochsner Medical Center

xxvii.  **Scott Walker (Fact)**: WDSU 6 News

xxviii. **Jaya Warrier, M.D. (Hybrid Fact/Expert)**: Jefferson Community Healthcare Center

xxix.   **WDSU 6 News custodian of records (Fact)**

xxx.    **Scott Zainey, M.D. (Hybrid Fact/Expert)**: Ochsner Medical Center Westbank


## XI.    DEPOSITION TESTIMONY TO BE OFFERED IN EACH PARTY'S CASE-IN-CHIEF AND ANY COUNTER-DESIGNATIONS AND OBJECTIONS

As reflected in Order No. 91 (Dkt. 2001), the parties will exchange deposition designations on February 22, 2016.  The parties will exchange objections and counter-designations on February 29, 2016, with any disputes submitted to the Court by March 4, 2016. Below are the parties' lists of witnesses to be called at trial by deposition.

### A.    Plaintiffs

1.  **Arturo Alcala**: Former Delphi Employee. Worked in Delphi's Condura manufacturing facility which manufactured the ignition switches for the recalled vehicles.

2.  **Gary Altman**: Former GM Employee. GMNA Chief Engineer, Compact Cars. One of the heads of the CPIT (Current Production Improvement Team) - the team responsible for officially opening and reviewing PRTS (Problem Resolution and Tracking System) process.

3.  **Laura Andres**: GM Employee. Works in design capital lead. Will testify about a matters related to design; she personally experienced moving stall due to low ignition torque.

4.  **Eric Buddrius**: GM Employee. Products Investigator for General Motors from 2002-2014.

5.  **Raymond DeGiorgio**: Former GM Employee. He was senior Design Release Engineer for the ignition switch used in recalled vehicles.

6. **Gay Kent**: Former GM Employee. General Director, Vehicle Safety & Crashworthiness. In 2013, she worked on the Cobalt investigation and at one point was in charge of the PI (Product Investigations) group.

7. **Alberto Manzor**: GM Employee. Chief Engineer, NA Gamma & Delta Vehicles. In June 2005, Manzor conducted testing on the ignition switch at GM's Milford Proving Ground to evaluate how the switches performed.

8. **Erik Mattson**: Former Delphi Employee. Mechanical engineer in the vehicle switch division. Worked on recalled ignition switch for Delphi.

9. **Michael Millikin**: Former GM Employee. Executive Vice President & General Counsel. He became General Counsel in July 2009 and was involved in the response to the ignition switch defect.

10. **Jaclyn Palmer**: Former GM Employee. Product Liability Litigation Attorney that worked intimately with the Field Performance Evaluation Team (FPET) on airbag non-deployments.

11. **Douglas Park**: GM Employee. Vice President of Global Product Programs. He was the chief engineer behind the Cobalt when it launched.

12. **John Sprague**: Former GM Employee. Lead Performance Engineer, Engineering Group Manager, Occupant Protection. Took over the investigation of the ignition issue in 2011 and retired Feb. 1, 2014. Made assessments for Cobalt Deaths due to airbag non-deployment.

13. **Brian Stouffer**: Former GM Employee. Lead Product Investigations Engineer and leader of the Red X ignition testing team for GM.

14. **Brian Thompson**: Engineering Manager, Switches and Controls. Thompson was Ray DeGiorgio's supervisor and a major participant in the investigation that GM undertook regarding the ignition switch defect.

15. **Douglas Wachtel**: GM Employee. Senior Manager of Internal Product Investigations. He will offer testimony about overseeing testing of the Cobalt ignition switch and related matters.

## B.    Defendant New GM[13]

1. **Terri Adams, N.P. (Hybrid Fact/Expert)**: Adams was a nurse practitioner who provided treatment to Barthelemy after the subject incident. She will testify as to the foundation for the admissibility of certain medical records, and as to the contents of those records, including

---

[13]    To the extent any of New GM's will call or may call witnesses listed above do not testify live at trial, New GM reserves the right to call them via deposition designation instead.

information regarding Barthelemy's medical conditions, diagnoses, and treatments, and about any information conveyed to her by Barthelemy.

2.   **Arturo Alcala (Fact)**: Former Delphi Product Engineer for the Delta Ignition Switch will testify regarding Delphi's engineering practices and role in post-production issues with and changes to the Delta Ignition Switch and interactions with GM regarding the same.

3.   **Michael Benoit PA-C (Hybrid Fact/Expert)**: Benoit was a physician assistant who provided treatment to Barthelemy after the subject incident. He will testify as to the foundation for the admissibility of certain medical records, and as to the contents of those records, including information regarding Barthelemy's medical conditions, diagnoses, and treatments, and about any information conveyed to him by Barthelemy.

4.   **Wesley Clark, M.D. (Hybrid Fact/Expert)**: Clark was a physician who provided treatment to Barthelemy after the subject incident and will testify regarding plaintiff Barthelemy's medical conditions, diagnoses, and treatments, and will provide opinions on the causes and prognoses of those medical conditions.

5.   **Julia Dauenhauer, N.P. (Hybrid Fact/Expert)**: Dauenhauer was a nurse practitioner who provided treatment to Barthelemy after the subject incident. She will testify as to the foundation for the admissibility of certain medical records, and as to the contents of those records, including information regarding Barthelemy's medical conditions, diagnoses, and treatments, and about any information conveyed to her by Barthelemy.

6.   **Glen DeVos (Fact)**: Delphi Vice President of Engineering and 30(b)(6) witness will testify regarding Delphi engineering practices and role in the design, development, production, and investigation of the Delta Ignition Switch.

7.   **Mary Fitch (Fact)**: Former Delphi Program Manager will testify regarding Delphi engineering practices and the May 2012 investigation of the Delta Ignition Switch Delphi undertook at the request of GM Design Release Engineer Ray DeGiorgio.

8.   **Maria Frank, M.D. (Hybrid Fact/Expert)**: Dr. Frank was a doctor who provided treatment to Spain after the subject incident. She will testify as to the foundation for the admissibility of certain medical records, and as to the contents of those records, including information regarding Spain's medical conditions, diagnoses, and treatments, and about any information conveyed to her by Spain.

9.   **Sergeant David Kramer (Hybrid Fact/Opinion)**: Responding officer on scene will testify about his interactions with plaintiffs, his observations and conclusions regarding the weather and road conditions on the night of

the accident as well as the circumstances surrounding the accident, his own accident and other accidents he observed that night, the cause of the accidents, and the contents of his police report.

10.    **George Lin (Fact)**: Former Delphi Product Engineer and Program Manager will testify regarding Delphi's engineering practices and the design, development, and production of the Delta Ignition Switch and interactions with GM regarding the same.

11.    **Paulette Manuel (Fact)**: Other driver in accident, will provide testimony about the facts and circumstances of her car accident and plaintiffs' car accident, including weather and road conditions.

12.    **Erik Mattson (Fact)**: Former Delphi Product Engineer and will testify regarding Delphi's engineering practices and the design, development, and production of the Delta Ignition Switch and interactions with GM regarding the same.

13.    **Glenda Philson (Fact)**: Other driver in accident, will provide testimony about the facts and circumstances of her car accident on January 24, 2014 and plaintiffs' car accident, including weather and road conditions.

14.    **Lori Queen (Fact)**: Former Vehicle Line Executive for Small Cars will testify concerning Old GM engineering practices and her role in the development of the Chevrolet Cobalt.

15.    **Renee Rankins (Fact)**: Other driver in accident, will provide testimony about the facts and circumstances of his car accident on January 24, 2014 and plaintiffs' car accident, including weather and road conditions.

16.    **Michael Rollason (Fact)**: Former JTEKT/Koyo Product Engineer and 30(b)(6) witness will testify regarding the steering column supplier's engineering practices and involvement in engineering and testing the Delta steering column assembly.

17.    **Thomas Svoboda (Fact)**: Former Delphi Customer Specialist will testify regarding testing of and post-production issues with and changes to the Delta Ignition Switch and interactions with GM regarding the same.  .

18.    **Harry Vorhaben, M.D. (Hybrid Fact/Expert)**: Dr. Vorhaben was a doctor who provided treatment to Barthelemy before the subject incident. He will testify as to the foundation for the admissibility of certain medical records, and as to the contents of those records, including information regarding Barthelemy's medical conditions, diagnoses, and treatments, and about any information conveyed to him by the Barthelemy.

## XII.   EXHIBITS TO BE OFFERED

The parties will exchange exhibit lists on February 18, 2016.  The parties will meet and confer to resolve any objections to these exhibit lists, and the trial exhibits will be submitted to the Court by March 7, 2016.  As in *Scheuer*, the parties agree that each party may freely add up to 10 exhibits to their exhibit list.

## XIII.   STATEMENT OF THE DAMAGES CLAIMED AND RELIEF SOUGHT

Plaintiffs seek damages that will reasonably and fairly compensate them for their injuries and lost income sustained as a result of negligence and wrongful conduct of Old GM and New GM (with respect to his claims for product liability and negligence) and the wrongful conduct of New GM (with respect to their deceit and consumer protection claims), in an amount to be determined at trial.  In addition to the payment of actual damages, Plaintiffs also seek the costs of litigation, including reasonable attorneys' fees, pre- and post-judgment interest and civil penalties under the Louisiana Products Liability Act and the Louisiana Unfair Trade Practices and Consumer Protection Law.  Finally, Plaintiffs request that the Court award Plaintiff such other further and different relief as the case may require or as determined to be just, equitable and proper by the Court.

## XIV.   STATEMENT OF WHETHER THE PARTIES CONSENT TO LESS THAN A UNANIMOUS VERDICT

Plaintiffs consent to a less than unanimous verdict.  New GM does not consent to less than a unanimous verdict.

Dated:        New York, New York
              February ____, 2016

SO ORDERED:


_____
JESSE M. FURMAN
United States District Judge