UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------x

IN RE:

GENERAL MOTORS LLC IGNITION SWITCH LITIGATION

*This Document Relates To:*
*Abney, et al. v. General Motors LLC, 14-CV-5810*
------------------------------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  02/25/2016

14-MD-2543 (JMF)

OPINION AND ORDER

JESSE M. FURMAN, United States District Judge:

**[Regarding New GM's Motion for Partial Summary Judgment, the Admissibility of
Evidence Relating to Airbag Non-Deployment, and Other Similar Incident Evidence]**

The second bellwether trial in this multidistrict litigation ("MDL"), brought by Plaintiffs

Lawrence Barthelemy and Dionne Spain and familiarity with which is presumed, is scheduled to

begin on March 14, 2016.  (*See* Order No. 94 (Docket No. 2183)).  The parties filed various pre-

trial motions, all but two of which — New GM's motion for partial summary judgment (Docket

No. 2186) and New GM's twentieth motion *in limine*, regarding the admissibility of evidence

relating to airbag non-deployment (Docket No. 2209) — have been resolved.  This Opinion and

Order provides the Court's "bottom-line" ruling with respect to New GM's partial summary

judgment motion and resolves both New GM's twentieth motion *in limine* and a related dispute

between the parties concerning the admissibility of "other similar incidents" (or "OSI")

evidence.  (*See* Docket Nos. 2201-2202, 2320; *see also* Order No. 86 (Docket No. 1772) § XV;

Order No. 91 (Docket No. 2001) at 4).  The Court will issue a more detailed opinion with respect

to the partial summary judgment motion in due course, but provides its "bottom-line" ruling

now, both because it has a bearing on the OSI dispute addressed herein and because it will help

to facilitate timely resolution of any disputes with respect to other matters, such as what portions

of the Valukas Report and the Deferred Prosecution Agreement ("DPA") Statement of Facts

("SOF") may be admitted at trial.

## NEW GM'S PARTIAL SUMMARY JUDGMENT MOTION

First, upon review of the parties' papers, and for reasons to be provided in the Court's

forthcoming opinion, New GM's motion for partial summary judgment is GRANTED in part and

DENIED in part.  More specifically, New GM's motion is granted on the merits with respect to

- Plaintiffs' independent claim against New GM under the Louisiana Products Liability Act ("LPLA"), because Plaintiffs fail to show that New GM is a "manufacturer" within the meaning of the LPLA;

- Plaintiffs' negligence claim, because New GM owed Plaintiffs no independent duty of care and because negligence *per se* does not exist under Louisiana law;

- Plaintiffs' redhibition claim, because New GM and Plaintiffs were not in a buyer-seller relationship; and

- Barthelemy's fraudulent misrepresentation claim, because Plaintiffs do not argue, let alone present evidence, that Barthelemy relied on any misrepresentation or omission by New GM.

Additionally, because Plaintiffs did not oppose New GM's motion for summary judgment on

their claim under the Louisiana Unfair Trade Practices Act or their punitive damages claims (*see*

Docket No. 2264), those claims are also dismissed as abandoned.  *See, e.g.*, *Jackson v. Federal*

*Express*, 766 F.3d 189, 198 (2d Cir. 2014) ("[I]n the case of a counseled party, a court may,

when appropriate, infer from a party's partial opposition [to summary judgment] that relevant

claims or defenses that are not defended have been abandoned.").  New GM's motion is denied,

however, with respect to Spain's fraudulent misrepresentation claim, as the Court concludes that

the LPLA does not preclude Spain from bringing non-LPLA claims against New GM and that a

reasonable jury could find that Spain relied on misrepresentations and omissions by New GM

regarding the existence and implications of the ignition switch defect.  In addition, New GM did

not move for summary judgment with respect to Plaintiffs claims under the LPLA with respect to the conduct of Old GM, which were assumed by New GM in the 2009 Sale Order.

### NEW GM'S TWENTIETH MOTION *IN LIMINE* AND THE OSI DISPUTE

The Court turns, then, to New GM's twentieth motion *in limine* and the parties' related disagreement with respect to OSI evidence.  As was the case in advance of the first bellwether trial, *Scheuer v. General Motors LLC*, No. 14-CV-8071, the relevant principles are not really in dispute.  *See In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2015 WL 9463183, at *1 (S.D.N.Y. Dec. 28, 2015).  It is well established that in a product liability case such as this, OSI evidence may be admitted to prove "negligence, a design defect, notice of a defect, or causation."  *Hershberger v. Ethicon Endo-Surgery, Inc.*, No. 10-CV-0837, 2012 WL 1113955, at *2 (S.D. W.Va. Mar. 30, 2012).  But before such evidence "may be admitted for any purpose, the proponent must establish [the prior accidents'] relevance by showing that they occurred under the same or substantially similar circumstances as the accident at issue." *Schmelzer v. Hilton Hotels Corp.*, No. 05-CV-10307 (JFK), 2007 WL 2826628, at *2 (S.D.N.Y. Sept. 24, 2007); *see also Barker v. Deere & Co.*, 60 F.3d 158, 162 (3d Cir. 1995) (noting that every Court of Appeals that has considered the admissibility of prior accidents in products liability cases has applied the substantial similarity standard).  "Whether a prior accident occurred under 'substantially similar' conditions necessarily 'depends upon the underlying theory of the case, and is defined by the particular defect at issue.'"  *Lidle v. Cirrus Design Corp.*, 505 F. App'x 72, 74 (2d Cir. 2012) (summary order) (quoting *Guild v. Gen. Motors Corp.*, 53 F. Supp. 2d 363, 367 (W.D.N.Y. 1999)).

Significantly, the requisite degree of similarity varies according to the purpose for which OSI evidence is offered.  For example, "[e]vidence proffered to illustrate the existence of a

dangerous condition necessitates a high degree of similarity because it weighs directly on the ultimate issue to be decided by the jury." *Four Corners Helicopters, Inc. v. Turbomeca, S.A.*, 979 F.2d 1434, 1440 (10th Cir. 1992) (internal quotation marks omitted).  Similarly, where OSI is offered to prove causation, courts tend to consider multiple factors — namely, whether "(1) the products are similar; (2) the alleged defect is similar; (3) causation related to the defect in the other incidents; and (4) exclusion of all reasonable secondary explanations for the cause of the other incidents."  *Watson v. Ford Motor Co.*, 389 S.C. 434, 453 (2010); *see also* 1 McCormick on Evid. § 200 (7th ed. 2013) (noting that courts are more likely to allow OSI evidence to show causation "when the defendant contends that the alleged conduct could not possibly have caused the plaintiff's injury").  By contrast, the substantial similarity standard is "relaxed" where OSI evidence is offered to show notice; that is, "'the similarity in the circumstances of the accidents can be considerably less than that which is demanded when the same evidence is used for one of the other valid purposes.'"  *Schmelzer*, 2007 WL 2826628, at *2 (quoting 1 McCormick on Evid. § 200 (6th ed. 2006)).  As the substantial similarity inquiry is "fact-specific," a "district court is owed considerable deference in its determination of substantial similarity."  *Bitler v. A.O. Smith Corp.*, 391 F.3d 1114, 1126 (10th Cir.), *as clarified on reh'g*, 400 F.3d 1227 (10th Cir. 2004).  If substantial similarity is established, "[a]ny differences in the accidents . . . go to the weight of the evidence."  *Four Corners*, 979 F.2d at 1440 (internal quotation marks omitted).

Applying those principles and the rules of evidence, the Court allowed the plaintiff in *Scheuer* to introduce some, but not all, of the OSI evidence he had proffered.  Specifically, Scheuer sought to introduce OSI evidence from fifteen other accidents on the ground that they were relevant both to prove notice and causation and to the issue of punitive damages. *See In re Gen. Motors LLC Ignition Switch Litig.*, 2015 WL 9463183, at *1.  In opposition, New GM

4

argued that Scheuer's accident was not "substantially similar" to the alleged OSIs because only

the former involved a "single key" in the ignition (which reduced the likelihood of inadvertent

ignition switch rotation).  *Id.* at *2.  Stating that "one of the most salient factors in the

[substantial similarity] analysis is whether the other incidents involved the same alleged defect as

the incident at issue," the Court rejected that argument.  *Id.*  The Court noted, however, that

"New GM may argue, and the jury may ultimate agree, that Plaintiff's use of a single key

differentiates his accident from the other incidents."  *Id.*  The Court also rejected New GM's

argument that Scheuer's experts' testimony with respect to the OSI evidence was improper,

finding that, although not disclosed in their original expert reports, (1) it was within the scope of

rebuttal and, additionally, that (2) there was "no evidence of bad faith on the part of Plaintiff or

prejudice to New GM."  *Id.*  Nonetheless, the Court did not approve all of Scheuer's OSI

evidence wholesale, and instead deferred ruling on the admissibility of specific OSI evidence

until after Plaintiff submitted an additional proffer providing further, even more detailed

information relating to the contents and propriety of such testimony.  *Id.* at *3.

In this second bellwether trial, Plaintiffs seek to offer OSI evidence from seven prior

accidents.  (Pls.' Mem. Law Regarding OSIs (Docket No. 2201) ("Pls.' OSI Mem.") 7-11).

Evidence relating to four of those alleged OSIs (the crashes of Brooke Melton, Amber Rose,

Hasaya Chansuthus, and Bridgette Sullivan) was presented in *Scheuer*; in addition, they are

discussed in the Valukas Report and the SOF.  (Pls.' OSI Mem. 4 n.8, 8 n.10).  The remaining

three alleged OSIs (the crashes of Morgan Hildwen, Linnet Caban, and Miranda Gill), however,

were not offered in *Scheuer*; nor are they discussed in the Valukas Report, the SOF, or the

NHTSA Consent Order.  (*See* Pls.' OSI Mem. 10-11).  Instead, for two of the incidents (Caban

and Gill), Plaintiffs rely on documents that New GM describes as "customer complaints"; for the

third incident (Hildwen), Plaintiffs submit no documentary evidence at all.  (Gen. Motors LLC's

Mem. Law Regarding Pls.' Purported Other Similar Incident Evidence (Docket No. 2320) ("New

GM's OSI Mem.") 10;  Pls.' OSI Mem. 10-11; *see* Decl. Randall W. Jackson Supp. Pls' Mem.

Law (Docket No. 2202) ("Jackson Decl."), Exs. 4-5).[1]

Plaintiffs' submissions are — to put it mildly — not particularly illuminating as to the

precise evidence they propose to offer of these incidents.  (*See, e.g.*, Pls.' OSI Mem. 10-11

(providing two- or three-sentence summaries of the accidents of Hildwen, Caban, and Gill, and

with respect to Hildwen, failing even to cite a source); *id.* at 12-13 (discussing the Valukas

Report, the SOF, and the "NHTSA compiled reports," and stating their intention to introduce

"these documents" without further specification)).  Nor are Plaintiffs particularly clear with

respect to the purposes for which they seek to introduce the evidence.  They argue that the

evidence is relevant to prove notice, but at times they seem to suggest that it is also admissible to

prove causation.  (*See, e.g.*, *id.* at 3 ("Plaintiffs have the burden of establishing that it was the

Defective Switch that caused the accident at issue, and [the OSI] evidence is certainly relevant

on that point."); *id.* at 15 (discussing Stevick's expert testimony and stating he "will be prepared

to testify" regarding "similar incidents" to establish not only that New GM was on notice but

also "that . . . the Defective Switch may have *caused* the accident and injuries here" (emphasis

added); *id.* at 8 n.10 (stating that Plaintiffs' experts will give opinions with respect to both notice

and the "impact that the defect had on the vehicle and anyone driving [it]" (whatever that

means)); *id.* at 15-16 (arguing that Plaintiffs "should be permitted to demonstrate through the use

---

[1]      Although New GM calls the documents "customer complaints," it is not clear that is what
they are, as each document indicates that it was "[p]repared at the request of counsel in
anticipation of litigation."  (Jackson Decl., Exs. 4-5).

of their experts that, at a minimum, New GM was on notice of the Defective Switch, and to establish causation as well")).

New GM objects to Plaintiff's proposed OSI evidence on multiple grounds.  First, New GM contends that Plaintiffs' initial disclosures of OSI evidence were so vague and non-specific that they violated this Court's Orders and that Plaintiffs' proffer to the Court is little better. (New GM's OSI Mem. 3-6).  Next, New GM argues that the OSI evidence is not substantially similar to Plaintiff's crash (and therefore not relevant), because Plaintiff's crash — unlike many, if not all, of the OSIs Plaintiffs proffer — did not involve a frontal impact forceful enough to deploy the airbags.  (Mem. Law Supp. GM LLC's Mot. *In* Limine No. 20 (Docket No. 2210) ("New GM's Twentieth Mem.") 7-14; New GM's OSI Mem. 7-10).  In fact, because Plaintiffs concede that their airbags should not have deployed in the crash, New GM argues — in its twentieth motion *in limine* — that they should be precluded altogether from introducing "(i) airbag non-deployment accidents and investigations described in the Valukas Report and the [SOF] . . . , (ii) any alleged [OSIs] related to airbag non-deployment, and (iii) expert opinions relating to alleged insufficiencies in airbag design or function."  (New GM's Twentieth Mem. 1-2).  Lastly, citing Rule 37(c)(1) of the Federal Rules of Civil Procedure, New GM asserts that Plaintiffs' experts should not be permitted to introduce or testify about the OSI evidence because, "[o]ther than . . . the *Melton* matter, none of the" other OSIs was "identified as materials relied upon or considered by plaintiffs' experts — let alone discussed in their expert reports or depositions."  (New GM's OSI Mem. 13-16).

New GM's objections are well founded with respect to the three alleged OSIs that were not introduced in *Scheuer* and do not appear in the Valukas Report or the SOF.  Notably, Plaintiffs proffer no evidence whatsoever with respect to the Hildwen incident.  Instead, they

assert in their unsworn memorandum of law that Hildwen "lost control of her 2005 Cobalt while attempting to change lanes" because her "steering locked up."  (Pls.' OSI Mem. 10).  Even taking those allegations as true, however, they fall far short of establishing that Hildwen experienced a moving stall, let alone a moving stall that was a result of inadvertent ignition switch rotation; after all, cars could stall for all sorts of reasons having nothing to do with the ignition switch defect (or at least Plaintiffs have not proved the contrary).

Plaintiffs do proffer "evidence" with respect to the Caban and Gill incidents, but that evidence is not much better.  For Caban, Plaintiffs provide only a two-page form (apparently created by New GM), titled "Early Technical Assessment System Data Sheet," which states that while making a U-turn, Caban's steering wheel "got loose and kept spinning" causing a crash in which Caban's airbags did not deploy.  (Jackson Decl., Ex. 4).  The report further notes that the car's data showed that a "non-deploy event [was] recorded" and concludes that the "steering . . . functioned as designed, but driver errors . . . caused . . . the crash."  *Id*.  Plaintiffs proffer the same kind of form for Gill, which states that she "rear-impacted a vehicle in front of her that slammed on its brakes" and that her airbags did not deploy; much of the form is redacted, but it does note that "no SDM data was available for review" and that Gill no longer possessed the vehicle.  (Jackson Decl., Ex. 5).  Putting aside the glaring hearsay problems raised by these forms, this "evidence" provides no basis to conclude that either crash was similar, let alone *substantially* similar, to Plaintiffs' crash.  (Moreover, the forms do not even establish that the crashes involved inadvertent ignition switch rotation.)  In short, with respect to the three newly proffered OSIs, Plaintiffs fall far short of meeting even the "relaxed" standard that applies where such evidence is offered to show notice.  *Schmelzer*, 2007 WL 2826628, at *2.  It follows that

they come nowhere near satisfying the higher standard applicable to OSI offered for other purposes, including causation.  *See Watson*, 389 S.C. at 453.

In a footnote, Plaintiffs state that they "did not read the OSI Disclosure requirement to mean that they were required to provide a detailed proffer on the OSI disclosure date" and that it is their "understanding that, as was the case in *Scheuer*, if this Court agrees that such evidence is admissible, a more detailed proffer may later be required."  (Pls.' OSI Mem. 4 n.8; *see* Order No. 89 (Docket No. 1864) at 4; Order No. 91 at 4).  To the extent that footnote can be construed to argue that Plaintiffs should be permitted to supplement their proffer if the Court finds it insufficient, the argument is thoroughly unpersuasive.  First, as the Court made clear at the status conference held on February 23, 2016, the disclosure requirement was indeed more demanding than Plaintiffs read it to be.  Among other things, the nature of the disclosure needed arose at a status conference in advance of the first bellwether trial, when the Court credited New GM's concerns that "unless they have a better idea about what evidence the plaintiffs want to offer on [OSI], that it's hard for [New GM] to tee the issue up for [the Court] to decide any disputes." (Nov. 20, 2016 Tr. 28).  Counsel for New GM explained further that in order to "reasonabl[y] present[] to the court" New GM's position on Scheuer's use of OSI, New GM needed to have "an understanding of" the specific incidents being offered, the form in which the evidence would be introduced at trial, and "the purpose for which it is being offered."  (*Id.* at 33).

In any event, through its Orders and colloquy with counsel, the Court made abundantly clear that, in their submissions to the Court, the parties were to "brief the admissibility of *specific* [OSI] evidence and related witnesses . . . including the *specific* purpose(s) for which that evidence is offered and to which the witnesses will testify."  (Order No. 86 (Docket No. 1772) § XV (emphasis added); *see also* Order No. 91 at 4 (directing the parties to brief OSI disputes in

*Barthelemy* (or other bellwether cases) "in accordance with the Court's guidance in Order No. 86 § XV")).  During a telephone conference that preceded Order No. 86, the Court made plain its expectation that "plaintiff's [OSI] submission is going to not only identify who the witness is and what the proposed evidence is but make an argument as to why it is admissible" including "an argument as to what the purpose of it is."  (Nov. 30, 2016 Tr. 16).  The Court concluded by stating generally that the parties' OSI briefing should be sufficient "for [the Court] to adjudicate these issues so that everybody understands *precisely* what is coming in and [the Court] ha[s] whatever meaningful information [it] need[s] to make those determinations."  (*Id.* (emphasis added)).  The fact that the Court ordered Scheuer to make a detailed follow-up proffer with respect to the precise evidence he proposed to offer was not a basis for Plaintiffs here to conclude that they would be given a second bite at the apple in the event that Court found their showing of substantial similarity inadequate; if anything, it should have made clear to them the level of specificity that they needed to meet in order for OSI evidence to be admitted.

Plaintiffs' proffer with respect to the other four alleged OSIs is less problematic, if only because the incidents are discussed in both the Valukas Report and the SOF and were presented during the *Scheuer* trial (making any deficiencies in Plaintiffs' disclosure or expert reports harmless).  Thus, the Court turns to New GM's primary argument: that the OSIs are inadmissible to the extent they involved allegations of improper airbag non-deployment and, in fact, that all evidence of improper airbag non-deployment should be excluded given Plaintiffs' concession that their crash was not a deployment-level event.  That argument fails, at least with respect to notice, substantially for the reason that New GM's OSI arguments failed in *Scheuer*: because the proposed OSIs all involve the same defect alleged in this case.  *See In re Gen. Motors LLC Ignition Switch Litig.*, 2015 WL 9463183, at *2; *see also Jackson v. Firestone Tire & Rubber*

10

*Co.*, 788 F.2d 1070, 1083 (5th Cir. 1986) ("The 'substantially similar' predicate for the proof of similar accidents is defined . . . by the defect (or, as we have also termed it, the product) at issue."); *Bellinger v. Deere & Co.*, 881 F. Supp. 813, 818 (N.D.N.Y. 1995) ("In product liability actions, it is appropriate to define the similarity of the accidents based upon the product or defect at issue.").  In arguing otherwise, New GM takes an artificially narrow view not only of the Court's decisions with respect to the OSI evidence in *Scheuer*, but also of the defect alleged in this case, calling it "the loss-of-control defect at issue."  (New GM's Twentieth Mem. 11; *see also id.* at 8 ("[T]he sole defect at issue here is one in which the ignition switch caused a loss of control.")).  The alleged defect in this case, however, is precisely the same as that alleged in *Scheuer* and, indeed, in the MDL as a whole — namely, a defective ignition switch, installed in certain GM model-year cars, that may inadvertently rotate from "run" to "accessory" or "off," thereby disabling critical safety features of the vehicle, such as power steering, power brakes, and airbag deployment.  (*See* Compl., *United States v. $900,000,000 in U.S. Currency*, No. 15-CV-7342 (S.D.N.Y. Sept. 17, 2015), Docket No. 1, Ex A. (DPA), Ex. C (SOF) ¶ 4 ("The defect at issue is a low-torque ignition switch . . . which . . . may move out of the "Run" position . . . . If this movement occurs, the driver loses the assistance of power steering and power brakes. And if a collision occurs . . . airbags *may* fail to deploy." (emphasis added))).  More to the point, the alleged defect is the same as that which caused the Melton, Rose, Chansuthus, and Sullivan crashes.  Thus, Plaintiffs are entitled to introduce evidence of those crashes for purposes of showing that New GM was on notice of the defect, which is relevant to Spain's surviving fraudulent misrepresentation claim.  (*See* Pls.' OSI Mem. 6).[2]

---

[2]        In accordance with the Court's ruling on Plaintiffs' second motion *in limine* (*see* Docket Nos. 2215, 2346), New GM may make it plain to the jury, within reasonable limits, that

Plaintiffs fail to establish, however, that the evidence is admissible for any purpose other than proving notice. As noted, Plaintiffs appear to contend that the OSI evidence is also admissible to prove causation, but they do so only in conclusory fashion. That is reason enough to limit Plaintiffs' proof to the issue of notice, but — more fundamentally — they present no theory of how the evidence is relevant to the question of causation in this case. New GM does not contest that there was an ignition switch defect in the kind of car Plaintiffs drove or that that defect *could* result in an accident due to the failure of power steering and power brakes. *Cf.* 1 McCormick on Evid. § 200 (7th ed. 2013) (noting that courts are more likely to allow OSI evidence to show causation "when the defendant contends that the alleged conduct *could not possibly* have caused the plaintiff's injury" (emphasis added)). Instead, New GM's primary defense appears to be that, based on the evidence in this case, Plaintiffs' crash was not caused by the defect, but by icy road conditions and Plaintiffs' driving. The fact that four other crashes (under very different circumstances) were the result of inadvertent switch rotation sheds no light on whether New GM or Plaintiffs have the better of *that* issue in *this* case. In that regard, the contrast to *Scheuer* is telling. There, the plaintiff's theory was that the airbags in his car should have deployed when he crashed and that the only explanation for the fact that they did not deploy was inadvertent switch rotation. The fact that there were other crashes (under relatively similar circumstances, no less) in which the only explanation found for airbag non-deployment was the ignition switch defect plainly tended to support that theory (and tended to support the plaintiff's

---

Plaintiffs' crash was not a deployment-level crash. By the same token, although the Court holds that Plaintiffs are not categorically barred from introducing evidence of airbag non-deployment in other incidents, the Court will not permit Plaintiffs to introduce excessive evidence of airbag non-deployment given their concession that their crash did not exceed the deployment threshold. Put another way, the Court's denial of New GM's twentieth motion *in limine* is without prejudice to New GM making specific objections, on Rule 403 grounds or others, at trial.

experts' opinions to that effect).  Here, by contrast, there is nothing about the OSI evidence that

tends to make Plaintiffs' theory of causation "more or less probable than it would be without the

evidence."  Fed. R. Evid. 401.  Accordingly, the evidence is not admissible to prove causation.

That leaves only one question: how Plaintiffs may prove up the four OSIs that are

admissible for purposes of notice.  The Court concludes, as it did in *Scheuer*, that Plaintiffs may

introduce evidence of the permissible OSIs in the Valukas Report and the SOF (and, subject to

any other evidentiary objections, *see, e.g.*, Fed. R. Evid. 403, other documentary evidence, such

as the attorney case evaluations of the Melton, Chansuthus, and Sullivan crashes that were

admitted into evidence at the *Scheuer* trial).[3]  The Court reserves judgment until trial on whether

and to what extent Plaintiffs may elicit testimony from their experts about the OSIs, as they

apparently would like to do.  (*See* Pls.' OSI Mem. 8 n.10 (stating that Plaintiffs intend "to have

their experts discuss generally their opinions and conclusions regarding the Defective Switch,

including their opinions regarding New GM's notice of the defect"); *id.* at 13 (stating that "[i]t is

Plaintiffs' intention to introduce" the Valukas Report, among other documents, "through their

---

[3]      Plaintiffs may not, however, introduce OSI evidence through "NHTSA complaints" or
the like.  (In their memorandum, Plaintiffs suggest that they seek to introduce OSI evidence
"contained in NHTSA compiled reports, which would include the NHTSA Complaints reports
appended to Steve Loudon's" expert report (Pls.' OSI Mem. 12), but it is not clear whether those
documents relate to the Melton, Rose, Chansuthus, and Sullivan incidents or only to the three
incidents that the Court has already excluded.)  For one thing, because Plaintiffs fail to identify
the specific complaints they propose to use, they fail to carry their burden of showing substantial
similarity.  Additionally, the use of customer complaints would pose cumulativeness issues and
other evidentiary issues.  *See, e.g.*, *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1147 (9th Cir.
2012) ("Some courts have expressed doubt that customer complaints in and of themselves
adequately support an inference that a manufacturer was aware of a defect, noting that
complaints posted on a manufacturer's webpage merely establish the fact that some consumers
were complaining.  By themselves they are insufficient to show that [the manufacturer] had
knowledge [of the defect]." (internal quotation marks omitted)).

experts in order to show that New GM was on notice of the defective ignition switch . . .")).
Such testimony may present cumulativeness concerns.  *See* Fed. R. Evid. 403.  Additionally, the
Court is not entirely sure how or why expert testimony about the OSIs would be helpful to the
jury in assessing the question of whether the incidents put New GM on notice of the ignition
switch defect.  *See* Fed. R. Evid. 702 (noting that an expert may proffer an opinion only if, as
relevant here, "the expert's scientific, technical, or other specialized knowledge will help the trier
of fact to understand the evidence or to determine a fact in issue").  Assuming that Plaintiffs
intend to elicit testimony from their experts on the OSI evidence, they should be prepared in
advance to make a proffer of the testimony and to explain how it would be helpful to the jury.

## CONCLUSION

For the reasons stated above and in a more detailed opinion to follow, New GM's motion
for partial summary judgment is GRANTED in part and DENIED in part, and its twentieth
motion *in limine* is DENIED (without prejudice to specific objections at trial).  Further, the Court
finds that Plaintiffs may offer OSI evidence, but only evidence concerning the Melton, Rose,
Chansuthus, and Sullivan crashes and only for the purpose of proving notice.[4]

As discussed at the status conference on February 23, 2016, these rulings may well bear
on other issues, including what portions of the Valukas Report and the SOF are admissible at

---

[4]     On occasion, Plaintiffs appear to suggest that they may offer unspecified OSI evidence
above and beyond the seven named incidents discussed above.  (*See* Pls.' OSI Mem. 2 n.3
(noting that Plaintiffs' OSI disclosure "identified" the seven named incidents "'as well as any
other similar instances contained in the Valukas Report, the DPA, the NHTSA Report, or the
Statement of Facts'"); *id.* at 4 n.8 (noting that the Melton, Rose, Chansuthus, and Sullivan
incidents were "briefed . . . in *Scheuer*" and that unspecified "*others* were detailed in the Valukas
Report, the DPA SOF, [and] the NHTSA Complaint database")).  Suffice it to say, given the
ruling above with respect to the Hildwen, Caban, and Gill incidents — as to which Plaintiffs did
make an offer of proof, however inadequate — the Court will not allow Plaintiffs to introduce
OSI evidence that they do not even bother to identify in their OSI submissions.

trial.  After all, Scheuer was permitted to introduce OSI evidence with respect to incidents beyond the four that Plaintiffs may use here and for purposes that are not relevant or applicable here — namely, causation and punitive damages.  The Court sincerely hopes that the parties can agree (or narrow their disputes) with respect to whether and to what extent the redactions made in *Scheuer* to those exhibits (and perhaps others, such as the attorney case evaluations) are affected by the Court's ruling.  The parties shall immediately confer with respect to the implications of this ruling on those issues (and any others).  Any disagreements shall be raised with the Court, in simultaneous letter briefs not to exceed ten pages, by **March 4, 2016**, at **noon**.

The Clerk of Court is directed to terminate 14-MD-2543, Docket Nos. 2186 and 2209, and 14-CV-5810, Docket Nos. 204 and 212.

SO ORDERED.

Dated: February 25, 2016
       New York, New York

_____
JESSE M. FURMAN
United States District Judge