# BOIES, SCHILLER & FLEXNER LLP

575 LEXINGTON AVENUE • 7th FLOOR • NEW YORK, NY 10022 • PH. 212-446-2300 • FAX 212-446-2350

February 29, 2016

**BY ECF**
The Honorable Jesse M. Furman
United States District Court
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

Re: *In Re General Motors LLC Ignition Switch Litigation*, No. 14-MD-2543 (JMF)
*Barthelemy, et al. v. General Motors, LLC*, No. 14-cv-5810 (JMF)

Dear Judge Furman:

Pursuant to MDL Order No. 94 and Docket No. 202, Plaintiffs submit this letter brief to address the parties' disputes with respect to the jury instructions and verdict form that will be used in the second bellwether trial, *Barthelemy v. GM*. Following the Court's Opinion and Order dated February 25, 2016 (Dkt. # 277), two causes of action remain at issue for trial: (1) Plaintiffs' claims under the Louisiana Product Liability Act ("LPLA")[1]; and (2) plaintiff Dionne Marie Spain's fraudulent misrepresentation claim against New GM. Both are to be decided under Louisiana law.

Plaintiffs have streamlined their instructions to follow the Louisiana Pattern Jury Instructions and Louisiana Civil Code to the maximum extent possible. Although the parties appear to be in general agreement that the pattern instructions should be used, New GM has deviated from them in significant respects, described in Point A below.

On other critical issues, such as imputation, New GM's proposed instructions are an extreme departure from Louisiana law or are inconsistent with this Court's prior rulings, as explained in Point B below. On these issues, Plaintiffs' proposed jury instructions should be adopted, and New GM's rejected as unfounded and contrary to governing law.[2]

Finally, with regard to the parties' proposed Verdict Forms, summarized in Point C, Plaintiffs' form more accurately and clearly presents the questions the jury is to decide.

---

[1] LSA-R.S. 9:2800.52, et seq.
[2] Plaintiffs reserve the right to assert additional objections to New GM's proposed jury instructions and verdict form prior to the final charge conference and/or before the jury is charged.

1

A.     **The Louisiana pattern jury instructions should govern to the extent possible.**

    1.  **Louisiana Product Liability Law ("LPLA")**

Plaintiffs' Count I alleges four theories of liability under the LPLA, and the Louisiana pattern jury instructions contain extensive instructions for LPLA claims. Plaintiffs' Instruction No. 12 streamlines the four separate instructions into one, explaining that they are alternatives, and otherwise does not deviate from the pattern jury instructions.

New GM's Instruction No. 35, however, creates confusion and should be rejected wholesale. While also combining multiple instructions into one, it misleads the jury by instructing that Plaintiffs must prove "each and every one of these elements," when many are alternatives. New GM also instructs the jury that Plaintiffs must prove those elements "beyond a preponderance of the evidence" -- a nonexistent standard -- and that it may not consider the conduct of New GM at all, despite admitting that LPLA claims are an Assumed Liability.

New GM deviates from the pattern instructions in other significant respects. This is particularly problematic for the LPLA, which is a strict liability statute and establishes "fault" as a matter of law. New GM's alterations would improperly affect the jury's understanding of the careful balance struck by the Louisiana legislature. For example, the pattern instruction states that Plaintiffs must show their injuries "were proximately caused by a characteristic of the product," but New GM has needlessly changed the word "characteristic" to "defect." The word "characteristic" is appropriate because under the LPLA a product does not need a "defect" to be dangerous – the danger can result from lack of warning or other LPLA violation. New GM's Instruction No. 36 also provides only a portion of the definition of "manufacturer" from the pattern instructions, when the whole definition should be included.

In addition, New GM's Instruction No. 43, "No Duty to Design Perfect Product," is irrelevant. There is no allegation that the ignition switch in this case "wore out," or needed to be maintained. This instruction would introduce irrelevant issues and distract the jury.

    2.  **Damages: Louisiana Pattern Jury Instructions should be followed**

The Louisiana pattern jury instructions extensively address damages, and both parties have followed them. Plaintiffs' proposed instructions Nos. 25-31 include the relevant elements of damages Plaintiffs seek, while New GM includes only two, Nos. 54-55. Plaintiffs believe that all relevant elements of damages should be included for the jury's consideration, and have copied the pattern instructions intact. Since Plaintiffs do not seek damages for permanent disability (New GM No. 54) or punitive damages (New GM No. 56), references to these elements should be deleted. Plaintiffs' instruction on damages for fraud, Instruction No. 32, quotes the Louisiana Civil Code on this subject and should be adopted.

### 3. New GM's "Summary of the Case" Is Inapplicable to the LPLA.[3]

New GM's Instruction No. 7 should be stricken in its entirety. It is taken from the Louisiana pattern jury instructions for negligence and focuses throughout on the element of "fault." Although this instruction has been adopted by the Louisiana Supreme Court as a general instruction, on its face it does not apply to strict liability claims under the LPLA. Issues of causation and proof are properly addressed by the pattern instructions on the LPLA, and those should control here. Instruction No. 7 sows confusion and creates a highly misleading initial impression for the jury and should be rejected.

**B.    On critical issues of imputation, continuing duty to warn, adverse inference from absent witnesses, causation and other issues, the Court should adopt Plaintiffs' proposed jury instructions and reject New GM's requested instructions.**

    **1.    <u>Imputation</u>: New GM's proposed instruction appears to have no basis in law and should be rejected.**

        **i. Plaintiffs' Proposed Instructions 4-8 accurately summarize the Louisiana law of "mandate" and imputation.**

Plaintiffs' Instructions No. 4-8 propose simple and accurate instructions on imputation and agency, which in Louisiana is known as "mandate." Plaintiffs' instructions are drawn from the Louisiana Civil Code and Louisiana courts applying the Code. There are no Louisiana pattern jury instructions on this subject.

- <u>Instruction No. 4</u> explains that a corporation can act only through its employees, and that an act or omission of a corporate officer or employee, acting within the scope of his or her authority, is the act or omission of the corporation. This proposed instruction comes from the Louisiana Civil Code and explains the concept of "mandate" to the jury.[4] New GM has no valid basis for omitting the instruction.

- <u>Instruction No. 5</u>, "Knowledge of Employee as Agent of Corporation Imputable to Corporation," is based on decisions of Louisiana courts. Each statement is grounded in those decisions, including that (i) "Under Louisiana law, the general rule is that knowledge possessed by an agent is imputed to the agent's principal"[5]; and (ii) "The knowledge of the agent is imputed to the principal even if the agent neglects to

---

[3] New GM's Instruction No. 6 ("Summary of the Facts") should also be rejected. Plaintiffs do not believe that any summary of the facts is necessary at the end of the case, but to the extent that any is given, the parties have agreed to follow the statements of the case in the Pretrial Order. Plaintiffs are likewise prepared to withdraw the summary of facts in their Instruction No. 2.
[4] La. Civ. Code arts. 24, 2989.
[5] *Granger v. Deville*, 583 So.2d 583, 586 (La. Ct. App. 3d Cir. 1991).

3

specifically convey the facts or information to the principal."[6]  New GM has no valid basis for omitting the instruction.

- Instruction No. 6, "Scope of Authority–Defined," comes from the Louisiana Civil Code.  It should be given to explain the crucial concept to the jury that under Louisiana law, employers are answerable for acts of their employees "in the exercise of the functions in which they are employed."[7]  Rank is not an element.  New GM has no valid basis for omitting it.

- Instruction Nos. 7 and 8, "Knowledge of Employee of New GM Imputable to New GM," and "Knowledge or Notice of Information Contained in the Files of New GM Imputable to New GM," follow from the rulings of Judge Gerber[8] and this Court[9] that knowledge or notice of information in New GM's files or otherwise in its possession may be imputable to New GM, regardless of when such information or documents were obtained or created.  The second sentence of Proposed Instruction No. 8 states the well-established rule that a car manufacturer's knowledge of a defect will be presumed if the manufacturer's files contain sufficient documents to establish a safety defect.

    o New GM offers no similar or competing instruction, yet its Instruction Nos. 5 and 20 both state, accurately, that "[i]n *some circumstances*, the knowledge of . . . books and records in the corporation's files may be imputed to the corporation as a whole" (emphasis added).  Plaintiffs' Instruction Nos. 7 and 8 properly guide the jury in making that assessment.

- Plaintiffs then propose, in Instruction No. 21, that the Court refer the jury back to the relevant imputation instructions.  Those instructions serve to remind the jury both that New GM's independent liability must be based on New GM's conduct and that knowledge of New GM employees may be imputed to New GM, including knowledge New GM employees obtained while they were employees of Old GM.

    **ii. New GM's Instruction No. 20 appears to have no basis in law, is not supported by the cases cited, and should be rejected.**

In contrast to Plaintiffs' proposed instructions 4-8, New GM's Instruction No. 20 is inaccurate, misleading, confusing, and not supported by the authorities on which New GM relies. The Court should reject New GM's proposed Instruction No. 20 in its entirety.

*First,* in contrast to Plaintiffs' Instruction Nos. 4 and 6, which explain that an act or omission of a New GM officer or employee exercising the function in which he or she is

---

[6] *Marpco, Inc. v. South States Pipe & Supply*, 377 So.2d 525 (La. App. 3d Cir. 1979); *Bank of Louisiana v. Argonaut Ins. Co.,* 248 So.2d 349, 352 (La. App. 4th Cir. 1971).
[7] La. Civ. Code art. 2320.
[8] *In re Motors Liquidation Co.*, No. 09-50026 (REG), 541 B.R. 104, 114-16 (Bankr. S.D.N.Y. Nov. 9, 2015).
[9] *In re: General Motors LLC Ignition Switch Litigation*, 14-MD-2543 (JMF), 2015 WL 9582714 (S.D.N.Y. Dec. 30, 2015) *2 (Dkt. No. 1980, Opinion and Order at 4) (hereinafter "*Scheuer* Op.").

employed, is the act or omission of New GM, the first paragraph of New GM's Instruction improperly suggests otherwise.

*Second,* New GM improperly states that different "factors" are to be considered by the jury, depending on whether it is the knowledge of an Old GM employee, hired by New GM, or a New GM employee that is at issue. This statement does not appear to be supported by any law.

*Third*, New GM claims that, in order to impute the knowledge of a New GM employee to the corporation, the jurors must consider, *inter alia*: "Were the facts *important or significant* to the employee's duties to the employer?" (emphasis added). New GM's cited Louisiana cases are inapposite[10] and say nothing about this proposition, which has no support in Louisiana law. The correct standard under Louisiana law looks only at whether the agent was "exercising the function in which he or she is employed." Knowledge of the employee is imputed to the employer even if the agent neglects to specifically convey the facts or information to the principal. Plaintiffs' Instruction Nos. 5 and 6 accurately explain this principle.

*Fourth*, building on its erroneous claim that there are "two different standards" depending upon whether or not the New GM employee formerly worked at Old GM, New GM's Instruction No. 20 invents a "burden" that is "greater" for former Old GM employees, along with additional "factors" the jury must consider. These instructions are not supportable under Louisiana law or the facts of this case.

There is no justification for instructing the jury to consider whether the knowledge is "recent." The same employees who worked at Old GM on July 9, 2009 continued at New GM (generally in the same position with the same scope of authority) on July 10, 2009. The Louisiana cases cited say nothing about whether knowledge has been acquired "recently." And Judge Gerber has already noted that New GM has to "live with the knowledge its personnel had from the earliest days they began to serve New GM." *In re Motors Liquidation Co.*, 542 B.R. 104, 115 (Bankr. S.D.N.Y. Nov. 9, 2015). New GM's proposed instruction makes no sense here, where there was no gap between the employees' employment at Old and New GM.

Similarly, there is no justification for asking the jury to consider whether "the information [is] so *important* that it is fair to assume the Old GM employee had it in his mind at a later date when he went to work for [New] GM." (emphasis added). New GM has simply invented this "factor," and it should be rejected.

---

[10] The cited cases concern (a) liability under the federal maritime "Limitation Act," *Cont'l Oil Co. v. Bonanza Corp.*, 706 F.2d 1365, 1376 (5th Cir. 1983); *Matter of Talbott Big Foot, Inc.*, No. CIV.A. 87-61, 1988 WL 125440, at *3 (E.D. La. Nov. 22, 1988); (b) an employee who acted outside the scope of his employment when he asked his teenaged son to drive the company car, *Buisson v. Potts*, 156 So. 408, 410 (La. 1934); (c) knowledge imputable to government agencies, which have heightened notification standards, *Odom v. Fair*, 147 So. 3d 1215, 1219 (La. Ct. App. 2014); *Fortune v. City of New Orleans*, 623 So. 2d 701, 703 (La. Ct. App. 1993); or (d) do not concern Louisiana law, *Mut. Life Ins. Co. of New York v. Hilton-Green*, 211 F. 31, 40 (5th Cir. 1914) (Florida law) (life insurance agents); *F.D.I.C. v. Ernst & Young*, 967 F.2d 166, 171 (5th Cir. 1992) (Texas law) (addressing whether interests of employee who committed fraud were adverse to the corporation).

2. **<u>Continuing duty to warn.</u>  The jury should be instructed on the continuing duty and failure to warn under the LPLA.**

Plaintiffs assert four theories of liability under the LPLA: defective construction; defective design; failure to warn; and breach of express warranty.  New GM assumed Old GM's product liabilities, including all four of these theories.  Plaintiff Spain also asserts a fraudulent misrepresentation against New GM based on New GM's misleading statements and omissions.  With respect to this claim, New GM may only be liable for its own post-sale conduct (but which includes New GM's knowledge inherited from Old GM).

Under the plain terms of the Bankruptcy Court's ruling, Plaintiffs may pursue claims based on Old GM's continuing duty and failure to adequately warn Plaintiffs and other members of the public of a deadly safety defect, which is an Assumed Liability.[11]  The LPLA expressly provides that this duty to warn is continuing in nature.[12]

Consistent with this well-established law, Plaintiffs' Proposed Instruction Nos. 12, 14 and 15 properly instruct the jury regarding Old GM's duty and failure to adequately warn Plaintiffs and the public about the admitted ignition switch safety defect and New GM's assumed liability on this front.

This principle also applies to Plaintiffs' proposed instructions on fraudulent misrepresentation:  No. 18 (instructing that the claim for fraudulent misrepresentation includes a claim based on New GM's misrepresentations or omissions); Nos. 19 (explaining that a party that volunteers to speak has a duty to disclose the whole truth).

3. **<u>Adverse inference from failure to call live witnesses.</u>  New GM's proposed instruction should be rejected, and Plaintiffs reserve the right to request an adverse inference instruction.**

New GM's Proposed Instruction No. 33 should be rejected.  A witness is not "equally available to both parties" simply because the witness has been deposed, as plaintiff argued in the first bellwether trial (*Scheuer*).  *See* Plaintiff's Memorandum of Law in Support of Motion in Limine No. 6 Regarding Live Trial Witnesses (Doc. No. 1743) at 8-9 (discussing *St. Paul Fire & Marine Ins. Co. v. Royal Ins. Co. of Am.*, No. 91-CV-6151, 1993 WL 267347, at *1 (S.D.N.Y. July 9, 1993)).  In *Scheuer*, the Court denied, without prejudice, Plaintiff's motion *in limine* requesting an adverse inference instruction based on deposed witnesses' absence from trial, but cautioned New GM about not producing witnesses live at trial**.**

---

[11] That New GM has been held by this Court not to be a "manufacturer" under the LPLA does not mean that its Assumed Liabilities do not include a duty to warn Plaintiffs of the deadly safety defect, which is an element of Old GM's product liabilities under the LPLA.

[12] *See* LSA-R.S. 9:2800.57 (Unreasonably dangerous because of inadequate warning).  This includes a statutory duty to warn subsequent users of a product when defects are found after the product has left the manufacturer's control. LSA-R.S. 9:2800.57(C) (subsequent duty to warn); 18 La. Civ. L. Treatise, Civil Jury Instructions § 11:5 (3d ed.).

6

Plaintiffs explicitly requested that New GM make available as live witnesses at trial several GM employees, and on February 18, 2016, New GM informed Plaintiffs that it "respectfully decline[d]." New GM now seeks an affirmative instruction that the jury should *not* draw an adverse inference from New GM's refusal to call its own current and former employees as live witnesses. This instruction misstates the law. *See St. Paul Fire & Marine Ins.*, 1993 WL 267347, at *1. Further, New GM invokes this Court's Opinion and Order dated Dec. 7, 2015 (Dkt. # 1825), to support its position. But that Opinion does not help New GM, because it states that "The Court can and will address this category through appropriate instructions to the jury at trial and, if necessary, in advance of the parties' summations." Opinion and Order at 13.

The issue of jury instructions is now before the Court, and the Court should reject New GM's proposed Instruction No. 33. Plaintiffs also may seek to request that an adverse inference instruction be given should the circumstances at trial warrant such an instruction.

**4. Causation. New GM's repeated instructions on causation and comparative fault deviate from the LPLA and are misleading.**

The LPLA is a strict liability statute. The Louisiana Supreme Court has expressly rejected contributory negligence as a defense to product liability cases, because it could become a complete bar to recovery and improperly shifts the risk to the consumer.[13] The Louisiana legislature resolved this issue through adoption of Article 2323 of the Louisiana Civil Code ("Comparative fault"), which authorizes a proportional reduction in damages by the degree of negligence attributable to the person suffering injury.[14] New GM's Requested Instruction No. 44 adopts the Louisiana pattern jury instructions on this subject, to which Plaintiffs do not object.

New GM proposes multiple other instructions, however, that improperly inject nonexistent elements to the causation analysis. New GM's Instruction Nos. 40 and 42 confusingly suggest to the jury that an "intervening cause" could bar any recovery by Plaintiffs. But this doctrine applies only to the question whether Plaintiffs' injuries resulted from the accident, or some separate, later event that caused plaintiff's injuries. It does not give license to New GM to try to prove some "intervening cause" of the accident itself that would relieve New GM of liability. As recognized in New GM's own cases, so long as "the defendant's actions had something to do with the injury the plaintiff sustained, the test of a factual, causal relationship is met."[15] Furthermore, before any "intervening cause" can be invoked, the defendant has the burden of establishing that there was, in fact, some separate, subsequent event that could be responsible for plaintiff's injuries.[16] Only after defendant has made that showing does the plaintiff need to show the injuries resulted from the accident, and not the later incident. Defendant has made no such showing here, and Instruction Nos. 40 and 42 should be rejected.

---

[13] *See Bell v. Jet Wheel Blast*, 462 So. 2d 166, 171 (La. 1985) ("Contributory negligence as a complete bar to recovery does not apply in products liability cases.")

[14] La. Civ. Code art. 2323.

[15] *Rhodes v. State* Through *Dept. of Transp. and Development*, 684 So.2d 1134, 1143 (La. App. 1st Cir. 1996).

[16] *See, e.g.*, *Munch v. Backer*, 63 So3d 181, 187 (La. App. 4th Cir. 2011) (defendant presented evidence of second, subsequent automobile accident and fall down stairs).

Similarly, New GM's Requested Instruction No. 39 ("Injury or Accident Does Not Establish Defect") is prejudicial and redundant of the pattern instructions of the LPLA. New GM has plucked this line from the cases cited, but those decisions simply state the obvious. In each case, the court determined that the plaintiff did not, in fact, establish that there was a defect in the first place. This is more than adequately addressed through the pattern jury instructions on the LPLA, and No. 39 should be rejected.

Finally, New GM's Instruction No. 49 ("Comparative Fault of Ms. Spain"), repurposed from instructions on negligence, purports to re-instruct the jury on the very same issue addressed in New GM's Instruction No. 44. As explained above, the LPLA was designed by the Louisiana legislature to strike a balance, which is reflected in Instruction No. 44 and entirely missing from Instruction No. 49. Instruction No. 49 should be rejected. Relatedly, Instruction No. 50, which purports to instruct the jury on a motorist's duty of care, is irrelevant and confusing and should be rejected.

**5. Fraud.** New GM's instructions on fraud are misleading.

New GM's Instruction No. 51 ("Fraudulent Misrepresentation") generally sets out the elements of liability, but it improperly suggests to the jury that Ms. Spain must prove New GM communicated directly with her, and intended to deceive her. New GM's Instruction No. 52 ("Silence/Intent") is repetitious of the elements of fraud already set out in Instruction No. 51.

**6. Other instructions.**

*NHTSA Consent Order.* Defendant's Instruction No. 28 goes beyond what is necessary to implement the Court's instruction in the order cited.[17] Defendant's instruction would tell the jury not to consider the existence of the consent order for purposes of determining whether New GM's handling of the recall violated the Safety Act – an argument this Court already found irrelevant. But defendant's proposed instruction also prohibits considering it regarding any other state or federal law, or whether the ignition switch in Ms. Spain's car rotated during the accident. It also fails to inform the jury that they may consider the Consent Order for other purposes, which the same Order authorizes, such as "to support Plaintiffs' argument that New GM knew that the ignition switch defect posed a safety risk, but concealed it to avoid a costly recall."[18] Plaintiffs' instruction No. 23 is correct.

*Statements to NHTSA.* Defendant's Instruction No. 29 is overbroad. It instructs the jury not to consider any statements made to NHTSA in deciding the central issues in the case, namely whether the ignition switch rotated during the accident or whether Plaintiffs suffered any injury

---

[17] Opinion and Order [Regarding New GM's First, Fourth, Fifth, and Sixth Motions *in Limine*] (ECF No. 1770)
[18] Opinion and Order [Regarding New GM's First, Fourth, Fifth, and Sixth Motions *in Limine*] (ECF No. 1770) at 4.

8

as a result – suggesting to the jury that they may not consider the statements for any purpose. A more limited instruction would serve the Court's goal in issuing the Order cited.[19]

*Other Incidents.* Defendant's Instruction No. 30 improperly suggests that the jury cannot consider other incidents in determining whether the ignition switch in Ms. Spain's car was defective – this is implicit in the notice purposes authorized by the Court's ruling on this issue. In fact, since New GM was responsible for replacing the ignition switch in Ms. Spain's car, it follows that New GM believed it was defective, a conclusion the jury should be entitled to draw. The only limit should be that the jury not consider other incidents in determining whether the switch <u>rotated</u> during the accident on January 24, 2014. The instruction also improperly references the 2007 Saturn Ion; the reference should be to the 2007 Saturn Sky.

*Burden of Proof.* Defendant's Instruction No. 34 improperly instructs the jury that Plaintiffs have the burden of proof on all claims, without noting that there are many issues on which New GM has the burden of proof. The burden of proof is adequately addressed in the context of the two remaining causes of action, and Instruction No. 34 only creates confusion.

## C.     The Court should adopt Plaintiff's proposed verdict form.

Plaintiff proposes a simple general verdict form, which is the norm in federal courts. Wright & Miller, 9B Fed. Prac. & Proc. Civ. § 2501 (3d ed.) ("Most jury-tried civil cases in federal courts are resolved, and always have been, by a general verdict in which the jury finds for the plaintiff or for the defendant."). New GM, by contrast, proposes a special verdict form that would require the jury to sift through 19 duplicative, confusing, and misleading special interrogatories before getting to two final (but still complicated) questions on the issue of damages. The jury is repeatedly encouraged, starting with Question 1, to answer "no," and end the arduous process. The Court should reject New GM's form.

First, New GM's labyrinthine special verdict form serves no purpose other than to confuse the jury. *See Santos v. Posadas De Puerto Rico Associates, Inc.*, 452 F.3d 59, 65 (1st Cir. 2006) (special verdict form in "straightforward" case was rejected as "too complicated"; "Less is sometimes more"). In a case like this one, a general verdict form is sufficient.

Second, New GM's instructions are highly duplicative and create the risk of an inconsistent verdict. *See, e.g.*, *ClearOne Comm. Inc. v. Biamp Sys.*, 653 F.3d 1163, 1182 (10th Cir. 2011) (jury form asked duplicative damages questions, which created ambiguity in award). For example, New GM's form begins with five "Causation" questions that are purportedly applicable to "All Counts." New GM Qs. 1-5. New GM then improperly asks a separate causation question for each count, which duplicates its five causation questions and confusingly uses different language in each question. *See* New GM Qs. 8, 11, 19.

Third, New GM's verdict form instructions misstate the law. For example, the products liability questions improperly suggest that Plaintiff cannot recover for a failure to warn unless

---

[19] Opinion and Order [Regarding New GM's Eighth, Ninth, and Tenth Motions *in Limine*] (Docket No. 1791 at 4).

she also proves the car had a defect, when the failure to warn by itself may be what makes a product dangerous.  *See* New GM Qs. 6 and 7.  It also improperly suggests that the jury must apportion "contributing fault" only between Old GM and Ms. Spain, and the total must add up to 100%, when there is no such requirement.  *See* New GM Q. 15.  The instructions on fraud repeat New GM's improper suggestions in its jury instructions and wrongly suggest that Plaintiffs must prove that New GM intended to deceive Ms. Spain in particular.

For the reasons above, the Court should reject New GM's efforts to interject additional and confusing issues into the case by use of its special verdict form.


Respectfully submitted,


_____/s/_____
Randall W. Jackson
Boies, Schiller & Flexner LLP
*Counsel for Plaintiffs*

Cc: All Counsel of Record