```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
IN RE:

GENERAL MOTORS LLC IGNITION SWITCH LITIGATION

This Document Relates To:
Abney, et al. v. General Motors LLC, 14-CV-5810
------------------------------------------------------------------------x
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 03/03/2016

14-MD-2543 (JMF)

OPINION AND ORDER

JESSE M. FURMAN, United States District Judge:

The second bellwether trial in this multi-district litigation ("MDL"), familiarity with which is presumed, involves claims brought by Plaintiffs Dionne Spain and Lawrence Barthelemy against General Motors LLC ("Defendant" or "New GM") stemming from a January 24, 2014 car accident involving Spain's 2007 Saturn Sky. That car was manufactured by General Motors Corporation ("Old GM") — which filed for bankruptcy in 2009, a bankruptcy from which New GM emerged. On January 27, 2016, New GM moved, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for partial summary judgment. (Docket No. 2186). By Order entered February 25, 2016, the Court indicated that, for reasons to be explained in a forthcoming opinion, New GM's motion was GRANTED in part and DENIED in part. This is that opinion.

## BACKGROUND

### A. Factual Background

In April 2013, Spain, a resident of Louisiana, purchased a used 2007 Saturn Sky from Banner Chevrolet, an authorized General Motors dealership. (Def. GM LLC's Statement Undisputed Material Facts Pursuant to Local Civ. R. 56.1 (Docket No. 2188) ("New GM's SOF") ¶¶ 1, 2; Pls.' Local R. 56.1 Resp. Opp'n Def. GM LLC's Statement Undisputed Material Facts (Docket No. 2265) ("Pls.' SOF") ¶ 45). On the night of January 24, 2014, Spain was

involved in an accident with Barthelemy, also a resident of Louisiana, in the passenger seat. (New GM's SOF ¶¶ 1, 3-4). Spain was allegedly driving approximately 40 miles per hour over a bridge in New Orleans, when the car in front of her began swerving and sliding on the road. (*Id.* ¶¶ 5, 9). In response, Spain stepped on the brakes but was unable to stop. (*Id.* ¶ 12). Spain lost control of the car, which spun in a counterclockwise direction, causing the front driver's side of the car to scrape the side of the bridge. (*Id.* ¶ 14). After the car came to a stop, Spain was able to drive it away from the scene of the accident. (*Id.* ¶ 23). Plaintiffs now bring this action to recover for injuries allegedly sustained as a result of the accident.

**B.  Bankruptcy Proceeding**

Before turning to New GM's arguments for summary judgment, it is necessary to briefly summarize certain rulings by the Honorable Robert E. Gerber, former United States Bankruptcy Judge for the Southern District of New York, who presided over the bankruptcy of Old GM in 2009. After New GM's disclosure of the ignition switch defect in early 2014, many claims were filed against New GM — some alleging economic losses and some alleging personal injuries and wrongful deaths (most of which are now part of this MDL). In April and August 2014, New GM filed motions before the Bankruptcy Court alleging that many of those claims were barred by the 2009 Sale Order through which New GM assumed many of Old GM's assets, but only some of its liabilities. In April 2015, Judge Gerber ruled that many of the claims brought against New GM were in fact barred by the 2009 Sale Order. *See In re Motors Liquidation Co.*, 529 B.R. 510 (Bankr. S.D.N.Y. 2015). In particular, he determined that New GM could be held liable for certain assumed liabilities of Old GM (namely, products liability claims that were included in the Sale Agreement), but distinguished between liability based on Old GM's conduct and liability for "claims based solely on any wrongful conduct of [New GM's] own part." *Id.* at 583. A later

Order implementing that opinion defined claims "based solely on New GM's own, independent, post-Closing acts or conduct" as "Independent Claims." *In re Motors Liquidation Co.*, 09-50026 (REG), Docket No. 13177 ¶ 4 (Bankr. S.D.N.Y. June 1, 2015).

The definition of "Independent Claims" reemerged as significant in Judge Gerber's opinion in November 2015 on punitive damages and "imputation." *See In re Motors Liquidation Co.*, 541 B.R. 104 (Bankr. S.D.N.Y. 2015) (the "*November Decision*").  There, Judge Gerber made two findings that bear heavily on the bellwether trials in this MDL.  First, he determined that, as a matter of bankruptcy law, knowledge of Old GM personnel or knowledge of information contained in Old GM files could be imputed to New GM only to the extent that it could be shown, as a matter of non-bankruptcy law, that New GM actually had that knowledge (for example, through an Old GM employee who later became an employee of New GM).  *See November Decision* at 108.  Second, Judge Gerber ruled that claims for punitive damages could only be "based on New GM knowledge and conduct alone" because New GM did not assume liability for punitive damages under the Sale Agreement.  *See id.*

## LEGAL STANDARDS

Summary judgment is appropriate where the admissible evidence and pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam).  A dispute over an issue of material fact qualifies as genuine if the "evidence is such that a reasonable jury could return a judgment for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "In

moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *accord PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002).

In ruling on a motion for summary judgment, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). To defeat a motion for summary judgment, the non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted).

## DISCUSSION

New GM does not seek to dismiss Plaintiffs' claim under the Louisiana Products Liability Act ("LPLA") based on a theory of assumed products liability. New GM does move for summary judgment, however, on Plaintiffs' independent LPLA claim against New GM based on New GM's own conduct. In addition, New GM argues that all of Plaintiffs' non-LPLA claims should be found to be preempted by the LPLA's exclusivity provision or, in the

alternative, dismissed on the merits.  Finally, New GM contends that Plaintiffs may not pursue punitive damages under Louisiana law.  The Court will address New GM's challenge to the LPLA claim and non-LPLA claims in turn.

**A.  Independent Claim Under the LPLA**

Plaintiffs assert two theories under the LPLA: (1) that New GM is liable because it assumed product liabilities claims against Old GM and (2) that New GM is independently liable based on its own conduct.  (*See* Second Amended Complaint, *Abney v. General Motors*, LLC, No. 14-CV-5810 (Docket No. 183) ("SAC") ¶¶ 345-82).  New GM does not seek dismissal of any assumed liability claim under the LPLA, but argues that Plaintiffs should be barred from pursuing independent claims against New GM based on the products liability statue because New GM is not a "manufacturer" of the 2007 Saturn Sky that allegedly caused Plaintiffs' injuries.  (*See* Mem. Supp. GM LLC's Mot. Partial Summ. J. (Docket No. 2187) ("New GM's Mem.") 5-6).  "To maintain a successful products liability action under the LPLA, a plaintiff must establish," *inter alia*, "that the defendant is a manufacturer of the product" at issue, as defined by the LPLA.  *Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 260-61 (5th Cir. 2002); *see also* La. Rev. Stat. § 9:2800.54(A) (providing that "[t]he manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous").  Plaintiffs do not dispute that LPLA claims can be brought only against "manufacturers," but rather argue that New GM is a "manufacturer" under the LPLA's "broad" definition of that term.  (*See* Pls.' Mem. Law Opp'n New GM's Mot. Partial Summ. J. (Docket No 2264) ("Pls.' Opp'n") 5-6).

Those arguments are unpersuasive.  In relevant part, the LPLA defines "manufacturer" to include a "person or entity who labels a product as his own or who otherwise holds himself out

to be the manufacturer of the product" or a "seller of a product who exercises control over or influences a characteristic of the design, construction or quality of the product that causes damage." La. Rev. Stat. § 9:2800.53(1)(a)-(b). Plaintiffs contend that New GM "labeled the product as its own and held itself out to be the manufacturer of the vehicle" because the car bore the GM name and because New GM provided a warranty on the car through Banner Chevrolet. (*See* Pls.' Opp'n 5-6; Pls.' SOF ¶ 45). With respect to the warranty, however, Plaintiffs produce no evidence whatsoever that would support their claim that New GM was involved with the issuance of a warranty on the car. In fact, the only evidence they point to that a warranty even existed is Spain's testimony that she took her car into Banner Chevrolet, which did some minor repairs "because the car was still under warranty." (*See* Decl. Randall W. Jackson Supp. Pls.' Mem. Law Opp'n New GM's Mot. Summ. J. (Docket No. 2266) ("Jackson Decl."), Ex. 7 at 59-60). Plaintiffs' assertions notwithstanding, that testimony falls well short of establishing that "New GM, acting through its dealer Banner Chevrolet, certified the quality of the used car and provided a new one-year limited warranty." (Pls.' SOF ¶ 45). Moreover, it is directly refuted by an affidavit submitted by New GM in reply, which indicates that "New GM did not provide any warranty with respect to the Saturn Sky purchased by plaintiff as a used car from Banner Chevrolet in April 2013." (Reply Mem. Supp. New GM's Mot. Partial Summ. J. (Docket No. 2298) ("New GM's Reply"), Ex. 1, ¶ 5). In the face of this evidence, Plaintiffs' *ipse dixit* assertion that New GM issued a warranty is not enough to withstand summary judgment. *See Gottlieb*, 84 F.3d at 518 (holding that a party opposing summary judgment "cannot defeat the

motion by relying on the allegations in his pleading or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible" (internal citation omitted)).[1]

Nor can Plaintiffs show that New GM "labeled the product as its own." Although Spain's car bore the GM logo, the plain language of the LPLA requires an entity itself to "label the product as its own" in order to be considered a manufacturer. La. Rev. Stat. § 9:2800.53(1)(a). New GM did not "label" the car at all; instead, it was produced — and "labeled" — by Old GM. *See Allstate Ins. Co. v. Fred's, Inc.*, 33 So. 3d 976, 984 (La. Ct. App. 2010) (concluding that it is "the labeler's expressed connection with the product upon which the liability of Section 2800.53(1)(a) arises"); *cf. Rutherford v. Coca-Cola Bottling Co.*, 501 So. 2d 1082, 1084 (La. Ct. App. 1987) (discussing the common law rule "which allowed knowledge of the manufacturer to be imputed to a seller or dealer who was not the manufacturer when the seller or dealer had labeled the goods as his own or had in some way held the goods out to be manufactured by him"). In short, Plaintiffs fail to put forward evidence that New GM labeled the product as its own or otherwise held itself out to be the manufacturer of the car.[2]

---

[1] The absence of evidence that New GM played any role in issuing a warranty also defeats Plaintiffs' contention that New GM qualifies as a manufacturer of the car as the "seller of a product who exercises control over or influences a characteristic of the design, construction or quality of the product that causes damage." La. Rev. Stat. § 9:2800.53(1)(b). Additionally, New GM was not the "seller" of the vehicle at all. *See id.* § 9:2800.53(2).

[2] Plaintiffs separately suggest that New GM can be held liable under the LPLA as an "apparent manufacturer." (*See* Pls.' Opp'n 6 & n.4). That doctrine does not provide a freestanding basis to establish that an entity qualifies as a "manufacturer" under the LPLA — it is the common law doctrine codified by the LPLA's "labels or otherwise holds himself out" definition of manufacturer. *See Chevron USA, Inc. v. Aker Maritime, Inc.*, 604 F.3d 888, 895 (5th Cir. 2010). Even assuming that the doctrine represented an independent means of establishing that a defendant was a manufacturer under the LPLA, the doctrine has been applied only to sellers of a product, and in any event requires the apparent manufacturer to take some affirmative step to create the impression that it is the actual manufacturer of the products that it sells. *See Penn v. Inferno Mfg. Corp.*, 199 So. 2d 210, 214-215 (La. Ct. App. 1967) ("[W]here the vendor puts only its name upon the product without indicating that it is actually the product of another then the public is induced by its reasonable belief that it is the product of the vendor to

Plaintiffs' remaining arguments regarding any independent LPLA claims are also unavailing. Plaintiffs suggest that New GM may be held liable as a "mere continuation" of Old GM because it "agreed to stand in the role of 'manufacturer'" in the 2009 Sales Agreement. (Pls.' Opp'n 7-8). In that way, Plaintiffs suggest that New GM can be treated as a manufacturer under the LPLA simply because Old GM was indisputably a manufacturer of the car. But those arguments are squarely foreclosed by the 2009 Sale Order and Judge Gerber's rulings in the bankruptcy proceeding. *See November Decision*, 541 B.R. at 126 ("New GM's objections to allegations . . . referring to New GM as 'successor' and, especially, as a 'mere continuation,' code words for imposing successor liability. . . must be, and are, sustained."). Put simply, because Independent claims against New GM must "based solely on New GM's own, independent, post-Closing acts or conduct," Plaintiffs are precluded from simply imputing Old GM's duties under the LPLA to New GM. *See In re Motors Liquidation Co.*, 09-50026 (REG), Docket No. 13177 ¶ 4 (Bankr. S.D.N.Y. June 1, 2015); *cf. In re Gen. Motors LLC Ignition Switch Litig.*, — F. Supp. 3d —, 2015 WL 9582714, at *5 (S.D.N.Y. Dec. 30, 2015) (finding that New GM has an independent post-sale duty to warn under Oklahoma law based on its *direct* relationship with the customers of Old GM). In short, Plaintiffs cannot establish that New GM is a "manufacturer" of the car within the meaning of the LPLA. Thus, Plaintiffs' independent claims against New GM under the LPLA are dismissed. *See Stahl*, 283 F.3d at 260-61.

## B. Other Claims

New GM argues that Plaintiffs' other claims — for fraudulent misrepresentation, negligence, redhibition, and unfair trade practices — should be dismissed for two independent

---

rely upon the skill of the vendor and not upon the skill of any other." (internal quotation marks omitted)). As discussed above, Plaintiffs cannot make that showing.

8

reasons. First, New GM contends that, with the exception of Plaintiffs' redhibition claim for economic loss, all of Plaintiffs' non-LPLA claims are preempted by the LPLA's exclusivity provision. (*See* New GM's Mem. 6-8). Second, New GM argues that, even if Plaintiffs' non-LPLA claims are not preempted by the LPLA, the claims fail on the merits. (*See id.* at 8-15). The Court addresses those arguments in turn.

### 1. Exclusivity of the LPLA

The LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products." La. Rev. Stat. § 9:2800.52. Thus, "[a] claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in this Chapter." *Id.* New GM contends that that language precludes Plaintiffs from bringing any non-LPLA claim against it even though it did not produce the product at issue. Because New GM is concededly a "manufacturer" of something, New GM argues, the LPLA provides the exclusive means of recovery for any injury caused by any product, even ones that it did not produce. (New GM's Mem 7-8). Although New GM's position finds support in decisions by the Fifth Circuit and district courts within the Fifth Circuit, *see, e.g.*, *Johnson v. Teva Pharms. USA, Inc.*, 758 F.3d 605, 615-16 (5th Cir. 2014), the Court concludes that it is inconsistent with the plain language of the statute and decisions by Louisiana state courts.

First, New GM's interpretation of the exclusivity provision focuses exclusively on the second sentence and ignores the first, thereby violating the principle that statutes must be read so as "to give effect, if possible, to every clause and word of a statute." *Duncan v. Walker*, 533 U.S. 167, 174 (2001). In the Court's view, the two sentences, when read together, make clear that the second sentence's general language ("a claimant", "a manufacturer", "a product") is cabined by the first sentence — that is, that the LPLA establishes the "exclusive theories of

9

liability" against manufacturers only "for damage cause by *their* products."  La. Rev. Stat. § 9:2800.52 (emphasis added).  Second, that reading is consistent with Louisiana courts' understanding of the LPLA's exclusivity provision.  *See e.g.*, *Haley v. Wellington Specialty Ins. Co.*, 4 So. 3d 307, 311 (La. Ct. App. 2009) ("The LPLA establishes the exclusive theories of liability for manufacturers for damages caused by *their* products." (emphasis added)).  In fact, at least one Louisiana court has squarely addressed this issue and held that the LPLA's exclusivity provision has no application where, as here, a defendant did not manufacture the product at issue.  *See Stanley v. Wyeth, Inc.*, 991 So. 2d 31, 33 n.2 (La. Ct. App. 2008) (holding that although "the LPLA is the exclusive basis of liability against manufacturers for damages from injuries caused by their products," that exclusivity provision "cannot apply" where the defendant is not "the manufacturer of the product causing plaintiff's harm").  In light of the statutory text and Louisiana state court precedent, the Court declines to follow the interpretation espoused by federal courts in the Fifth Circuit and concludes that the LPLA's exclusivity provision does not bar Plaintiffs from pursuing non-LPLA claims against New GM.

### 2. Fraudulent Misrepresentation

Count Two of Plaintiffs' Second Amended Complaint raises a fraudulent misrepresentation claim, alleging that New GM "misrepresented, failed to disclose and actively concealed" the ignition switch defect and the risks associated therewith.  (*See* SAC ¶¶ 383-93).  Under Louisiana law, "[f]raud is a misrepresentation or a suppression of the truth made with the intent to obtain an unjust advantage for one party or to cause loss or inconvenience for the other party."  *Morris v. Nanz Enters., Inc.*, 929 So. 2d 115, 119 (La. Ct. App. 2006) (citing La. Civ. Code Ann. art. 1953).  Fraud may also be established by "silence or inaction."  *Id.*  In order to prove a claim of fraudulent misrepresentation, a plaintiff must show "(1) a misrepresentation of

material fact, (2) made with the intent to deceive, and (3) causing justifiable reliance with resulting injury." *Wilson v. Davis*, 991 So. 2d 1052, 1061 (La. Ct. App. 2008).

Here, New GM argues that Plaintiffs' fraudulent misrepresentation claims should be dismissed because Plaintiffs fail to establish the element of reliance.[3] In particular, New GM argues that there is no evidence that Plaintiffs actually relied on any alleged misrepresentation by New GM. (New GM's Mem. 9-10). The Court disagrees with respect to Spain, who purchased the car. The admissions contained in the Deferred Prosecution Agreement entered into by New GM provide enough of a basis for Spain to pursue a "half-truth" theory of fraudulent misrepresentation by omission at trial. *See Kadlec Med. Ctr. v. Lakeview Anesthesia Assocs.*, 527 F.3d 412, 419 (5th Cir. 2008) ("Louisiana courts have held that even when there is no initial duty to disclose information, 'once [a party] volunteer[s] information, it assume[s] a duty to insure that the information volunteered [is] correct.'"); *Leon v. Moore*, 896 So. 2d 1073, 1076 (La. Ct. App. 2004) ("There is no general duty to speak, but if one does speak, he may be liable for any intentional misrepresentation (fraud) or any negligent misrepresentation." (internal quotation marks omitted).

In particular, the record establishes that Spain acquired, drove, and was ultimately injured by a GM car with a known defect during a time when New GM had admittedly "failed to disclose" the existence of that defect "to its U.S. regulator and the public." (Jackson Decl., Ex. 2 ¶ 2; *id.*, Ex. C ¶¶ 3, 9, 26). The record further establishes that New GM "affirmatively misled

---

[3]     In addition, New GM summarily incorporates a number of arguments raised in its summary judgment motion in *Scheuer*, the first bellwether trial. (New GM's Mem. 9 n.13). New GM essentially concedes that those arguments fail for the same reasons discussed by the Court in its ruling on that motion. (*See id.*). The Court agrees and does not repeat that reasoning here. *See In re Gen. Motors LLC Ignition Switch Litig.*, — F. Supp. 3d —, 2015 WL 9582714, at *7-8 (S.D.N.Y. Dec. 30, 2015).

consumers about the safety of GM cars afflicted by the defect" during that time period. (Jackson Decl., Ex. 2 ¶ 2). The Court concludes that, based on those facts, a reasonable jury could conclude that Spain relied on New GM's misleading statements in purchasing and continuing to drive her GM car. Accordingly, New GM's motion for summary judgment is denied with respect to Spain's fraudulent misrepresentation claim. Summary judgment is granted, however, with respect to Barthelemy's claim, as Plaintiffs make no effort to establish how Barthelemy — who neither purchased nor drove the car — might have relied on (or even taken note of) any material omission by New GM. The Court therefore finds that Barthelemy cannot establish the element of reliance and that his fraudulent misrepresentation claim must be dismissed.

3. **Negligence**

In addition to their claims under the LPLA, Plaintiffs bring standalone negligence claims, alleging that, if "New GM is deemed not to be the manufacturer under the [LPLA], [it] nevertheless assumed duties to victims of accidents caused by Old GM vehicles." (SAC ¶ 395). In particular, Plaintiffs claim that Old GM negligently manufactured and designed the car and that Old GM and New GM failed to warn or give adequate notice of the ignition switch defect. (*Id.* ¶ 397). To the extent that claim merely repeats Plaintiffs' assumed products liability claim under the LPLA, the claim is preempted by the LPLA's exclusivity provision. *See* La. Rev. Stat. § 9:2800.52. And as discussed above, to the extent the claim purports to impute Old GM's duty to warn directly onto New GM pursuant to a "mere continuation" or "successor" theory, the claim is precluded by the 2009 Sale Order and Judge Gerber's rulings in the bankruptcy proceedings. *See November Decision*, 541 B.R. at 126.

Plaintiffs argue, however, that they can pursue a negligence claim based on New GM's independent post-sale duty to warn. (*See* Pls.' Opp'n 6, 16). In support of that argument,

Plaintiffs point to the Court's decision in *Scheuer*, which concluded that "a successor corporation, such as New GM, has an independent post-sale duty to warn so long as certain conditions are met" under Oklahoma law. *In re Gen. Motors LLC Ignition Switch Litig.*, — F. Supp. 3d —, 2015 WL 9582714, at *5 (S.D.N.Y. Dec. 30, 2015). Plaintiffs, however, point to no case recognizing the existence of such a duty under Louisiana law. (*See* Pls.' Opp'n 6, 7, 16). More significantly, whereas the Court found no Oklahoma precedent either accepting *or rejecting* an independent post-sale duty to warn, *In re Gen. Motors LLC Ignition Switch Litig.*, 2015 WL 9582714, at *5, federal and state courts have generally interpreted Louisiana products liability law narrowly and declined to impose such a duty outside of the LPLA, *see, e.g.*, *Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 183 n.4 (5th Cir. 2012) ("[Plaintiff]'s tort claims would fail since Wyeth and Schwarz did not manufacture the generic product giving rise to [his] claims, and thus owed [him] no duty of care. A number of federal district court decisions applying Louisiana state law have held the same." (citing cases)); *Murray v. B & R Machine Inc.*, No. 92-4030, 1993 WL 114532, at *3 n.12 (E.D. La. Apr. 8, 1993) (observing that plaintiff did "not point to the legal basis for his assertion that B & R had an independent duty to warn or repair or inspect," and concluding that Louisiana courts have not extended such a duty to successor corporations); *see also Fricke v. Owens-Corning Fiberglass Corp.*, 618 So. 2d 473, 475 (La. Ct. App. 1993) ("[W]e are not prepared to hold a manufacturer responsible for alleged inadequate warnings about a product it neither manufactured nor sold. We cannot abandon the general rule of products liability requiring identification of the product with the manufacturer."). Given that Louisiana precedent provides that no post-sale duty to warn exists independent of the LPLA for a successor corporation such as New GM, Plaintiffs' claim for negligent failure to warn must be and is dismissed.

Plaintiffs also contend that their complaint raises a negligence claim based on New GM's timely failure to recall the defective car and on a *per se* negligence theory. (*See* Pls.' Opp'n 17-18). Putting aside whether the Second Amended Complaint adequately raises those theories, the Court concludes that Plaintiffs may not pursue them at trial. With respect to the failure-to-timely-recall theory, Plaintiffs point to no case recognizing an independent post-sale duty to recall for a successor corporation. (*See* Pls.' Opp'n 17-18). As discussed above with respect to Plaintiffs' failure-to-warn claim, Louisiana precedent suggests that no such duty exists. *See Johnson*, 758 F.3d at 616 (finding that defendants who did not manufacture an injuring product did not owe plaintiff a duty of care). Plaintiffs' *per se* negligence theory fails for similar reasons: Although statutory violations may provide "guidelines" for other theories of civil liability under Louisiana law, "[t]he doctrine of negligence *per se* has been rejected in Louisiana." *Burns v. CLK Invs.*, 45 So. 3d 1152, 1158 (La. Ct. App. 2010). In short, because Plaintiffs cannot establish that New GM owed them any independent duty of care under Louisiana law, their independent negligence claims against New GM must be and are dismissed.

    **4. Redhibition**

Next, Plaintiffs assert a claim in "redhibition" against New GM. Redhibition is "the avoidance of a sale on account of some vice or defect in the thing sold" that is so severe that "the buyer would not have purchased it had he known of the vice." *PPG Indus., Inc. v. Indus. Laminates Corp.*, 664 F.2d 1332, 1334 n.2 (5th Cir. 1982) (citing La. Civ. Code Ann. art. 2520). Louisiana law provides that a seller warrants a buyer "against redhibitory defects, or vices, in the thing sold." La. Civ. Code Ann. art. 2520. An action in redhibition "is not so much directed toward who is at fault in causing the vice to exist but is directed toward" the warranty of the vendor "against vices in thing[s] sold." *Connell v. Davis*, 940 So. 2d 195, 205 (La. Ct. App.

2006). Accordingly, such an action "may be brought only by a buyer against a seller of property" and "cannot be maintained absent such [buyer-seller] relationship." *Id.* Here, New GM contends that Plaintiffs fail to establish that they were in a buyer-seller relationship with New GM at the time of the accident, as New GM neither manufactured the car nor sold the car to Spain. (New GM's Mem. 12). Plaintiffs' only response is that Spain was in a buyer-seller relationship with Old GM, which can be imputed to New GM because New GM is Old GM's successor. (Pls.' Opp'n 19-20). Even assuming Spain was in a buyer-seller relationship with Old GM — a debatable proposition in itself (particularly since Old GM no longer existed when Spain bought her car) — Plaintiffs' argument is once again foreclosed by the bankruptcy court decisions. *See November Decision*, 541 B.R. at 126. Thus, because Plaintiffs cannot demonstrate that New GM itself was in a buyer-seller relationship with either Plaintiff, the Court concludes that New GM is entitled to summary judgment on Plaintiffs' redhibition claim.

### 5. LUTPA and Punitive Damages

Finally, New GM argues that Plaintiffs' claim under the Louisiana Unfair Trade Practices Act ("LUTPA") should be dismissed as time barred and that Plaintiffs are not entitled to recover punitive damages for any of their claims under Louisiana law. (*See* New GM's Mem. 12-15). Plaintiffs do not oppose New GM's motion for summary judgment on either score. (*See* New GM's Reply 1). Upon review of the undisputed facts and relevant law, New GM's arguments appear to be on firm ground. The Court need not and does not reach their merits, however, because Plaintiffs — by failing to respond to New GM's arguments — are deemed to have abandoned their claims under LUTPA and any claim for punitive damages. *See, e.g.*, *Jackson v. Federal Express*, 766 F.3d 189, 198 (2d Cir. 2014) ("[I]n the case of a counseled party, a court

may, when appropriate, infer from a party's partial opposition [to summary judgment] that relevant claims or defenses that are not defended have been abandoned.").

## CONCLUSION

For the foregoing reasons, New GM's motion for summary judgment is GRANTED in part and DENIED in part. In particular, New GM's motion is granted with respect to (1) Plaintiffs' independent claims against New GM under the LPLA; (2) all non-LPLA claims other than Spain's claim for fraudulent misrepresentation; and (3) any claim for punitive damages. In light of that ruling, the only claims to be tried are Plaintiffs' assumed liability claim under the LPLA based on Old GM's conduct and Spain's fraudulent misrepresentation claim.

SO ORDERED.

Date: March 3, 2016
      New York, New York

_____
JESSE M. FURMAN
United States District Judge