```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 03/11/2016
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
IN RE:

GENERAL MOTORS LLC IGNITION SWITCH LITIGATION

*This Document Relates To:*
*Abney, et al. v. General Motors LLC, 14-CV-5810*
------------------------------------------------------------------------x

14-MD-2543 (JMF)

MEMORANDUM OPINION
AND ORDER

JESSE M. FURMAN, United States District Judge:

[**Regarding Rule 401 and 403 Disputes and Plaintiffs' Request for Deposition**]

The second bellwether trial in this multidistrict litigation ("MDL"), brought by Plaintiffs Lawrence Barthelemy and Dionne Spain and familiarity with which is presumed, is scheduled to begin on March 14, 2016. (*See* Order No. 94 (Docket No. 2183)).  This Memorandum Opinion and Order addresses the parties' letters filed on March 9 and 10, 2016, which raise Rule 401 and 403 disputes concerning various exhibits (*see* New GM's March 9, 2016 Ltr. (Docket No. 2463) ("New GM's Ltr."); Pls.' March 9, 2016 Ltr. (Docket No. 2464) ("Pls.' Ltr."); New GM's March 10, 2016 Ltr. (Docket No. 2476) ("New GM's Resp. Ltr."); Pls.' March 10, 2016 Ltr. (Docket No. 2475) ("Pls.' Resp. Ltr.")), and Plaintiffs' letter of March 10, 2016, seeking authorization to conduct a deposition to lay a foundation for fourteen specific documents (*see* Pls.' March 10, 2016 Ltr. (Docket No. 2466) ("Pls.' Depo. Ltr.")).

## THE RULE 401 AND 403 DISPUTES

The parties' Rule 401 and 403 letters address several categories of documents.  Most require little discussion.  First, New GM asks the Court to "overrule plaintiffs' objection to the admission of certain medical records pursuant to the Louisiana health care provider privilege." (New GM's Ltr. at 1).  That request is granted as unopposed and substantially for the reasons stated in New GM's letter of March 9, 2016.  (*Id.* at 2-3; *see also* Pls.' Resp. Ltr.).  Second,

Plaintiffs raise various issues with respect to the length and substance of their medical records. (*See* Pls.' Ltr. at 1-4). The Court addressed the subject of Plaintiffs' medical records at the final pretrial conference and directed New GM to file additional briefing on the subject, which it plans to do by Monday, March 14th. (*See* New GM's Resp. Ltr. at 2). Further, it is apparent from New GM's response that the parties have not exhausted the meet-and-confer process with respect to all of the exhibits at issue — and that, where they have adequately met and conferred, the parties have generally been able to resolve any disputes. (*Id.* at 2-4). For both of those reasons, the issue is not ripe for the Court to decide, and the Court will defer any further ruling. Third, the Court will do the same with respect to Plaintiffs' objection that certain New GM exhibits are "voluminous," as it is apparent that further meeting and conferring may eliminate (or narrow) any disputes. (*See id.*; Pls.' Ltr. 2-3). Finally, Plaintiffs' objections to New GM's "broad unrestrained objections under Rules 401-403" appear to be moot, as the Court has already ruled with respect to the one and only document discussed by Plaintiffs. (*Compare* Pls.' Ltr. at 6-7, *with* Docket No. 2467 (sustaining GM's objections to Manzor deposition)).

       The only dispute calling for any discussion at this time is the parties' dispute with respect to "post-accident" communications. To the extent New GM seeks a broad prohibition on many or most post-accident e-mails (and the Court does not believe it does), any objections would be without merit. To succeed on her fraudulent misrepresentation claim, Ms. Spain must show that her decision to purchase and drive her car was caused in part by justifiable reliance on a misrepresentation by New GM "made with the intent to deceive." *Wilson v. Davis*, 991 So.2d 1052, 1061 (La. Ct. App. 2008). Thus, a key question at trial will be whether New GM was aware of the defect and whether it made false or misleading representations with the intent to conceal that defect from Ms. Spain and the public prior to the accident. The mere fact that a

communication or document post-dates the accident does not necessarily mean that the document is irrelevant to that question. The Valukas Report and the Statement of Facts, for example, post-date Plaintiffs' accident, but they obviously shed light on whether New GM knew of and concealed the existence of a defect prior to the accident and, thus, are relevant. By contrast, post-accident communications that shed little or no light on New GM's pre-accident conduct, knowledge, or intent have minimal or no relevance to the claims in this case.

In light of the foregoing, and upon review of the parties' submissions, the Court makes the following rulings with respect to the three exemplar exhibits identified by New GM:

**PX-9:** New GM's Rule 403 objection is SUSTAINED. Putting aside whether the e-mail qualifies as a business record or a statement of New GM (as to both of which the Court is skeptical), the brief communication sheds little or no light on the knowledge, conduct, or state of mind of New GM or its agents prior to Plaintiffs' accident. Any minimal probative value is substantially outweighed by the dangers of unfair prejudice (given, among other things, the exhibit's reference to the Government investigation) and waste of time (given, among other things, other evidence with respect to New GM's pre-accident knowledge and conduct).

**PX-80:** New GM's Rule 403 objection is SUSTAINED. These e-mails, sent in June 2014, contain only oblique references to "Old GM" culture. Even assuming a more detailed discussion of GM's pre-accident culture might be probative of whether New GM knew of and concealed the defect, the references contained in this e-mail are vague and general. Whatever probative value they may have is outweighed by the likelihood of confusing the issues, misleading the jury, and wasting time given other evidence in the case.

**PX-384:** New GM's Rule 403 objection is DENIED without prejudice to renewal at trial in whole or in part. Although the e-mails and attached summaries post-date Plaintiffs' accident, they confirm that New GM was aware of the defect and actively considering a recall in late 2013, and speak to why the Saturn Sky (Ms. Spain's car) was not part of the initial recall. Thus, the exhibit, unlike the other two exemplar exhibits, has direct relevance to New GM's pre-accident conduct and knowledge. (That said, the Court does not see how the exhibits help Plaintiffs' case, as the explanation for New GM's failure to recall the Sky — namely, "insufficient data" — appears to undermine any argument that the company had engaged in intentional fraudulent conduct, but that is a concern for Plaintiffs, not the Court.) The Court reserves judgment, however, on New GM's Rule 403 objections, as it will be in a better position at trial to evaluate them. Further, the parties shall confer with respect to whether any content in the exhibit (for instance, the discussion of potential remedial actions on the last page) should be redacted.

**PLAINTIFFS' MOTION FOR A DEPOSITION**

Finally, Plaintiffs move for "authorization to take a short, targeted deposition of a GM employee who can lay a foundation" for fourteen identified documents.  (Docket Nos. 2466, 2474).  Upon review of the parties' submissions, including the exhibits at issue, that motion is DENIED on the ground that Plaintiffs fail to show good cause to take a deposition at this late hour.  *See, e.g.*, *George v. Ford Motor Co.*, No. 03-CV-7643 (GEL), 2007 WL 2398806, at *12 (S.D.N.Y. Aug. 17, 2007) ("[A]s courts in this district have held, . . . depositions are governed by the scheduling order set by the Court, and may not be conducted after the close of discovery absent good cause to modify that order." (internal quotation marks omitted) (citing cases)).

First, as a general matter, Plaintiffs cannot show good cause to take a deposition on the eve of trial with respect to any documents that were introduced in depositions, but where Plaintiffs elected not to designate the relevant portion of those depositions — a category that, according to New GM, includes PX-9, 13, 128, 219, 265, and 281.  (CITE-2474 at 3-5).  Other evidentiary objections aside, Plaintiffs could have introduced those exhibits had they chosen to designate the relevant portions of the depositions that were taken.  The fact that they elected not to do so, for whatever reasons, does not entitle them to take another deposition.

Second, there is no need for a deposition with respect to the Valukas Report (PX-1), as New GM concedes it is authentic and, in light of the Court's prior rulings, can be admitted as redacted.  (Docket No. 2474, at 3).  The Court encourages the parties to enter a written stipulation with respect to the Report (as well as the Statement of Facts and, if appropriate, the NHTSA Consent Order), but, in the absence of a written stipulation, will instruct the jury that the exhibits are admitted subject to the parties' stipulation as it did during Bellwether Trial No. 1.

Finally, and in any event, Plaintiffs fail to show good cause with respect to the other thirteen exhibits for two reasons. For one thing, none appears to be particularly important given the claims and other evidence in this case. Plaintiffs say only that the documents are "necessary" for them to "complete the story of New GM's notice and the nature and scope of the fraudulent misrepresentations at issue" (a proffer that falls far short of what the Court directed Plaintiffs to make at the final pretrial conference (*see* 2472-at 1 (quoting Mar. 9. 2016 Conf. Tr. at 20))). But given the other evidence that will be offered at trial — including the Valukas Report, the Statement of Facts, and the depositions of New GM witnesses — the relevant "story" is pretty complete as is, and none of the documents adds much to the mix. Second, for many of the reasons discussed by New GM in its opposition, the exhibits would not be admissible in any event. The Court briefly addresses each exhibit in turn:

**PX-8:**  The newspaper article is plainly hearsay and the e-mail is subject to exclusion under Rules 401-403.

**PX-9:**  Addressed above.

**PX-13:**  Putting aside whether the e-mail would qualify as a business record (again, the Court is skeptical), it is subject to exclusion under Rule 403, as it has limited or no probative value with respect to the disputes in this case.

**PX-30:**  Again, the newspaper articles are plainly hearsay. The Court fails to see the relevance of the rest of the exhibit. Any minimal probative value is substantially outweighed by the danger of confusion in the absence of testimony explaining the exhibit and putting it in context (testimony that Plaintiffs do not seek in their motion).

**PX-33:**  The Court is highly skeptical of Plaintiffs' argument that these communications qualify as New GM's statements for purposes of Rule 801(d)(2)(D). *See, e.g.*, *Pappas v. Middle Earth Condominium Ass'n*, 963 F.2d 534, 537 (2d Cir. 1992) (holding that a party must establish "(1) the existence of the agency relationship, (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency"). Further, a witness of the type Plaintiffs seek to depose would not be able to lay the necessary foundation for the record to come in as a business record. In any event, the document is subject to exclusion under Rules 401-403.

**PX-77:**  Subject to exclusion under Rules 401-403.

**PX-122:** Portions of the exhibit are hearsay. In any event, the exhibit is subject to exclusion under Rules 401-403. Any limited probative value is substantially outweighed by the dangers of unfair prejudice and confusion, particularly in the absence of testimony explaining the exhibit and putting it in context (again, testimony that Plaintiffs do not seek).

**PX-123:** Subject to exclusion under Rules 401-403. Any limited probative value is substantially outweighed by the dangers of unfair prejudice and confusion, particularly in the absence of testimony explaining the exhibit and putting it in context (again, testimony that Plaintiffs do not seek).

**PX-128:** Any minimal probative value is substantially outweighed by the danger of confusion in the absence of testimony explaining the exhibit and putting it in context (again, testimony that Plaintiffs do not seek in their motion).

**PX-180:** Subject to exclusion under Rules 401-403 and in light of the Court's rulings on "other similar incidents" evidence.

**PX-219:** Subject to exclusion under Rules 401-403. Any limited probative value is substantially outweighed by the dangers of unfair prejudice and confusion, particularly in the absence of testimony explaining the exhibit and putting it in context (again, testimony that Plaintiffs do not seek).

**PX-265:** Subject to exclusion under Rules 401-403. Any limited probative value is substantially outweighed by the dangers of unfair prejudice and confusion, particularly in the absence of testimony explaining the exhibit (including, for example, what vehicles it is in reference to) and putting it in context (again, testimony that Plaintiffs do not seek).

**PX-281:** Subject to exclusion under Rules 401-403. Any limited probative value is substantially outweighed by the dangers of unfair prejudice and confusion, particularly in the absence of testimony explaining the exhibit and putting it in context (again, testimony that Plaintiffs do not seek).

## CONCLUSION

For the reasons stated above, Plaintiffs' request for authorization to conduct a deposition on the eve of trial is DENIED. To the extent that the foregoing does not resolve the parties' remaining disputes, the Court strongly encourages the parties to meet and confer in an effort to resolve or narrow them and to re-raise them with enough time for the Court to address them.

SO ORDERED.

Date:  March 11, 2016
       New York, New York

JESSE M. FURMAN
United States District Judge