USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 04/01/2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------------x
IN RE:

GENERAL MOTORS LLC IGNITION SWITCH LITIGATION

*This Document Relates To:*
*Abney, et al. v. General Motors LLC, 14-CV-5810*
----------------------------------------------------------------------------x

14-MD-2543 (JMF)
14-MC-2543 (JMF)

MEMORANDUM OPINION

JESSE M. FURMAN, United States District Judge:

The second bellwether trial in this multi-district litigation ("MDL"), familiarity with which is presumed, involved claims brought by Plaintiffs Dionne Spain and Lawrence Barthelemy against General Motors LLC ("Defendant" or "New GM") stemming from a January 24, 2014 car accident involving Spain's 2007 Saturn Sky. Spain's car was manufactured by General Motors Corporation ("Old GM") — which filed for bankruptcy in 2009, a bankruptcy from which New GM emerged. From March 14, 2016, to March 30, 2016, the case was tried before a jury. On March 22, 2016, after Plaintiffs rested their case, New GM filed a motion, pursuant to Rule 50 of the Federal Rules of Civil Procedure, for judgment as a matter of law on all claims. (Docket No. 2602). On March 28, 2016, upon consideration of the parties' submissions and oral arguments from counsel, the Court granted the motion in part and dismissed Spain's claim for fraudulent misrepresentation. (Trial Tr. 1757-58). The Court indicated that it might explain its ruling in a later opinion. This is that opinion.[1]

Rule 50 of the Federal Rules of Civil Procedure "imposes a heavy burden on a movant, who will be awarded judgment as a matter of law only when 'a party has been fully heard on an

---

[1]    The Court reserved judgment on the rest of New GM's motion and submitted Plaintiffs' other claims — under the Louisiana Products Liability Act — to the jury. On March 30, 2016, the jury returned a verdict in New GM's favor on those claims. (*See* Trial Tr. 2001-02).

issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Cash v. Cty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011) (quoting Fed. R. Civ. P. 50(a)(1)); *accord Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 127-28 (2d Cir. 2012). As in "the analogous context of summary judgment," a court must consider the entire record as a whole in determining whether the moving party meets that heavy burden. *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 150 (2000). Moreover, the court must "draw all reasonable inferences in favor of the nonmoving party" and may not make credibility determinations or weigh the evidence. *Id.* That is, although the whole record must be taken into consideration, the court "must disregard all evidence favorable to the moving party that the jury is not required to believe" and should "give credence to the evidence favoring the nonmovant." *Id.* at 151; *see also, e.g.*, *Zellner v. Summerlin,* 494 F.3d 344, 371 (2d Cir. 2007) (stating that a Rule 50 motion may be granted only if the court concludes that "a reasonable juror would have been compelled to accept the view of the moving party" (internal quotation marks omitted)).

Applying those standards here, Spain's fraudulent misrepresentation claim, brought under Louisiana law, plainly failed as a matter of law. Significantly, there was — and is — no dispute on several important points. First, in light of prior rulings by the Bankruptcy Court on New GM's motions to enforce the 2009 Sale Order (pursuant to which New GM purchased most of the assets of Old GM and some, but not all, of its liabilities), Spain could not seek to hold New GM liable on a fraudulent misrepresentation claim based on the conduct of Old GM. *See, e.g.*, *In re Motors Liquidation Co.*, 529 B.R. 510, 583 (Bankr. S.D.N.Y. 2015). Thus, to prove her claim, Spain had to show that New GM *itself* engaged in fraudulent misrepresentation; the jury could not consider, let alone base its verdict on, the conduct of Old GM for purposes of

fraudulent misrepresentation.  Second, as Plaintiffs' counsel conceded during oral argument, Spain could not premise her claim on "mere silence" (*see* Trial Tr. 1731), as Louisiana law recognizes a "duty to disclose" untethered to any affirmative representation only where some "special relationship" — concededly absent here (*see id.*) — exists between the parties.  *See Kadlec Med. Ctr. v. Lakeview Anesthesia Assocs.*, No. Civ. A. 04-0997, 2005 WL 1309153, at *4 (E.D. La. May 19, 2005) ("[G]enerally, a duty to disclose information will not exist absent some confidential, fiduciary, or other special relationship which, under the circumstances of the case, justifies the imposition of a duty to disclose information.").

Third, as Plaintiffs' counsel also conceded, Spain had to show that she "*individually* relied" either on an "affirmative misrepresentation" or a "half-truth" — that is, "that New GM volunteered some communication, but omitted a material fact" — in order to prove her claim.  (Trial Tr. 1731-32 (emphasis added)).  That is, Spain could not rely on any sort of "fraud-on-the-market" type argument under Louisiana law.  *See, e.g.*, *Secs. Investor Protection Corp. v. BDO Seidman, LLP*, 222 F.3d 63, 73 (2d Cir. 2000) (observing that "federal courts repeatedly have refused to apply the fraud on the market theory to state common law cases despite its wide acceptance in the federal securities fraud context" because "common-law fraud claims require a different analysis than those brought under the federal securities regulation scheme"); *In re Rezulin Prods. Liab. Litig.*, 524 F. Supp. 2d 436, 441 (S.D.N.Y. 2007) (observing that numerous courts have declined to apply the fraud-on-the-market theory to state claw claims and seeing no reason to believe "that Louisiana's Supreme Court would reach a different result").  And finally, there was no evidence of any "affirmative misrepresentation" by New GM upon which Spain could have or did rely.  (Trial Tr. 1734).

Under Louisiana law, therefore, Spain had to establish that she actually heard a statement made by New GM and that the statement was only "half true" — that is, that it omitted material information. *See, e.g.*, *Morris v. Nanz Enter., Inc.*, 929 So. 2d 115, 120 (La. Ct. App. 2006) (holding that the plaintiffs' fraud claim failed because they did not show that they had received any direct communication from the defendant); *see also Allgood v. R.J. Reynolds Tobacco Co.*, 80 F.3d 168, 171 (5th Cir. 1996) (concluding that the plaintiff fell "far short of proving he [had] actually relied upon" alleged misrepresentations because he could not prove that he had read them). In addition, Spain had to prove that she herself actually (and reasonably) relied on the half-truth to her detriment. *See La Croix v. Recknagel*, 89 So. 2d 363, 367 (La. 1956) ("[I]t is incumbent upon him to establish the falsity of a material fact represented by the defendants . . . and that he had a right to and actually did rely thereon."). In light of those undisputed principles, there was plainly no "legally sufficient evidentiary basis" for the jury to return a verdict for Spain on her fraud claim. *Cash*, 654 F.3d at 333. Put simply, there was no evidence of even a single communication or representation, let alone half-truth, made by New GM to Spain. It follows that there was no evidence that Spain individually relied on any statement of New GM when she decided to buy her car or drive it on the day of the accident. To the contrary, Spain herself testified that she decided to buy the car because she saw it while driving by the Banner Chevrolet dealership and "looked at the car as being a cute car instead of, you know, not looking at anything else in regards to the car." (Trial Tr. 364). Additionally, she conceded that all of her "dealings on the purchase of" the car were "with Banner Chevrolet." (*Id.* at 456). In short, Spain failed to introduce any evidence from which the jury could have found that she individually relied on any misrepresentation or half-truth of New GM.

4

In arguing otherwise, Spain pressed three primary arguments. First, relying principally on *Scott v. American Tobacco Co.*, 949 So. 2d 1266 (La. Ct. App. 2007), Spain argued that she could premise her fraud claim on "the marketing campaign that New GM orchestrated." (Trial Tr. 1734; *see* Pls.' Mem. Law Opp'n New GM's Mot. J. Matter Law (Docket No. 2661) ("Pls.' Opp'n") 21; *see also* PX-3 (Statement of Facts), ¶ 10 (admitting that New GM "actively touted the reliability and safety of cars equipped with the Defective switch" to the public "with a view to promoting sales of used GM cars")). But in the absence of evidence that Spain herself was exposed to a New GM marketing campaign — evidence that was concededly absent in this case (Trial Tr. 1741) — that argument is nothing more than a fraud-on-the-market argument, which Spain (wisely) disavowed. Moreover, even on its own terms, it fails for two reasons. First, whereas the record in *Scott* included evidence of a "five decade long" public relations campaign "designed to distort the entire body of public knowledge" regarding the harms of smoking tobacco "through indirect communications," 949 So. 2d at 1277, this case included no comparable evidence. Second, and more fundamentally, the holding in *Scott*, a consumer class action, was expressly limited to the "question of reliance . . . *by the class as a whole*." *Id.* (emphasis added); *see also id.* at 1277-78 (holding that "the showing of reliance that must be made to prove a causal connection between smoking and the *class-wide reliance* on communications from the defendants need not include direct evidence of reliance by individual consumers of defendants' cigarettes" (emphasis added)). The *Scott* Court did not alter or abrogate the well-established principle that, in an individual fraud case, the plaintiff must prove that she herself actually relied on a misrepresentation or half-truth. To the contrary, it explicitly noted that "[i]f and when individual class members assert individualized claims for money damages, individual reliance may be at issue at that time." *Id.* at 1277.

Second, Spain pointed to representations made at the point of sale (in 2013) by Banner Chevrolet — specifically to a "Buyers Guide" that she signed in which Banner Chevrolet stated that "MANUFACTURER'S WARRANTY STILL APPLIES" and listed "some major defects that may occur in used motor vehicles" but did not disclose the possibility of an ignition switch defect. (Pls.' Opp'n 18-19; *see* Trial Tr. 1735, 1744-45; *see also* DX-3051, at 62-63). The problem with that argument is that those statements were, as Spain's counsel conceded, made by Banner Chevrolet — not New GM — and Banner Chevrolet was "absolutely not an agent[,] . . . not an employee[,] . . . not an extension of New GM." (Trial Tr. 1743; *accord id.* at 1745). Spain tried to get around that fundamental problem by arguing that the jury was "entitled to infer" that Banner Chevrolet acted as "essentially the messenger," passing information from New GM to Spain. (Tr. 1744-45; *see also id.* at 1735). But there was no evidence in the record that New GM provided any information to Banner Chevrolet, let alone did so with an understanding or intent that it would be passed on to consumers. (Trial Tr. 1746). Moreover, Spain's argument finds no support in the law. To the contrary, the Court of Appeal of Louisiana rejected a similar argument in *Morris v. Nanz Enterprises, Inc.* In that case, the defendant agreed to build a home for a third party but allegedly failed to build the home in accordance with the plans and specifications set out in the purchase agreement. *See* 929 So. 2d at 117. The third party later sold the home to the plaintiffs, who sued the defendant for allegedly false and misleading representations made in the original purchase agreement. *See id.* The court granted summary judgment on plaintiffs' fraudulent misrepresentation claim, concluding that the defendant "was not a party to the sale of the home from the [third party] to the plaintiffs" and that the "[p]laintiffs admit that they had no communication with [the defendant] prior to their purchase of the home." *Id.* at 120. So too here, New GM was not a party to the sale by Banner Chevrolet to

6

Spain of the used 2007 Saturn Sky and Spain admitted in her testimony at trial that she had no communications with New GM prior to the purchase of the car.

Finally, Spain relied on her testimony that she would not have purchased the car if she had been told about the defect. (Pls.' Opp'n 19-20; *see* Trial Tr. 364, 405-06). That testimony, she argued, demonstrated that she did rely on New GM's misrepresentation to her detriment. (*See* Pls.' Opp'n 19-20 ("Had Ms. Spain known the truth, that the Saturn Sky had a defective ignition switch . . . , she would not have purchased the car."). But that theory is nothing more than a repackaged theory of misrepresentation by mere silence — a theory that Spain conceded she cannot pursue because she did not have a special or fiduciary relationship with New GM. (*See* Trial Tr. 1731-32). Spain's testimony about whether she would have purchased the car had the defect been disclosed was therefore insufficient to save her fraudulent misrepresentation claim from judgment as a matter of law.[2]

---

[2] In a footnote in her brief, Spain also argued that she could pursue her claim because she allegedly relied on the car's "'appearance' of safety." (Pl.'s Opp'n 22 n.14). But Spain did not actually testify that she relied on the car's "appearance of safety." Moreover, that argument is also just a repackaged fraud-by-mere-silence argument; if accepted, it would undermine the proposition that, absent a special relationship, *some* communication by the defendant is necessary to maintain a fraud claim. Finally, the sole authority that Spain cited, *In re Ford Motor Co. Bronco II Prods. Liab. Litig.*, No. MDL-991, 1995 WL 491155, at *4 (E.D. La. Aug. 15, 1995), does not support the argument. There, the plaintiffs based their fraud claims on specific communications (namely, advertisements) by the defendant. *See id.* And the only authority cited by the Court was *Bunge Corp. v. GATX Corp.*, 557 So. 2d 1376 (La. 1990), which concerned the duty of a contractor to warn the buyer of a home about hazardous conditions in the construction. The Court's holding was quickly superseded by statute, *see Curtis v. Branton Indus., Inc.*, 944 So. 2d 716, 721 (La. Ct. App. 2006) (citing 1990 La. Acts No. 712 § 1), and, in any event, has no application here, as the Court held in its Opinion and Order addressing New GM's motion for summary judgment that New GM had no independent post-sale duty to warn Spain about any defects in her car, *see In re General Motors Ignition Switch Litig.*, 14-MD-2543 (JMF), 2016 WL 874778, at *6 (S.D.N.Y. Mar. 3, 2016).

8

For those reasons, the Court concluded that no reasonable jury could find for Spain on her fraudulent misrepresentation claim and New GM's motion for judgment as a matter of law on that claim was GRANTED.

SO ORDERED.

Date: April 1, 2016
New York, New York

JESSE M. FURMAN
United States District Judge