Gary Peller (*pro hac vice*)
Counsel for Certain Plaintiffs
600 New Jersey Avenue, N.W.
Washington, D.C. 20001
(202) 662-9122
peller@law.georgetown.edu

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
**IN RE: GENERAL MOTORS LLC
IGNITION SWITCH LITIGATION**                               **14-MD-2543 (JMF)**
-------------------------------------------------------------------x

**NOTICE OF CONFLICT WITHIN THE PLAINTIFFS' GROUP
AND OF THE POSSIBLE NEED FOR THE COURT TO AUGMENT
PLAINTIFFS' LEADERSHIP STRUCTURE**

**TABLE OF CONTENTS**

A.   The 2014-15 Safety Recalls ................................................................................................ 2
B.   The Scope of This MDL ..................................................................................................... 3
C.   Related Bankruptcy Court Proceedings............................................................................... 5
D.   Related Proceedings in the Court of Appeals ................................................................... 11
E.   Conclusion ........................................................................................................................ 13

Plaintiffs Ishmail Sesay,[1] Lawrence Elliott, Celestine Elliott, Berenice Summerville,[2] Paul Fordham, Momoh Kanu, and James Tibbs[3] ("Certain Plaintiffs"), hereby notify the Court of developments in related proceedings that evidence a conflict within the Plaintiffs' group and that reflect the possible need for the Court to augment Plaintiffs' leadership structure to ensure protection of the interests of all Plaintiffs in these consolidated proceedings.[4]

This Notice is precipitated by the fact that Lead Counsel for Economic Loss Plaintiffs ("Lead Counsel") did not perfect an appeal from the Bankruptcy Court's June 1, 2015, Judgment, on behalf of an entire category of MDL Plaintiffs, those alleging non-ignition switch claims for economic loss related to vehicles manufactured by Old GM, leading to the possible preclusion of all of their claims against New GM, despite the availability of grounds for appeal well-supported

---

[1] Mr. Sesay is one of the named Plaintiffs in the putative class action, *Sesay et al v. General Motors, LLC, et al*, 1:14-md-2543 (1:14-cv-6018) (JMF).
[2] Mr. and Mrs. Elliott and Ms. Summerville are co-named Plaintiffs in the putative class action, *Elliott et al v. General Motors, LLC, et al*, 14-mdl-2543 (14-cv-00691) (JMF), as well as in *Bledsoe v. General Motors LLC* (1:14-cv-7631-JMF) (regarding a different vehicle).
[3] Mssrs. Fordham, Kanu, and Tibbs are co-named Plaintiffs in *Bledsoe v. General Motors LLC*.
[4] Counsel has communicated with Lead Counsel at some length and over many months about the issues giving rise to this submission. Counsel sought and was denied authorization from Lead Counsel to submit this Notice. Counsel also invited Lead Counsel to join in notifying the Court of these matters, and to inform Certain Plaintiffs if Lead Counsel believed that concerns regarding possible claim preclusion were unfounded. Lead Counsel declined those requests.

in law (and pressed on appeal by Lead Counsel themselves on behalf of other Plaintiffs). Lead Counsel also obstructed efforts by counsel for Certain Plaintiffs to protect Plaintiffs' interests in asserting non-ignition switch claims related to vehicles made by Old GM, both in the Bankruptcy Court and in the Court of Appeals, efforts that inure to the benefit of all non-ignition switch MDL Plaintiffs making similar claims. Despite appropriate requests, Lead Counsel have declined to authorize as common benefit work non-duplicative and meritorious efforts that counsel for Certain Plaintiffs undertook to protect the interests of ignition switch and non-ignition switch MDL Plaintiffs in both the Bankruptcy Court and the Court of Appeals.

Because a new round of litigation decisions will be faced by Plaintiffs upon the rendering of a decision by the Court of Appeals in the pending consolidated and expedited appeals, and because a continuation of the adversarial relationship that has developed within Plaintiffs' counsel group may be detrimental to the MDL Plaintiffs' interests, counsel for Certain Plaintiffs believes that it is appropriate to notify the Court of these developments at this time and to await the Court's guidance about how to proceed.[5]

### A.   The 2014-15 Safety Recalls

As the Court is aware, in February 2014, New GM recalled some 1.6 million vehicles for an ignition switch hazard that it had known about but failed to disclose. That recall was later expanded to include a total of some 2.1 million vehicles.

---

[5] The *Sesay* and *Elliott* Plaintiffs notified the Court of the adversarial relationship taken by then-Temporary Lead Counsel toward efforts by counsel in the Bankruptcy proceedings on August 4, 2014. *See* Notice, Doc. No. 195. Counsel has also notified the Court of disagreements over authorization of common benefit work. *See* Letter, Gary Peller to Judge Furman, December 3, 2015, p. 2, Doc. No. 1789. Counsel for the *Elliott*, *Sesay*, and *Bledsoe* Plaintiffs have endeavored to protect their interests while seeking a cooperative and collaborative relationship with Lead Counsel. Counsel has thought it advisable to avoid troubling the Court about the contentious relationship that has been ongoing in these and the related bankruptcy and appellate proceedings. However, counsel believes that he is obliged as an officer of the Court to advise the Court of the formal failure of Lead Counsel to protect the claims of MDL Plaintiffs from potential claim preclusion, and of the need for the interests of MDL Plaintiffs and putative class members to be appropriately protected going forward.

In addition to the ignition switch hazard, in the ensuing months New GM issued a series of recalls for some thirty-five additional *non-ignition switch* safety hazards, including deadly power steering defects, electrical defects, airbag hazards, ignition key and ignition cylinder hazards that Plaintiffs allege New GM had also known about but failed to disclose in a timely fashion. These additional recalls affected over 25 million additional vehicles. *See* Third Amended Consolidated Complaint ¶¶ 623-968, Doc. No. 1915.

### B.     The Scope of This MDL

After New GM's recall announcement in February 2014, the company's failure to issue a timely recall for the ignition switch hazard received widespread notoriety. It was the subject of Congressional hearings, a company-commissioned investigation resulting in the Valukas Report, a Department of Justice investigation that culminated in a Deferred Prosecution Agreement, and investigations by state attorneys general. In addition, scores of private lawsuits were filed against the company, for securities law violations, personal injuries, property damages, and economic loss related to the ignition switch defect.

 On June 9, 2014, the JPML granted the petitions of GM and several groups of Plaintiffs for consolidation and transfer pursuant to §1407 of lawsuits alleging economic loss related to the ignition switch defect. The Panel's initial Consolidation and Transfer Order defined the scope of the consolidation exclusively in terms of economic loss claims relating to the ignition switch hazard: Each transferred action "asserts economic damages on behalf of certain classes and/or individuals stemming from an alleged defect in certain General Motors vehicles that causes the vehicle's *ignition switch* to move unintentionally from the 'run' position to the 'accessory' or 'off' position." *See In re: General Motors LLC Ignition Switch Litig.*, _ F. Supp. 2d _, 2014 WL 2616819, at *1 (J.P.M.L. Jun. 9, 2014) (*emphasis added*).

The JPML initially excluded non-ignition switch related claims from this proceeding. *See*, *e.g.*, Conditional Transfer Order 2 and Simultaneous Separation and Remand of Certain Claims, Doc. No. 49, 1:14-md-2543 (transferring ignition switch claims but separating and remanding claims related to an alleged *axle shaft fracture* hazard in the same vehicle).

On July 16, 2014, the JPML granted GM's unopposed motion to transfer to and consolidate with this proceeding *Andrews* v. *General Motors LLC*, 1:14-cv-05351-JMF, an action alleging that New GM's concealment and belated recalls of ignition switch and some *thirty-five non-ignition switch related* safety hazards had degraded the GM brand, entitling post-bankruptcy purchasers of *any* GM vehicle—hazardous or not—to relief, *see* CTO-5, Doc. No. 19, 1:14- cv-0531-JMF.

Since its action in *Andrews*, the Panel has changed course and rejected further requests to separate and remand non-ignition switch claims. For example, the JPML rejected the *Elliott* Plaintiffs' request for separation and remand of their *fuel pump* hazard claim:

> While our initial intent was to limit MDL No. 2543 to cases alleging only an ignition switch defect, several actions have been brought with similar general claims that inhibit separation of claims. Given that discovery and pretrial proceedings likely will overlap concerning the ignition switch defect and general allegations that General Motors concealed safety defects, we are persuaded that transfer of all plaintiffs' claims will promote efficiencies in this action and in MDL 2543. Transfer Order, Doc. No. 356, 1:14-md-2543.

The Panel also noted the expansion of this proceeding to include personal injury and property damage claims in addition to economic loss claims. *Id.*[6]

---

[6] *See also Phillips* Transfer Order, Doc. No. 357, 1:14-md-2543 (repeating quoted language in transferring for consolidation claims for fraud and emotional distress based on non-disclosure of *steering hazard* in settlement of wrongful death claims, noting that the Plaintiff was unwilling to stipulate that no discovery regarding GM's mishandling of the *ignition switch* hazard would be sought); *Hammett* Transfer Order, Doc. No 1923, 1:14-md-2543 (electrical defect alleged causing premature airbag deployment).

Certain Plaintiffs each allege, *inter alia*, that New GM wrongfully concealed from them *non-ignition switch safety hazards* in their Old GM-manufactured cars, causing them to suffer economic damage. These non-ignition switch hazards relate to power steering, electrical, brake light, transmission shift cable, and fuel pump hazards.

Certain Plaintiffs are not aware of how many of the economic loss lawsuits transferred to this MDL make claims regarding non-ignition switch hazards in vehicles manufactured by Old GM. Pursuant to Order No. 29, virtually all of those lawsuits have been dismissed without prejudice. In the Second Consolidated Complaint, Lead Counsel alleged claims on behalf of ignition switch Plaintiffs as well as non-ignition switch Plaintiffs owning cars manufactured by Old GM or New GM. *See* [Corrected] Second Amended Consolidated Complaint ¶992.

C.      **Related Bankruptcy Court Proceedings**

In the Bankruptcy Court proceedings, New GM filed three motions to enforce the Bankruptcy Court's 2009 Sale Order. The first, filed on March 21, 2014, was directed at Plaintiffs asserting economic loss claims related to cars manufactured by New GM containing the ignition switch defect ("the Ignition Switch Economic Loss Plaintiffs").[7] The second, filed on August 1, 2014, was directed at Plaintiffs asserting claims based on pre-Sale accidents ("the Pre-Sale Accident Plaintiffs")[8]. The third, also filed on August 1, 2014, was directed at Plaintiffs asserting economic loss related to cars manufactured by New GM "other than" ignition switch claims ("the Non-Ignition Switch Economic Loss Plaintiffs").[9]

---

[7] *See* Motion Of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order And Injunction, 09-bk-50026, Doc. No. 12620.
[8] *See* Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce This Courts July 5, 2009 Sale Order and Injunction Against Plaintiffs in Pre-Closing Accident Lawsuits, 09-bk-50026, Doc. No. 12807.
[9] *See* Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 And 363 to Enforce the Courts July 5, 2009 Sale Order and Injunction (Monetary Relief Actions, Other Than Ignition Switch Actions). 09-bk-50026, Doc. No. 12808. In its

On the same day that New GM filed its first Motion to Enforce, the *Groman* Plaintiffs filed an adversary proceeding seeking a declaration that the Bankruptcy Court's 2009 Sale Order did not bar their ignition switch claims against New GM because they had been denied notice as known or reasonably ascertainable creditors of Old GM, and that Old GM had committed a "fraud on the Court" by concealing the ignition switch liability during the bankruptcy proceedings.[10] On March 22, 2016, one day after New GM filed its first Motion to Enforce, the *Benton* parties, represented by Mr. Berman and asserting exclusively ignition switch claims, submitted an objection to the motion to enforce, similarly contending that the ignition switch Plaintiffs were entitled to actual notice of the 2009 Sale because they were "known creditors" of Old GM by virtue of Old GM's knowledge of the ignition switch defect in cars it manufactured.[11] Neither the *Groman* nor the *Benton* Plaintiffs raised any jurisdictional challenges, nor made any mention of the existence of independent claims against New GM for its own wrongdoing.

In May 2014, New GM and Bankruptcy Counsel for Mr. Berman and the *Groman* Plaintiffs agreed to the entry of Scheduling Orders that required all Plaintiffs to enter into an agreement to stay their cases pending resolution of the issues in the Bankruptcy Court, or to submit "No Stay" pleadings to establish why their cases should not be stayed, and that identified "threshold issues" that would be considered before any others, based on the points raised by the *Groman* and *Benton* Plaintiffs.[12] After New GM filed its additional motions to enforce the sale order against pre-sale accident Plaintiffs and non-ignition switch economic loss Plaintiffs, the

---

[10] *See* Adversary case 14-01929, 09-bk-50026, Doc. No. 12619.
[11] *See* Objection to Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction, 09-bk-50026, Doc. No. 12629.
[12] *See* Scheduling Order Regarding (I) Motion Of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction, (II) Objection Filed by Certain Plaintiffs in Respect Thereto, and (Iii) Adversary Proceeding No. 14-01929, 09-bk-50026, Doc. No. 12697; Supplemental Scheduling Order Regarding (I) Motion of General Motors LLC Pursuant to 11 U.S.C. §§ 105 and 363 to Enforce the Court's July 5, 2009 Sale Order and Injunction, (II) Objection Filed by Certain Plaintiffs in Respect Thereto, and (III) Adversary Proceeding No. 14-01929, dated July 11, 2014, Doc. No. 12770.

Bankruptcy Court, with Lead Counsel's acquiescence, entered parallel orders requiring those parties to stay their cases as well pending resolution of the "threshold issues" concerning the motion to enforce to bar the claims of ignition switch plaintiffs.

On July 12, 2014, the *Elliott* Plaintiffs submitted a "No Stay" pleading and a motion to dismiss for lack of subject matter jurisdiction.[13] The *Elliott* Plaintiffs contended *inter alia* that, because their lawsuit exclusively asserted independent claims against New GM for its own wrongdoing, the Bankruptcy Court lacked subject matter jurisdiction over their claims. Lead Counsel took an adversarial stance toward the *Elliott* Plaintiffs at that time, leading them, along with the *Sesay* Plaintiffs, to notify the Court of an apparent conflict within the Plaintiffs' group.[14] Designated Counsel retained by then temporary lead counsel Mr. Berman in fact appeared at the hearing on the *Elliott* motion and requested purportedly on behalf of Plaintiffs generally that the Elliotts' jurisdictional motion not be heard.[15] Subsequently, the *Sesay* and *Bledsoe* Plaintiffs in turn submitted motions to dismiss for lack of subject matter jurisdiction and No Stay pleadings arguing that their claims were not precluded by the 2009 Sale Order on various grounds, including the ground that they had not received the constitutionally required notice and opportunity to be heard before the entry of the order and therefore could not be bound by the order.[16]

---

[13] *See* Plaintiffs Lawrence and Celestine Elliott's No Stay Pleading Pursuant to the Court's Scheduling Orders and Motion for Order of Dismissal for Lack of Subject Matter Jurisdiction Pursuant to Bankr. R. 7012(B) and for Related Relief, 09-bk-50026, Doc. No. 12774.
[14] *See* note 5, *supra*.
[15] *See* Transcript of August 5, 2014, Hearing, p. 35, 09-bk-50026, Doc. No. 13003.
[16] *See Sesay* Plaintiffs' Amended No Stay Pleading, Motion for Order of Dismissal for Lack of Subject Matter and Personal Jurisdiction, Objections to GM's Motion to Enforce, Objections to the Court's Orders, and for Related Relief, 09-bk-50026, Doc. No. 12883 (filed Sept. 5, 2014); Bledsoe Plaintiffs' No Stay Pleading, 09-bk-50026, Doc. No. 12948 (filed October 13, 2014).

In the Bankruptcy Court, Lead Counsel's bankruptcy counsel purported to represent all MDL Plaintiffs in opposition to each of New GM's Motions to Enforce.[17] However, in their papers submitted in December 2014 relating to the disposition of the "threshold issues," Lead Counsel framed the due process issue exclusively in terms of the claims of ignition switch Plaintiffs, *i.e.*, arguing that because Old GM knew of the ignition switch defect, owners of vehicles containing the defect were "known creditors" who were entitled to actual, rather than publication, notice of the Sale Order.[18] Because Plaintiffs presented no evidence that Old GM knew of and had concealed non-ignition switch hazards, the due process arguments made by Lead Counsel in connection with the "threshold issues" did not benefit non-ignition switch Plaintiffs. In their December 2014 papers, Lead Counsel also for the first time in the Bankruptcy Court made the same subject matter jurisdiction argument regarding independent claims that the *Elliott*, *Sesay*, and *Bledsoe* Plaintiffs had made.[19] Lead Counsel did not move for dismissal on that basis.

In its April 15, 2015, opinion, the Bankruptcy Court ruled that both the ignition switch economic loss and ignition switch pre-sale accident Plaintiffs were "known creditors" at the time of Old GM's bankruptcy, because Old GM knew of but concealed the ignition switch defect, and consequently the ignition switch Plaintiffs were entitled to actual rather than publication notice

---

[17] *See*, *e.g.*, Designated Counsel's Opposition to New GM's Motions for Enforcement of Sale Order and Injunction, 09-bk-50026, Doc. No. 13025, n. 1:
> Lead Counsel appointed in the General Motors LLC Ignition Switch Litigation Multidistrict Litigation in the United States District Court for the Southern District of New York, Judge Furman presiding, Case No. 14-MD-2543 (JMF) (the "MDL Proceeding"), have retained the undersigned Designated Counsel, pursuant to Lead Counsel's authority under Order No. 13 (Organization of Plaintiffs' Counsel, Protocols for Common Benefit Work and Expenses), dated September 16, 2014 [MDL Proceeding ECF No. 304], to brief the Threshold Issues with respect to plaintiffs who have asserted actions consolidated for pre-trial purposes in the MDL Proceeding ("Plaintiffs").

[18] *Id*. at 26-54.
[19] *Id*. at 70-78.

prior to the entry of the 2009 Sale Order.[20] The Court ruled, however, that with respect to their successor liability claims, the arguments that the ignition switch Plaintiffs would have made were made by other parties and found unpersuasive by the Court, and therefore that the ignition switch Plaintiffs had not been prejudiced with respect to the preclusion of successor liability claims.[21] The Court found, however, that with respect to independent claims against New GM for its own wrongdoing, no party had argued in 2009 that such claims should be excluded from the Sale Order and Injunction, and, had such arguments been presented, the Sale Order would have been narrowed. Accordingly, the Bankruptcy Court ruled that the ignition switch economic loss Plaintiffs (but not the pre-Sale accident Plaintiffs) were not barred from asserting independent claims against New GM for its own wrongdoing.[22]

Following the decision, the *Elliot*, *Bledsoe*, and *Sesay* Plaintiffs objected to the entry of judgment before they were afforded an opportunity to submit their own objections to New GM's Motions to Enforce.[23] The Court denied the request[24] and entered Judgment on June 1, 2015.[25]

The Bankruptcy Court's Judgment provided that it applied, not only to ignition switch Plaintiffs, but also to "any other plaintiffs in these proceedings (including, without limitation, the Non-Ignition Switch Pre-Closing Accident Plaintiffs and Non-Ignition Switch Plaintiffs identified on Exhibit "D" attached hereto), subject to any objection ("Objection Pleading") submitted by any such party within 17 business days of the entry of this Judgment."

The Judgment enjoined prosecution of the Consolidated Complaints that Lead Counsel submitted here, as well as each of the *Elliott*, *Sesay*, and *Bledsoe* lawsuits, the States' lawsuits,

---

[20] *See* Decision On Motion To Enforce Sale Order, 09-bk-50026, Doc. No. 13109, at 7-10, 35-69.
[21] *Id*. at 11-12, 77-82.
[22] *Id*. at 12, 82-85.
[23] Letter from Gary Peller to Judge Gerber, May 13, 2015, 09-50026, Doc. No. 13143.
[24] Endorsed Order, May 27, 2015, 09-bk-50026, Doc. No. 13161.
[25] Judgment, June 1, 2015, 09-bk-50026, Doc. No. 13177.

and various ignition switch and non-ignition switch lawsuits pending in this Court and in state courts across the country.

On June 24, 2015, Lead Counsel submitted an Objection Pleading on behalf of the "non-ignition switch Plaintiffs" with respect to the claims in the Second Amended Consolidated complaint.[26] Lead Counsel purported to represent a broad class of non-ignition switch Plaintiffs:

> The term "Non-Ignition Switch Plaintiffs" shall mean all plaintiffs that have commenced a lawsuit against New GM asserting economic losses based on or arising from an alleged defect, other than the Ignition Switch in the vehicles subject to Recall No. 14-V-171000, or based on or arising from economic losses and diminution in value of their GM-branded vehicles based on the Ignition Switch Defect or other alleged defects in Old and New GM vehicles. The Non-Ignition Switch Plaintiffs together with the Ignition Switch Plaintiffs are defined herein as the "Plaintiffs."[27]

In the pleading, Lead Counsel made the same subject matter jurisdiction arguments that the *Elliott*, *Sesay,* and *Bledsoe* plaintiffs had made regarding independent claims against New GM for its own wrongdoing. However, Lead Counsel made no further arguments on behalf of non-ignition switch Plaintiffs with respect to their claims against New GM. Specifically, while asserting that additional opportunity for discovery should have been afforded, the Objection pleading did not assert any bases to deny enforcement of the Sale Order against non-ignition switch Plaintiffs owning vehicles manufactured by Old GM with respect to their successor liability claims against New GM. The Bankruptcy Court rejected the arguments.[28]

The *Bledsoe* Plaintiffs advised Lead Counsel that additional meritorious arguments were available and needed to be preserved for appeal. The *Bledsoe* Plaintiffs sought and were denied authorization by Lead Counsel to make additional statutory and due process arguments on behalf

---

[26] *See* Pleading with Regard to the Second Amended Consolidated Complaint; and the Non-Ignition Switch Plaintiffs' (I) Objection Pleading with Regard to the Second Amended Consolidated Complaint and (II) GUC Trust Asset Pleading, 09-bk-50026, Doc. No. 13247.
[27] *Id*. at note 1.
[28] *See* Decision on Imputation, Punitive Damages, and Other No-Strike and No-Dismissal Pleadings Issues, November 9, 2015, at note 70, 09-bk-50026, Doc. No. 13533. Lead Counsel did not appeal on behalf of non-ignition switch Plaintiffs from this decision either.

of Plaintiffs. The *Bledsoe* Plaintiffs filed a post-judgment motion[29] and an Objection Pleading[30] preserving for appeal the additional meritorious issues, namely that the Bankruptcy Code should not be read to permit sales of a bankrupt's property "free and clear" of interests in circumstances where the purchaser is alleged to have continued the wrongful acts of the debtor, and that the distinction between "known" and "unknown" creditors is relevant only to determine the process due before a *creditor's in rem* interests in the debtor's property can be foreclosed, and is irrelevant to determine claim preclusion of non-creditor, *in personam* claims asserted against a non-debtor such as New GM, for which the generally applicable due process requirements reflected in Rule 23 apply to determine preclusion of absent parties' claims, not the specialized bankruptcy notice regime that the Bankruptcy Court, the Ignition Switch Plaintiffs, and New GM all had incorrectly assumed applied.

### D.     Related Proceedings in the Court of Appeals

Lead Counsel filed appeals on behalf of the "Ignition Switch Plaintiffs" and the "Pre-Sale Accident Ignition Switch Plaintiffs." Lead counsel did not file any appeal from the Bankruptcy's Judgment on behalf of the non-ignition switch Plaintiffs. The *Elliott*, *Sesay* and *Bledsoe* Plaintiffs each perfected appeals from the Bankruptcy Court Judgment with respect to each of their claims, including non-ignition switch claims for economic loss on behalf of owners of vehicles manufactured by Old GM, and with respect to both independent and successor liability claims.

---

[29] See *Bledsoe* Plaintiffs' Motion to Amend Findings Pursuant to FRBP 7052, For Reargument Pursuant to Local Bankruptcy Rule 9023.1, to Alter or Amend the Judgment Pursuant to FRBP 9023, and for Relief from the Judgment Pursuant to FRBP 9024, 09-bk-50026, Doc. No. 13196.
[30] See *Bledsoe* Plaintiffs' Brief in Support of Their Motion for Relief Related to the Court's Judgment of June 1, 2015, and No Stay/No Strike/Objection Pleading Pursuant to the Judgment.

When the *Elliott* Plaintiffs petitioned the Court of Appeals for Direct Review of the Bankruptcy Court's Judgment, Lead Counsel initially opposed the petition, and withdrew their opposition after direction from this Court. Lead Counsel declined to authorize counsel for Certain Plaintiffs to undertake common benefit work, even after notice that Certain Plaintiffs were the only parties in the appeal with standing to challenge the Bankruptcy Court's rulings with respect to non-ignition switch claims. Lead Counsel attempted to monopolize the oral argument time to argue on behalf of ignition switch Plaintiffs, without regard for the needs of non-ignition switch Plaintiffs to be heard. When the Plaintiffs were unable to agree amongst themselves about the allocation of oral argument time, Certain Plaintiffs suggested an outside expert be retained to evaluate the merits of the arguments that Certain Plaintiffs asserted in terms of benefit to the Plaintiffs. Lead Counsel presented the issues to an expert that they had already retained and who had worked on their appellate brief. That expert confirmed that the legal positions sought to be presented by Certain Plaintiffs were meritorious, and in the interests of Plaintiffs ought to be given meaningful time at the oral argument. Despite this conclusion from their expert, Lead Counsel subsequently refused to authorize as common benefit work the efforts of counsel for Certain Plaintiffs to present arguments to the Court of Appeals on behalf of non-ignition switch Plaintiffs, including the argument that the Bankruptcy Court lacked subject matter jurisdiction over the independent claims of non-ignition switch Plaintiffs, that the Bankruptcy Code should not bar successor liability claims where the purchaser of a debtor's assets has continued the wrongdoing of the debtor, and that the non-ignition switch Plaintiffs' successor liability claims were not precluded by the 2009 Sale Order because they did not receive the type of notice that due process requires before *in personam* claims against a non-debtor may be precluded. Certain Plaintiffs believe that Lead Counsel's refusal to authorize as

common benefit work the efforts they have made to protect Plaintiffs' rights has not been based on legitimate consideration of the best interests of MDL Plaintiffs but instead has been arbitrary and capricious.

The conflict between the parties was explicitly manifest in the different positions taken with respect to the due process standards applicable to determining preclusion of claims against New GM. Lead Counsel argued that the specialized bankruptcy regime, distinguishing between known and unknown creditors, applies, and that, under those rules, the ignition switch Plaintiffs were known or reasonably ascertainable creditors. Whatever reasons might support such framing of the due process issues with respect to ignition switch claims, they do not support the claims of non-ignition switch Plaintiffs. Instead, non-ignition switch Plaintiffs have an interest in establishing that such a regime does *not* apply to their claims, given that they had not even alleged that Old GM knew of the non-ignition switch hazards. Accordingly, Lead Counsel and Certain Plaintiffs found themselves at odds in presenting their arguments to the Court of Appeals, and Lead Counsel's attempt to dominate the presentation of Plaintiffs' positions in those proceedings may have been detrimental to the interests of non-ignition switch Plaintiffs in presenting meritorious due process arguments that conflicted with those of Lead Counsel. While the positions may not necessarily have been in conflict, Lead Counsel declined to cooperate to present a united Plaintiffs' argument to the Court of Appeals.

### E.     Conclusion

Lead Counsel for Economic Loss Plaintiffs, directly and through "Designated Counsel" whom they retained in the bankruptcy proceedings, purported to represent the interests of all MDL Plaintiffs in opposing New GM's motions to enjoin their lawsuits from proceeding. Lead Counsel also explicitly purported to represent all MDL Plaintiffs asserting "non-ignition switch"

claims for economic loss in the bankruptcy proceedings. Lead Counsel, however, did not protect the interests of non-ignition switch Plaintiffs in the Bankruptcy Court proceedings, and obstructed counsel for Certain Plaintiffs from acting to protect their interests and those of other MDL Plaintiffs in pursuing non-ignition switch related claims. Despite submitting papers purportedly on behalf of MDL Plaintiffs asserting non-ignition switch claims, Lead Counsel did not perfect an appeal on behalf of such parties. Lead Counsel argued for Ignition Switch Plaintiffs in the Court of Appeals that the Bankruptcy Court lacked subject matter jurisdiction to enjoin independent claims against New GM for its own wrongdoing, but failed to appeal on the identical basis to protect non-ignition switch Plaintiffs from asserting independent claims relating to vehicles manufactured by Old GM. As a result, parties represented by Lead Counsel in the bankruptcy proceedings may now be precluded from asserting *any* claims relating to non-ignition switch hazards in their cars, regardless of the outcome of the pending appeals taken by distinct parties. *See Travelers v. Bailey*, 557 U.S. 137, 152-54 (2009) (even lack of subject matter jurisdiction may not be collaterally attacked by party who participated in proceedings leading up to the Order but failed to challenge subject matter jurisdiction). In contrast, Certain Plaintiffs acted appropriately to preserve their arguments in the bankruptcy court and to perfect appeals from the Bankruptcy Court's adverse rulings with respect to both ignition switch and non-ignition switch Plaintiffs.[31]

      In light of the apparent failure of Lead Counsel appropriately to attend to the interests of Plaintiffs asserting non-ignition switch claims, Certain Plaintiffs request that the Court take notice of the possible need to augment the leadership structure to ensure that such interests are

---

[31] Certain Plaintiffs have refrained from appraising the Court of communications among Plaintiffs' counsel in light of privilege considerations. Suffice it to say that the communications have consistently been adversarial and often acrimonious.

considered in future proceedings. In particular, Certain Plaintiffs anticipate that another round of decisions will be faced when the Court of Appeals renders its decisions in the pending appeals from the Bankruptcy Court. Certain Plaintiffs seek the Court's assistance to avoid the intra-group conflicts that have thus far marked their efforts to ensure that their non-ignition switch claims are protected from preclusion in the bankruptcy and appellate proceedings.

                                           Respectfully submitted,

                                           /s/ *Gary Peller*

                                         Gary Peller
                                         Counsel for Certain Plaintiffs
                                         600 New Jersey Avenue, N.W.
                                         Washington, D.C. 20001
                                         (202) 662-9122
                                         peller@law.georgetown.edu

CERTIFICATE OF SERVICE

I certify that on April 14, 2016, I served this Notice Of Conflict Within The Plaintiffs' Group and of the Possible Need for the Court to Alter Plaintiffs' Leadership Structure on all counsel of record via the Court's ECF system.

*/s/Gary Peller*
<u>Gary Peller</u>
